## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

TIMOTHY C. HARRY and ) 
KAREN C. HARRY )
 )
    Plaintiffs, )       Case No. 16-cv-10895-FDS
 )
v. )
 )
AMERICAN BROKERS CONDUIT; et al. )
 )
    Defendants. )
_____)


**PLAINTIFF'S AMENDED COMPLAINT FOR VIOLATIONS UNDER RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO); VIOLATIONS OF FDCPA, RESPA, TILA, RESCISSION ENFORCEMENT AND QUIET TITLE;  MGL CHAPTERS 183C, 266, 268; SLANDER; FRAUD IN THE CONCEALMENT; STANDING; AND VIOLATION OF THE PROFESSIONAL RULES OF CONDUCT.**


      NOW COME Plaintiffs Timothy C. Harry and Karen C. Harry, by and through their attorney, hereby amend their Complaint pursuant to F.R.C.P. Rule 15(a)(1)(B).  Plaintiffs received a 12(b) Motion from Defendants Fidelity National, Inc., Fidelity National Title Group, Inc. Fidelity National Title Company on June 1, 2016 and in accordance with F.R.C.P. Rule 15(a)(1)(B) file this Amended Complaint.

      Plaintiffs have also removed Korde & Associates as Defendants in this matter and have added the following Defendants, Ablitt & Charlton a/k/a Ablitt & Schofield a/k/a Ablitt Law Offices P.C. n/k/a Connolly, Geaney, Ablitt & Williard P.C. as well as the firms predecessors and successors in interest (the firm is constantly changing its name), Fidelity National Title Company and Fidelity National Financial, Inc.

1

## I. INTRODUCTION

This is an Amended Complaint by the Plaintiffs, Timothy C. Harry and Karen C. Harry, to have the original note marked cancelled and returned to Plaintiffs, to have mortgage issued by American Brokers Conduit released in the land records, to find the Defendants liable to Plaintiffs for fraudulent and deceitful actions under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), fraud in the concealment, slander, violations of MGL Chapters 183C, 266, 268, in violation of MGL c.93A, ξ2,  as well as racketeering activities under the Racketeer Influenced and Corrupt Organizations ("RICO") by all Defendants working in collusion with one another, to have their Truth In Lending Act Rescission Enforced and Title Quieted in their name only, to their property known as 31 Marway, Mashpee, Massachusetts, for additional TILA violations not involving Plaintiffs rescission, and to recover compensatory, general, special, and punitive damages.

## II. JURSIDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. ξ 1331 Federal Question, M.G.L.c.93A, and M.G.L.c.223A. ξ 3.

2.      Venue is proper under 18 U.S.C. ξ ξ 1965, 1965(a), 1965(b), and 28 U.S.C. ξ 1391(b) RICO.

## III. PARTIES

3.      Plaintiffs Timothy C. Harry and Karen C. Harry, a senior citizen ("Plaintiffs") are husband and wife and owners and in possession of the real property known as 31Marway, Mashpee, Massachusetts which deed was executed on May 22,

1995 recorded in the Barnstable Registry of Deeds at Book 9685, Page 323 on May 26, 1995 and by deed executed on June 5, 2001 and recorded with the Barnstable Registry of Deeds at Book 14020, Page 27 on July 9, 2001.

4. Defendant American Brokers Conduit did not legally exist as an entity in 2006 even though they were allegedly lending residential mortgage loans. However, another entity known as American Brokers Conduit Corporation registered their initial filing with the NYS Department of State, Divisions of Corporations on March 16, 2012. Registered agent NONE. Service of process is accomplished by serving two copies of the process to the Office of the New York Department of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. The NYS Department of State will mail process if accepted on behalf of the entity, to Incorp Services, Inc., One Commerce Plaza, 99 Washington Ave., Ste 805A, Albany, New York, 12210.

5. Defendant APEX Mortgage Services, LLC ("APEX") of 2550 Corporate Exchange Dr., Suite 102, Columbus, Ohio 43231 is a mortgage servicing company. APEX Mortgage Services, LLC, date of Involuntary Dissolution by Court Order or by the Secretary of State was April 19, 2011. Resident Agent CT Corporation System, 155 Federal Street, Ste. 700, Boston, MA 02110.

6. Defendant Fidelity National Financial, Inc. ("Fidelity Financial") has its principal office at 601 Riverside Ave., Jacksonville, Florida 93110. Fidelity Financial registered with the Massachusetts Secretary of the Commonwealth, Corporations Division on May 19, 2003, and was withdrawn on October 5, 2006.

Fidelity Financial was not authorized to do business in Massachusetts on the alleged closing date December 21, 2006.  Fidelity Financial was F/K/A Lender Processing Services, Inc., and A/K/A and D/B/A DOCX, LLC.   Fidelity National Financial, Inc. owns 100% of Defendants Fidelity National Title Group, Inc. and Fidelity National Title Insurance. Registered Agent, CT Corporation System, 101 Federal Street, Boston, MA 02110.

7.     Defendant Fidelity National Title Group, Inc. ("Fidelity Title Group") is a title insurance underwriting company that is 100% owned by Defendant Fidelity National Financial, Inc. with its principal office located at 601 Riverside Ave., Jacksonville, FL 32204.  Fidelity National Title Group, Inc. registered with the Massachusetts Secretary of the Commonwealth, Corporations Division on August 8, 2007 and withdrew on April 4, 2014.  Fidelity Title Group was not authorized to do business in Massachusetts until eight months after the alleged closing date December 21, 2006, at issue. Registered Agent, CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110.

8.     Defendant Fidelity National Title Company ("Fidelity Title Company") does not exist, however, Fidelity National Title Insurance does exist and is 100% owned by defendant Fidelity Financial, principal office located at 601 Riverside Ave., Jacksonville, Florida 93110.   Neither Fidelity National Title Insurance nor Fidelity National Title Company has ever been registered with the Massachusetts Secretary of the Commonwealth, Corporations Division.

Registered Agent, CT Corporation System, 101 Federal Street, Boston, MA 02110.

9.    Defendant American Home Mortgage Servicing, Inc. ("AHMSI") of P.O. Box 631730, Irving, TX  75063-1730, is a mortgage servicing company with their principal office located at 520 Broadhollow Road, Melville, NY 21046. American Home Mortgage Servicing, Inc. changed their name to AHM SV, Inc. on April 17, 2008, and the name used to transact business in Massachusetts is CNI National Mortgage.   Date of Involuntary Revocation June 18, 2012. Registered Agent, Corporation Service Company, 84 State Street, Boston, MA 02109.

10.    Defendant Homeward Residential ("Homeward") of P.O. Box 619063, Dallas, TX  75261-9063, is a mortgage origination and servicing firm.  Homeward Residential's principal office is 1525 S. Belt Line Rd., Coppell, TX 75019. Date of registration in Massachusetts was December 18, 2007.  Their name was changed from AH Mortgage Acquisition Co., Inc. on June 6, 2008, to American Home Mortgage Servicing, Inc., a named Defendant. Their name was again changed from American Home Mortgage Servicing, Inc., a named Defendant, to Homeward Residential, Inc. on June 5, 2012.  Homeward Residential was acquired by Defendant Ocwen Financial Corporation on October 3, 2012. Registered Agent, CT Corporation System, 155 Federal St., Ste 700, Boston, MA 02110.

11.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") of P.O.
        Box 2026, Flint, Michigan 48501, is a national electronic registry system that
        tracks the changes and servicing rights and beneficial ownership interests in
        mortgage loans that are registered on the system.  Principal office is 1818
        Library St., Ste. 300, Reston, VA 20190.  Registered Agent, CT Corporation,
        155 Federal Street, Ste. 700, Boston, MA 02110.

12.     Defendant Deutsche Bank National Trust Company as Trustee for American
        Home Mortgage Assets Trust 2007-2 Mortgage-Backed Pass-Through
        Certificates, Series 2007-02 ("Deutsche Bank") of 1761 East St. Andrew Place,
        Santa Ana, CA  92705-4934 is an international bank.  Deutsche Bank National
        Trust Company, Deutsche Bank National Trust Company as Trustee, and
        American Home Mortgage Assets Trust 2007-2 ("AHMA-2007-2) are not
        registered to conduct business in Massachusetts or New York.  However,
        Deutsche Bank is registered in the State of California. Registered Agent, CT
        Corporation System, 818 West Seventh St., Ste. 930, Los Angeles, CA 90017.

13.     Defendant Ocwen Loan Servicing, LLC ("Ocwen") of 1661 Worthington Road,
        Suite 100, West Palm Beach, FL  33409, is a mortgage servicing corporation.
        Resident Agent, Corporation Service Company, 84 State Street, Boston, MA
        02109.

14.     Defendant Ablitt & Charlton, a/k/a Ablitt/Scofield, a/k/a Ablitt Scofield P.C.,
        a/k/a Ablitt Law Offices P.C., n/k/a Connolly, Geaney, Ablitt & Willard P.C.
        ("Ablitt") is a foreclosure mill law firm with its principle office located at 304

Cambridge Road, Woburn, MA 01801. Registered Agent, Steven Ablitt, 304

Cambridge Road, Woburn, MA 01801.

## IV. STATEMENT OF FACTS

### A.  Alleged Loan Application

15.     In late November 2006, after being contacted by APEX, Plaintiffs began the

process of applying for a residential loan re-finance on their property.  This

resulted in APEX issuing and faxing a BORROWER'S CERTIFICATION

AND AUTHORIZATION CERTIFICATION dated December 2, 2006, stating

"The undersigned certify the following: 1.  I/We have applied for a mortgage

loan **from** APEX Mortgage Services, LLC.  In applying for the loan, I/we

completed a loan application containing various information on the purpose of

the loan, the amount and source of the down payment, employment and income

information and assets and liabilities.  I/We certify that all the information is

true and complete.  I/We made no misrepresentations in the loan application or

other documents, nor did I/We omit any pertinent information. 2. I/We

understand and agree that APEX . . .  reserves the right to change the mortgage

loan review process to a full documentation program.  This may include

verifying the information provided on the application with the employer and/or

financial institution. 3. I/We understand that it is a federal crime punishable by

fine or imprisonment, or both, to knowingly make any false statements when

applying for this mortgage, as applicable under the provisions of Title 18,

United States Code, Section 1014.  To Whom It May Concern: 1. I/We have

applied for a loan from APEX Mortgage Services, LLC. As a part of the application process, APEX Mortgage Services, LLC **and the mortgage guaranty insurer** (if any), may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program. 2. I/We authorize you to provide to APEX Mortgage Services, LLC **and to any investor to whom APEX Mortgage Services, LLC may sell my mortgage**, any and all documentation that they request. Such information includes, but is not limited to, employment history and income, bank, money market and similar account balances, credit history and copies of income tax returns. 3. APEX Mortgage Services, LLC **or any investor that purchases the mortgage** may address this information to any party named in the loan application. 4. **A copy of this authorization may be accepted as an original**." (emphasis added).

16.    Upon information and belief, Plaintiffs allege this APEX CERTIFICATION represents a loan **from** APEX. The APEX CERTIFICATION was not a loan, but a process to introduce and authorize a **mortgage guaranty insurer** to receive or request any and all personal documentation; introduce and authorize **any investor** to whom APEX may sell "my" mortgage to receive or request any and all personal documentation. The APEX CERTIFICATION explicitly shows APEX admits they, and the now introduced and authorized mortgage guaranty insurer, and any future investor, did not conduct any underwriting

investigation to determine if Plaintiffs qualified for a loan.   Plaintiffs allege APEX has committed identity fraud upon Plaintiffs with their inclusion of "A copy of this authorization may be accepted as an original." that contains Plaintiffs purported signatures, social security numbers and personal financial information.

17.   On **December 13, 2006**, Plaintiffs formally applied with APEX for a Uniform Residential Loan to refinance their current mortgage.  This Loan Application was prepared by APEX and faxed 13:25 December 13, 2006.

18.   This Loan Application is based on information purportedly supplied by Plaintiffs yet the alleged loan application was prepared by APEX themselves not Plaintiffs.   Upon information and belief, Plaintiffs allege this Loan Application is a false document because APEX falsified information stating Plaintiffs had $10,000 in an unspecified "Credit Union" with no account number, an unspecified life insurance net cash value of $150,000, "Household Assets" of $55,000, an unidentified liability of $103,105, a loan amount of **$445,500** with an interest rate of **1.750%** for 480 months, that Plaintiffs had a monthly income of $14,950, that estimated prepaid items were $2,154.84, and estimated closing costs would be $4,778.20.   Further, this Loan Application states on its face it was printed on **November, 29, 2006**, *prior* to the **December 2, 2006** CERTIFICATION and *prior* to the Loan Application faxed and purportedly signed by Plaintiffs **December 13, 2006**.  Plaintiffs allege they never claimed such assets or income.

19. Upon information and belief, Plaintiffs allege all Defendants working in cahoots to defraud Plaintiffs commenced on November 29, 2006 when the alleged Loan Application was printed.

20. There is no fourth page to this application as stated on the face of the purported Loan Application.

21. This APEX falsified Loan Application states an unpaid balance of $430,337.10 to Countrywide Account No. 122219942.

22. The Loan Application states it was prepared by Pierre Haber, APEX Mortgage Services, LLC, 2550 Corporate Exchange Drive, Columbus, OH 43231.  Upon information and belief, Plaintiffs allege Pierre Haber is a known illegal robo-signer and is specifically addressed further in this Amended Complaint.

23. All Defendants knew or should have known the Loan Application was predatory per se and void.

24. Plaintiffs allege APEX has violated 18 U.S.C. ξ 1014 – Loan and credit applications generally; Whoever knowingly makes any false statement . . .upon any application . . . shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.  Plaintiffs allege APEX began the enterprise scheme to defraud Plaintiffs and each Defendant chose to continue this enterprise scheme by accepting these false statements.

**B.  Fictional Good Faith Estimate**

25. On November 29, 2006 APEX issued a Good Faith Estimate ("GFE"), prepared by APEX and faxed **December 13, 2006**.  It states that it was prepared by Pierre

Haber, the known illegal robo-signer, APEX, 2550 Corporate Exchange Drive, Columbus, OH 43231, stating the following information: Loan Number: 0611EM005801, an interest rate of **1.750%,** Term: 480 months, Base Loan Amount: **$445,500.00**, Total Loan Amount: **$445,500.00**, an origination fee of $891.00, a processing fee of $995.00, an underwriting fee of $650.00, a broker administration fee of $495.00, settlement or closing fee of $750.00, total monthly payment of $1,805.27, title insurance fee of $842.72, mortgage and release fee of $250.00, total non-borrower paid at closing costs of $4,455.00, Compensation to Broker from Lender (not paid out of Applicant's Loan Proceeds) 0-3% YIELD SPRED PREMIUM, Total Closing Costs $6,933.04, and Total Estimated Closing Costs $9,233.20.

26.    Upon information and belief, Plaintiffs allege this is a predatory per se loan and an illegal loan pursuant to RESPA 12 U.S.C. ξ 2601, *et seq*., Regulation X, 24 C.F.R. ξ 3500 *et seq*.

27.    Plaintiffs' state this is the <u>only</u> GFE they were provided.

28.    Upon information and belief, Plaintiffs allege this APEX GFE was done knowingly and intentionally in furtherance of an enterprise scheme by all Defendants to defraud and injure Plaintiffs by means of false pretenses and misinformation.

29.    All Defendants knew or should have known this GFE to be inaccurate, predatory, and void and all Defendants have unclean hands.

**C.  Truth-In-Lending Disclosure Statement "TIL"**

30.     A **November 29, 2006** Truth-In-Lending Disclosure Statement ("TIL") prepared by APEX states: Loan Number: 0611EM005801, an **APR of 6.246%**, Finance Charge $556,864.97, Amount Financed **$458,089.49**, Total of Payments $1,014,954.46, and the **Lender/Broker** is APEX.

31.     Upon information and belief, Plaintiffs allege this TIL is a fraudulent document, including but not limited to, stated purported "lender" Defendant APEX has never been licensed as a financial institution lender of money, is different from the lender on the alleged note, mortgage, and HUD-1A,  the "Your Payment Schedule Will Be:" section is inadequately shown and in violation of RESPA, the loan amount financed is $8,089.49 higher than what appears on the alleged note, the loan number is different than the alleged note and mortgage, and the APR is different than the alleged note, mortgage, and HUD-1A.

32.     This is the <u>only</u> TIL provided to Plaintiffs and the Plaintiffs DID NOT SIGN IT.

33.     Upon information and belief, Plaintiffs allege this fictional TIL explicitly shows "Bait & Switch" tactics employed by APEX,  as the original APR was **1.750%** on the alleged Loan Application and GFE, and is now **6.246%** on the TIL, the purported loan was for $**445,500.00** as shown on the alleged Loan Application and GFE, yet this TIL does not show what the loan amount is (tracing back to the GFE $445,500.00), shows the Amount Financed **$458,089.49**, which is

$12,589.49 over the alleged Loan Application and GFE purported original loan amount of **$455,500.00**.

34.     All Defendants knew or should have known the TIL to be inaccurate, predatory, and void. 24 C.F.R. ξ 3500.8.

35.     Upon information and belief, Plaintiffs allege the Connecticut Department of Banking *inter alia*, issued a Cease And Desist Order, against APEX for unsound business practices.

## D. Fictional HUD-1A Settlement Statement

### a. Settlement Agent Fraud

36.     A one page HUD-1A Settlement Statement ("HUD-1") dated December 21, 2006 issued and prepared by Defendant Fidelity Title Company (a non-legal entity) and used at the purported "closing" states American Brokers Conduit (a non-legal entity) 538 BroadHollow Rd., Melville, NY 11747 is the lender, Timothy C. Harry is the borrower, settlement agent is defendant Fidelity National Title Company (a non-legal entity), the place of settlement is 2400 Corporate Exchange Dr., Suite 200, with **no town or state shown**, a new Loan Number 0001552524, an appraisal fee to KASS Appraisal, Inc. paid outside of closing ("POC") by Broker of $295.00, a commitment fee to American Brokers Conduit of $225.00, a tax service fee to American Brokers Conduit of $92.00, Flood Hazard fee to American Brokers Conduit of $19.00, a processing fee to APEX Mortgage Services for $995.00, a document preparation fee to APEX Mortgage Services for $495.00, a Discount fee to APEX Mortgage Services for

$900.00, a Broker Credit for Yield Spread to Borrower of -$4,455.00, a YIELD SPREAD PREMIUM by Lender to APEX Mortgage Services POC of $11,250.00, Hazard Insurance premium paid to Massachusetts P & I POC by the broker (APEX) of $960.00, Hazard Insurance of $160.00, a Settlement/Closing fee to Search2Close for $750.00, a title search fee to Fidelity National Title Company for $300.00, a tax Research fee to Fidelity National Title Company of $35.00,  Title Insurance to Fidelity National Financial for $550.00 stating **Lenders Coverage is $562,500.00 on a $450,000.00** purported loan which is **$112,000.00** more than the loan itself, Total Settlement Charges of $1,197.25, a Total Loan Amount of **$450,000.00**, (where the original loan application and GFE was for a loan of **$445,500**) and a Payoff first mortgage to Countrywide account # 122219942-2.  The loan amount is different than what was presented to Plaintiffs on the alleged Loan Application, and GFE.  There are now three different purported loan amounts. (Exhibit A is a spreadsheet setting forth all expenses based on each of these documents for ease of understanding.)

37.     Upon information and belief, Plaintiffs allege American Brokers Conduit, the stated Lender, is an unincorporated non-existent entity.  American Brokers Conduit has never been incorporated in ANY State in the United States. Specifically, Defendant American Brokers Conduit was an unincorporated non-existent entity in the Commonwealth of Massachusetts on the alleged "closing date" of December 21, 2006, as shown on the HUD-1A and could not have been

the lender.  Because American Brokers Conduit was not the lender, Plaintiffs allege that all documents flowing from the HUD-1A are void ab initio.

