UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY C. HARRY, and KAREN C. HARRY, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN BROKERS CONDUIT, APEX MORTGAGE SERVICES, LLC, FIDELITY NATIONAL FINANCIAL, INC. FIDELITY NATIONAL TITLE GROUP, INC., FIDELITY NATIONAL TITLE COMPANY, AMERICAN HOME MORTGAGE SERVICING, INC., HOMEWARD RESIDENTIAL, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2007-2 MORTGAE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-02, OCWEN LOAN SERVICING, LLC, ABLITT & CHARLTON, a/k/a ABLITT/SCOFIELD, a/k/a ABLITT SCOFIELD, P.C. a/k/a ABLITT LAW OFFICES P.C. n/k/a CONNOLLY, GEANEY, ABLITT & WILLARD, P.C. <br><br> Defendants. | CIVIL ACTION NO. 16-CV-10895-FDS |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT
PURSUANT TO RULE 12(b)(6), FED. R. CIV. P.**

Defendants Fidelity National Financial, Inc., Fidelity National Title Insurance Company and Fidelity National Title Group, Inc. (collectively, the "Fidelity Defendants"), by and through undersigned counsel, hereby submit this memorandum in support of their Motion for an Order dismissing Plaintiffs' Amended Complaint (the "Complaint") filed by Timothy Harry and Karen

Harry ("Plaintiffs"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] for failure to state a claim for which relief may be granted.  For the reasons set forth herein, Plaintiffs' Complaint should be dismissed with prejudice.

## **INTRODUCTION**

Plaintiffs' Complaint is far from a model of clarity due to its unnecessary length and the conclusory and conflicting nature of its allegations.  In general, the Complaint appears to be an attempt to forestall the foreclosure of Plaintiffs' property.  A careful reading of the Complaint reveals that Plaintiffs assert claims based upon two discrete and chronologically removed sets of events.  The first set of events pertains to the documentation and closing of their loan in the latter part of 2006.  The second set of events relates to the assignment of their loan on May 1, 2009, the subsequent confirmatory assignment on July 7, 2011 and the foreclosure that followed.

With respect to the closing of their loan, Plaintiffs allege that they believed that Apex Mortgage Services was to be their lender, but turned out to be a broker. Complaint, ¶¶ 15-16, 30. They assert that their December 13, 2006 loan application contained false information. Complaint, ¶ 18.  The good faith estimate and Truth in Lending disclosure prepared by Apex on November 29, 2006, and the December 21, 2006 HUD-1A are alleged to contain inconsistent information and the latter form identified American Brokers Conduit as the lender.  Complaint, ¶¶ 25, 30, 36.  American Brokers Conduit is alleged to be an "unincorporated non-existent entity"  Complaint, ¶ 37.  The closing took place on December 21, 2006[2] and the mortgage and note identified American Brokers Conduit as the lender.  Complaint, ¶¶ 53, 58.  MERS was

---

[1] Because the Fidelity Defendants also challenge Plaintiffs' standing, the Court's jurisdiction is implicated and this Motion is also brought pursuant to Rule 12(b)(1).

[2] Plaintiffs confusingly contend that the closing on the refinancing of their loan did not take place. Complaint, ¶ 49. Yet they concede that the mortgage and note were signed and that they began making monthly payments until they defaulted on October 1, 2008.  Complaint, ¶¶ 56, 58. Moreover, a satisfaction of mortgage was recorded by their prior lender, Countrywide.  *See* Complaint, ¶ 21, Declaration of Douglas Whitaker, ¶10 and Exhibit E.

listed on the mortgage as American Brokers Conduit's nominee.  Complaint, ¶ 61.  Plaintiffs generally allege that the mortgage and loan were "predatory" and assert a variety of claims on this basis.

The events relating to the assignments of mortgage and attempts at foreclosure are summarized as follows:  Plaintiffs made their last payment on the loan on October 1, 2008. Complaint, ¶ 56.  Plaintiffs appear to profess surprise that their interest rate and monthly payment amount rose, but concede that the mortgage loan included an adjustable rate rider. Complaint, ¶¶ 50, 56, 65.  On May 1, 2009, the mortgage was assigned by MERS as nominee for American Brokers Conduit to Deutsche Bank National Trust Company as trustee for American Home Mortgage Assets Trust 2007-02 Mortgage-Backed Pass-Through Certificates, Series 2007-02. Complaint, ¶ 71.  This assignment is alleged to have been "robo-signed" by DocX, LLC.  Complaint, ¶¶ 76-77.  A "confirmatory assignment" from the same assignor to the same assignee was executed in July, 2011.  Complaint, ¶ 81.  This second assignment is not attributed to DocX.  Foreclosure proceedings commenced, however it appears that a foreclosure sale has not taken place.  Plaintiffs allege that the assignments of mortgage are "void."  Their first theory for this conclusion is found at paragraph 75 of the Complaint.  Plaintiffs assert that American Brokers Conduit did not exist, so MERS could not be its nominee and had nothing to assign to the securitized trust.  In addition, Plaintiffs appear to claim that the assignments are void because they were "robo-signed" and because the mortgage was transferred to the trust after its closing date.  Complaint, ¶¶ 71, 75-76, 82, 85.

For the sake of clarity, none of the Fidelity Defendants are alleged to be (and are not) the originating broker, the lender or its assignee, the note holder, the loan servicer or the mortgagee. The sole allegations against the Fidelity Defendants are as follows:  The Harrys allege that

Fidelity National Financial, Inc. was f/k/a Lender Processing Services d/b/a DocX which is alleged to have signed one of the assignments of mortgage.  Complaint, ¶¶ 6, 76-78.  Fidelity National Title Company is alleged to have prepared a HUD-1A form in connection with their closing and acted as settlement agent.  Complaint, ¶ 36.  Fidelity National Title Group is alleged to have recorded the mortgage.  Complaint, ¶ 61.  One or another of the Fidelity entities is alleged to have been paid fees for a title search, tax research and title insurance.  Complaint, ¶ 36.

Plaintiffs' Complaint should be dismissed with prejudice.  All of Plaintiffs' closing-related claims are clearly time-barred.  Under well-established caselaw within this Circuit, Plaintiffs lack standing to base claims upon the assignment of mortgage.  For these reasons alone, each of Plaintiffs' causes of action are subject to dismissal.  However, each of Plaintiffs' claims is also fatally defective.  Plaintiffs' RICO claim should be dismissed for lack of RICO standing and their inability to allege a racketeering pattern, the existence of an enterprise, the existence of predicate acts, and their failure to plead with specificity. Counts 2 and 11 fail because Plaintiffs cannot allege that the Fidelity Defendants are owed any money or have any interest in the property, the mortgage or the note.  Plaintiffs possess no private right of action to prosecute a claim under the statutes enumerated in Count Three and fail to state a claim under G.L. c. 93A.  Their RESPA claim fails because the Fidelity Defendants are not loan servicers and were not sent a Qualified Written Request.  There is no private right of action under 18 U.S.C. §1014 to support Count Six.  Plaintiffs' TILA claim is improper because the Fidelity Defendants are not the lender or its assignee.  The slander of title claim fails because there is no allegation of harm to the property.  Nor is their fraud claim viable.  As such, each of Plaintiffs' claims should be dismissed with prejudice.

