## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY C. HARRY and KAREN C. HARRY, <br><br> *Plaintiff*s, <br><br> v. <br><br> AMERICAN BROKERS CONDUIT, APEX MORTGAGE SERVICES, FIDELITY NATIONAL TITLE GROUP, AMERICAN HOME MORTGAGE SERVICING, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2007-2 MORTGAGE-BACKED PASS-CERTIFICATES, SERIES 2007-2, HOMEWARD RESIDENTIAL, MORTGAGE ELECTRONIC RECORDING SYSTEM, INC., OCWEN LOAN SERVICING and KORDE & ASSOCIATES, <br><br> *Defendants*. | CIVIL ACTION NO. 16-10895 <br><br> **LEAVE TO FILE GRANTED ON OCTOBER 3, 2016** |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS AMERICAN HOME MORTGAGE SERVICING, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2007-2 MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-2, HOMEWARD RESIDENTIAL, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND OCWEN LOAN SERVICING, LLC'S MOTION TO DISMISS**

## I.        INTRODUCTION

Plaintiffs open their response to Defendants' Motion to Dismiss with a revealing declaration: "This was not a legitimate lending transaction."  (Plaintiffs' Opposition ("Opp."), p. 2.)  The statement is significant because—despite what they would like this Court to believe—it shows that even the Plaintiffs concede that the gravamen of their Amended Complaint is, in fact, an origination claim.  Plaintiffs' 63-page Opposition is full of red herrings aimed at distracting

the Court from the central issue of this case: whether the Plaintiffs' Loan was consummated through predatory loan practices.  Plaintiffs apparently hope that filing a 141-page Amended Complaint and 63-page Opposition will convince the Court that the Plaintiffs have pled sufficient facts for at least one of their claims against the Defendants to survive the Rule 12(b)(6) standard.  Once the bald assertions and conclusions of law are stripped from Plaintiffs' pleadings, however, all that remains is a time-barred predatory lending claim for which none of the Defendants can be liable as they were neither the original lender nor the broker.  For the reasons discussed below, Defendants American Home Mortgage Servicing, Inc. ("AHMSI"), Deutsche Bank as Trustee for American Home Mortgage Assets Trust 2007-2 ("Deutsche Bank as Trustee"), Homeward Residential, Inc. ("Homeward"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, the "Defendants") request dismissal of Plaintiffs' Amended Complaint in its entirety.

## II.    ARGUMENT

### A.    ENTRY OF DEFAULT AGAINST AMERICAN BROKERS AND APEX HAVE NO BINDING EFFECT ON THE ANSWERING DEFENDANTS

Plaintiffs argue that default against American Brokers and Apex requires the Court to accept the truth of all allegations of their Amended Complaint against all Defendants, including AHMSI, MERS, Ocwen, Homeward and Deutsche Bank as Trustee.  Plaintiffs hope, as a litigation strategy, that entry of default against two defendants establishes the truth of a series of conclusory assertions and speculative allegations on all defendants.   (Opp., pp. 12-15.) Plaintiffs' mistaken assumption results from an incorrect interpretation of the law governing defaults and default judgments.

Courts consistently hold—and common sense dictates—that a default entered against one defendant has no binding effect upon a codefendant as an admission of liability.  *See Perrin v.*

2

*The Collaborative Engineers, Inc.*, 2011 WL 12556619, *3 (Mass. Super. 2009) (reasoning that

to charge the ". . . other defendants with TCE's default would work an injustice. . ."); *see also*

*Chromacolour Labs, Inc. v. Snider Bros. Property Management*, Inc., 66 Md. App. 320, 330

(1986) (holding that the default of one defendant, although an admission by it of the allegations

in the complaint, does not operate as an admission of such allegations as against a contesting

codefendant even though the defendants may be inextricably joined).   Indeed, an answering

defendant's defenses remain to be tested by a trial and cannot be disposed of by the non-

answering defendant's default.  *Clugston v. Moore,* 134 Ariz. 205, 207 (App. Ct. 1982), *citing,*

*Frow v. De La Vega,* 82 U.S. 552, 554 (1872) (concluding that the admissions implied from the

default of one defendant are not binding upon another defendant who has joined issue on those

allegations); *Dade County v. Lambert,* 334 So. 2d 844, 847 (Fla. App. 1976) (default of one

defendant could not operate as an admission of the allegations against a contesting codefendant).