38.     The HUD-1A settlement agent Defendant Fidelity Title Company and payee on line #1102, 1103, 1107, 1111, 1118, has never been registered with the Massachusetts Secretary of the Commonwealth, Corporations Division and does not exist.  Plaintiffs allege said Defendant was not incorporated in any State and did not exist anywhere until February 2, 2010 when they formed and registered in the State of Delaware.  Specifically, Fidelity Title Company did not exist on the purported "closing" date of December 21, 2006 and as shown on the HUD-1A.

39.     The HUD-1A states the place of settlement is 2400 Corporate Exchange Drive, Suite 200, with **no city or State shown**.  Upon information and belief, Plaintiffs allege this is the address of Search2Close and Surety Title Agency, Columbus, Ohio NOT Defendant Fidelity Title Company.  Plaintiffs have never been to this address.   Search2Close and Surety Title Agency are subsidiaries of Defendant Fidelity Title *Group*.   It was Search2Close that was paid a settlement/closing fee of $750 as shown on line 1101; not Fidelity Title Company.

40.     Defendant Fidelity Title Company (using the Place of Settlement: 2400 Corporate Drive, Suite 200 – which is in the State of Ohio) was not registered with the Office of the Ohio Secretary of State on the purported "closing" date of December 21, 2006 and was not a legal entity.

41.     Upon information and belief, Plaintiffs allege Defendant Fidelity Financial, payee as shown on line #1108 of the HUD-1A, was not registered with the Massachusetts Secretary of the Commonwealth, Corporations Division and did not exist.  Specifically, Fidelity Financial did not exist in Massachusetts on the purported "closing" date of December 21, 2006 and as shown on the HUD-1A.

**E. Insurance Fraud**

42.     Along with the HUD-1A was a purported Schedule A issued by Chicago Title Insurance Company, File#: SC-6127880, **Commitment Date: November 20, 2006**, twelve days *prior* to the December 2, 2006 alleged loan application and a month *prior* to the alleged "closing" date stating on the face of the document a Loan Policy in the amount of **$450,000.00** with the purposed insured as American Brokers Conduit "lender".  The alleged fraudulent loan application and fraudulent GFE stated a loan amount of **$445,500**.

43.     Upon information and belief, Plaintiffs allege this is a predatory and false document because a.) this lender title policy was purposed to insure Defendant American Brokers Conduit as the "lender", which never existed, b.) Chicago Title Insurance Company has never been registered to conduct business in the Commonwealth of Massachusetts and c.) is a wholly owned subsidiary of Defendant Fidelity National Title Group which was not registered to conduct business in the Commonwealth of Massachusetts until August 13, 2007, **eight months after** the purported "closing" date of December 21, 2006

44.     Upon information and belief, Plaintiffs allege under Massachusetts law, inter

alia, we now have:  a.) Chicago Title Insurance Company, a non-Massachusetts

entity issuing a lender title insurance policy; b.) on behalf  of Fidelity National

Title Company, an entity not incorporated *anywhere in the United States*; c.) on

behalf of Fidelity National Title Group, a non-Massachusetts entity; d). for

American Brokers Conduit the purported "lender" *not incorporated anywhere*

*in the United States*.

45.     In addition to the $19.00 **Flood Hazard** fee, line #807 paid to a non-existent

lender and a $160.00 **Hazard Insurance** fee, line #1001 paid to undisclosed,

the HUD-1A states on line #903 **Hazard Insurance** Premium, POC by broker

(APEX), $960.00, issued to Massachusetts P & I.  Plaintiffs do not know who

this "Protection and Indemnity"  "policy"  "insured" or even who or what

Massachusetts P & I is, if anything.   Given the falsified Loan Application,

fictional: GFE; TIL; HUD-1A; an unincorporated non-existent lender, non-

existent settlement agent, title insurance agent, and title company, all never

existing in Massachusetts, Plaintiffs believe this forced placed Protection and

Indemnity insurance policy is not only illegal and predatory pursuant to all

consumer protection statutes, but constitutes insurance fraud and financial fraud

by all Defendants acting in cahoots using void ab initio documents.

46.     Plaintiffs allege the actions by the three specific Fidelity Defendants are in

furtherance of all Defendants intentional enterprise scheme to defraud Plaintiffs

by means of false pretenses and misrepresentations, and they participated in this

scheme knowingly and willfully with the intent to defraud Plaintiffs and financial institutions inter alia, by fictional insurance companies, with fictional insurance policies issued to fictional entities – all based on void ab initio documents reveals and demonstrates a multi-level pattern of fraud.

47.     All Defendants knew or should have known any insurance policy or fees were inaccurate, predatory, fraudulent, and void.   All Defendants have unclean hands.

## F.  Fictional Note

48.     Upon information and belief, the alleged note was with an unincorporated non-legal entity American Brokers Conduit that did not have authority to enter into any type of lending arrangement and this was done with the complete knowledge of all Defendants with the specific intention to defraud Plaintiffs of their money and property.

49.     American Brokers Conduit did not and could not provide the funds under the note because they did not exist as a legal entity and had no money to lend, rather was a non-existent predatory table-funder acting on behalf of a third party whose identity remained hidden.  The Plaintiffs were not doing business with American Brokers Conduit and no "closing" or consummation took place.

50.     The alleged note states an interest rate of 1.725%, while the alleged Loan Application states 1.750%, the GFE states 1.750%, TIL states 6.246%.  The 1.725% shown on the alleged note was only available until December 31, 2006. On January 1, 2007 the interest rate jumped from 1.725% to 10.083%.  The first

payment was due February 1, 2007 with the interest rate climbing higher. Plaintiffs allege predatory "Bait & Switch". The prevailing interest rates at the time when this note was written was approximately 6% fixed rate for thirty years.

51.    The alleged note states a loan amount of $450,000.00, while the Loan Application and GFE states $445,500.00, and the TIL states $458,089.49. Plaintiffs allege predatory "Bait & Switch".

52.    The alleged note states the loan to be a 40 year loan, while the TIL states the loan to be a 30 year loan.  Plaintiffs allege predatory "Bait & Switch".

53.    Section 1 of the alleged note states "The Lender is American Brokers Conduit. . . . . The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".  This language of the alleged note expressly provides a different definition of "Note holder' from the definition of holder under Massachusetts UCC MGL c.106, s. (b)(21). The alleged note defined the term "Note Holder" as "anyone who takes this Note by transfer and who is entitled to receive payments under this Note."

54.    Upon information and belief, Plaintiffs contend the alleged note required that "any subsequent party attempting to enforce the note prove they came into possession of the note by lawful transfer and have the right to receive payments under the note."  This provision establishes the party's intention to contract outside of the UCC definition of holder, so as to limit the right to enforce only to those who proved ownership.  No Defendant can prove ownership because

American Broker's Conduit was an unincorporated non-existent lender. All documents flowing from a void ab initio document are also void.

55.     Upon information and belief Plaintiffs contend the alleged note is not a negotiable instrument because the alleged note is subject to and governed by the alleged mortgage, rendering the alleged note a non-negotiable instrument as the amounts payable claimed by all Defendants include amounts not described in the alleged note and the alleged note does not contain an unconditional promise to pay.

56.     In good faith, Plaintiff's began to make payments on the alleged note on February 1, 2007 in the amount of $1,298.49. The Plaintiff's monthly loan amount increased to $1,395.88 on February 1, 2008. The last payment Plaintiff's made on the purported note was October 1, 2008. According to the alleged note, only Timothy C. Harry signed the document.

57.     All Defendants knew or should have known the alleged note was fraudulent and void and all Defendants have unclean hands.

## G. Fictional Mortgage and Riders

58.     The purported mortgage dated December 21, 2006 states the Lender is American Brokers Conduit and is a Corporation organized and existing under the laws of State of New York, 538 Broadhollow Road, Melville, NY 11747.

59.     Upon information and belief, Plaintiffs allege the purported mortgage is void ab initio because the purported note is void ab initio as the purported lender American Brokers Conduit was an unincorporated entity and simply did not

exist.  American Brokers Conduit as an unincorporated entity it was not authorized to do business in any State in the United States and was not authorized to lend money. This mortgage is a sham transaction.

60.    The alleged mortgage states (P) "RESPA" (12 U.S.C. Section 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter governs the transaction.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

61.    The alleged mortgage dated December 21, 2006, stating an alleged Loan Amount**: $450,000** to MERS as nominee for American Brokers Conduit, from Timothy C. Harry and Karen C. Harry, Husband and Wife, was recorded February 7, 2007 in the Barnstable Registry of Deeds, Book 21762, Page 49, by Defendant Fidelity Title Group, 4240 International Parkway, Ste. 160, Carrolton, TX 75007.  Plaintiffs allege this recording has slandered their title.

62.    Defendant Fidelity Title Group was not registered with the Massachusetts Secretary of the Commonwealth, Corporations Division in 2006.  Fidelity Title Group did not register with the Commonwealth of Massachusetts Secretary of State Corporations Division until August 13, 2007, **eight months after** the purported "closing" date.  Specifically, Fidelity Title Group was not authorized

to do business in Massachusetts on the "closing" date of December 21, 2006 and as shown on the alleged mortgage.

63.     Upon information and belief, the MERS MIN number 100024200015525245 shown on the face of the purported mortgage is NOT for American Brokers Conduit.  It is for a third party **American Home Mortgage Holding, Inc**. of Delaware which filed for bankruptcy on August 6, 2007.  Additionally, this MERS MIN number contains an additional digit 5 at the very end of the number which is different from the alleged loan number stated on the GFE to be 0611EM005801, is different than the alleged loan number stated on the TIL to be 061EM005801, and different than the alleged loan number stated on the HUD-1A to be 0001552524.  Plaintiffs allege there is a strong probability more than one illegal loan exists due to all Defendants acting in collusion to defraud Plaintiffs and financial institutions.

64.     Upon information and belief, American Brokers Conduit has never had a MERS member number. Only licensed lenders with a MERS MIN # may assign a mortgage to MERS.

65.     Upon information and belief, Plaintiffs allege their signatures on the alleged mortgage, do not match the their alleged signatures on the Adjustable Rate Rider nor the Prepayment Rider inter alia, therefore someone *forged* the Plaintiffs' signature.

66.     In good faith Plaintiffs paid $28,144.88 to American Brokers Conduit which was not a legal entity, was not licensed to do business in the Commonwealth and in essence does not exist.

67.     The purported mortgage states it was prepared by Robin Smith, 955 Chesterbrook Blvd., Suite 110, Chesterbrook, PA 19087.  Upon information and belief, Plaintiffs allege this is the address of SunTrust Mortgage, Inc. and specifically shows the ongoing use of fraudulent means to defraud Plaintiffs and financial institutions.

68.     All Defendants knew or should have known the alleged mortgage was void and all Defendants have unclean hands.

**H.  Fictional Assignments**

69.     Upon information and belief, Plaintiffs allege MERS could not be a nominee for a non-entity.

70.      Upon information and belief, American Brokers Conduit has never had a MERS Member Id#.

71.     On May 1, 2009 MERS, as nominee for American Brokers Conduit, whose address is 6501 Irvine Center Road, Irvine CA 92618, assigned the alleged mortgage, NOT THE ALLEGED NOTE, to Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-02, Mortgage-Backed Pass-Through Certificates, Series 2007-02 ("Deutsche Bank"), whose address is 1761 St. Andrew Place, Santa Ana, CA 92705-4934. This assignment of mortgage (AOM) now states MERS, as a nominee for

American Brokers Conduit, <u>Corporation</u>. This addition of "Corporation" is blatantly false. American Brokers Conduit was never incorporated anywhere in the United States. Plaintiffs have standing to challenge any fraudulent assignment that is void.

72.     Upon information and belief, MERS did not have the authority to do so as nominee for an entity that did not exist, and transferred nothing. Furthermore, the MERS MIN# shown on the alleged mortgage is for an undisclosed third party American Home Mortgage Holding, Inc. NOT American Brokers Conduit.

73.     This May 1, 2009 purported assignment of mortgage states: Assignment Effective As Of: 4/27/2009. Upon information and belief, Plaintiffs allege all Defendants have willingly participated in a fraudulent scheme of illegal back-dating.

74.     On December 22, 2014 a Consent Order entered in the matter of Ocwen Loan Servicing, LLC by the New York State Department of Financial Services documents Ocwen's practices of back dating business records that it failed to fully resolve "more than a year after its initial discovery."

75.     Upon information and belief, the May 1, 2009 assignment from MERS, as nominee for American Brokers Conduit, of the alleged mortgage to Deutsche Bank is void, fraudulent, and could not happen because a.) the lender did not exist therefore, b.) the non-existent lender could not nominate MERS as mortgagee, therefore, c.) MERS had nothing to assign, d.) the MERS MIN# on

the alleged mortgage is for American Home Mortgage Holding, Inc., and e.) the Trust 2007-02 was *closed*.  According to the Trust Prospectus, the fund closed on February 28, 2007, and the Trust cannot accept any assets after that date or risk losing its special tax filing status under the IRS.  The Trust could not accept the alleged mortgage in 2009 and importantly, there is no Depositor shown as required by the Trusts own governing documents.  All Defendants knew this assignment was a fraudulent and void document intentionally created for litigation purposes to deceive and injure Plaintiffs.  Plaintiffs have standing to challenge any fraudulent assignment that is void.

76.     This May 1, 2009 purported assignment of mortgage to Deutsche Bank was recorded May 7, 2009 in the Barnstable County Registry of Deeds, Book 23678, Page 247   24895, at 09:51a.  This assignment was prepared by DOCX and recording was requested by Defendant Fidelity Financial using their 100% owned subsidiary DOCX.

77.     Upon information and belief, DOCX was a wholly owned subsidiary of Fidelity Financial and that neither entity has been registered to conduct business in the Commonwealth of Massachusetts.

78.     Plaintiffs allege that six illegal ro-bo signers, **Ron Meharg**, who prepared the assignment, **Tywanna Thomas** as Asst. Secretary for MERS, **Dawn Williams** as Witness for MERS, **Korell Harp** as Vice President for MERS, **Christina Huang** as Witness for MERS, and **Brittany Snow** as the Notary Public; all participated in executing the allegedly assigning the alleged mortgage from

25

MERS to Deutsche Bank.  One of these known illegal robo-signers, **Korell Harp**, *was in prison in Oklahoma for identity theft on May 1, 2009* when the alleged document was executed.  He was arrested in October of 2008 and sentenced in January of 2009.  He couldn't have possibly signed the document.  Plaintiffs allege this document is void.

79.     Plaintiffs allege the CEO of Fidelity Financials' 100% owned subsidiary, DOCX was Lorraine Brown.  She plead guilty and was convicted for wire fraud and mail fraud for participating in a scheme to *fabricate more than 1 million mortgage-related documents.*   She is currently serving a 5 year sentence in Federal Prison.

80.     The United States Department of Justice released a Justice News Press release on February 15, 2013 stating Lender Processing Services, Inc., a 100% owned subsidiary of Fidelity Financial is to pay $35 million in an agreement to resolve criminal fraud violations following the guilty plea of Lorraine Brown.

81.     Plaintiffs allege upon information and belief, the May 1, 2009 assignment has slandered Plaintiffs title.

82.     On July 7, 2011, MERS again assigned the alleged mortgage to Deutsche Bank as Trustee for the same Trust as identified in the first assignment only this time stating American Brokers Conduit is organized and existing under the laws of United States of America.  Plaintiffs submit that incorporation of an entity happens at the State level, not the federal.   This second assignment also states this to be a "Confirmatory Assignment" and now states a new Trust address to

be in care of Defendant American Home Mortgage Servicing, located at 1525

S. Belt Line Road, Coppell, TX 75019.

83.    Upon information and belief, Plaintiffs allege the address for the Trust as shown

on the July 7, 2011 assignment, American Home Mortgage Servicing, Inc.

located at 1525 S. Belt Line Road, Coppell, TX 75019 is not the address for

Defendant AHMSI but instead is the address of Defendant Ocwen Loan

Servicing, LLC ("Ocwen").

84.    This second assignment of the alleged mortgage, NOT THE ALLEGED NOTE,

was recorded in the Barnstable County Registry of Deeds on July 18, 2011,

Book 25568, Page 342  36109.

85.    This second assignment from MERS to Deutsche Bank was designed to correct

the first assignment, however, this assignment was also signed by a known

illegal robo-signer April King, an alleged Assistant Secretary for MERS and

notarized by another known illegal robo signer Tammy M. Hansen who is not

found in the Florida Secretary of State Notary Division as ever having a notary

commission number.

86.    Upon information and belief, Plaintiffs allege all Defendants working in

cahoots knew this second assignment was a fraudulent and void document and

intentionally created for litigation purposes to deceive and injure Plaintiffs, has

brought fraud upon the court, and has slandered Plaintiffs title.

87.    All Defendants knew or should have known the alleged assignments were

fraudulent and void and all Defendants have unclean hands.

**I.**       **Notices of Intent to Collect on a non-existent Debt**

88.    Plaintiffs allege that when they stopped paying on the void ab initio note on
       October 1, 2008, they continued to receive notices from Defendant AHMSI
       from November 1, 2008 through June 5, 2012 when they changed their
       corporate name from American Home Mortgage Servicing Inc. to Defendant
       Homeward Residential Inc.

89.    Upon information and belief, Plaintiffs allege that Defendants AHMSI and
       Homeward knew the alleged note of which they were demanding payment was
       void ab initio.

90.    Upon information and belief, Plaintiffs allege that Defendant AHMSI is in the
       lending and mortgage industry.  AHMSI should have known that the issuer of
       the alleged note was an unincorporated non-existent company, American
       Brokers Conduit, yet, they ignored that fact and continued to press for payment
       as though the alleged note and the following mortgage were legitimate.

91.    Upon information and belief, Plaintiffs allege Defendant AHMSI never held the
       alleged void ab initio note, but only the following void mortgage.

92.    Plaintiffs allege Ocwen Financial Corporation purchased Homeward
       Residential on October 3, 2012 and without inquiring into the facts surrounding
       the Plaintiffs situation, continued to harass Plaintiffs to pay on a non-existent
       note and a non-existent mortgage.

93.     Plaintiffs allege Ocwen and its predecessor entities have perpetuated a fraud upon the Plaintiffs to extort money from them on a note that does not exist and is void and a mortgage that does not exist and is void.

**J.  Five Fictional Foreclosures – Illegal Attempts To Collect A Non-Existent Debt**

**1.  First Fictional Foreclosure - 2009**

94.     Plaintiffs allege a Complaint, Civil Docket # BACV2009-00672, which was subsequently revised by the court to be # 0972CV00672, was **filed** September 28, 2009, by Defendant Ablitt a/k/a Ablitt & Charlton in Superior Court, County of Barnstable, on behalf of  Defendant Deutsche Bank, that directly resulted in the court **issuing** an <u>ORDER OF NOTICE BY PUBLICATION</u> on October 6, 2009, witnessed by Barbara J. Rouse, Esquire, Chief Justice of the Superior Court, at Barnstable, Massachusetts, this 6th day of October, 2009, and was **recorded** November 23, 2009, Book 24184, Page 331 #66145 at 11:24am, in the Barnstable Registry of Deeds, at the behest of Defendant Ablitt a/k/a Ablitt Law Offices PC, and **served** on Plaintiffs November 18, 2009 by the Sheriff at the behest of Ablitt.

95.     Plaintiffs allege on November 6, 2009, a NOTICE OF MORTGAGEE'S SALE was **published** in *The Enterprise* by Defendant Ablitt on behalf of Defendant Deutsche Bank.

96.     Plaintiffs allege on October 6, 2009 Ablitt **filed** an amendment to the September 28, 2009 complaint **filed** with the court.

97.    Plaintiffs allege on December 7, 2009 Ablitt **filed** with the court a sworn Affidavit that each Plaintiff is not in the military.

98.    Plaintiffs allege on December 7, 2009 Ablitt **filed** with the court a Returned of copy of **recording** with Barnstable County Registry of Deeds on November 23, 2009.

99.    Plaintiffs allege on December 7, 2009 Ablitt **filed** with the court Service Returned notice of publication **served** on each Plaintiff November 18, 2009.

100.   Plaintiffs allege on February 28, 2010, Plaintiff Karen Harry was hospitalized with acute diverticulitis with micro perforation in the proximal transverse colon.  Plaintiffs allege this was caused by stress directly linked to Defendants illegal material misrepresentations.