## **MEMORANDUM OF LAW**

A defendant may move the Court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Fraud, and RICO claims based upon fraud, such as those presented by the Harrys, must be pled with particularity.  Rule 9(b).  The Supreme Court has advised that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).  Plaintiffs' Complaint does not satisfy these pleading requirements.

The Supreme Court subsequently expanded on its holding in *Twombly* by explaining in *Ashcroft v. Iqbal* that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly* at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

*See* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Thus, under the *Iqbal-Twombly* standard, the Court must first identify and reject any legal conclusions unsupported by factual allegations, such as Plaintiffs' contentions that American Brokers Conduit is a non-legal entity and that the loan transaction documents are "fraudulent" or "void," and disregard them as not being entitled to a presumption of truth.  Second, the Court must determine whether,

assuming the veracity of the factual allegations, the complaint alleges facts sufficient to suggest that the plaintiff is plausibly entitled to relief.

## I.      The Plaintiffs' Claims Against The Fidelity Defendants are Barred by the Applicable Statutes of Limitations

The Court should dismiss this action based on the statute of limitations because the allegations in and exhibits to the Plaintiffs' Complaint lead to the inescapable conclusion that all claims alleged against the Fidelity Defendants are time-barred.  Thus, based upon the expiration of the relevant statutes of limitations for the Plaintiffs' claims, the Court should dismiss claims asserted against the Fidelity Defendants in this action.  *Epstein v. Seigel*, 396 Mass. 279, 485 N.E.2d 947, 948 (1985).

### a.      The Plaintiffs' 93A Claim has a Four Year Statute of Limitations and is Time-Barred

Plaintiffs' claims related to alleged violations of various criminal statutes in Count III of the Complaint ("Violations of G. L. Chapters 183C, 266 and 268 in violation of G. L. Chapter 93A § 2.") are barred by the expiration of the statute of limitations.  Claims brought pursuant to Chapter 93A have a four year statute of limitations.  G.L. c. 260, § 5A; *See Fine v. Huygens, DiMella, Shaffer & Associates*, 783 N.E.2d 842 (Mass.App.Ct. 2003). The claims against the Fidelity Defendants relate to the preparation of the HUD-1A statement, Exhibit A to the HUD-1A, the Assignment from MERS to Deutsche Bank attributed to DocX, LLC ("DocX") (Complaint ¶179(b)), alleged settlement agent fraud (Complaint ¶¶36-41), and alleged unspecified title insurance fraud[3] (Complaint ¶46).   The HUD-1A is alleged to have been prepared on December 21, 2006 (Complaint ¶36), Exhibit A to the HUD-1A is alleged to have a commitment date of November 20, 2006 (Complaint ¶42), the allegations related to settlement

---

[3]  Plaintiffs do not explain how a lender's title insurance policy, under which they are not even insured, could have harmed them.

agent and unspecified title insurance fraud would have taken place at closing on December 21, 2006 (Complaint ¶¶36-41, 43-46), and the Assignment from MERS to Deutsche Bank is dated May 1, 2009 (Complaint ¶76).[4]  Thus, any action based upon Chapter 93A must have been brought before December 21, 2010, November 20, 2010 and May 1, 2013, respectively. Plaintiffs' claims arising under Chapter 93A are therefore time barred, and must be dismissed.

In addition, G.L. c. 183C has a five-year statute of limitations.  Any claim by Plaintiffs under Chapter 183C is therefore time-barred because the events underlying the claim against the Fidelity Defendants are alleged to have occurred at the time of the loan origination and closing in 2006 - well beyond the five-year limitations period.  *See Okoye v. Bank of NY Mellon*, 2011 WL 3269686 * 4-5 and fn.5 (D. Mass, July 28, 2011).  And for the reasons set forth *infra*, there is no basis for tolling the statute of limitations here.

    b.    <u>Plaintiffs' RICO Claims are Barred by the Four Year Statute of Limitations</u>

Claims under civil RICO have a four-year statute of limitations.  *See Lares Group, II v. Tobin*, 221 F.3d 41 (1st Cir. 2000). A plaintiff seeking to recover under RICO must file suit within four years of the date when it knew or should have known of its injury. *See Rotella v. Wood,* 528 U.S. 549, 554 (2000); *Lares Group, II v. Tobin,* 221 F.3d 41, 43 (1st Cir.2000) (holding that the statute of limitations in a civil RICO action begins to run at "the time a plaintiff knew or should have known of his injury").  Plaintiffs have alleged that the Fidelity Defendants prepared a fraudulent HUD-1A and a purportedly fraudulent Schedule A.  Complaint ¶164 (d)(e).  The alleged harm arising from the preparation of these "fraudulent" documents is that the Plaintiffs "have been harmed by all Defendants aiding and abetting each other, without limitation, when they lost the valuable ability and opportunity to refinance their property with

---

[4] Although Plaintiffs do not allege the second Assignment, dated July 7, 2011, was prepared by any of the Fidelity Defendants or DocX, any claims related to this assignment would also be time barred.

real existing entities, a true identified creditor, on accurate terms disclosed, immediately injuring and depriving Plaintiffs of valuable financial benefits."   Complaint ¶ 162.   By their own allegations then, the "immediate" injury occurred because the lender was not a "true identified creditor."   *Id.*   The documents in question related to the Fidelity Defendants are dated December 21, 2006, November 20, 2006 and the Assignment from MERS to Deutsche Bank is dated May 1, 2009,  and any RICO claims based on these documents have long since been time-barred.   The original allegedly fraudulent loan application that, according to the Plaintiffs precipitated the entire scheme, is also nearly 10 years old. *Id.* at ¶¶ 15-19.   Accordingly, Plaintiffs' RICO claims are time-barred.

      c.     <u>RESPA Statute of Limitations Has Expired</u>

Plaintiffs alleged RESPA claims against the Fidelity Defendants are also time-barred. The statute of limitations on a RESPA claim is one-year from the alleged violation under 12 U.S.C. § 2605 and three-years under §§ 2607 and 2608. *See Salois v. Dime Sav. Bank of New York, FSB,* 128 F.3d 20, 24-25 and fn. 3 (1st Cir. 1997) (applying one-year statute of limitations to RESPA and TILA claims).   The Complaint alleges that the disclosure documents, HUD-1A and Exhibit A to the HUD-1A were fraudulent and void. (Complaint ¶¶ 193-197).   While there are allegations that Plaintiffs sent a Qualified Written Request ("QWR") to Ocwen Loan Servicing on July 30, 2015 (Complaint ¶132), the Fidelity Defendants are not alleged to have received the QWR.[5]   All of the alleged conduct attributed to the Fidelity Defendants occurred at

---

[5] While Plaintiffs allege that they sent a rescission letter to all Defendants on March 20, 2015 (Complaint ¶137), these allegations do not state that this was a QWR and thus do not implicate RESPA.

the time of the loan closing in December, 2006.  Any claim against the Fidelity Defendants under RESPA is therefore time-barred.[6]

  d.  <u>The Plaintiffs' Claims Related to TILA violations are Time Barred</u>

  Plaintiffs raise allegations related to their attempts to rescind their mortgage (Complaint ¶ 137) and damages pursuant to TILA violations.  Complaint ¶ 212-218.  In either circumstance, Plaintiffs claims are barred by the applicable statute of limitations.  Claims related to rescission under TILA must be brought within three years of the transaction at issue.  *See*, *Rodrigues v. Members Mortgage Co., Inc.*, 323 F. Supp. 2d 202, 209-10 (D. Mass. 2004)(citing 15 U.S.C. §1635(f)); *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S.Ct. 790 (2015).