Here, the entry of default Plaintiffs have obtained against American Brokers and Apex

cannot establish liability in any respect to the answering Defendants and, as a result, has no

binding effect upon the adjudication of the answering Defendants' rights in this action.[1]

Moreover, while this Court is permitted to disregard conclusory and speculative allegations in

---

[1] Moreover, to the extent that the Plaintiffs have moved for entry of default judgment against American Brokers and Apex, this Court should refrain from granting default judgment until the trial of the action on the merits against the remaining defendants.  Fed. R. Civ. P. 54(b) provides for the entry of judgment against a single defendant in a multiple defendant action "only if the court expressly determines that there is no just reason for delay."  As a general rule, where one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.  *Frow,* 82 U.S. at 554; *Exquisite Form. Ind., Inc. v. Exquisite Fabrics of London*, 378 F. Supp. 403, 416 (S.D.N.Y. 1974) ("When a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants").  This rule applies in situations in which several defendants have closely related defenses.  Here, the answering Defendants have similar defenses to those of American Brokers and Apex.  All of the Defendants will argue, *inter alia*, that American Brokers was an existing legal entity at the time of the loan origination and that all of the Plaintiffs' claims are barred by the applicable statutes of limitations.  Thus, a judgment against American Brokers or Apex at this stage of the proceedings declaring that the Mortgage and Note are null and void would be inconsistent with any subsequent judgment in favor of answering Defendants.

reviewing Defendants' Motion to Dismiss, the Federal Rules of Civil Procedure require the Court and Defendants to accept as true all well-pleaded fact allegations.  Even accepting the well-pleaded fact allegations as true, Plaintiffs have failed to state a claim for which relief can be granted.  For all intents and purposes, Plaintiffs' argument in relation to the entry of default obtained against American Brokers and Apex is irrelevant and non-responsive.

**B.**     **PLAINTIFFS' CONTENTION THAT THEY DID NOT DISCOVER THE ALLEGED FRAUD UNTIL JULY 2015 IS DIRECTLY CONTRADICTED BY PLAINTIFFS' OWN ADMISSIONS AND UNDERSCORES THE SPECIOUS NATURE OF THEIR CLAIMS**

For the first time in opposition to Defendants' Motion to Dismiss, Plaintiffs argue that they did not discover the alleged "fraud" until July 2015, when Ocwen sent them a letter purportedly advising that their signatures did not match the ones on the loan documents. Plaintiffs now claim they were victims of fraud because their signatures had been forged on loan documents.  (Opp., pp. 19-20.)  Plaintiffs' claim, however, does not match the allegations of their Amended Complaint.  Quite the opposite, Plaintiffs have always maintained that they were duped into entering into a loan transaction with a non-existent entity.  The purported fraud of the Amended Complaint arose from the Defendants' alleged scheme to conceal the "true" lender's identity—not the forgery of their signatures on the loan documents.  If Plaintiffs were victims of forgery, as they now claim, then why did they remit monthly payments on a loan for two years that they allegedly did not enter into knowingly?

The only logical explantation for this "new" theory of fraud is a last-ditched effort by the Plaintiffs to save their time-barred claims from dismissal.  Plaintiffs cannot avail themselves of the protection of equitable tolling because their contention that the fraud went undiscovered until July 2015 is directly contradicted by the allegations, admissions and claims of their Amended Verified Complaint.  In their Opposition, Plaintiffs claim that on or about July 20, 2015, Ocwen

4

responded to Plaintiffs' authorization letter by stating that "a review of their loan documents indicates that the signature is not matching with the authorization letter provided." (Opp., pp. 19-20.) Plaintiffs claim that "this is when [they] first knew that they were victims of fraudulent lending documents THAT HAD BEEN FORGED." (*See id.*) However, in their Verified Amended Complaint, Plaintiffs swore under pains of penalty and perjury that they "*stopped paying on the void note in 2008.*" (Amended Complaint, ¶¶ 45, 86.) (emphasis added). Plaintiffs also admit that they sent a letter to Ocwen on March 20, 2015—4 months before they allegedly first knew of the fraud—demanding that the Loan be rescinded because it was void. (*See id.* at ¶¶ 265-71.) Plaintiffs also sent a letter in May, 2015—2 months before they allegedly first knew of the fraud—disputing the debt based, in part, on the argument that the Loan was void. (*See id.*) Comparing Plaintiffs' Opposition to the Amended Complaint shows a change in Plaintiffs' allegations and claim of fraud that can only be a thinly-veiled attempt to circumvent the statutes of limitation that bar these causes of action. This case is, and always has been, about the origination of the Loan and information made available to the Plaintiffs at the time of closing.[2]