101.   Plaintiffs allege then nothing happened.

**2. Second Fictional Foreclosure - 2010**

102.   Plaintiffs allege on November 11, 2010, Defendant Ablitt a/k/a Ablitt/Scofield issued a <u>NOTICE OF INTENTION TO FORECLOSE MORTGAGE AND OF DEFICIENCY AFTER FORECLOSURE OF MORTGAGE</u>, sent <u>Certified</u> and <u>Regular</u> <u>Mail</u> to Plaintiff Timothy C. Harry, 31 Marway, Mashpee, MA 02649, and Plaintiff Timothy C. Harry, P.O. Box 220, Mashpee, MA 02649, stating Deutsche Bank, 'holder" by assignment, on or after December 17, 2010 at 1:00 pm, intend to foreclose by sale under power of sale.  Included with this notice was a <u>NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE</u> reiterating their intention of selling Plaintiffs Property at Public Auction at 1:00 PM on

December 17, 2010.  Also included with this notice was a NOTICE OF MORTGAGE FORECLOSURE SALE dated November 11, 2010.

103.    Someone unknown cancelled the foreclosure sale without any word to Plaintiffs leaving Plaintiffs scared, uniformed, and vulnerable again.

**3. Third Fictional Foreclosure – 2011**

104.    Plaintiffs allege on July 14, 2011, Defendant Ablitt a/k/a Ablitt/Scofield issued a **third** NOTICE OF FORECLOSURE**,** the same complaint from the 2009 NOTICE OF FORECLOSURE was reused and **filed** in July 2011, by Ablitt a/k/a Ablitt & Charlton in Superior Court, County of Barnstable, on behalf Defendant Deutsche Bank that resulted in the court **issuing** *another* ORDER OF NOTICE dated July 22, 2011, **recorded** in the Barnstable Registry of Deeds by Ablitt a/k/a Ablitt/Scofield on August 2, 2011, Book 25599, Page 140 #38722 at 2:01pm, and **served** on Plaintiffs July 14, 2011, at 9:07 pm, by the Sheriff at the behest of Ablitt a/k/a Ablitt & Charlton **via fax**.  Ablitt also **faxed** this ORDER OF NOTICE to someone unknown on July 27, 2011, 2:38 pm.

105.    Plaintiffs allege on September 1, 2011, Defendant Ablitt a/k/a Ablitt/Scofield, P.C. **mailed** Plaintiffs a NOTICE OF FORECLOSURE SALE and a NOTICE OF MORTGAGEE'S SALE OF REAL ESTATE stating by virtue of the Power of Sale contained in a certain mortgage…. Deutsch Bank, present holder by assignment from MERS on behalf of American Brokers Conduit, Plaintiffs Property will be sold at Public Auction at 2:00 PM on October 7, 2011.

106.   Plaintiff alleges that sale also did not take place and without any word to Plaintiffs leaving Plaintiffs scared, uniformed, and vulnerable again.

107.   Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale, was mailed by Ablitt Certified and Regular Mail to Plaintiff Timothy C. Harry, P.O. Box 220, Mashpee, MA 02649.

108.   Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale, mailed by Ablitt – Certified and Regular Mail to Plaintiff Timothy C. Harry, 31 Marway a/k/a Mar Way, Mashpee, MA 02649.

109.   Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale mailed by Ablitt – Certified and Regular Mail to Plaintiff Spouse of Karen C. Harry, 31 Marway a/k/a Mar Way, Mashpee, MA 02649.

110.   Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale mailed by Ablitt – Certified and Regular Mail to Plaintiff Spouse of Karen C. Harry, P.O. Box 220, Mashpee, MA 02649.

111. Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale <u>mailed</u> by Ablitt – <u>Certified</u> and <u>Regular Mail</u> to Plaintiff Karen C. Harry**,** 31 Marway a/k/a Mar Way, Mashpee, MA 02649.

112. Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale <u>mailed</u> by Ablitt – <u>Certified</u> and <u>Regular Mail</u> to Plaintiff Spouse of Timothy C. Harry, 31 Marway a/k/a Mar Way, Mashpee, MA 02649.

113. Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale <u>mailed</u> by Ablitt – <u>Certified</u> and <u>Regular Mail</u> to Plaintiff Spouse of Timothy C. Harry, P.O. Box 220, Mashpee, MA 02649.

114. Plaintiffs allege a separate September 1, 2011 Notice Of Intention To Foreclose Mortgage And Of Deficiency After Foreclosure Of Mortgage, Notice Of Mortgagee's Sale Of Real Estate, Notice Of Mortgage Foreclosure Sale <u>mailed</u> by Ablitt <u>Certified</u> and <u>Regular Mail</u> to Plaintiff Karen C. Harry, P.O. Box 220, Mashpee, MA 02649.

**4. Fourth Fictional Foreclosure - 2015**

115.    Plaintiffs allege on February 13, 2015 Ocwen sent a notice to Plaintiffs that they intended to foreclose on Plaintiffs property known as 31 Marway, Mashpee, Massachusetts on behalf of Deutsche Bank.

116.    Plaintiffs allege on May 27, 2015 Plaintiffs attorney sent Ocwen a dispute of the alleged debt letter and also notified Ocwen they are required to cease communication with Plaintiffs and communicate only through their attorney.

117.    Plaintiffs allege on June 10, 2015 Ocwen sent Plaintiff Timothy C. Harry. Certified Mail, not Plaintiffs attorney as required, a SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY NOTICE OF DEFAULT stating a Total Amount Past Due of $223,611.23 on alleged now Loan Number 7140304192, states this is an "In Rem" foreclosure on the alleged mortgage, and directs Plaintiffs on or before July 17, 2015, to remit payment via MoneyGram®, Western Union, Regular Mail, or Overnight Mail.

118.    A Certified letter dated July 1, 2015, mailed to Plaintiff Timothy C. Harry, not Plaintiffs attorney as required, by Ocwen stated the mortgage loan is past due and the property may be referred to foreclosure.  It continues with confusing amounts purported to be owed including fees, claims Ocwen has the right to foreclose and Ocwen intends to initiate a foreclosure, and claims the "Noteholder", not the Holder In Due Course owner, directly or through an agent, has possession of the purported promissory note and the chain of endorsements is complete.

119.   Plaintiffs allege on July 20, 2015, Ocwen <u>mailed</u> Plaintiff Timothy C. Harry a letter stating Ocwen had received Plaintiffs correspondence and they needed more time to provide a written response.

120.   Plaintiffs allege **a second letter** dated July 20, 2015, <u>mailed</u> to Plaintiff Timothy C Harry by Ocwen stating Ocwen had received Plaintiffs communication regarding Plaintiffs authorization letter for Tina L. Sherwood as their attorney and to communicate only through her.   Ocwen's response stated "A review of loan documents indicates that the signature is not matching with the authorization letter provided to us.   Therefore, we are unable to authorize Tina L. Sherwood to receive and discuss any information on the above loan."   Plaintiffs allege this intentional stall tactic is in violation of RESPA, constitutes mail and fictitious name fraud, and due to Ocwen comparing forged signatures from purported loan documents to real signatures on the attorney authorization.

121.   Plaintiffs allege on September 4, 2015, Ocwen mailed a letter to Plaintiffs stating that they [Ocwen] were in receipt of the Plaintiffs request but were unable to provide a response.

**5. Fifth Fictional Foreclosure - 2016**

122.   Plaintiffs allege on January 28, 2016, Plaintiffs received a letter from Korde & Associates in their purported representation of Defendant Ocwen on behalf of themselves and Deutsche Bank, via <u>Certified Mail</u>, threatening litigation and foreclosure in collection of a debt giving 30 days to respond.

123. Plaintiffs responded to said letter on February 16, 2016 Certified Mail, Return Receipt stating in principal part, the same response that Plaintiffs issued in writing to Ocwen's in house Attorney on May 27, 2015 disputing the debt.

124. Plaintiffs believe they have been subjected to forgery of their signatures and been the victims of predatory lending and servicing practices resulting in a predatory table-funded loan that was void, not voidable, ab initio.

125. It has been over six years since the last payment made by Plaintiffs on the alleged note. The statute expired on November 1, 2014 for any judicial action regarding enforcement of the alleged note or mortgage which were void ab initio as Plaintiffs allege that the "Lender" never existed.

126. Plaintiffs allege all Defendants have unclean hands and are liable to Plaintiffs.

127. No Hold-In-Due-Course or Owner has ever been stated on any document.

128. Plaintiffs have repeatedly been threatened with litigation, foreclosure and eviction from October 10, 2009 through the filing of this Amended Complaint in June 2016 for a promissory note that was never valid, is void and does not exist. Plaintiffs allege they have been subjected to forgery of their signatures and been the victims of predatory lending practices resulting in a predatory loan per se under federal statutes.

**K. Fictional Modficiation**

129. Plaintiffs allege that on May 15, 2012, AHMSI <u>mailed</u> Plaintiff Timothy C. Harry a letter stating two *different* Loan Numbers: 0031532740 and 0031532740-P42, and *different* from prior alleged Loan Number, **"For your**

convenience**, . . .**AHMSI has made available the following payment options to assist you with making your next HAMP Trial Plan Payment installment . . . . Next Plan Due Date: 06-01-12, Amount Due: $1,521.58., . . . . Monthly Gross Income: $5063.78, when the alleged "scrubbed" Loan Application from APEX states a Gross Monthly Income of $14,950.00,  states the occupancy of the property is N/A, defines the date on which the Unpaid Principal Balance and other data used in the NPV (Net Present Value) analysis were <u>collected</u> by us on 5/3/12, **states O Investor Code, This field identifies the owner of the mortgage loan for which you are applying for a HAMP modification.,** Interest Rate 5%, Unpaid Principal Balance Before Modification $502,099.83., Remaining Term 459 months, Principal and Interest  Payment Before Modification $2,871.11, Mortgage Insurance Coverage Percent 0.2500 - This field identifies the percentage of private mortgage insurance coverage on the mortgage loan …. If you do not have private mortgage insurance, this field is blank, inter alia.

130.    Plaintiffs allege that Plaintiffs never agreed to a HAMP loan modification.

131.    **Plaintiffs allege this May 15, 2012 alleged HAMP communication from AHMSI confirms and admits there is no known "owner", "holder in due course", or investor, confirms APEX's loan application scrubbing, confirms undisclosed predatory force placed private mortgage insurance, confirms no underwriting standards were applied, confirms multiple "Bait**

        **& Switch" tactics employed, confirms securitization failure, inter alia, IN**

        **WRITING.**

**L. Plaintiffs Qualified Written Request "QWR"**

132.   Plaintiffs allege on July 30, 2015, pursuant to RESPA, Plaintiffs, through their Attorney, sent a "Qualified Written Request and Validation of Debt" letter to Defendant Ocwen the self-proclaimed servicer on the alleged fraudulent void note.

133.   In response to the Plaintiffs QWR Ocwen sent a package of documents on September 11, 2015 and another package of documents on September 30, 2015.

134.   Upon information and belief, Plaintiffs allege the documents sent are incomplete.  They do not follow the historical evolution of the alleged debt. The answer provided is in violation of the Real Estate Settlement Procedures Act 12 U.S.C. Section 2605(e).  There is no documentation regarding what happened to the alleged note or mortgage.  Nor is there any documentation as to why and how Deutsche Bank became involved with Ocwen in alleging seeking payment on an alleged debt that does not exist.  There is no paper trail as to what happened to the alleged note or mortgage to a non-existent entity American Brokers Conduit, assigned by MERS solely as nominee, to Deutsche Bank **over four years after** the alleged note was supposed to be deposited into the alleged trust that closed 2/28/2007.

135.   Upon information and belief, Plaintiffs allege the purported Trust does not exist, has no officers, was never funded, never had a bank account, never been

registered to conduct business in any State, and was never used – it is a sham and shell.

136.    Plaintiffs believe all Defendants have unclean hands and are liable to Plaintiffs.

**M. Plaintiffs Rescission**

137.    Pursuant to 15 U.S.C. ξ 1635(a), Reg. Z Sections 226.15(a), 226.23(a)(2), on March 20, 2015, Plaintiffs mailed their TILA rescission notice via Certified Mail/Return Receipt and Regular Mail to:

American Brokers Conduit                    Cert. Mail# 0131090000031500756

Apex Mortgage Services                     Cert. Mail# 70131090000031500626

MERS, Inc.                                 Cert. Mail# 70131090000031500763

Fidelity National Title Group              Cert. Mail# 70131090000031500374

American    Home    Mortgage    Servicing,    Inc.              Cert.    Mail# 70131090000031500633

Homeward Residential                       Cert. Mail# 70131090000031500732

Ocwen Loan Servicing                       Cert. Mail# 70131090000031500640

Deutsche Bank National Trust Company Cert Mail #70131090000031500749
As Trustee for American Home Mortgage
Assets Trust 2007-02Mortgaged-Backed
Pass-Through Certificates, Series 2007-02

138.    15 U.S.C. Section 1635 (b) and the United States Supreme Court states that the security interest, promissory note or lien on the Plaintiff's property becomes automatically void by operation of law upon mailing of the rescission notice.

139.    On April 1, 2015 Ocwen acknowledged receipt of Plaintiff's rescission notice by written communication.

140.     U.S.C. Section 1635(b) provides that the creditor must bring a legal action within 20 days after receipt of notice of the rescission if they desire to vacate the already effective by operation of law rescission.   No Defendant brought legal action.

141.      Each and every Defendants 20 day window to file a Declaratory Suit expired on April 11, 2015.

142.     Within 20 days after receipt of a notice of rescission, the creditor shall return …. Any money or property given as earnest money, down payment or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.  As of filing of this complaint, the Plaintiffs' have not received any returned money, original alleged note, original alleged mortgage, nor have the Defendants filed or recorded a required release in the land records where the Property is located as required by law.

143.     Plaintiffs allege all Defendants are in default to Plaintiffs and Plaintiffs effective by operation of law rescission must be enforced.

144.     Upon information and belief, Plaintiffs do not have to tender money or property.

145.     Plaintiffs allege all Defendants ignored basic Fair Lending, Servicing, and Collection Principles intentionally using fraud and prohibited racketeering practices and activities.   All Defendants knew or should have known this entire alleged transaction was void ab initio and all Defendants have unclean hands. Upon information and belief, Plaintiffs allege American Brokers Conduit has

been involved in, and named in, over $15 million in fraudulent real estate transactions just in Barnstable County Registry of Deeds alone.

**N.**     **Procedures**

146.    On March 25, 2016, Plaintiffs filed their original Complaint with Barnstable Superior Court together with a Request for a Lis Pendens to be filed on their property 31 MarWay, Mashpee, Massachusetts.

147.    Plaintiffs' requested and was granted an Ex Parte hearing on the Lis Pendens. The Honorable Robert C. Rufo granted the Lis Pendens on March 25, 2016, which was filed with Barnstable Registry of Deeds at Book 29544, Page 114 on March 30, 2016.

## COUNT ONE

**CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. CHAPTER 96**
**(As Against Defendants As Shown)**

148.    Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint.

**A. Racketeering Activities**

149.    The Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, provides a private right of action for treble damages to "any person injured in his business or property by reason of a violation" of RICO's criminal prohibitions, Section 1964(c).  Plaintiffs invoke RICO civil sanctions and fines contained in § 1964.

150.    In order to bring a claim under RICO, the following elements of the statute must be present (1) conduct; (2) of an enterprise (3) through a pattern (4) of racketeering activities (known as "predicate acts") (5) causing injury to the Plaintiff's business or property.

151.    The fact pattern outlined in the previous paragraphs establishes that all Defendants engaged in conduct which is prohibited by 18 U.S.C. ξ 1962 Prohibited activities.  Specifically, these predicate acts: ξ 1962(b) states that "It shall be illegal for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce;" ξ 1962(c) states that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt; and ξ 1962(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.  The activity which is proscribed in section 1962 is that a "person" shall not have a relationship "through" or "from" a "pattern of racketeering activity" with an "enterprise".

152.    18 U.S.C. ξ 1961(1)(B) **"racketeering activities"** means any act which is indictable under ξ 1341 relating to mail fraud, ξ 1342 relating to fictitious name

or address, ξ 1343 relating to wire fraud, ξ 1344 relating to financial institution fraud, and ξ 1956 relating to engaging in monetary  transactions in property derived from specified unlawful activity.

153.    18 U.S.C. ξ 1961(3) **"person"** includes any individual or entity capable of holding a legal or beneficial interest in property.

154.    18 U.S.C. ξ 1961(4) **"enterprise"** includes any individual, partnership, corporation, association, or other legal entity, and any union or **group of individuals associated in fact although not a legal entity**.

155.    18 U.S.C. ξ 1961(5) **"pattern of racketeering activity"** requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within 10 years after the commission of a prior act of racketeering activity.

156.    Plaintiffs allege all Defendants are as defined in ξ 1961(3) "person".

157.    Plaintiffs allege all Defendants engaged in prohibited racketeering activities which were mail fraud (18 U.S.C. Section 1341), wire fraud (18 U.S.C. Section 1343) bank fraud (18 U.S.C. Section 1344), money laundering (19 U.S.C. 1956) and fictitious names and addresses.

158.    Plaintiffs allege all Defendants engaged in racketeering activities with an "enterprise" as defined in ξ 1961(4), which includes any individual, partnership, corporation, association, or other legal entity, or any union or  group of individuals associated in fact although not a legal entity.

159.    Plaintiffs allege all Defendants engaged in ξ 1961(6)(B) "unlawful debt" which includes the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.  Because the "lender" was unincorporated and never existed or lent Plaintiffs any money in this case, ANY interest rate is usurious and unenforceable.

160.    Plaintiffs have shown the racketeering activities of all Defendants occurred in a pattern, **greatly exceeding the two predicate acts required**, that includes a series of fraudulent material misrepresentations, material omissions delivered as a part of a single plan to defraud Plaintiffs out of their money and property and injure them, implemented with and involves a series of individual mailings, fictitious name or address fraud, wire fraud, and bank fraud.  These plead predicate acts were related by a common plan to defraud Plaintiffs.  The gravamen of the offense is the enterprise scheme to defraud Plaintiffs, by any mail, fictitious name or address, wire, or bank fraud incident thereto is an essential part of executing the enterprise scheme.

161.    Plaintiffs allege there is a nexus between the predicate acts and the enterprise scheme consisting of all Defendants associated in fact although not a legal entity, in that their interstate commerce enterprise scheme be conducted through a pattern of such activity.

162.    Plaintiffs have been harmed by all Defendants aiding and abetting each other, without limitation, when they lost the valuable ability and opportunity to

refinance their property with real existing entities, a true identified creditor, on accurate terms disclosed, immediately injuring and depriving Plaintiffs of valuable financial benefits.  All Defendants have fraudulently taken Plaintiffs valuable ability and opportunity to refinance by arranging for related firms working in cahoots to defraud Plaintiffs in a falsified loan application, fictional GFE, TIL, HUD-1A, note, mortgage, riders to mortgage, two AOM, one fraudulent modification attempt and FIVE illegal foreclosure attempts to collect on a non-existent void ab initio debt.

163.  Plaintiffs allege the facts and acts complained of are exactly the type of activity Congress was seeking to combat and intended to prevent when the RICO statute was enacted.