  Here, Plaintiffs allege the mortgage was signed and the "closing" transaction took place on December 21, 2006. Complaint, eg. ¶6, 7, 38, 41, 58.  Plaintiffs further allege that they rescinded the Mortgage on March 20, 2015 (Complaint ¶ 137), well beyond the three year statute of limitations period from December 21, 2006.  Further, claims for statutory damages under TILA must be brought within one year of "date of the occurrence of the violation."  *Rodrigues*, 323 F. Supp. 2d at 210, (citing 15 U.S.C. §1640(e)).  Here, Plaintiffs allege that various disclosures were not made under TILA (Complaint ¶ 212) on various documents and thus the alleged date of the violation must necessarily be the date of the "closing," December 21, 2006. Plaintiffs' claims were brought well beyond one year from this date and thus are time barred.

  e.  <u>The Slander of Title Claims are Time-Barred</u>

  Plaintiffs' claim for slander of title, as a tort claim, has a three year statute of limitations. G.L. c. 260, §2A.  *See, CMI Associates, LLC v. Reg'l Fin. Co., LLC*, 775 F. Supp. 2d 281, 289

---

[6] Although Plaintiffs' claim for alleged violations of the Fair Debt Collection Practices Act is not directed at the Fidelity Defendants, it too is barred by the applicable one year statute of limitations.  *Brown v Bank of Am., Nat'l Ass'n*, 67- F. Supp. 3d 508-, (D. Mass. 2014).  Moreover, the claims for declaratory relief in Count 2 and lack of standing in Count 11, although directed at "all defendants" relate to collection of a debt and standing to lend money, collect money and foreclose, all of which do not apply to the Fidelity Defendants.

(D. Mass. 2011).   "[A] cause of action accrues on the happening of an event likely to put the plaintiff on notice." *Flynn v. Associated Press*, 401 Mass. 776, 780 (1988) (*quoting Hendrickson v. Sears*, 365 Mass. 83, 89–90 (1974)).

Under Massachusetts law, causes of action in tort generally accrue at the time the plaintiff is injured.  *Abdallah v. Bain Capital LLC*, 880 F.Supp.2d 190 (D. Mass. 2012) (*citing Joseph A. Fortin Const., Inc. v. Mass. Hous. Fin. Agency*, 392 Mass. 440, 466 N.E.2d 514 (1984))("[I]t is well-settled that causes of action in tort generally accrue under G.L. c. 260, § 2A, at the time the plaintiff is injured.").  Here, Plaintiffs were on notice that their title had allegedly been slandered, at the latest, when they were served with the Order of Notice by Publication related to the foreclosure on November 18, 2009.  Complaint ¶ 94.  More reasonable is that they were on notice when the loan transaction was completed on December 21, 2006, making the expiration of the statute of limitations on December 21, 2009.  If the slander of title claim is based on the alleged Assignments from MERS to Deutsche Bank, which took place on May 1, 2009, and July 7, 2011, respectively, the three years would run on May 1, 2012 and July 7, 2014.  Thus, any slander of title claim expired, at the latest, on July 7, 2014, well before the original complaint in this action was filed on March 18, 2016.

     f.     <u>Fraud Claims are Barred By Applicable Statute of Limitations</u>

First, the statute of limitations on a fraud claim under Massachusetts law is three years.  *See* G.L. c. 260, § 2A.  A fraud cause of action accrues at the time a plaintiff discovers or reasonably should have discovered the defendant's fraud.  *First Choice Armor & Equipment, Inc. v. Toyobo America, Inc.,* 839 F.Supp.2d 407, 413 (D. Mass. 2012).  Plaintiffs' claims against the Fidelity Defendants involve allegations regarding the loan origination and closing on the loan in 2006 and the recording of an assignment of mortgage in 2009.  Any claim for fraud related to

acts taking place in 2006 or 2009 is clearly time-barred.  Moreover, the alleged fraud would have been apparent to Plaintiffs on the face of the documents that form the basis of their claims and they should have been aware of the alleged fraud from the issuance of these documents.  (*See e.g.* Complaint ¶¶ 36, 42, 45, 50-52).

To the extent Plaintiffs attempt to allege that the Fidelity Defendants engaged in the concealment of any alleged fraud, thus tolling the statute of limitations, they have failed to allege any specific facts sufficient to toll the statute of limitations.  *See Abdallah v. Bain Capital*, 880 F.Supp.2d 190, 196 (D. Mass. 2012) (requiring the allegation of either active concealment of fraud claim from the knowledge of the person entitled to bring the claim or a fiduciary duty between the parties).  Thus, Plaintiffs' purported fraud claims are time-barred.   The failure of plaintiff to allege facts sufficient toll the statutes of limitations with regard to this and other claims is discussed more fully below.

g.      There is No Basis to Toll the Statute of Limitations

Plaintiffs argue that the statute of limitations should be equitably tolled for each of the causes of action asserted because they were unable to obtain information and the documents prepared as part of the closing appeared legitimate, absolving them of any duty to investigate.  Complaint, ¶¶ 166, 180, 198, 210, 222, 251, 256, 271.  This matter is not one in which the limitations period should be tolled.

Equitable tolling is available "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit."  *Bernier v. Upjohn Co.*, 144 F.3d 178, 180 (1st Cir. 1998).  The court will hold "[a] party attempting to invoke" equitable tolling "to a duty of reasonable inquiry."  *Protective Life Ins. Co. v. Sullivan*, 682 N.E.2d 624, 631 (Mass. 1997).  To invoke this doctrine, a plaintiff "must at the very least show that the information could not have

been found by a timely diligent inquiry...." *Abdallah v. Bain Capital LLC*, 880 F.Supp.2d at 196-97 (D. Mass. 2012) (*citing Bernier*, 144 F.3d at180).   As noted by the *Abdallah* court, equitable tolling "should be invoked only when circumstances beyond the plaintiff's control made it impossible for the Plaintiff to file within the statute of limitations." *Id.* at 197.   Again, the Plaintiffs have failed to make even the most cursory allegation that any circumstances prevented them from filing any claim based upon events which preceded 2009 and which were evident when the foreclosure action was filed in November of 2009.