## C. AMERICAN BROKERS WAS A SUBSIDIARY A FOREIGN CORPORATION DULY-LICENSED TO CONDUCT BUSINESS IN THE COMMONWEALTH OF MASSACHUSETTS

Plaintiffs continue to rely on the faulty premise that their Loan is void because American Brokers was an "unincorporated entity" that did not have authority to engage in business in the Commonwealth of Massachusetts. (Opp., pp. 27-29.) Plaintiffs cite to no case law or statute to support the proposition that American Brokers was required to be incorporated under the laws of

---

[2] Further, even if assuming for the sake of argument that the Plaintiffs pled sufficient facts to plausibly suggest their signatures were forged, which they have not, equitable tolling still does not apply in this case. As discussed in detail in Defendants' Motion to Dismiss, Plaintiffs have failed to toll the statutes of limitations because they have not alleged any facts to support the bald assertion that the Defendants knew or should have known that the Loan and related documents were allegedly fraudulent or void. To the contrary, the Plaintiffs' factual allegations and documents incorporated in the Amended Complaint demonstrate a lawful and enforceable loan transaction. Because tolling is not applicable to the facts of this case, the statutes of limitations discussed above bar Plaintiffs' claims.

34649366v1 0985988

Massachusetts to engage in loan transactions.   As demonstrated in Defendants' Motion to Dismiss, American Brokers Conduit was a subsidiary of American Home Mortgage Corp., which was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006.   In addition to public records maintained with the Division of Banks for the Commonwealth of Massachusetts, public records filed with the Securities Exchange Commission (SEC) also confirm that American Brokers was a subsidiary of American Home Mortgage Corp. as of the Loan's origination.[3]

To the extent that Plaintiffs argue that the loan transaction was void because American Brokers was not registered as a fictitious name with the local business database, this argument is without merit.   Even taken as true, the fact there is no certificate filed with the local business database registering American Brokers as a fictitious name does not invalidate the entire loan transaction.   Indeed, as discussed above, American Home Mortgage Corp. was a registered foreign corporation duly-licensed under Massachusetts law, and American Brokers was one of many subsidiaries authorized to conduct business under American Home Mortgage Corp.'s umbrella.   Thus, since Plaintiffs' claims are based on the faulty allegation that American Brokers did not exist at the time of the loan origination, they should be dismissed.

### D.   PLAINTIFFS HAVE FAILED TO ALLEGE A CLAIM UNDER M.G.L. C. 93A BECAUSE THEY DID NOT SEND A PRE-SUIT DEMAND LETTER AS REQUIRED UNDER THE STATUTE

To the extent Count III of the Amended Complaint is based on an alleged violation of M.G.L. c. 93A, this claim fails as a matter of law because the Plaintiffs never served a written demand prior to commencing this action, which is fatal to any Chapter 93A claim.   *See Boston v. Aetna Life Ins. Co.,* 399 Mass. 569, 574 (1987) (failure to meet pre-suit demand requirement is

---

[3] *See* http://pdf.secdatabase.com/524/0001193125-07-044477.pdf.   *See Boateng v. InterAmerican University, Inc.,* 210 F.3d 56, 61 (1st Cir. 2000) (ruling that District Court could decide a motion to dismiss without converting to a motion for summary judgment because public records could be considered in deciding a motion to dismiss).