164.   Upon information and belief, Plaintiffs allege all Defendants have voluntarily and intentionally aided and abetted each other and participated in a pattern of residential mortgage fraud to defraud Plaintiffs through misrepresentations, false material statements, and material omissions, with the necessary result of injury to Plaintiffs by fraudulently inducing them to part with their money, their property, and their identity.   All Defendants steps taken to implement and accomplish this racketeering enterprise scheme include without limitation:

a.  As outlined in Paragraphs 15-24 *supra*, Plaintiffs allege Defendant APEX faxed a fraudulent document, "BORROWER'S CERTIFICATION AND AUTHORIZATION CERTIFICATION", to Plaintiffs on 12/13/2006.  This fraudulent document was alleged to be a loan application, but upon

information and belief, this fraudulent document was to induce Plaintiffs to agree to allow a mortgage guaranty insurer to receive Plaintiffs' personal information and forward it to other investors.  APEX is organized out of Ohio.  Plaintiffs allege faxing this fraudulent document is wire fraud involving interstate commerce and is ***step one*** in an enterprise scheme to defraud Plaintiffs of their money and their property.

b.  As outlined in Paragraphs 25-29 *supra,* Plaintiffs allege Defendant APEX issued a fraudulent GFE to Plaintiffs which presented loan information different than what Defendant APEX presented on the BORROWER'S CERTIFCATION AND AUTHORIZATION CERTIFICATION as outline in Paragraphs 15-24 *supra.*  Defendant APEX normal place of business is Ohio.  Upon information and belief, Plaintiffs allege that APEX sent this fraudulent GFE to Plaintiffs via mail or wire communication resulting in an interstate transfer of fraudulent information.  Plaintiffs allege this transfer of a fraudulent GFE is ***step two*** in an enterprise scheme to defraud Plaintiffs of their money and their property.

c.  Plaintiffs allege Defendant APEX created a fraudulent Truth-In-Lending Disclosure Statement as set forth at Paragraphs 30-34 *supra*.  Defendant APEX normal place of business is Ohio.  Upon information and belief, Plaintiffs allege that APEX sent this fraudulent Truth-In-Lending Disclosure Statement to Plaintiffs via mail or wire communication resulting in the interstate transfer of fraudulent information.  Plaintiffs allege this

transfer of a fraudulent Truth-In-Lending Disclosure Document is **step three** in an enterprise scheme to defraud Plaintiffs of their money and their property.

d.   Plaintiffs allege Defendant Fidelity Title Company created a fraudulent HUD-1A as set forth in Paragraphs 36-41 *supra*.  The Plaintiffs allege that the scheme to defraud them of their money and their property continued with this document.  Plaintiffs allege Defendant Fidelity Title Company is an unincorporated non-legal entity that did not become incorporated in the United States until *February 2, 2010*; therefore, the HUD-1A is a completely fraudulent document.   Plaintiffs allege the HUD-1A states American Brokers Conduit as the lender.  American Brokers Conduit is an unincorporated non-legal entity, but the HUD-1A stated that American Brokers Conduit place of business is New York.  The fraudulent HUD-1A states an address for closing with **no city or State listed**.  Upon information and belief, Plaintiffs allege Defendant Fidelity Title Company was not closing on the void note, rather it was Search2Close, who was paid the closing fee of $750 on line 1101as a "settlement/closing" fee, and Surety Title Agency in Columbus Ohio, are both located at this address.  The Plaintiffs allege they never went to Ohio for any "closing".   Upon information and belief, Plaintiffs allege Fidelity Title Company and/or Search2Close and/or Surety Title Agency and/or American Brokers Conduit, all being located outside of Massachusetts if they did exist at all,

sent this fraudulent HUD-1A Statement to Plaintiffs via mail or wire communication resulting in the interstate transfer of fraudulent information. Plaintiffs allege this transfer of a fraudulent HUD-1A Document is *step four* in an enterprise scheme to defraud Plaintiffs of their money and their property.

e. Plaintiffs alleged attached to the fraudulent HUD-1A document was a fraudulent Schedule A issued by Chicago Title Insurance Company as set forth in Paragraphs 42-47 *Supra.* Plaintiffs allege neither Chicago Title Insurance Company, nor its Parent Defendant Fidelity Title Group out of Florida were licensed to do business in Massachusetts until after the closing date of December 21, 2006. Plaintiffs allege Defendant Fidelity Title Company an unincorporated non-legal entity, acting on behalf of Defendant Fidelity National Title Group issued a lender title policy to purportedly insure Defendant American Brokers Conduit a non-legal entity not incorporated under any laws of the United States. Upon information and belief Plaintiffs allege Fidelity National Title Group, doing business out of Florida and American Brokers Conduit purportedly doing business out of New York sent this fraudulent Schedule A to the fraudulent HUD-1A by either mail or wire communication resulting in the interstate transfer of fraudulent information. Plaintiffs allege this interstate transfer of a fraudulent Schedule A to the fraudulent HUD-1A Document is *step five* in an enterprise scheme to defraud Plaintiffs of their money and their property.

f.  Plaintiffs allege there was no mortgage on their property because there was no legal loan issued by American Brokers Conduit because American Brokers Conduit was a non-legal entity that was not incorporated in any State in the United States as set forth in Paragraphs 48-68 *supra*.  Upon information and belief, Plaintiffs allege American Brokers Conduit never had a MERS MIN number because it was an unincorporated non-legal entity.  Upon information and belief, Plaintiffs allege the MERS MIN number that appears on the purported mortgage is for a third party **American Home Mortgage Holding, Inc.** of Delaware.  Plaintiffs allege that they have never heard of, done business with or entered into any contract with **American Home Mortgage Holding, Inc.**  Upon information and belief, the Plaintiffs allege American Home Mortgage Holding, Inc. became involved in the void note and void mortgage pursuant to actions taken by American Brokers Conduit, an unincorporated non-legal business entity.  Upon information and belief, Plaintiffs allege the void note and void mortgage information had to be transmitted to **American Home Mortgage Holding Inc.** via mail or electronic communication resulting in the interstate transfer of fraudulent information.  Plaintiffs allege this interstate transfer of a fraudulent use of their personal information to another entity is *step six* in an enterprise scheme to defraud Plaintiffs of their money and their property as American Brokers Conduit needed to find a legal entity to try and give legitimacy to a void note that did not exist from the beginning.

49

g.   Plaintiffs allege the First Circuit has stated that for MERS to hold legal title to the mortgage as mortgagee of record, "There is one condition: the party for whom MERS serves as nominee must be a member of MERS".

h.   Plaintiffs allege MERS could not be the nominee for a mortgage because there was no legal promissory note underlying the mortgage as American Brokers Conduit was not a legal entity, not incorporated in any State in the United States and could not loan money.  Plaintiffs allege American Brokers Conduit could not issue a mortgage as security for a note because the note was void as American Brokers Conduit was an unincorporated non-legal entity and did not have a MERS membership number.  Plaintiffs allege that typically a mortgage states that the underlying real estate is the security to ensure that the lender is paid on the note.  Upon information and belief, Plaintiffs allege that where the note was void ab initio, the mortgage is also void ab initio because there is no need for a security on a note that does not exist.  Plaintiffs allege American Brokers Conduit could not write a mortgage that states MERS is the nominee on a void mortgage.  Upon information and belief, Plaintiffs allege that because MERS primary place of business is Virginia and the unincorporated non-existent American Brokers Conduit's alleged primary place of business is New York and that American Brokers Conduit had to create this mortgage and transfer it to MERS by either mail or electronic communication, this communication resulted in the in the interstate transfer of fraudulent information.  Plaintiffs

allege this interstate transfer of fraudulent information to create a fraudulent mortgage to be held by MERS as nominee is ***step seven*** in an enterprise scheme to defraud Plaintiffs of their money and their property.

i.  Plaintiffs allege that irrespective of the fact that the alleged note from American Bankers Conduit is void ab initio making the alleged mortgage void ab initio, MERS, as nominee for American Bankers Conduit an unincorporated non-legal entity with no MERS MIN#, assigned the alleged mortgage, NOT THE NOTE to Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-02, Mortgage-Backed Pass-Through Certificates, Series 2007-02, place of business Santa Ana, California on May 7, 2009 as set forth in Paragraphs 69-87 *Supra* and used five nationally known illegal robo signers, one of whom was **Korell Harp** who was in prison at the time the AOM was executed.  Plaintiffs allege that MERS could not assign the alleged mortgage because a mortgage did not exist.  Upon information and belief, Deutsche Bank could not accept the alleged assignment, not only because it was not a legal assignment, but also because the Trust *was closed.*  Plaintiffs allege this fraudulent assignment was recorded with the Barnstable County Registry of Deeds, slandering the Plaintiffs title. Upon information and belief, Plaintiffs allege where MERS is located in California, this fraudulent recording of the assignment with the Barnstable Registry of Deeds had to occur via mail or wire communication resulting in an interstate transfer of fraudulent

information.   Plaintiffs allege this assignment of a fraudulent alleged mortgage by MERS as nominee to Deutsche Bank is ***step eight*** in an enterprise scheme to defraud Plaintiffs of their money and their property.

j.   Plaintiffs allege that after they stopped payment on the fraudulent void note, October 1, 2008, Plaintiffs continued to be harassed by Defendant AHMSI for payment on a fraudulent void note.   Plaintiffs allege AHMSI became Defendant Howard Residential Inc. on June 5, 2012, who was acquired by Defendant Ocwen Financial Corporation on October 3, 2012.   Plaintiffs allege they received no fewer than **109 mailed** notices for payment from February 1, 2007 through January 31, 2016.   Upon information and belief, Ocwen is headquartered in Georgia.   Upon information and belief Plaintiffs allege that Ocwen, doing business in Georgia used the mail system to fraudulently try to collect on a fraudulent void debt resulting in the interstate transfer of fraudulent information.   Plaintiffs allege Defendant Ocwen and its predecessors have participated in ***step nine*** in an enterprise scheme to defraud Plaintiffs of their money and property.

k.   Plaintiffs allege Defendant Ablitt, a foreclosure mill law firm, acting on behalf of its then client Defendant Deutsche Bank commenced foreclosure proceedings on September 28, 2009 as more precisely set forth in Paragraphs 94-101 *Supra*.   On November 6, 2009, Defendant Ablitt caused a NOTICE OF MORTGAGEE'S SALE to be published in *The Enterprise*. The legal ad had to be sent to The Enterprise by mail or electronically.   Upon

information and belief, Defendant Ablitt, as attorneys reviewed the facts of their client Deutsche Bank and determined that foreclosing on a fraudulent void note and a fraudulent void mortgage was the proper legal course of action.  Plaintiffs allege Ablitt engaged in mail or wire fraud in sending the advertisement to *The Enterprise.*  Plaintiffs allege Defendant Ablitt and Defendant Deutsche Bank have participated in ***step ten*** in an enterprise scheme to defraud Plaintiffs of their money and property.

l.   Plaintiffs allege on November 11, 2010, Defendant Ablitt on behalf of Defendant Deutsche Bank issued another NOTICE OF INTENTION TO FRECLOSE MORTGAGE AND OF DEFICIENCY AFTER FORECLOSURE OF MORTGAGE.  Plaintiffs allege Defendant Ablitt on behalf of its client Defendant Deutsche Bank sent this notice to fraudulently foreclose on Plaintiffs property by regular mail and certified mail to two addresses as set forth in Paragraph 102 *supra*.  Upon information and belief, Defendant Ablitt, as attorneys reviewed the facts of their client Deutsche Bank and determined that foreclosing on a fraudulent void note and a fraudulent void mortgage was the proper legal course of action.  Plaintiffs allege Defendant Ablitt and Defendant Deutsche Bank engaged in mail fraud with the sending of these four notices to Plaintiffs.  Plaintiffs allege Defendant Ablitt and Defendant Deutsche Bank have participated in ***step eleven*** in an enterprise scheme to defraud Plaintiffs of their money and property.

m.  Plaintiffs allege on July 14, 2011 Defendant Ablitt issued a **third** NOTICE
    OF FORECLOSURE on behalf of their client Defendant Deutsche Bank as
    more fully set forth in Paragraphs 104-114 *supra*.  Upon information and
    belief, Defendant Ablitt, as attorneys, reviewed the facts of their client
    Deutsche Bank and determined that foreclosing on a fraudulent void note
    and a fraudulent void mortgage was the proper legal course of action.
    Plaintiffs allege Defendant Ablitt on behalf of Defendant Deutsche Bank
    mailed Plaintiffs a NOTICE OF FORECLOSURE SALE and a NOTICE
    OF MORTGAGEE'S SALE OF REAL ESTATE on September 1, 2011 and
    mailed a separate Notice of Intention to Foreclose Mortgage and of
    Deficiency After Foreclosure of Mortgage, Notice of Mortgagee's Sale of
    Real Estate, Notice of Mortgage Foreclosure Sale by *certified mail and
    regular* mail to Timothy Harry and Karen Harry separately to both of their
    addresses.  Plaintiffs allege Defendant Ablitt and Defendant Deutsche Bank
    engaged in mail fraud with the sending of these nine notices to Plaintiffs.
    Plaintiffs allege Defendant Ablitt and Defendant Deutsche Bank has
    participated in **step twelve** in an enterprise scheme to defraud Plaintiffs of
    their money and property.

n.  Plaintiffs allege on February 13, 2015 Ocwen sent a notice to Plaintiffs
    stating they [Ocwen] intended to foreclose on Plaintiffs property on behalf
    of Deutsche Bank as set forth more fully at Paragraphs 115-121 *Supra*.
    Plaintiffs allege on June 10, 2015 Ocwen sent Plaintiffs by Certified Mail a

SPECAIL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY NOTICE OF DEFAULT directing Plaintiffs to remit payment of $223,611.23 on Loan Number 7140304192.  Plaintiffs allege on July 1 2015, by certified mail that Plaintiffs received a letter demanding payment and threatening foreclosure.  Plaintiffs allege on July 20, 2015, Ocwen mailed a letter to Plaintiffs stating they received Plaintiffs correspondence regarding communicating with their attorney and Ocwen needed more time.  Plaintiffs allege Ocwen sent another letter on July 20, 2015 stating that they couldn't speak with Plaintiffs' attorney because Plaintiffs' signature didn't match the signature of documents that Ocwen had in its possession. Plaintiffs allege Defendant Ocwen on behalf of Defendant Deutsche Bank engaged in mail fraud with the sending of these five mailings to Plaintiffs in attempting to collect on a non-existent debt. Plaintiffs allege Defendant Ocwen and Defendant Deutsche Bank has participated in *step thirteen* in an enterprise scheme to defraud Plaintiffs of their money and property.

o.  Plaintiffs allege on September 4, 2015, Ocwen mailed to Plaintiffs a response letter stating that they were unable to provide Plaintiffs with a response.

p.  Plaintiffs allege on January 28, 2016, Korde & Associates in their purported representation of Defendant Ocwen on behalf of Ocwen and Defendant Deutsche Bank sent a certified letter to each Plaintiff threatening litigation

and foreclosure in collection of a debt and giving Plaintiffs 30 days to respond.  Plaintiffs allege Korde engaged in mail fraud on behalf of Ocwen and Deutsche Bank with the sending of these two mailings to Plaintiffs in attempting to collect on a non-existent debt.  Plaintiffs allege Defendant Ocwen and Defendant Deutsche Bank have participated in ***step fourteen*** in an enterprise scheme to defraud Plaintiffs of their money and property.

165.  Plaintiffs allege the following damages for the wrongful and fraudulent actions of the following Defendants that used mail, fictitious name and address, wire, and bank fraud to perpetuate their enterprise scheme to defraud the Plaintiffs of their money and their property on a non-existent debt to wit:

    a.  **APEX** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages).  Plaintiffs have set forth three interstate uses of mail, fictitious name or address, wire, and bank fraud.  Plaintiffs request that Apex be fined $2,250,000 for their involvement under RICO to defraud Plaintiffs of their money and Property.

    b.  **AHMSI** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud

ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages).  Plaintiffs have set forth three interstate uses of mail, fictitious name or address, wire, and bank fraud.  Plaintiffs request that AHMSI be fined $2,250,000 for their involvement under RICO to defraud Plaintiffs of their money and Property.

c.  **Fidelity Financial** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages). Plaintiffs have set forth two interstate uses of mail, fictitious name or address, wire, and bank fraud.  Plaintiffs request that Fidelity Financial be fined $1,500,000 for their involvement under RICO to defraud Plaintiffs of their money and Property.

d.  **American Brokers Conduit** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages).

57

Plaintiffs have set forth two interstate uses of mail, fictitious name or address, wire, and bank fraud.  Plaintiffs request that American Brokers Conduit be fined $1,500,000 for their involvement under RICO to defraud Plaintiffs of their money and Property.

e. **MERS** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages).  Plaintiffs have set forth three interstate use of mail, fictitious name or address, wire, and bank fraud.  Plaintiffs request that MERS be fined $2,250,000 for their involvement under RICO to defraud Plaintiffs of their money and Property.

f. **OCWEN** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages).  Plaintiffs have set forth one hundred and sixteen interstate uses of mail or wire fraud. Plaintiffs request that Owen be fined $87,000,000 for their involvement under RICO to defraud Plaintiffs of their money and Property.

58

g. **Deutsche Bank** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages). Plaintiffs have set forth eighteen uses of mail, fictitious name or address, wire, and bank fraud. Plaintiffs request that Deutsche Bank be fined $13,500,000 for their involvement under RICO to defraud Plaintiffs of their money and Property.

h. **Ablitt** is in violation of 18 U.S.C. Chapter 96 RICO ξξ 1961, 1961(b), 1962, and liable to Plaintiffs under ξ 1964 for treble damages and the cost of attorney fees and suit; 18 U.S.C. Chapter 63 Mail Fraud And Other Fraud ξξ 1341, 1342, 1343, 1344, and liable to Plaintiffs under 18 USC ξ 1964 in a sum up to $250,000 for each violation, including investigation fees, attorney fees and cost of suit times 3 (treble damages). Plaintiffs have set forth thirteen uses of mail, fictitious name or address, wire, and bank fraud. Plaintiffs request that Ablitt be fined $9,750,000 for their involvement under RICO defraud Plaintiffs of their money and Property.

166. **Tolling the RICO Statute of Limitations**.

a. Plaintiffs RICO claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged

herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims.  Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their original Complaint.

b. **Equitable Estoppel**

   i.   All Defendants are estopped by their own fraudulent concealment and participation in their intentional concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

   ii.   American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the mortgage.

   iii.   AHMSI concealed the fact that American Brokers Conduit could not, and was not, the "lender" but merely a predatory table funder with no MERS MIN# and concealed that American Home Mortgage Holding, Inc. was identified on the alleged mortgage with their MERS MIN#.

iv.    Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by writing title insurance purposed to insure American Brokers Conduit a non-legal entity.

v.    Fidelity Financials' subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank.  Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison, and one of the illegal robo signers, **Korell Harp** was in jail on the day he "signed" the alleged assignment.

vi.    Deutsche Bank, as Trustee of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in trust and perpetuated the fraud by trying to foreclose on what it did not own.

vii.    Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

viii.    Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.  Their actions violate every aspect and intent of RICO.

ix.   The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c.   **Equitable Tolling**

i.   Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate.  Plaintiffs did not have any reason to know of the RICO violations or injuries described herein and did not and could not have known of Defendants' violations.

ii.   Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on all Defendants to be experienced and lawful professionals and fulfill their duties in compliance with the law.

iii.   Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants enterprise

scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they discovered the truth underlying their claims shortly before filing their original Complaint.

**COUNT TWO**
**EXPIRATION OF STATUTE OF LIMITATIONS TO COLLECT ON A DEBT**
**(All Defendants)**

167.    Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint.

168.    Plaintiffs allege that the M.G.L. Chapter 260 Section 1 states in pertinent part that "The following actions shall be commenced only within twenty years after the cause of action accrues….. First, contracts under seal.  Second upon bills, notes or other evidences of indebtedness issued by a bank."

169.    Upon information and belief, Plaintiffs allege that this M.G.L. Chapter 260 Section 1 does not apply to the current case.  The alleged lender, American Brokers Conduit, was a non-legal entity and not incorporated in the United States at the time of writing the alleged note nor was it a bank.  One of the critical components of a bank is that the legal entity can accept deposits. Plaintiffs allege that no bank was involved in this case until the fraudulent assignment of a void mortgage, not the alleged fraudulent void note, was assigned to Deutsche Bank as Trustee.  Upon information and belief, Plaintiffs allege that a non-legal entity cannot enter into a legal contract under seal.