The Plaintiffs were thus placed on actual notice of the foreclosure by late 2009 through service of the Order of Notice by Publication related to same (Complaint ¶ 94)(Order of Notice by Publication served on Plaintiffs on November 18, 2009).   Moreover, Plaintiffs were particularly on notice regarding the documents related to the closing, as their claims are based on the information contained on the face of those documents.   For example, Plaintiffs claim that the note contains a different interest rate than the loan application they signed, the Good Faith Estimate document provided to them and the Truth in Lending Disclosure. *See* Complaint ¶ 50. The Plaintiffs possessed sufficient facts to ascertain whether or not the Fidelity Defendants were involved in the conduct that allegedly injured the Plaintiffs.   Because the Plaintiffs were on notice of their injury well over four years before the instant action was filed, their claims are all time-barred.   Here, the Plaintiffs failed to allege any facts that justify invoking equitable tolling. To the contrary, their own allegations and exhibits make it amply clear that Plaintiffs were aware of their injury no later than November 18, 2009 and yet they delayed in filing this action until March 18, 2016.   Plaintiffs' claims are time-barred and dismissal on this basis is appropriate.

## II.        The Harrys Lack Standing To Base Claims Upon the Assignments

To the extent that the Harrys' claims are based upon the two assignments of mortgage, under the well-established law of this Circuit they lack standing to do so.  While not a model of clarity, the Complaint appears to allege that because American Brokers Conduit was not a corporation, it was not a valid holder of the note or mortgagee and had nothing to assign or convey.  The Harrys reason that because American Brokers Conduit "did not exist," MERS could not act as its nominee, so MERS had nothing to assign.  Complaint, ¶ 75.

As an initial matter, Massachusetts law does not require that a note holder or a mortgagee be a corporation.  Even were this not the case, Plaintiffs' conclusory allegation that American Brokers Conduit "did not exist" should be rejected as absurd and contrary to public record that can be judicially noticed.  A court may consider matters of public record in ruling on a Motion to Dismiss.  *See*, *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003)(matters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment.); *Wilson v. HSBC Mortg. Services, Inc.*, 744 F.3d 1, 7 (1st Cir. 2014).

Here, American Brokers Conduit was a division of American Home Mortgage Corporation, a New York corporation, which in turn was a subsidiary of American Home Mortgage Holding, Inc.  *See*, portion of bankruptcy schedules of American Home Mortgage Corp., listing American Brokers Conduit as a registered trademark and American Home Mortgage Corp.'s 2005 10-K filing listing American Brokers Conduit as a name the entity does business under.  Declaration of Douglas Whitaker, ¶¶5,6,8 and Exhibits A, B, D.[7]  Moreover,

---

[7] Moreover, a search on Westlaw yields 289 cases referring to "American Brokers Conduit," which further substantiates that the entity "existed" and was doing business.

American Home Mortgage was licensed as a mortgage lender and broker in Massachusetts starting in 2000.  Declaration of Douglas Whitaker, ¶7 and Exhibit C.  American Brokers Conduit did "exist."[8]  Clearly, the closing of the refinancing did take place and money was lent to the Harrys, notwithstanding their allegations that no closing took place due to American Bankers Conduit non-existence, because the prior lender, Countrywide (Complaint, ¶ 36) released its mortgage.  *See*, Declaration of Douglas Whitaker, Discharge of Countrywide mortgage, ¶10 and Exhibit E.

Plaintiff appears to also challenge the assignments based upon the contentions that they were "robo-signed"[9] and that the loan was purportedly transferred to the securitized trust after the trust's February 28, 2007 closing date.  Complaint, ¶¶ 75-78, 85, 236(k).  Courts within the First Circuit have routinely held that a borrower lacks standing to assert claims based upon "robo-signing" or noncompliance with the transfer provisions of a pooling and servicing agreement.[10]

The determination of whether an assignment of mortgage can be challenged by a borrower turns on the question of whether it is entirely void or merely voidable.  *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 291 (1st Cir. 2013).  For a borrower to base a claim upon an assignment, it must be void, not voidable.  *Id.*  An assignment is merely voidable if it can be ratified by its parties.  *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1, 10 (1st Cir. 2014).  Both *Culhane* and *Wilson* involved assignments that were "robo-signed," i.e. signed

---

[8] The Northern District of California was presented a nearly identical "American Bankers Conduit" did not exist theory and rejected it, both factually and because the company's corporate status could not invalidate the mortgage. *See Moran v. HSBC Bank USA, N.A.*, 2015 WL 139705 at *4, Case No. 14-CV-00633-LHK (U.S.D.C. N.D. Cal. January 9, 2015).

[9] Only the May 1, 2009 assignment is alleged to have been signed by employees of DocX.

[10] "[A] pooling and servicing agreement is an agreement creating a trust that defines the terms under which promissory notes and their related mortgages are placed into the trust, describes how the notes and mortgages and related loan documents are transferred by and between the parties to the trust, and sets forth the various responsibilities of the parties to the trust. The promissory notes, mortgages or deeds of trust, and related loan documents are the trust res." *In re Smoak*, 461 B.R. 510, 515–16 (Bankr.S.D.Ohio 2011).

by persons who were not employees of the assignor. *Culhane*, 708 F.3d at 294; *Wilson*, 744 F.3d at 10, 13. The First Circuit, in both cases, held that the assignments were not void and were valid. *Culhane*, 708 F.3d at 294; *Wilson*, 744 F.3d at 13-14. *See also Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 33-34 (1st Cir. 2014).[11] Mere infirmities in an assignment do not render the assignment void. *Halacy v. Wells Fargo Bank, N.A.*, 2013 WL 6152351 at *3, Civil Action No. 12-11447-TSH (D. Mass. Nov. 21, 2013).

Similarly, courts within this Circuit have held that a borrower lacks standing to assert non-compliance with the transfer provisions of a pooling and servicing agreement as a basis for avoiding a transfer of the loan or mortgage. *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013) (claim based upon the "failure to abide by the terms of a governing trust agreement, are barred for lack of standing."); *Koufos v. U.S. Bank, N.A.*, 939 F.Supp.2d 40, 48-49 (D. Mass. 2013). The trust at issue in this case, American Home Mortgage Assets Trust 2007-02 Mortgage-Backed Pass-Through Certificates, Series 2007-02, dated May 1, 2009 (Complaint, ¶ 71) is governed by New York law. *See,* Declaration of Douglas Whitaker, ¶11 and Exhibit F. The Second Circuit has flatly rejected the theory that the New York Estates, Powers and Trusts Law provides a borrower with standing to contest compliance with a PSA. *Rajamin v. Deutsche Bank National Trust Co.*, 757 F.3d 79 (2d Cir. (N.Y.) 2014). In *Rajamin*, the Second Circuit, citing numerous New York opinions, rejected arguments that a borrower possesses standing to challenge compliance with a PSA on either a breach of contract or a breach of trust theory. *Id.* at 86-89. Further, as a matter of law, the court determined that a transfer into a trust that allegedly violates the terms of the trust is merely voidable (by the beneficiaries) not void. *Rajamin* at 90.