34649366v1 0985988

"fatal" to c. 93A claim); *Kanamaru v. Holyoke Mutual Ins. Co.*, 72 Mass. App. Ct. 396, 407-08 (2008) (holding that the pre-suit demand is a "prerequisite to suit," the absence of which warrants dismissal); *Ricky Smith Pontiac, Inc. v. Subaru of New England*, 14 Mass. App. Ct. 396, 432 (1982) ("failure to comply with the [demand letter] requirement requires dismissal of the entire lawsuit"). Chapter 93A specifically requires Plaintiffs to serve a written demand for relief prior to filing suit, and that letter must identify the claimant, reasonably describes the unfair or deceptive trade practices alleged, and the injury suffered. *See* M.G.L. c. 93A. The demand letter must be delivered to any prospective respondent at least thirty-days prior to initiation of suit. *Id.* Here, Plaintiffs did not send a Chapter 93A pre-suit demand letter. According to the First Circuit Court of Appeals "[t]he statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'" *Rodi v. Southern New England School of Law*, 389 F.3d 5, 19 (2004). The failure to allege service of the written demand prior to commencement of the action is grounds to dismiss the Chapter 93A claim. *Id.*

In response to Defendants' Motion to Dismiss, Plaintiffs admit that they did not serve a pre-suit 93A demand letter. (Opp., pp. 48-49.) Plaintiffs attempt to justify the absence of any pre-suit 93A demand letter by alerting the Court to a series of other pre-suit demand letters. (*Id.*) Plaintiffs' absence of any allegation of fact to prove service of a 93A demand letter demonstrates the fatal flaw of Plaintiffs' 93A claim and requires dismissal.

### E. PLAINTIFFS' CLAIMS AGAINST MERS ARE BASED ON SPECULATIVE ALLEGATIONS AND SHOULD BE DISMISSED AS THEY DO NOT MEET THE RULE 12(B)(6) STANDARD

All of Plaintiffs claims against MERS rely on the same speculative allegations that MERS knew or should have known that American Brokers was not a legally-existent entity and, thus, MERS participated in the "scheme of fraud" by recording and assigning the Mortgage to Deutsche Bank as Trustee. (Amended Complaint, ¶¶ 48-50, 75.) However, even assuming for

the sake of argument the veracity of Plaintiffs' allegation that American Brokers was not a legally-existent entity, Plaintiffs still have failed to state any claims against MERS because they have not offered any objective facts or presented affidavits or other documents necessary to establish either that MERS: (1) knew that the loan-related documents, including the Assignment of Mortgage to Deutsche Bank as Trustee, were fraudulent; or (2) knowingly recorded or assigned such fraudulent documents in reckless disregard for the truth. Merely saying it does not make it so.[4]

Contrary to Plaintiffs' self-servicing allegations, the facts alleged and relevant documents show that MERS, as nominee for American Brokers and American Brokers' successors and assigns, properly exercised its right to assign the Mortgage to Deutsche Bank as Trustee. The face of the Assignment of Mortgage reflects conveyance of the Mortgage interest into the Deutsche Bank trust. Plaintiffs rely upon conclusory statements that the Defendants recorded, assigned and serviced a mortgage loan that they "knew" or "should have known" was fraudulent and void. (Amended Complaint, ¶¶ 253-55.) Without more specific fact allegations, this conclusion does not support Plaintiffs' fraud claim. Even accepting the truth of their allegation regarding American Brokers' corporate status, which Defendants have demonstrated as false speculation, Plaintiffs fail to provide the requisite details as to why they contend the Defendants

---

[4] As discussed in Defendants' Motion to Dismiss, Plaintiffs' challenge to MERS' authority to assign the Mortgage in meritless as their argument is contradicted by well-settled case law. Massachusetts courts have consistently held that MERS has the ability and authority to assign and transfer mortgages. As the First Circuit further acknowledged in *Culhane v. Aurora Loan Services of Nebraska*, MERS has the right and the authority to transfer its interest in the mortgage to another entity. 708 F.3d 282, 291 (1st Cir. 2013) (recognizing MERS' ability to validly assign a mortgage). Massachusetts courts facing this same challenge to MERS' authority to assign a mortgage have all resolved the issue in MERS' favor. *See Hully v. Deutsche Bank Nat. Trust Co.*, 89 Mass. App. Ct. 1112, 2016 WL 983565, at *2 (Mar. 15, 2016) (rejecting borrowers' claim that MERS lacked authority to assign the mortgage containing the statutory power to foreclose under G.L. c. 244, § 14.); *Haskins v. Deutsche Bank Nat. Trust Co.*, 86 Mass. App. Ct. 632, 642 (2014) ("There is likewise no merit to the plaintiff's claim that MERS is without capacity to execute a valid assignment of the mortgage."); *Sullivan v. Kondaur Capital Corp.*, 85 Mass. App. Ct. 202, 210 (2014) (disagreeing with position that MERS could not validity transfer its interest as mortgagee in the subject mortgage). Accordingly, MERS had the authority to transfer Plaintiffs' Mortgage as evidenced by the Assignment.