170.    Plaintiffs allege that M.G.L. Chapter 260, Section 2 states that "actions of contract or liabilities, expressed or implied except actions limited by section

one or actions upon judgments or decrees of courts of record of the United States or of this or of any other state of the United States, shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

171.  Upon information and belief, Plaintiffs allege that this statute does not apply to the current situation because there was not a legal contract.  All documents as stated from the beginning of this Amended Complaint were either prepared fraudulently or by an unincorporated entity that was not a legal entity to transact business in any state.  Because none of the paperwork involved in this case was legal, there could not be a legal contract.

172.  Plaintiff's last made payment on the alleged void note and subsequent void mortgage on October 1, 2008.  The six year statute of limitations to bring a judicial action for any claim on the alleged note and mortgage under contract law expired on November 1, 2014.  Because a bank did not issue the note, M.G.L. Chapter 260, section 1 does not apply.

173.  Defendants AHMSI, Deutsche Bank and Ocwen (and predecessor companies) had and took multiple opportunities through the entities individually and through the law firms of Ablitt and Korde, to attempt to foreclose on the property within the 6 year period under contract law *if they could prove there was a valid contract,* which Plaintiffs allege there was not.  Defendants Deutsche Bank and Ocwen continued to threaten foreclosure and attempted to collect on a void non-existent debt outside of any legal time frame to do so.

174.   Plaintiffs allege M.G.L. Chapter 260 Section 2A states in pertinent part "Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."

175.   Upon information and belief, this is the closest statute that may be applicable to this matter, although not directly on point because at no time did any of the Defendants own a right to cause payment on a void note or the right to foreclose on a void mortgage securing the real property.

176.   Plaintiffs request this court to rule in favor of Plaintiffs that the statute of limitations has expired to collect on a non-existent void fraudulent debt and void fraudulent mortgage.

**COUNT THREE**
**VIOLATIONS OF MGL CHAPTER ξξ 183C, 266, and 268,**
**in Violation of MGL c.93A, ξ 2**
**(As Against All Defendants)**

177.   Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein.

178.   MGL c.266, s. 35A(b) states: Whoever intentionally:

(1) makes or causes to  be made any material statement that is false or any statement that contains a material omission, knowing the same to be false or to contain a material omission, during or in connection with the mortgage lending process, with the intent that such information be relied upon by a mortgage lender, borrower, or any other party to the mortgage lending process; (2) uses, or facilitates the use of, any material statement that is false or any statement that contains a material omission, knowing the same to be false or to contain a material omission, during or in connection with the mortgage lending process, with the intent that such statement be relied upon by a mortgage lender, borrower or any other party to the mortgage lending process; (3) receives any proceeds or any other funds in connection with a residential mortgage closing,

knowing such proceeds or funds were obtained in violation of clause (1) or (2); or (4) files or causes to be filed with a register of deeds any document that contains a material misstatement that is false or a material omission,  knowing such document to contain a material statement that is false or a material omission, shall be punished  by imprisonment in the state prison for not more than 5 years or by imprisonment in the house of correction for not more than 2 and one-half years or by a fine of not more than $10,000 in the case of a natural person or not more than $100,000 in the case of any other person, or by both such fine and imprisonment.

Any person who engages in a pattern of residential mortgage fraud shall be punished by imprisonment in the state prison for not more than 15 years or by a fine of not more than $50,000, in the case of a natural person, or not more than $500,000 in the case of any other person, or by both such fine and imprisonment.

179. Plaintiffs allege all defendants each have violated MGL c.266, s.35A ξξ 1-4, more specifically, to wit:

a. Apex submitted a false BORROWER'S CERTIFICATION AND AUTHORIZATION CERTIFICATE, a fraudulent GFE, a fraudulent TIL and chose American Brokers Conduit as the "lender" who was not incorporated to do business and could not lend the money.  Plaintiffs seek $500,000 against APEX.

b. Fidelity Financial through its unincorporated entity Fidelity Title Company prepared a fraudulent HUD-1 statement listing an unincorporated entity who could not lend money as the lender.  Fidelity also issued a fraudulent Schedule A where the Title Insurance written was to insure American Brokers Conduit as the lender. Additionally, Fidelity's wholly owned subsidiary DOXC prepared the documents assigning the alleged mortgage from MERS to Deutsche Bank.  These documents are fraudulent as more

66

precisely explained *infra*.   Under this statute Fidelity should be fined $500,000.

c.   American Brokers Conduit was brought into this fraudulent transaction by Apex, who chose an entity that was not legally incorporated or licensed to do business in any state.   Upon information and belief, Plaintiffs allege American Brokers Conduit, through Fidelity Title Company, prepared the alleged fraudulent note that they were not licensed to prepare or present. Under this statute, American Brokers Conduit and Fidelity Title Company should be fined $500,000.

d.   AHMSI and Homeward pretended to "service" a fraudulent void note and fraudulent void mortgage all the while concealing the fact American Brokers Conduit was not a legal entity capable of lending money to anyone in any state.   Additionally AHMSI knew that American Brokers Conduit did not have a MERS MIN# and that American Home Mortgage Holding, Inc.'s MERS MIN# was shown on the alleged mortgage – not American Brokers Conduit; continuing the fraud.    Under this statute, American Brokers Conduit, AHMSI, and Fidelity Title Company should be fined $500,000.

e.   MERS chose to become the nominee for American Brokers Conduit, an unincorporated entity, continuing the fraud.   MERS knew American Brokers Conduit did not and *could not* have a MERS MIN# and the MERS MIN# on the alleged mortgage was for **American Home Mortgage**

**Holding, Inc**., knew  American Brokers Conduit was not a legal entity and was not authorized to conduct business, that any note they did write was void and so was the mortgage.  MERS chose to act as nominee anyway furthering this fraud on the Plaintiffs.  MERS also transferred the alleged mortgage, not the alleged note to Deutsche Bank **twice**.  MERS should be fined $500,000 under this statute.

f.  Deutsche Bank continued to perpetuate this fraud by stating that they had legal title to the fraudulently assigned alleged voidmortgage as Trustee for American Home Mortgage Assets Trust 2007-2 Mortgage-Backed Pass-Through Certificates, Series 2007-2.  The alleged trust for which they were named Trustee was empty.  The Trust never held any assets.  In addition to the assignments being fraudulently executed, the assignments to the Trust could not happen because according to the Pooling and Servicing Agreement, the trust was no longer "accepting" any assets on the date of the fraudulent assignments.  Then Deutsche Bank attempted to foreclose on the property, which they did not have a right to do eighteen times.  Indeed, Deutsche Bank represented that it would "foreclose by sale under power of sale for breach of conditions, the mortgage held by it, by assignment on the property situated at 31 Marway, Mashpee, MA  02649….." Deutsche Bank knew it did not have this right, that all of the paperwork was void ab initio and fraudulent.  Deutsche Bank should be fined $500,000.

g.  Ocwen, through its predecessor entities including AHMSI and Homeward,
has been attempting to collect on a non-existent debt through one hundred
and sixteen communications with Plaintiffs.  Ocwen, as a loan servicing
agent knows that the alleged void note issued by American Brokers
Conduit, an unincorporated entity, is void and the underlying mortgage is
void, but they have tried every fraudulent method possible to steal the
Plaintiffs property.  Ocwen should be fined $500,000 for their actions.

h.  Ablitt as a foreclosure law firm must know the Defendants and they ***chose***
to ignore the facts.  As a foreclosure law firm, they had to know that
American Brokers Conduit, an unincorporated entity, did not have any legal
right to lend money making the note void and the mortgage void as well.
As a foreclosure law firm, they must have followed cases such as *U.S. Bank,*
*N.A. Trustee v. Antonia Ibanez*, 458 Mass. 637 (2011) yet they decided to
join Deutsche Bank in trying to foreclose on property that they should have
known Deutsche Bank didn't have a right to.  Further, Plaintiffs allege that
pursuant to *Eaton v. Fed. Nat;l Mortg. Ass'n*,, 462 Mass.569, 969 N.E. 2d
1118 (Mass. 2012), any entity attempting to foreclose on a property must
hold both the note and the mortgage.  Ablitt, being foreclosure Attorneys
that needed to know the facts before bringing an action of foreclosure
against the Plaintiffs must have known that the note was void, therefore the
alleged mortgage that was fraudulent assigned to their client Deutsche Bank
was also void and yet Ablitt ignored these facts and represented  Deutsche

Bank in a foreclosure action against the Plaintiffs. Ablitt should be fined $500,000.

180. **Tolling of the Statute of Limitations Subject to M.G.L. Ch. 266 Sec. 35A**

a. Plaintiffs' claims under M.G.L. Ch. 266 Sec. 35A are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims. Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their original Complaint.

b. **Equitable Estoppel**

   i. All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

   ii. American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the mortgage.

70

iii.   AHMSI pretended to "service" the void alleged note and mortgage, concealed the fact American Brokers Conduit was non-existent, illegally demanded and collected money from Plaintiffs, and knew American Home Mortgage Holding, Inc.'s MERS MIN# was on the alleged mortgage – not American Brokers Conduit.   All in an effort to intentionally perpetrate the scheme against Plaintiffs.

iv.   Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by writing title insurance purposed to insure American Brokers Conduit a non-legal entity.

v.   Fidelity Financials' subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank.  Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison and one of the illegal robo signers, **Korell Harp**, was in jail on the day he "signed" the alleged assignment.

vi.   Deutsche Bank, as Trustee of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in trust and perpetuated the fraud by trying to foreclose on what it did not own.

vii.   Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

viii.   Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.   Their actions violate every aspect and intent of M.G.L. Ch. 266, Section 35A.

ix.   The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c.   **Equitable Tolling**

i.   Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate.   Plaintiffs did not have any reason to know of the violations or injuries described in M.G.L. Ch. 266 Sec. 35A

herein, and RICO violations and did not and could not have known of Defendants' violations.

ii.   Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on all Defendants to be experienced and lawful professionals and fulfill their duties in compliance with the law.

iii.   Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they discovered the truth underlying their claims shortly before filing their original Complaint.

**COUNT FOUR**
**VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT**
**15  U.S.C. 1692 et seq.**
**(Defendants AHMSI, Deutsche Bank, Ocwen, Homeward, And Ablitt)**

181.   Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein.

182.   APEX issued the predatory Borrower's Certification and Authorization form, falsified Plaintiffs Loan Application income and assets not claimed by Plaintiffs, issued a fictional GFE, a fictional TIL, and brought an unincorporated non-existent entity American Brokers Conduit to the table for

"fulfillment" as a predatory table funder willingly and intentionally using predatory "Bait & Switch" tactics on the loan amount, interest rate, and length of loan, inter ilia, to defraud and injure Plaintiffs through their enterprise of individuals associated in fact although not a legal entity.  All three of Fidelity Defendants issued the fraudulent HUD-1A and insured a non-entity.  This fraud was implemented by APEX's and all three Fidelity Defendants' extensive use of mail, fictitious name, wire, and bank fraud.

183.    While the Plaintiffs acknowledge they must refrain from bringing FDCPA violations against any Defendant prior to one year ago by law, Plaintiffs allege due to the fraudulent actions by all Defendants that affect banking institutions, they are entitled to pursue FDCPA violations for up to ten years. Plaintiffs believe the Court will benefit from inspecting the violations that have occurred just in the past year. These violations are indicative of the same violations that have been ongoing for ten years in this case, all based on void ab initio documents. The Plaintiffs allege this insight into the duration of each false representation of the character, amount or legal status of the alleged debt using unconscionable means to collect on a void ab initio debt, inter alia, also point directly to fraud in the concealment, execution, and inducement, intentional infliction of emotional distress, slander of title, all accomplished by racketeering activities by all Defendants.

184. Plaintiffs allege Defendant Deutsche Bank violated the FDCPA in their eighteen attempts to collect on a fraudulent void mortgage that they fraudulent stated they were assigned.

185. Plaintiffs allege Defendant Deutsche Bank as Trustee for American Home Mortgage Assets Trust 2007-2 ("AHMA-2007-2) never owned any asset, not the alleged fraudulent void note, not the fraudulent void mortgage and had no right to attempt to collect on the non-existent void debt nor bring action in Barnstable Court for foreclosure against the Plaintiffs; Deutsche Bank had no legal right or authority to file their claim for foreclosure with the Barnstable Registry of Deeds; Deutsche Bank fraudulently through *two* fraudulently executed instruments never received legal title to the fraudulent void mortgage in the fraudulent void assignment of the fraudulent void mortgage.

186. Plaintiffs allege Ocwen, in its own name and in the name of its predecessors in interest, AHMSI, and Homeward have been collecting and attempting to collect on a fraudulent void note issued by American Brokers Conduit, an unincorporated non-legal entity since February 1, 2007. Ocwen, as owner of the predecessors in interest, being in the mortgage servicing business, knew this fraudulent note was void ab initio, yet still tried every strong arm tactic to intimidate, scare and attempt to foreclose – all based on fraud.

187. Plaintiffs allege that Ablitt's attempts to foreclose on a fraudulent void note are egregious, appalling and outrageous. Upon information and belief, Plaintiffs allege Ablitt is a foreclosure mill law firm, a player in the foreclosure game in

Massachusetts, who has been sanctioned for its actions, who decided to not follow the Rules of Professional Conduct and just slapped a fraudulent foreclosure action against Plaintiffs without investigating the facts, without investigating the origins of the fraudulent void note, without investigating the fraudulent assignment of a void mortgage, improperly, invalidly executed by a prisoner and to realize that not one entity owns either the void note or the void mortgage because the note was void ab initio, created by a unincorporated entity that was not worth the paper it was printed on.  Plaintiffs allege that Ablitt just jumped on the fraudulent bandwagon and tried to steal the Plaintiffs home.

188.    Plaintiffs request that this Court fine Deutsche Bank, Ocwen, AHMSI, Homeward, and Ablitt under this statute for their blatant violation of the FDCPA.

189.    **Tolling the FDCPA Statute of Limitations**.

a.  Plaintiffs FDCPA claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims.  Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because

Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their Complaint.

b. **Equitable Estoppel**

    i.    All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

    ii.    American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the mortgage.

    iii.    Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by writing title insurance purposed to insure American Brokers Conduit a non-legal entity.

    iv.    Fidelity Financial subsidiaries DOCX and LPS offered up six illegal illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank using a MERS MIN# for undisclosed American Home Mortgage Holding, Inc. Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison and one of the illegal robo signers, **Korell Harp**, was in jail for identity theft on the day he "signed" the alleged assignment.

v.      Deutsche Bank, as Trustee of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in Trust and perpetuated the fraud by trying to foreclose on what it did not own.

vi.     Ocwen and their predecessors in interest AHMSI, and Homeward jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

vii.    Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.  Their actions violate every aspect and intent of the FDCPA.

viii.   The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c.  **Equitable Tolling**

i.      Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing

and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate.  Plaintiffs did not have any reason to know of the FDCPA and RICO violations or injuries described herein and did not and could not have known of Defendants' violations.

ii.    Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on all Defendants to be experienced and lawful professionals and fulfill their duties in compliance with the law.

iii.    Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they discovered the truth underlying their claims shortly before filing their original Complaint.

**COUNT FIVE**
**RESPA VIOLATIONS** 12 U.S.C. ξ 2601,
**(Defendants APEX, American Brokers Conduit, AHMSI, Fidelity Financial, Fidelity Title Company, Fidelity Title Group)**

190.    Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein.

191.   APEX issued the predatory Borrower's Certification and Authorization form, falsified Plaintiffs Loan Application income and assets not claimed by Plaintiffs, issued a fictional GFE, a fictional TIL, and brought an unincorporated non-existent entity American Brokers Conduit to the table for "fulfillment" as a predatory table funder willingly and intentionally using predatory "Bait & Switch" tactics on the loan amount, interest rate, and length of loan, inter ilia, to defraud and injure Plaintiffs through their enterprise of individuals associated in fact although not a legal entity.   This fraud was implemented by APEX and all three Fidelity Defendants extensive use of mail, fictitious name, wire, and bank fraud.

192.   The Consumer Financial Protection Bureau's RESPA Background and Summary states RESPA became effective on June 20, 1975.   The act requires lenders, mortgage brokers, or servicers of home loans to provide borrowers with pertinent and timely disclosures regarding the nature and costs of the real estate settlement process.   The act also protects borrowers against certain abusive practices, such as kickbacks, and places limitations upon the use of escrow accounts.   The National Affordable Housing Act of 1990 amended RESPA to require detailed disclosures concerning the transfer, sale, or assignment of mortgage servicing.   RESPA is applicable to all "federally related mortgage loans," which are defined as: Loans (other than temporary loans), including refinancing, secured by a first or subordinate lien on residential real property.

Mortgage broker transactions that are table funded are not secondary-market transactions and, therefore, are covered by RESPA.

193. Plaintiffs allege the disclosure statements they received, specifically as stated previously in Paragraphs 15-47 *supra* , and the lack of disclosure of their right to cancel (two copies each), violate this federal statute in fact and spirit. Specifically, APEX issued a fraudulent BORROWERS CERTIFICATION AND AUTHORIZATION CERTIFICATE, a fraudulent and false loan application, a fraudulent and false GFE, and a fraudulent and false TIL. Plaintiffs look to this Court to fine APEX for their fraudulent actions under this federal statute.

194. Plaintiffs allege that APEX, in violation of this statute introduced an unincorporated non-legal entity as the lender, American Brokers Conduit. APEX presented American Brokers Conduit as a legitimate lender to entice Plaintiffs to enter into a lending arrangement.  Nowhere does APEX state the true nature of the viability and legality of American Brokers Conduit in violation of this statute.  APEX does not disclose that American Brokers Conduit was not incorporated in any State in the United States and therefore did not have the authority to write a note and that the note that was written is fraudulent and void ab initio.

195. Plaintiffs allege that Fidelity Financial should have known that Fidelity Title Company was an unincorporated entity that did not have the authority to prepare a HUD-1A Settlement Statement and that the information on the

fraudulent HUD-1A Settlement Statement was completely and utterly inaccurate. This fraudulent disclosure statement couldn't even disclose *where the closing was to take place*.

196. Upon information and belief as stated Pargraphs 36-41 *Supra*, Plaintiffs allege this alleged disclosure statement is in complete violation of RESPA. Plaintiffs allege that the factors printed on the HUD-1A by an unincorporated entity that did not have the authority to prepare it are inconsistent with the fraudulent GFE and fraudulent TIL. Plaintiffs allege that this HUD-1A is completely fraudulent.

197. Plaintiffs allege, as previously stated in Paragraphs 42-47 *Supra,* that Fidelity Title Company, an entity not incorporated in the United States, prepared a fraudulent HUD-1A Schedule A. Upon information and belief Plaintiffs allege that the HUD-1A Schedule A is fraudulent, not only because an unincorporated entity prepared it, but also because the lender title insurance policy issued by Fidelity Financial and Fidelity Title Company was purposed to insure American Brokers Conduit, an unincorporated entity in the United States not authorized to lend money. This alleged disclosure HUD-1A, Schedule A is in complete violation of RESPA and all Fidelity Defendants should be fined accordingly.

198. **Tolling the RESPA Statute of Limitations**.

a. Plaintiffs RESPA claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain

vital information underlying their claims.  Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their original Complaint.

**b. Equitable Estoppel**

    i.    All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

    ii.    American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the mortgage.

    iii.    AHMSI demanded and collected on a void note and mortgage, knew and concealed American Brokers Conduit was not a legal entity and had no MERS MIN#, and knew and concealed the MERS MIN# on the alleged mortgage was for American Home Mortgage Holding, Inc. – not American Brokers Conduit.

    iv.    Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by writing

title insurance purposed to insure American Brokers Conduit a non-legal entity.

v.   Fidelity Financials' subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank. Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison and one of the illegal robo signers, **Korell Harp**, was in jail for identity theft on the day he "signed" the alleged assignment.

vi.   Deutsche Bank, as Trustee of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in the trust and perpetuated the fraud by trying to foreclose on what it did not own.

vii.   Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even moreplausible.

Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to. Their actions violate every aspect and intent of RESPA.

viii.   The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where

Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c. **Equitable Tolling**

i. Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate. Plaintiffs did not have any reason to know of the RESPA and RICO violations or injuries described herein and did not and could not have known of Defendants' violations.

ii. Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on all Defendants to be experienced lawful professionals and fulfill their duties in compliance with the law.

iii. Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they

discovered the truth underlying their claims shortly before filing their original Complaint.