---

[11] It is unclear whether Plaintiffs challenge MERS's role as nominee under the mortgage based upon the specific facts of this case or generally. The use of MERS as a nominee for the mortgagee has been found valid by the First Circuit as well. *Culhane*, 708 F.3d at 291; *Butler*, 748 F.3d at 32-33.

Plaintiffs lack standing to base any claims upon the assignments of mortgage in this case. Because their remaining claims are either based upon events that took place during or prior to the December 21, 2006 and are time-barred or otherwise fail to state a cause of action, the Amended Complaint should be dismissed with prejudice.

### III.     Plaintiffs' RICO Count Should Be Dismissed

In nearly every substantive respect, Plaintiffs' RICO claims fail.  As discussed below, the Plaintiffs lack RICO standing, have failed to allege a pattern, an enterprise or the predicate acts of mail or wire fraud with particularity.  Simply pasting the language of the statute into a Complaint and adding the words "Defendants" is not sufficient to state a claim under RICO. With particularity, the Complaint must allege each of the four elements: (1) conduct (2) of an enterprise, (3) through a pattern (4) of racketeering activity. *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 41 (1st Cir.1991); *see also* 18 U.S.C. § 1962(c). "It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial."  *N. Bridge Assocs., Inc. v. Boldt*,  274 F.3d 38, 43 (1st Cir. 2001) (*quoting Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991)). On review of a Rule 12 motion, the Court must "evaluate the complaint through the particularity prism of Fed. R. Civ. P. 9(b) . . . considering only those predicate acts specifically alleged in the complaint and [the Court does] not credit generic allegations of common law fraud that do not implicate the mails or wires, as these acts do not constitute racketeering activity under RICO." *Giuliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005) (internal citations and quotations omitted).

The Plaintiffs lack RICO standing.  "'[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well."' *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010);

*Kufner v. Suttell*, 2016 WL 3636977, at *5 (D. Mass. June 30, 2016).  Where the "link between the alleged RICO acts and the alleged injury is speculative, conclusory or indirect, so that the link is insufficient to establish proximate cause," dismissal is appropriate.  *Id.*  "At bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient."  *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258 (1992).  Proximate cause is a tool to "label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Id.  In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 35 (1st Cir. 2013) (same).  Here, the Plaintiffs freely admit they are in default under the note and mortgage as there have been no payments since 2008, but they are essentially alleging an affirmative defense to a foreclosure action that they should not have to pay because the note and mortgage are void ab initio.  Complaint at ¶ 88. As a result of their failure to pay, foreclosure proceedings were initiated. *See id.* ("when they stopped paying on the void ab initio note on October 1, 2008, they continued to receive notices…").  In other words, it was not the conduct of the Fidelity Defendants that caused any harm to the Plaintiffs – it was the Plaintiffs' refusal to pay based on their belief that the note and mortgage were somehow void. But even if the Plaintiffs were complying with their obligations under the applicable loan documents, there is no allegation in the Complaint that explains how the HUD-1A that the Fidelity Defendants allegedly "created" caused any of the damages alleged.

The Plaintiffs attempt to escape this fatal issue in their pleadings by alleging that the harm was the lost "opportunity to refinance their property with real existing entities, a true identified creditor, on accurate terms disclosed."  Complaint at ¶ 162.  But this "lost opportunity" cannot suffice to allege a RICO injury either.  A RICO damages claim cannot be based on pure speculation. *Circiello v. Alfano*, 612 F. Supp. 2d 111, 114 (D. Mass. 2009); *see also DeMauro v.*

*DeMauro,* 115 F.3d 94, 97 (1st Cir.1997) (a claimed civil RICO injury based on a "hypothetical inability to recover" in a *pending* lawsuit was too speculative to confer standing); *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 768 (2d Cir.1994) ("[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite"). Accordingly, the Plaintiffs lack RICO standing and their RICO claim should be dismissed.

There is no pattern of racketeering activity alleged. A plaintiff can show a pattern in one of two ways. To demonstrate a pattern based on "closed continuity," "a plaintiff would have to prove a '"closed period of repeated conduct"' that '"amounted to ... continued criminal activity… ."'" Alternatively, a pattern under the "open-ended" approach allows a plaintiff to satisfy the continuity requirement by showing "past conduct that by its nature projects into the future with a threat of repetition."' *Home Orthopedics Corp. v. Rodriguez,* 781 F.3d 521, 528 (1st Cir. 2015)(internal citations omitted); *Schultz v. Rhode Island Hosp. Trust Nat'l Bank,* 94 F.3d 721, 731 (1st Cir. 1996) ("single episode" even when involving multiple related acts does not constitute a "pattern"). Here, there is exactly one scheme alleged involving one homeowner. Where there is a single narrow scheme alleged to defraud a single victim, there is no closed continuity. *Id.* Nor has the Complaint adequately alleged open-ended continuity. Indeed, the Complaint does not even try; it solely alleges that the delivery of the alleged fraudulent documents were "part of a single plan to defraud Plaintiffs out of their money and property and injure them . . . ." Complaint ¶ 160.

There is no enterprise alleged. The Fidelity Defendants are accused of participating in "step 4" of the scheme, which is alleged to be the creation of a "fraudulent HUD-1A." Complaint at ¶ 164(d). There is no relationship alleged, with particularity, between the Fidelity

Defendants and the other Defendants, "such as overlapping leadership, structural or financial ties, or continuing coordination." *See Libertad v. Welch,* 53 F.3d 428, 443 (1st Cir. 1995) ("[S]imilarity of goals and methods does not suffice to show that an enterprise exists; what is necessary is evidence of systematic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination").  At most, the Complaint suggests that the Defendants created an enterprise for the purpose of foreclosing on the Plaintiffs' home – according to the Complaint, the "racketeering enterprise scheme" involves "residential mortgage fraud to defraud Plaintiffs." Complaint ¶164. *See Dysart v. BankTrust,* 516 F. App'x 861, 864 (11th Cir. 2013) ("Here, however, Dysart alleged only that the Defendants "operated together for the common purpose of ... divest[ing] Dysart of her home and equity therein."  Even accepting as true that the Defendants acted in concert to divest Dysart of her home, this was a discrete goal accomplished in 2007 and therefore not the work of "an ongoing organization ... function[ing] as a continuing unit").