34649366v1 0985988

knew (or should have known) that American Brokers was not a viable legal entity, or that they knowingly recorded and serviced the Loan which was fraudulently-obtained and void.  Nor do Plaintiffs plead any allegations to support their claim that the Defendants actively concealed the identity of the "real lender."

Accordingly, as Plaintiffs have failed to plead any specific facts that would support their claims that MERS knowingly recorded and assigned a fraudulent and void Mortgage, Plaintiffs cannot establish any of their claims against MERS.

**F.**   **PLAINTIFFS LACK STANDING TO CHALLENGE COMPLIANCE WITH THE PSA**

Plaintiffs' argument that the Assignment from MERS to Deutsche Bank as Trustee was invalid because the Mortgage was assigned to the trust after the closing date referenced in the PSA has been struck down by this Court.  (Amended Complaint, ¶¶ 75, 86.)  As set forth in Defendants' Motion to Dismiss, the First Circuit has consistently held that a mortgagor lacks standing to challenge the assignment of their mortgage based upon allegations concerning compliance with a trust's pooling and servicing agreement.  *See In re Sheedy*, 801 F.3d 12, 24-25 (1st Cir. 2015); *Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 37 (1st Cir. 2014); *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, n.4 (1st Cir. 2013).  The First Circuit's decisions affirming dismissal of contested foreclosure actions where borrowers object to the transfer of their Mortgage under the pooling and servicing agreements are grounded on the principle that a mortgagor can only challenge a mortgage assignment on void grounds.  *Culhane*, 708 F.3d at 291.  Here, Plaintiffs continue to argue defects in the transfer of their mortgage loan under the PSA and New York Trust Law.  (Opp., pp. 34-35, 60.)  Plaintiffs' claim fails because the First Circuit has repeatedly rejected mortgagors' attempts to challenge foreclosure though the validity of an assignment based upon non-compliance with a pooling and servicing agreement.

34649366v1 0985988

Even applying New York law, which Plaintiffs promote in their Opposition, Plaintiffs lack standing to challenge the PSA.  *See Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 87 (2nd. Cir. 2014) (confirming that plaintiffs did not have standing to assert noncompliance with the subject lender's pooling service agreement).

## III.    CONCLUSION

For the reasons stated above, and for the reasons stated in the Memorandum of Law filed in support of the Motion to Dismiss, the Defendants, American Home Mortgage Servicing, Inc., Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Assets Trust 2007-2, Mortgage-Backed Pass-Through Certificates Series 2007-2, Homeward Residential, Inc., Mortgage Electronic Registration Systems, Inc. and Ocwen Loan Servicing, LLC, respectfully request that this Court dismiss the Plaintiffs' Amended Complaint in its entirety.

Respectfully submitted,

Attorneys for Defendants,

AMERICAN HOME MORTGAGE
SERVICING, INC., DEUTSCHE BANK
NATIONAL TRUST COMPANY AS TRUSTEE
FOR AMERICAN HOME MORTGAGE ASSETS
TRUST 2007-2 MORTGAGE-BACKED
PASS-CERTIFICATES, SERIES 2007-2,
HOMEWARD RESIDENTIAL, INC., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS INC.
and OCWEN LOAN SERVICING, LLC,


*/s/ Vanessa V. Pisano*
Samuel C. Bodurtha, BBO #665755
Vanessa V. Pisano, BBO #679649
HINSHAW & CULBERTSON LLP
28 State Street, 24th Floor
Boston, MA 02109
Tel: (617) 213-7000 / Fax: (617) 213-7001
Email:  sbodurtha@hinshawlaw.com
         vpisano@hinshawlaw.com

34649366v1 0985988

## <u>CERTIFICATE OF SERVICE</u>

I, Vanessa V. Pisano, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 3, 2016.

/s/ *Vanessa V. Pisano*
Vanessa V. Pisano

34649366v1 0985988