## COUNT SIX
## VIOLATION OF 18 U.S.C. Section 1014
### (Defendants APEX, American Brokers Conduit, Fidelity Financial, Fidelity Title Company, Fidelity Title Group)

199. Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein

200. APEX has violated 18 U.S.C. Section 1014 – Loan and credit applications generally; "Whoever knowingly makes any false statement…. upon any application …. Shall be fined not more than $1,000,000 or imprisoned not more than 30 years or both. APEX's fictional GFE violates 24 C.F.R. ξ 3500.7.

201. APEX is liable to Plaintiffs for $1,000,000.

202. Plaintiffs allege Defendant American Brokers Conduit violated this act in pretending to be an incorporated business that lent money. As has been stated previously American Brokers Conduit was not incorporated in any State, was not a legal entity and wrote a void note. American Brokers Conduit is liable to the Plaintiffs for violating this act for $1,000,000.

203. Plaintiffs allege that Fidelity Financial through Fidelity Title Company, an entity not incorporated in any state in the United States, prepared and presented a fraudulent HUD-1A statement in violation of this act. The HUD-1A statement presented fraudulent information as outline in Paragraphs 35-40 *Supra*.

204.   Plaintiffs allege that Fidelity Financial through Fidelity Title Company created a fictional HUD-1A which   violates 24 C.F.R.  ξ 3500.8 Use of HUD-1A settlement statements; ξ 3500.14 Prohibition Against Kickbacks;  ξ 3500.15 Affiliated Business Arrangements;  ξ 3500.16 Title Companies;  ξ 3500.17 Escrow accounts; ξ3500.18 Validity of contracts and liens; ξ 3500.21 Mortgage servicing transfers; and 3500.21(e) Servicers must respond to Borrower's Inquiries – Qualified Written Requests a/k/a QWR's; 12 U.S.C. ξ 2603 Uniform settlement statement; and ξ 2608 Title Companies.

205.   Fidelity Financial is liable to the Plaintiffs for $1,000,000 for violation of this act.

206.   Plaintiffs allege that Fidelity Financial through their non-entity Fidelity Title Company prepared a fraudulent HUD-1A Schedule A statement in violation of this act; the HUD-1A Schedule A was purposed to insure an unincorporated unlicensed entity, American Brokers Conduit in their capacity as a lender. Fidelity Financial through their non-entity Fidelity Title Company presented fraudulent and false statements because American Brokers Conduit did not exist therefore, the insurance was fraudulent.   Fidelity Title Company, Fidelity Financial are both liable to Plaintiffs for $1,000,000 for violation of this act.

207.   Working in cahoots, Defendants APEX, American Brokers Conduit, Fidelity Financial, Fidelity Title Company, and Fidelity Title Group each are liable to Plaintiffs for treble the sums shown in each of the Loan Application, GFE, TIL,

HUD-1A, note, mortgage, and Riders, including investigation fees, attorney fees and costs of suit.

208.    Working in cahoots, Defendants APEX, American Brokers Conduit, Fidelity Financial, and Fidelity Title Company each are liable to Plaintiffs equal to treble the amount of any charge paid for settlement service in addition to a fine of not more than $10,000 or imprisonment for not more than 1 year or both, together with reasonable attorney's fees and costs.  Additionally, Defendants APEX, American Brokers Conduit, Fidelity Title Company, Fidelity Title Group, and Fidelity Financial each are liable to Plaintiffs pursuant to Penalties and Liabilities 24 C.F.R. ξ 3500.21(f) Failure to comply with any provision of section 3500.21 will result in actual damages and, when there is a pattern or practice of noncompliance, any additional damages in an amount not to exceed $1,000. And costs of the action and attorney fees.

209.    The fees and monies shown on the HUD-1A are illegal, predatory and points directly to Defendants APEX, American Brokers Conduit, Fidelity Financial, Fidelity Title Company and Fidelity Title Groups' intentional fraud in the concealment, inducement and execution, of this enterprise scheme - all based on void ab initio documents showing a lender that did not exist.

210.    **Tolling the 18 U.S.C. Section 1014 Statute of Limitations**.

        a.  Plaintiffs 18 U.S.C. Section 1014 claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently

concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims. Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint. Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their original Complaint.

b. **Equitable Estoppel**

i. All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

ii. American Brokers Conduit was not an incorporated entity licensed to lend money. They did not have the legal right to enter into a Promissory Note or write the securitization, the mortgage.

iii. Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by writing title insurance purposed to insure American Brokers Conduit a non-legal entity.

iv.   Fidelity Financials' subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank.  Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison and one of the illegal robo signers, **Korell Harp**, was in jail for identity theft on the day he "signed" the alleged assignment.

v.   Deutsche Bank as Trustee of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in Trust and perpetuated the fraud by trying to foreclose on what it did not own.

vi.   Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

vii.   Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.  Their actions violate every aspect and intent of 18 U.S.C. 1014.

viii.   The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where Plaintiffs filed suit promptly upon discovering the very many sordid,

confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c.  **Equitable Tolling**

i.  Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate.  Plaintiffs did not have any reason to know of the 18 U.S.C. 1014 violations or injuries described herein and did not and could not have known of Defendants' violations.

ii.  Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on all Defendants to be experienced and lawful professionals and fulfill their duties in compliance with the law.

iii.  Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they discovered the truth underlying their claims shortly before filing this complaint.

## COUNT SEVEN
### TILA VIOLATIONS 15 U.S.C. ξ 1601*et seq.*
**(Defendants APEX, American Brokers Conduit, AHMSI, Fidelity Financial, Fidelity Title Company And Fidelity Title Group)**

211.    Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein.

212.     Working together in an enterprise scheme to defraud Plaintiffs, Defendants APEX, American Brokers Conduit, AHMSI, Fidelity Financial, Fidelity Title Company and Fidelity Title Group have violated TILA 15 U.S.C. ξ 1632(a) Information clearly and conspicuously disclosed; "annual percentage rate" and "finance charge"; ξ 1638(a)(1) The identity of the creditor to make disclosure; ξ 1638(a)(2)(A)  The "amount financed" which is to be the amount stated on the note; ξ 1638(a)(2)( B) In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon written request, a written itemization of the amount financed; ξ 1638(a)(3) The "finance charge", not itemized, using that term; ξ 1638(a)(4) The finance charge expressed as an "annual percentage rate"; ξ 1638(a)(5) The sum of the amount financed and the finance charge, which shall be termed the "total of payments", and are liable to Plaintiffs.

213.    The Truth In Lending Act ("TILA") set forth at 15 U.S.C. Section 1601 *et.seq.* and its counterpart Regulation Z states that when a pretender lender such as American Brokers Conduit, an unincorporated entity, table funds for an unidentified third party the loan is a predatory loan per se and illegal.

214.   American Brokers Conduit, an unincorporated entity, as the pretender "lender", and APEX first as a "lender" and then as a lender/broker made fraudulent representations about the income, assets, and qualification of Plaintiffs, who the real lender was, and induced Plaintiffs to submit payment to American Brokers Conduit and AHMSI *inter alia*, on the alleged void note and alleged void mortgage, and attempted to do the same to their purported successors in interest, Homeward, Deutsche Bank, and Ocwen when there was no legal note or mortgage.  Not one "entity" involved in this alleged note and alleged mortgage had a legal interest.

215.   All Defendants knew or should have known that they were participating in a predatory fraud in issuing false and illegal documents, trying to collect, intimidate and seize Plaintiffs property they had no business pursuing because the purported original alleged loan was illegal and void ab initio.

216.   Plaintiffs allege their signatures (identity theft) were procured by intentional fraud in the concealment implemented by all Defendants acting in cahoots in a pattern of racketeering activities,  per 18 U.S.C. $\xi$ 1961(5)  more than two separate times, using fictitious names and addresses, bank fraud, mail fraud, and wire fraud *inter alia*.

217.   The alleged note and mortgage were void ab initio because the pretender "lender" American Brokers Conduit, stated to be a Corporation organized and existing under the laws of the State of New York and under the laws of the United States of America, was not in fact incorporated in 2006, or at any other

time.  This fact was intentionally concealed from Plaintiffs by all Defendants through predatory, illegal and racketeering activities as detailed in this Amended Complaint.  Not once was a true owner or Holder-In-Due-Course even mentioned in any document!

218.   Plaintiffs allege they have suffered multiple cognizable injuries from all Defendants' intentional TILA violations including, but not limited to origination, funding, calculating, and servicing violations.

219.   Plaintiffs allege they have suffered multiple cognizable injuries directly linked to all Defendants intentional fraud in the concealment, inducement, execution, and  civil RICO violations, and Defendants actions and inactions in regards to Plaintiffs TILA rescission including, but not limited to, loss of money not returned to Plaintiffs within 20 days of their rescission as required by 15 U.S.C. ξ 1635(b), loss of interest on this money withheld for over a year by Defendants, slander of Plaintiffs title, and incurring legal fees and costs.

220.   Plaintiffs further allege they have been injured by all Defendants additional TILA violations (separate from and not including the rescission violations), in that Plaintiffs were induced  by concealment of material facts and disclosures never given, to have lost monies paid to entities with no legal interest, loss of interest on this money for over ten years, slander of title, intentional infliction of emotional distress, particularly on Plaintiff Karen C. Harry a senior citizen who was even hospitalized due to this stress, and incurring investigation fees, attorney fees, and costs.

221.    Plaintiffs are entitled to both legal and equitable remedies and damages in an amount to be proven at trial and as deemed appropriate by the Court.

222.    **Tolling the TILA Statute of Limitations**.

    a.    Plaintiffs TILA claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims.  Defendants are estopped from relying upon a statute of limitations defense because they intentionally and purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their original Complaint.

    b.    **Equitable Estoppel**

        i.    All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

        ii.    American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the mortgage.

ix.   AHMSI demanded and collected on a void note and mortgage, knew and concealed American Brokers Conduit was not a legal entity and had no MERS MIN#, and knew and concealed the MERS MIN# on the alleged mortgage was for American Home Mortgage Holding, Inc. – not American Brokers Conduit.

iii.   Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by writing title insurance purposed to insure American Brokers Conduit a non-legal entity.

iv.   Fidelity Financial subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank.  Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and was in prison, and one of the illegal robo signers, **Korell Harp**, was in jail for identity theft on the day he "signed" the alleged assignment.

v.   Deutsche Bank as Trustee, of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in trust and perpetuated the fraud by trying to foreclose on what it did not own.

vi.   Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

vii.    Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.  Their actions violate every aspect and intent of TILA.

viii.    The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c.  **Equitable Tolling**

i.    Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate.  Plaintiffs did not have any reason to know of the TILA, RESPA, FDCPA, MGL's, and RICO violations or injuries described herein and did not and could not have known of Defendants' violations.

ii.    Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on Apex, American Brokers

Conduit, Fidelity Title Company, Fidelity Title Group, Fidelity Financial and Fidelity Financials' subsidiaries, MERS and Deutsche Bank to be experienced and lawful professionals and fulfill their duties in compliance with the law.

iii.   Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they discovered the truth underlying their claims shortly before filing their original Complaint.

**COUNT EIGHT**
**SLANDER OF TITLE**
**(As Against All Defendants)**

223.   The Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein.

224.   Plaintiffs allege all Defendants have intentionally acted in cahoots in an enterprise scheme to defraud and illegally steal Plaintiffs home, money, and identity.  One piece of this scheme is the slandering of Plaintiffs title, all the while betting that Plaintiffs would be so naive as to not notice, or if they did notice, would be so debilitated to the point of in-action in protecting their rights.

225.   Apex submitted a false BORROWER'S CERTIFICATION AND AUTHORIZATION CERTIFICATE, a fraudulent GFE, a fraudulent TIL and chose American Brokers Conduit, as the "lender" who was not incorporated to do business and could not lend the money.   American Brokers Conduit was brought into this fraudulent transaction by Apex.

226.   Plaintiffs allege all Defendants acting in cahoots in an enterprise scheme caused the void alleged mortgage dated December 21, 2006, to be illegally recorded by Defendant Fidelity Title Group on February 7, 2007 in the Barnstable Registry of Deeds, Book 21762, Page 49.   This action has slandered Plaintiff's title because the named alleged lender, American Brokers Conduit, did not exist. Furthermore, this alleged mortgage states a MERS MIN# that is for American Home Mortgage Holdings, Inc. – not American Brokers Conduit who could not, and did not, have a MERS MIN#.

227.   Plaintiffs allege this February 7, 2007 recordation by Defendant Fidelity Title Group constitutes a wild and spurious deed slandering Plaintiffs title.

228.   Plaintiffs allege all Defendants working in cahoots in an enterprise scheme resulted in Defendant Fidelity Title Group acting willingly, defiantly, and fraudulently by recording a void assignment of a fraudulent void mortgage, NOT THE NOTE, from MERS as nominee for American Brokers Conduit to Deutsche Bank as Trustee for American Home Mortgage Assets Trust 2007-2 Mortgage-Backed Pass-Through Certificates, Series 2007-2 on May 7, 2009 in Book 23678, Page 247 with the Barnstable Registry of Deeds, Barnstable,

Massachusetts. This recording was prepared and requested by Ron Meharg, of DOCX, 1111 Alderman Dr. Suite 350, Alpharetta, GA 30005, a 100% wholly owned subsidiary of Defendant Fidelity Financial.

229.  Plaintiffs allege and believe Ron Meharg to be a nationally known illegal robo-signer rendering the assignment void and slandering Plaintiffs title. DOCX was 100% owned by Defendant Fidelity Financial and was under investigation. Defendant Fidelity Financial was f/k/a Lender Processing Services, Inc. ("LPS"), and a/k/a AND d/b/a DOCX, LLC, which has now been shut down for RICO activities..

230.  Plaintiffs allege that one of the five illegal robo signers on the document allegedly transferring the alleged mortgage from MERS to Deutsche Bank was known illegal robo signer Korell Harp. However, on May 1, 2009 when this document was "signed", Korell Harp was in prison in Oklahoma for identity theft. He was arrested in October of 2008 and sentenced in January of 2009. He could not have possibly "signed" the document.

231.  The CEO of Fidelity Financials' 100% owned subsidiary, DOCX was Lorraine Brown. She was convicted for wire fraud and mail fraud for participating in a scheme to fabricate *more than 1 million mortgage-related documents*. She is currently serving a 5 year sentence in Federal Prison.

232.  LPS a/k/a DOCX robo signing fraud was what stopped banks from continuing their illegal foreclosure attempts on millions of homeowners in 2011. Fidelity Financial, as the 100% owner of DOCX has been heavily involved in not only

requiring the fraudulent execution of mortgage documents for these Plaintiffs but for more than *one million* other borrowers.

233.   Upon information and belief, Plaintiffs allege Fidelity Financials' 100% owned Lender Processing Services, Inc. ("LPS") d/b/a DOCX, and AHMSI have admitted in court filings that more than 30,000 fraudulent and void assignment of mortgage documents were executed and recorded across the country, and filed in courts across the country from April 2008 through November 2009.  In late November 2009 AHMSI and LPS knew that from March 2009 through October 2009, a substantial number of assignments of mortgage were executed by illegal robo signers a/k/a surrogate signers who were not designated as Special Officers but signed in the name of one or more of the designated Special Officers.  It should be noted that AHMSI and LPS d/b/a DOCX appointed DOCX CEO Lorraine Brown, who was convicted of mail and wire fraud, and Korell Harp, an alleged Vice President of MERS who was in prison serving time for identity theft when the alleged May 7, 2009 assignment of mortgage from MERS to Deutsche Bank was "signed", as "Special Officers" by AHMSI's board of Directors.  Furthermore, AHMSI 's own press release states AHMSI, based in Coppell, TX with an **inception date in April 2008** – which is 16 months *after* they allegedly were "servicing" the alleged note and mortgage.

234. Plaintiffs allege that this improperly executed alleged assignment from MERS to Deutsche Bank has no legality in law and is void. No legal rights or documents were ever assigned and Plaintiffs title was slandered.

235. A second void and fraudulent assignment of the alleged fraudulent void mortgage, NOT THE NOTE, dated July 7, 2011 was recorded on July 18, 2011 in the Barnstable Registry of Deeds by Ablitt on behalf of MERS and Deutsche Bank, AHMSI, and Fidelity Financial and slandered Plaintiffs title.

236. Plaintiffs allege all Defendants hiding behind MERS acted intentionally, defiantly, and fraudulently by twice assigning the fraudulent void mortgage, NOT THE NOTE, to Deutsche Bank, and knew or should have known that these assignments were fraudulent, because:

(a) American Brokers Conduit was a non-existent, unincorporated in any State in the United States, thus without a MERS MIN# and had nothing to assign to MERS, therefore MERS had nothing to assign;

(b) the address stated on the face of the first assignment document for "Mortgage Electronic Registration Systems, Inc. As Nominee for American Brokers Conduit, whose address is 6501 Irvine Center Drive, Irvine, CA 92618", was in truth the address for Option One Mortgage as shown in SEC filings, not American Brokers Conduit;

(c) the alleged assignment was not a legally executed document because it was signed by five illegal and admitted robo signers for AHMSI and

102

Fidelity Financials' DOCX, one of which was in prison for identity theft and therefore is void.

(d)   states on the face of the first fraudulent void assignment document "Original Mortgagee: Mortgage Electronic Registration System, Inc., as Nominee For American Brokers Conduit **Corporation**" which includes the addition of the word "Corporation" that was not on the purported note or purported mortgage;

(e)   states on the face of the first fraudulent void assignment document "Misc. Comments: Assignment Effective As Of: 4/27/09" but was not "witnessed" and signed until 05/01/2009.  Plaintiffs allege illegal back-dating;

(f)  states on the face of the document "Borrower" is Timothy C. Harry (typed in) yet "Karen C. Harry, Husband and Wife" has been hand written in on the alleged mortgage who knows when;

(g)  the first fraudulent void assignment has been prepared and signed by five nationally known illegal robo-signers who ALL worked for DOCX, Alpharaetta, GA. in 2009, not MERS or American Brokers Conduit.  DOCX is 100% owned by Defendant Fidelity Financial – neither of which have ever been registered with the Massachusetts Secretary of State to conduct business in the Commonwealth of Massachusetts. The illegal robo-signers are **Ron Meharg**, who prepared the assignment, **Tywanna Thomas** as Asst. Secretary for MERS, **Dawn Williams** as Witness for MERS, **Korell**

**Harp** as Vice President for MERS (who was in prison in Oklahoma when the document was signed), **Christina Huang** as Witness for MERS, and **Brittany Snow** as the Notary Public;

(h)  none of these people could possibly assign anything from a non-existent entity;

(i)   multiple distinctly different signatures of these same five people exist on documents improperly purporting to transfer interest in real property across the country;

(j)  shown on the face of the first fraudulent void assignment document is "MERS as Nominee for American Brokers Conduit whose address is 6501 Irvine Center Drive, Irvine, CA 92618" which is obviously in California yet it is purported to be signed and notarized in Georgia;

(k)   any assignment into the purported American Home Mortgage Asset 2007-02 Trust after the February 28, 2007 Closing Date would render the trust losing its IRS tax pass-thru status pursuant to the purported Trust's governing documents. This first fraudulent void assignment of Mortgage on May 1, 2009  was made twenty six months too late as the purported "Trust" cannot accept any loans after the February 28, 2007 Closing Date, nor can the "Trust" accept any loans alleged to be in default;

(l)  The federal government has now recognized that this Trust did not exist.

237.   On October 13, 2010, The State of Florida Office of the Attorney General Department of Legal Affairs opened an Economic Crimes Investigation into

three illegal robo Signers for DOCX LLC; specifically, the investigation names Korell Harp, Christina Huang and Tywanna Thomas, three of the illegal robo signers on the alleged first fraudulent void assignment of the alleged mortgage. These illegal robo-signers render the execution of the alleged mortgage fraudulent void invalid and void (again).