The Complaint fails to allege predicate acts. Assuming the predicate acts alleged against the Fidelity Defendants stem from the transmission of the "fraudulent HUD-1A Statement to Plaintiffs via mail or wire communication," the Fidelity Defendants are forced to surmise that the predicate acts alleged against them are mail and wire fraud.  Complaint ¶ 164(d)-(e).  Under Rule 9 "the pleader is required 'to go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud.'" *N. Bridge Assocs., Inc. v. Boldt,* 274 F.3d 38, 43 (1st Cir.2001) (quoting *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 42 (lst Cir.1991)). That has not been done here. Despite the hundreds of allegations, the Plaintiffs do not know whether the "fraudulent" HUD-1A was transmitted via U.S. Mail or electronically (even though they purport to have been the recipient of it).  "[T]he elements of wire fraud are a

'scheme to defraud,' the accused's 'knowing and willful participation in the scheme with the intent to defraud,' and the use of interstate or foreign 'wire communications' to further that scheme." *United States v. DiRosa*, 761 F.3d 144, 150–51 (1st Cir. 2014) (internal citations omitted).   Similarly, the "key elements of the crime of mail fraud [] are: 1) the devising or attempting to devise a scheme or artifice to defraud; 2) the knowing and willing participation in the scheme with the specific intent to defraud; and 3) the use of the mails in furtherance of the scheme." *Sys. Mgmt., Inc. v. Loiselle*, 91 F. Supp. 2d 401, 413 (D. Mass. 2000)(internal citations omitted).   "The misrepresentations made with the intent to defraud must be material, which we have described as having 'a natural tendency to influence, or is capable of influencing, the decision' of the person or persons it is addressed to. *Méndez Internet Mgmt. Servs., Inc. v. Banco Santander de Puerto Rico*, 621 F.3d 10, 15 (1st Cir. 2010). There is no allegation here suggesting that the "fraudulent HUD-1A," which by the Complaint's own admission represents one of fourteen steps in the alleged scheme, had a "natural tendency to influence . . . the decision" of the Plaintiffs. The misrepresentations, even assuming they were made and were made intentionally, are that Fidelity Title Company was an "unincorporated non-legal entity that did not become incorporated until *February 2, 2010*" (emphasis in original) and that the "fraudulent HUD-1A states an address for closing with **no city or State listed**."   Complaint ¶ 164(d).   The use of bold and italics lettering notwithstanding, these alleged misrepresentations are immaterial.   And there is certainly no allegation in the Complaint suggesting that the Court should consider otherwise. Therefore, the Complaint has failed to allege, with particularity, the predicate acts of mail fraud and wire fraud.

Accordingly, Plaintiffs' RICO claims against the Fidelity Defendants must be dismissed.

**IV.      Plaintiffs' Declaratory Action (Count 2) Regarding G.L. c. 260 and Count 11 Fail**

Plaintiffs' Count 2 is essentially a declaratory action, alleging that G.L. c. 260, sections 1, 2 and 2A and the statutes of limitations under each section does not apply to Plaintiffs and have expired on "a non-existent void fraudulent debt and void fraudulent mortgage" because non-legal entities entered in-to the transaction with them and the documents were fraudulent. Complaint ¶¶168-176. Count 11 is titled "Standing- And Lack Thereof" and alleges that the Defendants did not have standing to "create loan, collect money…or foreclosure because not one piece of paper associated with the alleged note is valid." Complaint ¶ 273. Plaintiffs' also allege that Defendants do not have standing as they do not own the note and mortgage. Complaint ¶ 275. The allegations in both counts are misplaced against the Fidelity Defendants because there are no allegations that they were attempting to collect a debt from Plaintiffs. Moreover, there are no allegations in the Complaint that the Fidelity Defendants are owed a debt or that they participated in any foreclosure. Nor can these allegations be made. Thus, these counts have no application to the Fidelity Defendants and should be dismissed.

**V.      Count Three of the Complaint Should Be Dismissed**

In Count Three of the Complaint, Plaintiffs purport to assert a claim for "Violations of G. L. Chapters 183C, 266 and 268 in violation of G. L. Chapter 93A § 2." While Plaintiffs refer to several chapters of the Massachusetts General Laws in the heading for Count Three, the specific enumerated allegations set forth with regard to this count (See Complaint ¶¶ 177 – 180) refer only to a single provision:  G. L. c.  266, section 35A(b). Plaintiffs make no allegations that the Fidelity Defendants (or any other defendant) violated any other provisions of Massachusetts General Laws.

a.      There Is No Private Right of Action Under the Criminal Statutes

To the extent Plaintiffs are seeking relief directly under G.L. c. 266 § 35A or § 268, the count should be dismissed.  Both Chapter 266 § 35A and Chapter 268 are criminal statutes and do not provide for a private right of action.  *See e.g. Urbon v. JP Morgan Chase Bank N.A.*, 2013 WL 1144917 (D. Mass. March 18, 2013) (dismissing Chapter 266 § 35A claim because it is a criminal provision and "does not create an express or implied private right of action"); *Aliberti v. GMAC Mortgage, LLC*, 779 F.Supp.2d 242, 247 (D. Mass. 2011) (same).[12]

b.      Plaintiffs Fail to State a Claim Under G.L. Chapter 183C

Plaintiffs also refer to G. L. Chapter 183C in their heading for Count Three, although they make no reference to Chapter 183C or any of its sections in the enumerated paragraphs that follow, and thus it is not clear what provisions, if any, of Chapter 183C Plaintiffs contend the Fidelity Defendants breached.  In any event, there is no basis for a claim against the Fidelity Defendants under this provision of the General Laws.  Chapter 183C applies to certain predatory home loan practices employed by *lenders*.  To the extent that Plaintiffs may have alleged conduct that could be construed as specific to Chapter 183C, they have not stated a claim against the Fidelity Defendants under Chapter 183C because the Fidelity Defendants are not a "lender," and the statute applies to lenders only.  *See Okoye v. Bank of NY Mellon*, 2011 WL 3269686 * 11-12 (D. Mass, July 28, 2011) (dismissing Chapter 183C claim – either standing alone or predicated upon a Chapter 93A claim – because defendant was not a lender, did not purchase and was not assigned the loan in question).  There is no allegation (nor could there be) that the Fidelity

---

[12] It is unclear how Chapter 268, entitled "Crimes Against Public Justice," could possibly apply here, even if, for the sake of argument, it did provide for a private right of action.  G.L. Chapter 268 contains over 40 separate sections enumerating crimes ranging from perjury to witness tampering to engaging in lead paint inspection without a license. There is nothing in the statute to suggest it would or could apply to the allegations made here.

Defendants are lenders as defined under Chapter 183C, and therefore there is no basis for a claim against the Fidelity Defendants under this chapter.

      c.     <u>Plaintiffs Fail To State A Claim Under G.L. Chapter 93A</u>

Finally, reading the Complaint broadly and in the light most favorable to Plaintiffs, they might argue an intent to allege a violation of G.L. c. 183C (and the criminal provisions of G.L. c. 266 and 268) as part of a broader claim under G.L. c. 93A. But even if that were the Plaintiffs' intent – and it is not clear from the face of the Complaint that it is - the Chapter 93A claim should still be dismissed for a number of reasons.