238.   Plaintiffs allege Defendant Fidelity Title Group, is a subsidiary of Defendant Fidelity Financial, Inc., f/k/a Lender Processing Services, Inc., and a/k/a AND d/b/a DOCX LLC., being the subject of the above noted investigation which resulted in LPS and DOCX being shut down for RICO activity.

239.   As a result of an investigation by the Massachusetts Attorney General's office, in December 2011 the Attorney General filed suit against multiple national banks and MERS alleging the use of false documents to expedite foreclosures, including the use of "robo-signers", foreclosing without legal authority or standing, undermining public records through the use of MERS, and deceptive origination and loan servicing.

240.   In December 2013 the Massachusetts Attorney General announced a $17.3 million settlement with Countrywide Securities Corporation.  This is in addition to a May 2009: Goldman Sachs payment of $60 million, June 2010: Morgan Stanley payment of $102 million, November 2011: Royal Bank of Scotland payment of $52 million, September 2013: Barclays Bank PLC: $36 million, November 2013: JP Morgan payment of $34 million, inter alia.  "We are pleased to return these critical public funds to the state pension system," AG

Coakley said.  "It is important to hold Wall Street accountable for its role in the subprime lending crisis.  Our office will continue its leading role in this area as we work to help homeowners and others harmed by investment banks."

241.  Plaintiffs allege this first fraudulent void assignment based on void documents has slandered Plaintiffs title by the recording of a spurious document in the Barnstable Registry of Deeds.

242.  Plaintiffs allege a void and illegal second fraudulent void Assignment of Mortgage, NOT THE NOTE, based on void ab initio documents, from MERS as nominee for American Brokers Conduit to Deutsche Bank as Trustee dated July 7, 2011, was illegally recorded in the Barnstable Registry of Deeds on July 18, 2011, Book 25568 Page 342  #36109 at 1:21pm.  Plaintiffs believe this was recorded at the request of Abliit on behalf of MERS, Deutsche Bank, and AHMSI.

243.  Plaintiffs allege this fraudulent void and recorded second Assignment of Mortgage, NOT THE NOTE, has again slandered Plaintiffs title because the named "lender" was non-existent.

244.  Plaintiffs allege this specific purported second fraudulent void assignment of Mortgage,  NOT THE NOTE, is void and fraudulent because:

(a)  American Brokers Conduit never existed and was not incorporated in any state in the United States and had nothing to assign to MERS;

(b)  states "… American Brokers Conduit **…,** which is organized and existing under the laws of United States of America". What law? Previously

American Brokers Conduit purported to exist under New York law – which was also a lie as they are non-existent in New York or anywhere;

(c)   states "This Confirmatory Assignment of Mortgage is intended to confirm the original Assignment recorded with said Deeds at Book 23678, Page 247, and to correct any defect in the execution and/or notarization therein.  In no other way does this Confirmatory Assignment change, alter, or affect the original Assignment."  Upon information and belief Plaintiffs allege this is fraudulent and void and also alleges all Defendants are attempting to cover their fraudulent tracks in their illegal slanderous first fraudulent void assignment for the fraudulent void mortgage, NOT THE NOTE, based on void documents after those first five people have been shown to be frauds and robo-signers for Defendant Fidelity Financials 100% owned subsidiary, DOCX.  Plaintiffs allege this is a corrupt attempt to "fix" the chain of title, which they cannot do because the slander of title (again) had already been done in the filing and recording of the first illegal, fraudulent and void assignment of the fraudulent and void mortgage NOT THE NOTE and no Defendant can avail themselves to reverse what was constructively noticed before, setting prima facie evidence of their fraud;

(d)   states on the face of the second fraudulent void assignment of the fraudulent void mortgage, NOT THE NOTE, Deutsche Bank's mailing address is "in care of American Home Mortgage Servicing, Inc., located at 1525 S. Belt Line Road, Coppell, TX 75019."  This is the exact mailing

address of Ocwen Loan Servicing, LLC, and different from the address stated in the first fraudulent void assignment of the fraudulent void mortgage, NOT THE NOTE.   All parties shown are Defendants;

(e)     shows on the face of the second fraudulent void assignment of the fraudulent void mortgage, NOT THE NOTE, it was purported to be notarized by a Florida notary Tammy M. Hansen, Commission # DD 925072.  Plaintiffs allege upon information and belief the Florida Division of Corporations – Commissions and Apostille have no record of a Tammy M. Hansen ever being a notary in Florida let alone a Commission # DD 925072.  Plaintiffs allege this illegitimate notary is fraudulent for another illegal act as this "notary" stamp had to be especially made to deceive;

(f)     shown on the face of the fraudulent void assignment, the purported printed and scripted handwriting of "Tammy Hansen" are distinctly different.  Plaintiffs allege upon information and belief multiple distinctly different "Tammy Hansen" signatures appear across the country purporting to notarize real property documents by this illegal robo-signer;

(g)     shown on the face of the second fraudulent void assignment of the fraudulent void mortgage, NOT THE NOTE, from MERS as Nominee for American Brokers Conduit the address is in Texas yet it is purported to be signed and notarized in Florida;

(h)  American Brokers Conduit has never had a MERS Member Id Number and the alleged mortgage shows a MERS MIN# for American Home Mortgage Holdings, Inc. – not American Brokers Conduit;

(i) by virtue of American Brokers Conduit being a non-existent entity no "closing" or consummation ever took place.

245.  Plaintiffs allege BOTH recorded fraudulent void "Assignment of Mortgage" documents which purported to assign interest in this void ab initio mortgage from MERS to Deutsche Bank are void because MERS, as nominee for American Brokers Conduit, the purported "Lender", had no authority to assign the ownership interest of said fraudulent void mortgage, NOT THE NOTE, because MERS was not the owner of the subject fraudulent void mortgage and was merely a nominee for American Brokers Conduit, alleged to exist under New York Corporation law, then alleged to exist under the laws of the United States, which was a non-existent "Corporation" anywhere.   Said purported fraudulent void assignment of the fraudulent void mortgage NOT THE NOTE was without authority, and therefore invalid and void.

246.  All Defendants working in concert disparaged Plaintiffs exclusive valid title by and through the preparing, posting, publishing, filing, mailing, faxing/e-mailing, and recording of the void documents described herein.   These void documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiffs legal title to the world at large.

247.   As a direct and proximate result of all Defendants conduct shown above there are multiple clouds on Plaintiffs title.

248.   As a further proximate result of all Defendants conduct, Plaintiffs have incurred expenses in order to clear their title.  Moreover, these expenses are continuing, and Plaintiffs will incur additional charges for such purpose until the clouds have been removed.

249.   As a further direct and proximate result of all Defendants conduct, Plaintiffs have suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in sleep deprivation and other injuries to their safety, health and well-being, and continues to suffer such injuries on an ongoing basis.

250.   Plaintiffs have suffered damages from the illegal recordings of a void mortgage and two void assignments, and multiple filed and recorded court actions from FIVE illegal foreclosure attempts, initiated by Defendant Ablitt on behalf of Defendants MERS and  Deutsche Bank that have slandered title to their property.   The conduct of all Defendants described herein was intentional, fraudulent, oppressive, and malicious.   Therefore, in addition to actual and statutory damages, Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish all Defendants for their conduct and deter such misconduct in the future as the Court sees fit.

251. **Tolling the Slander of Title Statute of Limitations**.

   a.  Plaintiffs Slander of Title claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims.  Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their Complaint.

   b.  **Equitable Estoppel**

       i.  All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

      ii.  American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the mortgage.

     iii.  AHMSI demanded and collected illegal payment on a void note and mortgage, executed the two fraudulent robo-signed assignments of mortgage, recorded both illegal and void

assignments, and concealed the fact American Brokers Conduit did not and could not have a MERS MIN#, and the MERS MIN# of the void mortgage is for American Home mortgage Holding, Inc. – not American Brokers Conduit.

iv. Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by issuing a fraudulent HUD-1A, note and mortgage, and writing title insurance purposed to insure American Brokers Conduit a non-legal entity.

v. Fidelity Financials' subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank. Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison, and one of the illegal robo signers, **Korell Harp**, was in prison for identity theft on the day he "signed" the alleged assignment.

vi. Deutsche Bank, as Trustee of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in trust and perpetuated the fraud by trying to foreclose on what it did not own.

vii.    Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

viii.   Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.  Their actions violate every aspect and intent of Slander of Title.

ix.     The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c.  **Equitable Tolling**

i.     Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part.  Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate.  Plaintiffs did not have any reason to know of the

Slander of Title violations or injuries described herein and did not

and could not have known of Defendants' violations.

ii.    Plaintiffs were relieved of any duty to investigate because they

reasonably and justifiably relied on all Defendants to be

experienced and lawful professionals and fulfill their duties in

compliance with the law.

iii.   Even assuming there had been some indication of wrongdoing

(which there was not) and Plaintiffs had attempted to investigate,

such investigation would have been futile because it would not

have uncovered the true, unlawful nature of Defendants scheme to

defraud Plaintiffs. Plaintiffs' claims were thus tolled until they

discovered the truth underlying their claims shortly before filing

their original Complaint.

**COUNT NINE**
**FRAUD IN THE CONCEALMENT**
**(ALL DEFENDANTS)**

252.   Plaintiffs re-allege and incorporate by reference the allegations contained in

the proceeding paragraphs of this Amended Complaint as if fully set forth

herein.

253.   Plaintiffs state that the elements of Fraud in the Concealment are comprised of

six factors, (1) the Defendant concealed or suppressed a material fact; (2) the

Defendant had knowledge of this material fact; (3) that this material fact was

not within reasonable diligent attention, observation, and judgment of the

Plaintiff; (4) that the Defendant suppressed or concealed this fact with the intention that the Plaintiff be misled as to the true condition of the situation; (5) that the Plaintiff was misled; and (6) that the Plaintiff suffered damage as a result.

254.  Plaintiffs allege that each and every Defendant in this case is guilty of Fraud in the Concealment.  As Plaintiffs have alleged at Paragraphs 15-146 *Supra.*, each Defendant played an important role with their own concealment of factors to perpetuate a fraudulent scheme upon the Plaintiffs to defraud the Plaintiffs of their money and their property.

*Concealed or Suppressed a Material Fact:*

a.  Plaintiffs allege that Defendant **APEX** started the fraudulent rouse with their fraudulent loan application, GFE, TIL and by their concealment and suppression of the fact that the lender that they brought to the table, American Brokers Conduit was not an incorporated entity, not licensed in any State in the United States and could not lend money or participate in the lending of money in any capacity.  The alleged note that American Brokers Conduit produced was not worth the paper that it was written on. Plaintiffs allege that APEX produced documents with false material statements and omissions during the application process.

b.  Plaintiffs allege that Defendant **American Brokers Conduit** concealed and suppressed the fact that they were not and could not be the entity that issued the alleged funds at the purported "closing", indeed American Brokers

Conduit was not a legal entity but a predatory table-funder and was acting on behalf of an undisclosed party.

c.   Plaintiffs allege that the misrepresentation and concealment of material information by **APEX** and **American Brokers Conduit** was continued and compounded by a HUD-1A Settlement Statement, alleged note, alleged mortgage, and alleged insurance policies issued by, for, and through **Fidelity Title Company** as Settlement Agent and insurance provider, **Fidelity Financial as P & I** insurance policy provider, and **Fidelity Title Group** who recorded the void mortgage.

d.   The alleged mortgage to American Brokers Conduit was prepared by Robin Smith at 955 Chesterbrook Blvd, Suite 110, Chesterbrook, PA 19087 which is the address of SunTrust Mortgage, Inc.  Paragraph (D) of the mortgage document under Definitions lists American Brokers Conduit as the Lender.  The document continues with the "Lender is a Corporation organized and existing under the laws of the State of New York and Lender's address is 538 Broadhollow RD, Melville, NY  11747 which in reality is the address of Defendant AHMSI and points directly to the concealed securitization.  Clearly, all Defendants knowingly and intentionally held themselves out to be legitimate entities when they were not.

e.   Plaintiffs allege that **MERS** was in the unique position to decide to accept the nominee of the void mortgage as recorded by Defendant Fidelity Title

Group or to decline.  By MERS actions, MERS continued to conceal and suppress the fact that the note was void as it was issued by a non-legal entity, states a MERS MIN# on the alleged mortgage for American Home Mortgage Holding, Inc. – not American Brokers Conduit.

f.  Plaintiffs allege MERS continued to conceal and suppress the facts by allegedly assigning the void mortgage, but not the note, to Deutsche Bank National Trust Company as Trustee for American Home Mortgage Assets Trust 2007-2 Mortgage-Backed Pass-Through Certificates, Series 2007-02 ("Deutsche Bank").  As previously stated, the execution of this assignment the first and second time was fraudulent and in effect the transfer was void.  MERS knew the individuals were not signing these assignments.

g.  Plaintiffs allege Defendant **Deutsche Bank** concealed and suppressed the fact that the Trust, that they were allegedly the Trustee of, did not own any assets, did not do anything and in fact couldn't accept the assignments because the fraudulent trust was *closed*.  Upon information and belief, Plaintiffs allege they have standing to challenge both assignments of mortgage as being void not voidable.

h.  Plaintiffs allege that Defendants **AHMSI**, **Homeward** and **Ocwen** all chose to try and elicit money from the Plaintiffs knowing that all of the paperwork for the alleged void note and void alleged mortgage and assignments were fraudulent and didn't exist.  These Defendants hid this fact from the Plaintiffs.

i. Plaintiffs allege that Defendant **Ablitt**, as a foreclosure law firm, knew the facts that had been concealed and suppressed from the Plaintiffs by the other Defendants and by their clients Deutsche Bank and Ocwen, and chose to engage in five attempts to foreclose on Plaintiffs property when they knew no Defendant had any ownership interest in the Plaintiffs property.

*Knowledge of Material Fact*

a. Plaintiffs allege all of the Defendants had knowledge of the concealment and suppression of the fact that American Brokers Conduit was an unincorporated entity that should have ever been part of a lending scheme. In addition to Defendant **APEX** presenting a fraudulent alleged loan application, a fraudulent GFE, TIL, Defendant APEX brought American Brokers Conduit to the table to be the lender so they could become the broker.  Defendant American Brokers Conduit knew they were not incorporated to do business anywhere in the United States.

b. Plaintiffs allege that Defendants **Fidelity Financial, Fidelity National Title Group and Fidelity National Title Company (a non-legal entity) and Fidelity Financials' subsidiaries** who wrote the title insurance for American Brokers Conduit, wrote the mortgage and filed it with the Barnstable Registry of Deeds each time concealed material facts.  Since they prepared the fraudulent HUD-1A and corresponding fraudulent Schedule A to the HUD-1A and wrote the title insurance they knew they

were choosing to ignore the fact that American Brokers Conduit was a non-legal entity.

c.  Plaintiffs allege defendant **MERS**, the Mortgage Electronic Registration Systems, Inc., was in the unique position to know who the players were in the mortgage realm.  MERS built its business on making the recording, buying and selling of mortgages easy for the industry.  Not only did MERS ignore the fact that American Brokers Conduit was not a legal entity that had no authority to write a note, they participated in the fraudulent execution of assignments of mortgages for transfer among banking and servicing institutions by participating in the robo-signing of these documents.

d.  Plaintiffs allege **Deutsche Bank** knew that the fraudulent void mortgage, NOT THE NOTE, they allegedly "received" was based on a fraudulent void note and they concealed this from Plaintiffs.  The mortgage states who the lender was.  Deutsche Bank, as a Trustee had a duty to follow the "Know Your Customer" protocol (Per the Patriot Act) in its fiduciary capacity.  If Deutsche Bank did its job and followed the Patriot Act, it never would have acted as Trustee on the underlying trust.

e.  Plaintiffs allege Defendants **AHMSI,** and the firms that became Ocwen, serviced the fraudulent void note and mortgage knowing and concealing that the underlying documents were fraudulent and carried no legal weight.

f.  Plaintiffs allege that Defendant **Ablitt**, being a foreclosure firm, had to know that when they chose to represent Deutsche Bank to foreclose on the Plaintiffs property, that their research into the facts in representing Deutsche Bank they knew that Deutsche Bank owned nothing because the underlying note and mortgage were fraudulent and therefore void – thus Ablitt concealed from Plaintiffs there was not a legal debt to any Defendant and Ablitt brought fraud upon the court.

*This Material Fact Was Not Within Reasonably Diligent Attention, Observation and Judgment of the Plaintiff*

a.  The Plaintiffs had no reason to question the validity of American Brokers Conduit.

b.  Plaintiffs allege that at the time that they thought they were entering into an agreement to borrow money, they had no reason to believe that American Brokers Conduit was not an incorporated entity that was not authorized to lend money and not authorized to write a note.

c.  Plaintiffs allege that nothing in the paperwork caused them to believe that American Brokers Conduit was not a legitimate lender.

d.  Plaintiffs allege that at the time they thought they were entering into a legitimate transaction, there was no notice, news articles or court cases informing them that American Brokers Conduit was not a legitimate business, that they had unknowingly been induced to participated in a predatory table funded loan per se that was allegedly already securitized,

and that they had been defrauded of their money and pledged their real estate as a security in a fraudulent transaction.

e.   Plaintiffs allege that they acted in good faith and for a time paid monthly payments on the fraudulent void note and fraudulent void mortgage until it no longer made economic sense to do so.

f.   Plaintiffs allege that they did not realize that they were the victims of the biggest fraudulent scam perpetrated on the American home owner since 1929.

*That the Defendants Suppressed or Concealed this Fact with the Intention that the Plaintiffs be Misled as to the True Condition of the Situation.*

a.   Plaintiffs allege that the actions of Defendants APEX, American Brokers Conduit, Fidelity Financial, Fidelity National Title Group and Fidelity National Title Company (a non-legal entity) and Fidelity National's subsidiaries, MERS, Deutsche Bank, AHMSI, Homeward Residential, Ocwen and Ablitt intended to keep the truth from the Plaintiffs regarding the fraudulent loan application, the fraudulent void note, the fraudulent void mortgage, the fraudulent assignments, GFE, TIF, HUD-1A and HUD-1A Schedule A, fraudulent servicing on a non-existent note and void mortgage and the fraudulent attempts at foreclosure to deprive the Plaintiffs of their money and property and for the Defendants to get another free house based on fraud.

b.   Plaintiffs allege that any one of the named Defendants could have made a choice to no longer perpetuate the fraud and disclose to Plaintiffs the true

121

nature of the transaction, that it was all a sham, that the note was void and non-existent and that the mortgage was void as well.

*That the Plaintiff was Reasonably So Misled*

a.  Plaintiffs allege that they were reasonably misled.  Indeed, as has been stated in the fact pattern, illegal robo-signer Korell Harp was in prison in Oklahoma for identity theft on May 1, 2009 when he allegedly "signed" the assignment document for MERS to transfer the fraudulent mortgage to Deutsche Bank.

b.  Plaintiffs allege that they were reasonably misled because the CEO of Fidelity Financial's 100% owned subsidiary, DOCX was Lorraine Brown.  She was convicted for wire fraud and mail fraud for participating in a scheme to fabricate more than 1 million mortgage-related documents.  She is currently serving a 5 year sentence in Federal Prison.

c.  Plaintiffs allege that they had no better information than the millions of other homeowners who were victims of a fraudulent scheme involving the mail, fictitious name or address, wire, and bank fraud to defraud homeowners of their money and their property.  Plaintiffs allege that one known company fabricating mortgage documents doesn't mean that it was the only one.  How were the Plaintiffs supposed to gain the sophistication and knowledge necessary to question the information they were given?

d.  Plaintiffs allege that on May 15, 2012, AHMSI <u>mailed</u> to Plaintiffs a letter, an alleged HAMP communication from AHMSI confirms and admits there

is no known "owner", HIDC, or investor, confirms APEX's loan application scrubbing, confirms predatory force placed undisclosed private mortgage insurance, confirms no underwriting standards were applied, confirms multiple predatory "Bait & Switch" tactics employed, confirms securitization failure, inter alia, IN WRITING.  Plaintiffs had not asked for a HAMP modification.