Plaintiffs have failed to allege facts sufficient to state a claim under or violation of G.L. c. 183C, 266 or 268.   And even if Plaintiffs had adequately pled a violation of any of these provisions, any claim under Chapter 93A, which has a four-year statute of limitations, would nonetheless be time-barred because all of the alleged conduct happened well beyond the limitations period.   *See Maldonado v. AMS Servicing LLC*, 2012 WL 220249 *5 (D. Mass. January 24, 2012); *Okoye* at *5; *Abdallah*, 880 F.Supp.2d at 195.   The alleged actions of the Fidelity Defendants at the time of the loan origination and closing occurred in 2006, nearly ten years ago.   As with its other causes of action, Plaintiffs fail to allege facts that would support a tolling of the statute of limitations.[13]

For these reasons, Count Three of the Complaint should be dismissed with prejudice.

**VI.**      **<u>Plaintiffs' RESPA Claims Fail to State a Claim Against the Fidelity Defendants</u>**

Plaintiffs' RESPA claims appear to be based upon alleged flaws in the documents relating to their 2006 refinancing.   Complaint, ¶¶ 191-197.   Plaintiffs allege that they sent a

---

[13] To the extent Plaintiffs seek to allege that the later assignment of the mortgage in May 2009 (*See* Complaint §§ 76-79), allegedly involving DOCX, is the basis for a claim under G.L. c. 183C and/or G.L. c. 93A, the claim would still be time-barred under both the five-year and four-year statutes of limitation.

Qualified Written Request ("QWR") pursuant to RESPA to Defendant Ocwen on June 30, 2015 alleging that the loan was void.  Complaint, ¶ 132.  They also allege transmitting other letters disputing the debt as void and predatory on May 27, 2015 and February 16, 2016 to Ocwen, though these letters are not identified as QWRs.  Complaint, ¶¶ 116, 123-24.  There is no allegation that a QWR was ever sent to any of the Fidelity Defendants.  Plaintiffs do allege that a rescission letter under TILA was sent to Fidelity National Title Group on March 20, 2015. Plaintiffs also do not allege that any of the Fidelity Defendants acted as servicers of their loans.[14] Because Plaintiffs did not send a QWR to any of the Fidelity Defendants, because none of the Fidelity Defendants were servicers of the loan, and because even the QWR allegedly sent to Ocwen is improper, the RESPA claim should be dismissed with prejudice.

"RESPA requires the *servicer* of a federally-related mortgage loan to respond to certain borrower inquiries, which the statute terms 'qualified written requests.'" *O'Connor v. Nantucket bank*, 992 F.Supp.2d 24, 34 (D. Mass. 2014)(emphasis added) *citing* 12 U.S.C. §2605.  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. §2605(i)(3).  The Fidelity Defendants are not servicers of the loan and RESPA is inapplicable to them.  Nor is there any allegation that a QWR was sent to any of the Fidelity Defendants. To state a RESPA claim requires the transmission of a written QWR.  *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 412-13 (4th Cir. 2015).

---

[14]   The Harrys allege that Fidelity National Financial, Inc. was f/k/a Lender Processing Services d/b/a DocX which is alleged to have signed one of the assignments of mortgage.  Complaint, ¶¶ 6, 76-78.  Fidelity National Title Company is alleged to have prepared a HUD-1A form in connection with their closing and acted as settlement agent. Complaint, ¶ 36. Fidelity National Title Group is alleged to have recorded the mortgage.  Complaint, ¶ 61.

The letters sent by Plaintiffs to Ocwen also do not qualify as QWRs.  They allegedly challenged the validity of the loan obligation based upon the contention that the loan was predatory and void.  Challenges to a loans validity, terms or origination do not relate to servicing and are not the proper subject of a QWR.  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012); *Martini v. JPMorgan Chase Bank, N.A.*, 2015 WL 8479633 at *5 (6th Cir. Dec. 10, 2015)(non-servicing activities such as loan modifications are not properly the subject of a QWR) ; *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d at 413-15; *O'Connor v. Nantucket bank*, 992 F.Supp.2d.  at 36 (citing *Medrano*).  The rescission letter allegedly sent by Plaintiffs to Fidelity National Title Group is also not a QWR.  *Medrano v. Flagstar Bank, FSB*, 704 F.3d at 667 (rescission letter does not concern servicing); *Ramos-Gonzalez v. First Bank of Puerto Rico*, 2015 WL 6394409 at *3, Civil No. 14-1749(PAD) (D. P.R. Oct. 22, 2015); *Sipe v. Countrywide Bank*, 690 F.Supp.2d 1141, 1154 (E.D.Cal. 2010).

Because the Fidelity Defendants are not servicers, no QWR was sent to them and even the "QWR" sent to Ocwen was improper, Plaintiffs' RESPA claims should be dismissed.

## VII.     Count Six of Plaintiffs' Complaint Should Be Dismissed Because 18 U.S.C. 1014 Is a Criminal Statute And Provides No Private Right of Action

Count Six is entitled, "Violation of 18 U.S.C. Section 1014."  Similar to Count Three, Plaintiffs allege the violation of a criminal statute – this time a federal criminal statute - under which there is no private right of action.  Indeed, it is widely held, and a cursory search of relevant case law reveals, that a private plaintiff may not bring an action under 18 U.S.C. § 1014. *See e.g. Dacey v. Steiner*, 2008 WL 4681628 *2 (D. NH, October 20, 2008) (citing *Rodi v. Ventetuolo*, 941 F.2d 22, 29 n. 8 (1st Cir. 1991)); *Ihmoud v. Erwin*, 2006 WL 3210045 (S.D. Ind. 2006); *Park Nat'l Bank v. Michael Oil Co.*, 702 F. Supp. 703 (N.D. Ill. 1989).  Because 18

U.S.C. § 1014 is a criminal statute that provides no private right of action, Plaintiffs' Count Six should be dismissed.

### VIII.      Plaintiffs' TILA Claim Fails to State a Cause of Action

Plaintiffs assert two TILA-related claims. Count Seven, which seeks damages, and Count Ten, seeking "rescission enforcement."[15]   TILA imposes disclosure obligations in connection with a consumer credit transaction upon a creditor.  *Akar v. Federal National Mortgage Association*, 845 F.Supp.2d 381 (D. Mass. 2012).  A claim for damages or rescission can only be brought against a creditor or (under certain circumstances) its assignee. *King v. Long Beach Mortgage Co.*, 672 F.Supp.2d 238, 245 (D. Mass. 2009); *Rodrigues v. Members Mortgage Co., Inc.*, 323 F.Supp.2d 202, 206 (D. Mass. 2004).  A "creditor" is defined as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness…"  15 U.S.C. §1602(g).

In this case, the "creditor" is American Brokers Conduit, the named lender on the promissory note.  Complaint, ¶¶ 53, 58.  Its current assignee is Deutsche Bank National Trust Company as trustee for American Home Mortgage Assets Trust 2007-02 Mortgage-Backed Pass-Through Certificates, Series 2007-02, dated May 1, 2009.  Complaint, ¶¶ 71, 82.  The Fidelity Defendants are not the creditor or its assignee.  Plaintiffs' TILA claims are not properly asserted against the Fidelity Defendants and should be dismissed with prejudice.[16]

### IX.      Plaintiffs' Slander of Title Claim Fails

In Count Eight, Plaintiffs allege that all of the Defendants "acted in cahoots" to steal their "home, money, and identity," and that one piece of the scheme was "slandering Plaintiffs title."