*Plaintiff Suffered Damage*

a. The Plaintiffs allege that they have suffered damages.  Plaintiffs endured five attempts by Defendants to fraudulently foreclose on their home including two notices of intent to sell at a foreclosure auction.

b. Plaintiffs allege but for their bringing a civil action against the Defendants and being granted a Lis Pendens that they would no longer have a home, they would have lost the $28,000 that they paid believing that the note was legitimate and suffered the expense of Attorney's fees for bringing this litigation, their credit has been ruined, and one Plaintiff hospitalized for stress due to threatened public sale of her home and humiliation.

c. Plaintiffs allege and believe that but for their original Complaint, Lis Pendens and Amended Complaint, they would be without a home *inter alia*.

255.  Plaintiffs allege that they are entitled to punitive damages for the wrongful actions of all defendants under the Count of Fraud in the Concealment. Plaintiffs' request that the court award damages as the Court sees fit.

256.   **Tolling the Fraud in the Concealment Statute of Limitations**.

a.   Plaintiffs Fraud in the Concealment claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims. Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their original Complaint.

b.   **Equitable Estoppel**

   i.   All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

   ii.   American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the securitization, the mortgage.

iii.   AHMSI demanded and collected money from Plaintiffs on a non-existing debt, slandered Plaintiffs title with illegal and void assignments, all the while knowing American Brokers Conduit was a non-legal entity with no MERS MIN# - and the alleged mortgage states a MERS MIN# for American Home Mortgage Holding, Inc.

iv.   Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by issuing a void and fraudulent HUD-1A, GFE, TIL, and writing title insurance purposed to insure American Brokers Conduit a non-legal entity, and recording a spurious mortgage.

v.   Fidelity Financial subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank. Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison, and one of the illegal robo signers, **Korell Harp**, was in prison for identity theft on the day he "signed" the alleged assignment.

vi.   Deutsche Bank, as Trustee, of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in trust

and perpetuated the fraud by trying to foreclose on what it did not own.

vii.    Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

viii.    Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.  Their actions violate every aspect and intent of Fraud in the Concealment.

ix.    The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing where Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c.  **Equitable Tolling**

i.    Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because

the documents presented to them by the Defendants appeared to be legitimate.  Plaintiffs did not have any reason to know of the RESPA, TILA, and RICO violations or injuries described herein and did not and could not have known of Defendants' violations.

ii.   Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on all Defendants to be experienced and lawful professionals and fulfill their duties in compliance with the law.

iii.   Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they discovered the truth underlying their claims shortly before filing their original Complaint.

**COUNT TEN**
**RESCISSION ENFORCEMENT AND QUIET TITLE**
**(As Against All Defendants)**

257.   Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein.

258.   On March 20, 2015, pursuant to 15 U.S.C. 1635 (a), and Regulation Z, Plaintiffs mailed their TILA rescission notice to ALL known Defendants at that time, immediately rendering the alleged note and mortgage void by operation

127

of law and confirmed by the United States Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc. et. al*., Slip Opinion No. 13-684, October 2014 Term,  15 U.S.C. Section ξ 1635(b), Reg. Z ξξ 226.15(d)(2), 226.23(d)(2) provides that the creditor must return to Plaintiffs all monies paid in connect to the alleged loan, return the original alleged note, and release the alleged mortgage in the appropriate land records.   No Defendant did so and are in violation.   This statute also provides any Defendant wishing to vacate Plaintiffs effective by operation of law rescission must bring legal action within 20 days after receipt of notice of the rescission to do so.   Not one Defendant brought a legal action against the Plaintiffs before the expiration of 20 days.   Therefore, pursuant to statute, every Defendant's alleged claim to any entitlement in the Plaintiffs property expired and all Defendants have waived any alleged right or defense.   All Defendants are in default to Plaintiffs.

259. Section ξ 1635(g) states in any action in which it is determined that a creditor has violated section ξ 1635(b), in addition to rescission the court may award relief under section ξ 1640 of this title for violations of this subchapter not relating to the right to rescind.   Plaintiffs contend all Defendants are in violation and liable to Plaintiffs.

260. Section ξ 1635(i)(1)(A) Rescission rights in foreclosure – a mortgage broker fee is not included in the finance charge – renders all Defendants in violation and liable to Plaintiffs.

261.   Section ξ 1635(i)(2) Tolerance for disclosures – for the purposes of exercising any rescission rights after the initiation of any . . . . non-judicial foreclosure process on the principal dwelling of the (alleged) obligor (allegedly) securing an (alleged) extension of credit, the disclosure of the finance charge and other disclosures affected by the finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 . . . .  Plaintiffs allege all Defendants are in violation and liable to Plaintiffs.

262.   Section ξ 1635(i)(4) Applicability – This subchapter shall apply to all consumer transactions in existence . . . . on or after September 30, 1995.  Plaintiffs aver all Defendants are in violation and liable to Plaintiffs.

263.   Section ξ 1640(a) Individual . . . . damages; amount of award; factors determining amount of award . . . . including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in the amount equal to the sum of – any actual damage sustained by such person as a result of the failure, ξ 1640(a)(1); in the case of an individual action twice the amount of any finance charge in connection with the transaction, ($556,864.97 from TIL x 2 = $1,113,729.90), ξ 1640(a)(2)(A)(i); in the case of an individual action relating to a  (alleged) credit transaction not under an open end credit plan that is (allegedly) secured by real property or a dwelling, not less than $400 or greater than $4000. Plaintiffs seek $4000, ξ 1640(a)(2)(A)(iv); in the case of

any successful action to enforce the foregoing liability . . . . the costs of the action, together with attorney's fees, ξ 1640(a)(3).   Plaintiffs allege all Defendants each are in violation and liable to Plaintiffs.

264.   Plaintiffs were never given the required two copies <u>each</u> of their right to cancel disclosures.

265.   Plaintiffs are entitled to an Administrative Declaration from the Court quieting title in Plaintiffs name only as the alleged note and mortgage are void by operation of law due to Plaintiffs rescission and also due to the alleged lender being non-existent.

266.   As promulgated in the Statement of Facts, all Defendants working in concert are still pursuing something that does not exist by means of harassment, bullying and intimidation.   Every Defendant knows the property cannot be foreclosed based on void documents.

267.   Plaintiffs allege no tender is due to any Defendant because no Defendant took the required actions of returning all monies, returning the alleged original note, or releasing the alleged mortgage in the land records within one year after rescission, AND the purported note and mortgage were void ab initio due to fraud and racketeering by all Defendants using a non-existent lender.

268.   Plaintiffs rescinded, Defendants received it, Defendants failed to take required actions within 20 days, Defendants failed to file a challenge within 20 days after receipt of rescission, Defendants have waived all rights to contest Plaintiffs

rescission on any grounds, Defendants' are in default to Plaintiffs.  Plaintiffs insist on their rescission enforcement.

269.   By dispute of debt letter dated March 27, 2015, dispute of debt letter dated February 16, 2016, Notice of Rescission dated March 20, 2015, and Plaintiffs QWR dated July 30, 2015, the Plaintiffs satisfied the required notice pursuant to G.L.c.93A, ξ 4 of Plaintiffs intention to bring action under the Consumer Protection Act.

270.   Plaintiffs demand return of the Original Note, Original Mortgage, release of mortgage filed in the Barnstable Registry of Deeds, return of all monies and fees paid in connection with the alleged "closing", interest on all monies and fees paid, and twice the amount of the finance charge, *inter alia*.  Plaintiffs are entitled to Quiet Title.

271.   **Tolling the TILA Statute of Limitations**.

a.   Plaintiffs TILA rescission claims are subject to both equitable estoppel, stemming from Defendants knowingly and fraudulently concealing facts alleged herein, and equitable tolling, stemming from Plaintiffs' inability to obtain vital information underlying their claims.  Defendants are estopped from relying upon a statute of limitations defense because they purposefully concealed the true factors, parties and actions as set forth in this Amended Complaint.  Separate and apart from Defendants' acts of concealment and deceit, any applicable statues of limitations are properly tolled because

Plaintiffs did not know and could not have learned the true facts underlying their claims until shortly before filing their original Complaint.

b. **Equitable Estoppel**

    i.    All Defendants are estopped by their own fraudulent concealment and participation in the fraudulent concealment from asserting the statute of limitations as an affirmative defense against Plaintiffs' claims.

    ii.    American Brokers Conduit was not an incorporated entity licensed to lend money.  They did not have the legal right to enter into a Promissory Note or write the mortgage.

    iii.    AHMSI and subsequent Homeward demanded and collected money from Plaintiffs on a non-existent debt, fraudulently executed two fraudulent and void assignments, all the while knowing American Brokers Conduit did not and could not have a MERS MIN# - and knowingly stated a MERS MIN# on the alleged void mortgage for American Home Mortgage Holding, Inc.

    iv.    Fidelity Financial, Fidelity Title Company (an unincorporated non-legal entity) and Fidelity Title Group continued the fraud by issuing a fraudulent and void HUD-1A, note and mortgage, and writing title insurance purposed to insure American Brokers Conduit a non-legal entity.

v.    Fidelity Financials' subsidiaries DOCX and LPS offered up six illegal robo signers to sign documents to assign the void mortgage from MERS to Deutsche Bank. Fidelity Financials' CEO of DOCX admitted fraudulently executing mortgage documents and is in prison, and one of the illegal robo signers, **Korell Harp**, was in prison for identity theft on the day he "signed" the alleged assignment.

x.    Deutsche Bank, as Trustee, of the alleged fraudulent trust, where the alleged assignment of Plaintiffs void mortgage is fraudulent, where Deutsche Bank as Trustee did not own any assets in trust and perpetuated the fraud by trying to foreclose on what it did not own.

vi.    Ocwen jumped on the fraudulent band wagon trying to foreclose on the Plaintiffs property and hired Ablitt to make it look even more plausible.

vii.    Defendants had actual or constructive knowledge that their conduct was deceptive, in that they consciously concealed the enterprise schemes set forth herein, including their affiliated nature and their attempts to own something they did not have a right to.  Their actions violate every aspect and intent of TILA.

viii.    The purposes of the statutes of limitations period are satisfied because Defendants cannot claim prejudice due to a late filing

where Plaintiffs filed suit promptly upon discovering the very many sordid, confusing and deceptive facts essential to their claims, described herein, which Defendants knowingly concealed.

c. **Equitable Tolling**

i. Plaintiffs have been unable to obtain vital information bearing on their claims absent any fault or lack of diligence on their part. Plaintiffs were not on inquiry notice of Defendants wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate. Plaintiffs did not have any reason to know of the TILA, RESPA, or RICO violations or injuries described herein and did not and could not have known of Defendants' violations.

ii. Plaintiffs were relieved of any duty to investigate because they reasonably and justifiably relied on all Defendants to be experienced and lawful professionals and fulfill their duties in compliance with the law.

iii. Even assuming there had been some indication of wrongdoing (which there was not) and Plaintiffs had attempted to investigate, such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants scheme to defraud Plaintiffs. Plaintiffs' claims were thus tolled until they

134

discovered the truth underlying their claims shortly before filing

their original Complaint.

**COUNT ELEVEN**
**STANDING – And LACK THEREOF**
**(Against All Defendants)**

272.    Plaintiffs re-allege and incorporate by reference the allegations contained in the

proceeding paragraphs of this Amended Complaint as if fully set forth herein.

273.    Not one of the Defendants has standing or authority to create a loan or issue

legal documents pertaining to a loan, threaten, attempt or actually collect money

from Plaintiffs, or threaten, attempt, or actually to foreclose on the Plaintiffs

property because not one piece of paper associated with the alleged note is

valid.  Each Defendant participated in the fabrication of a non-existent debt to

make it appear real in order to steal Plaintiffs money and home.

274.    Each and every action taken by the Defendants is based on a pre-planned course

of action that was fraudulent and void ab initio.  Every Defendant knew that the

history of the initial event – Falsified Loan Application a/k/a "loan scrubbing"

- is void therefore all of their illegal actions in an attempt to steal the Plaintiffs

money and property is based on fraud and they knew it.  No Defendant has

standing or authority to bring any type of legal proceeding against the Plaintiffs

or avail themselves to any defense of statutes of limitations.  All Defendants

have unclean hands.

275.    Plaintiffs allege even if a Defendant had standing to foreclose on their property

(and no Defendant does have standing) that Defendant would have to prove that

the Defendant owned both the note and the mortgage. This is an impossibility because as stated throughout this Amended Complaint, based on the facts, both the note is void making the mortgage void.

276. WHEREAS, Plaintiffs ask for additional damages as the Court deems fit.

## COUNT TWELVE
## VIOLATION OF THE PROFESSIONAL RULES OF CONDUCT
### (Defendant Ablitt)

277. Plaintiffs re-allege and incorporate by reference the allegations contained in the proceeding paragraphs of this Amended Complaint as if fully set forth herein.

278. The Professional Rules of Conduct require a lawyer, when taking on a matter, to not just take the client's word on the facts, but to make sure that the Attorney can prove the facts. The Attorney must also know the law. The Attorney may not assist a client in committing fraud or commit fraud on behalf of the client.

279. Plaintiffs alleges that Ablitt, knew that the alleged note allegedly executed by Timothy C. Harry was void ab initio and fraudulent.

280. Every Attorney had a professional responsibility to inquire into the facts that were being presented before taking action against the Plaintiffs.

281. Ablitt, as well as all the other Defendants is equally responsible for participating in fraudulent acts designed to deprive the Plaintiffs of their home and money. Ablitt willingly participated in acts that he/she knew were fraudulent in the representation of their client.

282. On information and belief, Plaintiffs alleged all Defendants acting in concert included the services of Ablitt for the specific purposes of perpetuating all

Defendants illegal claims of ownership of an alleged mortgage on 31 Marway, Mashpee, Massachusetts, owned and occupied by the Plaintiffs to force a foreclosure and sale of the Plaintiffs property when no Defendant had the legal right to do so.

283. Plaintiffs allege Ablitt became the agents of all Defendants to perpetuate an illegal claim to an alleged note and mortgage and real property based upon fraudulent, void, nonexistent documents. Ablitt willingly and aggressively took on this agency to foreclose on 31 Marway, Mashpee, Massachusetts at the behest of all Defendants.

284. Upon information and belief, Plaintiffs allege as Attorneys, Ablitt decided not to research the facts presented by all Defendants, decided not to follow case law as it was unfolding throughout every Circuit in the United States, decided to blindly follow whatever facts all Defendants presented thereby making each Attorney equally as culpable for all the mail, fictitious name, wire, bank, and FDCPA fraud and racketeering activities that each Attorney engaged in upon the behest of all Defendants working in collusion.

285. All Defendants knew or should have known that had the truth been disclosed, Plaintiffs would not have entered into the alleged loan.

286. Plaintiffs allege all Defendants have unclean hands.

**RELIEF REQUESTED**

WHEREFORE, the Plaintiffs' pray:

1. That the Court enter judgment for the Plaintiffs of *Quiet Title* to their home known as 31 Marway, Mashpee, Massachusetts.

2. That the Court enforce Plaintiffs already effective by operation of law TILA rescission voiding the alleged note and mortgage *ab initio*.

3. That the Court have the alleged note from American Brokers Conduit cancelled and returned to Plaintiffs due to RICO, fraud in the concealment, fraud on the court, fraud on the Barnstable Registry of Deeds, all rendering the underlying alleged note void again.

4. That the Court order the alleged mortgage, assignments, and Land Court filings be lifted and removed from the property known as 31 Marway, Mashpee, Massachusetts due to RICO, fraud in the concealment, fraud on the court, fraud on the Barnstable Registry of Deeds, all rendering the underlying alleged note void again.

5. That the Court order that the Plaintiffs be reimbursed for all monies paid under the alleged note that is now void amounting to $28,144.88 plus interest.

6. That the Court order the Defendants and their respective agents, employees, attorneys and all those acting in concert with them from assigning, attempting to sell, attempting to transfer, encumbering or disposing in any manner the property known as 31 Mar Way, Mashpee, Massachusetts.

7.  That the Court order all Defendants the following statutory fines:

|   |   |   |
|---|---|---|
| a. | Apex RICO Fine: | $2,250,000 |
| b. | Apex Section 1014 Fine | $1,000,000 |
| c. | Apex Sec. 1014 Fine – amounts on doc. | $8,898,126 |
| d. | Apex M.G.L. ch. 266 Sec. 35A | $  500,000 |
|   | Apex Total Damages | $12,648,126 |
|   |   |   |
| e. | Fidelity Financial  RICO Fine | $1,500,000 |
| f. | Fidelity Financial Section 1014 Fine | $1,000,000 |
| g. | Fidelity Financial  Sec.1014 Fine – amounts on doc | $8,898,126 |
| h. | Fidelity Financial M.G.L. ch 266 Sec. 35A | $  500,000 |
|   | Total Fidelity Financial Damages | $11,898,126 |
|   |   |   |
| i. | Fidelity Title Company RICO Fine | $1,500,000 |
| j. | Fidelity Title Company Section 1014 Fine | $1,000,000 |
| k. | Fidelity Title Company Sec. 1014 amount on doc | $8,898,126 |
| l. | Fidelity Title Company M.G.L. ch2 66 Sec. 35A | $  500,000 |
|   | Total Fidelity Title Company Damages | $11,989,126 |
|   |   |   |
| m. | Fidelity Title Group RICO Fine | $1,500,000 |
| n. | Fidelity Title Group Section 1014 Fine | $1,000,000 |
| o. | Fidelity Title Group Sec. 1014 – amount on doc. | $8,898,126 |
| p. | Fidelity Title Group M.G.L. ch 266 Sec. 35A | $  500,000 |
|   | Total Fidelity Title Group Damages | $11,898,126 |
|   |   |   |
| q. | American Brokers Conduit RICO FINE | $1,500,000 |
| r. | American Brokers Conduit Section 1014 Fine | $1,000,000 |
| s. | American Brokers Conduit Sec. 1014 – doc. | $8,898,126 |
| t. | American Brokers Conduit M.G.L. ch 266 Sec. 35A | $  500,000 |
|   | Total American Brokers Conduit | $11,898,126 |
|   |   |   |
| u. | AHMSI RICO Fine | $2,250,000 |
| v. | AHMSI M.G.L. Ch 266 Sec. 35A | $  500,000 |
|   | Total AHMSI | $2,750,000 |
|   |   |   |
| w. | MERS RICO Fine | $2,250,000 |
| x. | MERS M.G.L. 266 Sec. 35A | $  500,000 |
|   | Total MERS Damages | $2,750,000 |
|   |   |   |
| y. | Deutsche Bank RICO Fine | $13,500,000 |
| z. | Deutsche Bank M.G.L. 266 Sec. 35A | $    500,000 |
|   | Total Deutsche Bank Damages | $14,000,000 |

| | | |
|---|---|---|
| aa. | Ocwen RICO Fine | $87,000,000 |
| bb. | Ocwen M.G.L. 266 Sec. 35A | $   500,000 |
| | Total Ocwen Damages | $87,500,000 |
| | | |
| cc. | Ablitt RICO Fine | $9,750,000 |
| dd. | Ablitt M.G.L. 266 Sec. 35A | $   500,000 |
| | Total Ablitt Damages | $10,250,000 |

8. That the Court punish Defendants punitively from their repeated actions which they knew or should of known were illegal.  All Defendants have been part of multiple lawsuits with similar fact patterns, yet they continue to harass, coerce, intimidate and threaten homeowners.  The Plaintiffs seek $20 million in punitive damages to be spread among defendants in proportion to the above stated fines.

9. Total damages requested - $197,490,630.

10. That the Court award Plaintiffs Declaratory Judgment in claims One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Eleven, and Twelve.

11. That the Court require all Defendants to remove any and all negative reports against Plaintiffs logged with any and all credit agencies.

12. That the Court award additional damages as the Court deems fit and just.

Timothy C. Harry and
Karen C. Harry
By Their Attorney


*/s/ Tina L. Sherwood*
Tina L. Sherwood BBO#
662047
17 Main ST
Hopkinton, MA  01748
617-930-3533

Dated:  June 22, 2016

## <u>CERTIFICATE OF SERVICE</u>

I, Tina Sherwood, herby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 22, 2016.

*/s/ Tina L. Sherwood*_____
Tina L. Sherwood