---

[15]  As is discussed herein, Plaintiffs TILA claims are time-barred.  They also fail to state any viable claim against the Fidelity Defendants.

[16]  Count Ten also seeks to quiet title to the property.  Plaintiffs do not allege that the Fidelity Defendants possess any legal or equitable interest in the property.  This claim should be dismissed as well.

Complaint ¶ 224.  Plaintiffs further allege that the recording of their mortgage by Fidelity Title

Group slandered their title because American Brokers Conduit did not exist and that this was a

wild and spurious deed.  Complaint ¶¶ 226-227.  Moreover, Plaintiffs allege that the Assignment

from MERS to Deutsche Bank, dated May 1, 2009 and recorded on May 7, 2009, was signed by

an alleged robo-signer and slandered their title.  Complaint ¶¶ 228-229, 234, 241.  Plaintiffs also

allege a second Assignment, dated July 7, 2011, and recorded on July 18, 2011, slandered their

title, although not attributed to DocX.  Complaint ¶¶ 235, 243.  In any event, Plaintiffs lack

standing to base their claims on the Assignments as discussed above.  Count Eight should be

dismissed because Plaintiffs fail to plead all the necessary elements to establish a claim for

slander of title.

"A claim of slander of title is "a tort action for damage to real property resulting from

interference with title to real estate by falsehoods which, although not personally defamatory,

cause the plaintiff pecuniary loss through interference with ... dominion over his property."

*Lindsay v. Wells Fargo Bank, N.A.*, CIV.A. 12-11714-PBS, 2013 WL 5010977, at *17 (D. Mass.

2013)(*quoting CMI Associates, LLC v. Regional Financing Co., LLC,* 775 F.Supp.2d 281, 289

(D. Mass. 2011)(quoting *Salloom v. Lister,* 2004 WL 1836027 (Mass. Super., Aug.10, 2004))

(internal quotation marks omitted).

To state a slander of title claim based upon allegedly invalid mortgage instruments, a

plaintiff must allege "facts to establish how his interest in the property was harmed by [the]

allegedly fraudulent" documents.  *King v. Wells Fargo Home Mortg.*, CIV.A. 11-10781-GAO,

2013 WL 1196664, at *1 (D. Mass. 2013).  See also, *Rosa v. Mortgage Elec. Sys., Inc.*, 821 F.

Supp. 2d 423, 434 (D. Mass. 2011)("The party asserting a claim for slander of title must show…

that the publication of the statement resulted in a pecuniary loss to the claimant.")  Here, aside

from conclusory allegations throughout the Complaint that the Defendants slandered Plaintiffs' title (Complaint ¶¶ 226, 227, 229, 234, 235, 250) and that there "are multiple clouds on Plaintiffs title" that caused Plaintiffs to incur "expenses," (Complaint ¶¶247-48), there are no specific allegations as to how Plaintiffs have been damaged.

Plaintiffs do not plead the required elements for a slander of title claim. Furthermore, Plaintiffs make conclusory allegations that the Defendants collectively (and without distinguishing between any of them) took the alleged actions to slander their title. Plaintiff wholly fails to express the "malice" and "injury" that drove Defendants to perpetrate their alleged slander. *See Dumeus v. CitiMortgage, Inc.*, CIV.A. 13-12016-GAO, 2015 WL 404611, at *2 (D. Mass. 2015)(dismissing slander of title for failure to plead factual allegations in support of elements). Accordingly, Count Eight should be dismissed because it fails to state a claim for slander of title.

## X.        Plaintiffs' Fraud Claim Should Be Dismissed

Count Nine is entitled, "Fraud in the Concealment." To the extent Plaintiffs are pleading a separate claim for fraud, there are several reasons why this count should be dismissed. Aside from being time-barred, Plaintiffs have not satisfied the pleading requirements for a fraud claim as set forth in Federal Rule of Civil Procedure 9(b). Fed.R.Civ.P. 9(b) requires that any plaintiff alleging a claim of fraud, "state with particularity the circumstances constituting fraud." *See e.g. U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009); *U.S. ex rel. Ciaschini v. Ahold USA Inc.*, 282 F.R.D. 27, 33 (D. Mass. 2012). Under the Rule 9(b) standard, Plaintiffs may not generally allege that they were defrauded; instead they must specify, "the time, place and content of an alleged false representation." *Id.* Conclusory allegations will not satisfy Rule 9(b). *See U.S. ex rel. Gagne*, 565 F.3d at 45.

With respect to Count Nine, Plaintiffs offer no particulars as to how they were defrauded by the Fidelity Defendants.  Instead, they make only a few conclusory allegations, claiming, "misrepresentations and concealment of material information by Apex and American Brokers Conduit"  that were "continued and compounded" by the Fidelity Defendants through the HUD-1A Settlement Statement, note, mortgage and insurance policies issued by the Fidelity Defendants.  *See* Complaint ¶¶ 254(c), p. 116, (b) p. 118.  Nor do Plaintiffs offer any specifics as to how the Fidelity Defendants "continued and compounded" a fraud, or how any of the GFE or HUD-1A documents were "fraudulent."  With no specifics outlining any fraudulent conduct on the part of the Fidelity Defendants, Plaintiffs have fallen well short of the Fed.R.Civ.P. 9(b) pleading requirements.

At best, Plaintiffs have stated, in conclusory fashion, that the loan they agreed to was "void" because the original lender was "not a legal entity," that the Fidelity Defendants somehow "allowed" the void loan to be perpetuated by preparing a "fraudulent" HUD-1A, issuing title insurance and recording the "void" mortgage, and that the Fidelity Defendants "intended to keep the truth from Plaintiffs." *See* Complaint ¶¶ 254 - 256 and subparagraphs. Conclusory labels such as "void" and "fraudulent" amidst a theory of fraud without any explanation or facts that would support such conclusions or theories are not enough to plead a claim for fraud.  For all of these reasons, Plaintiffs' claim for fraud should be dismissed with prejudice.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated:  July 27, 2016

Defendant,
Fidelity National Financial, Inc., Fidelity
National Title Insurance Company and
Fidelity Nation Title Group, Inc.
By its Attorneys,

*/s/ Douglas L. Whitaker*

Douglas L. Whitaker, Esq. (BBO# 624949)
FIDELITY NATIONAL LAW GROUP
265 Franklin Street, Suite 1605
Boston, MA 02110
T: (617) 316-0143
Douglas. Whitaker@fnf.com

And

Fred O. Goldberg, Esq.
(*Pro Hac Vice Application Forthcoming*)
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Tel: (305) 755-9500
Fax: (305) 714-4340
fgoldberg@bergersingerman.com

## CERTIFICATE OF SERVICE

I, Douglas L. Whitaker, do hereby certify that a true copy of the above document was
filed through the Court's ECF system on this 27th day of July, 2015 and will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and by electronic mail.

*/s/Douglas L. Whitaker*

Douglas L. Whitaker