# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————

| | |
|---|---|
| TIMOTHY C. HARRY and KAREN C. HARRY, | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) |
| AMERICAN BROKERS CONDUIT; APEX MORTGAGE SERVICES; FIDELITY NATIONAL FINANCIAL, INC.; FIDELITY NATIONAL TITLE COMPANY; FIDELITY NATIONAL TITLE GROUP, INC.; AMERICAN HOME MORTGAGE SERVICING, INC.; DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee for AMERICAN HOME MORTGAGE ASSETS TRUST 2007-2 MORTGAGE-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-2; HOMEWARD RESIDENTIAL, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and OCWEN LOAN SERVICING, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) ) |

Civil Action No.
16-10895-FDS

———————————————————————————

## MEMORANDUM AND ORDER
## ON DEFENDANTS' MOTIONS TO DISMISS AND MOTION TO STRIKE

**SAYLOR, J.**

This is a dispute arising out of a mortgage issued to plaintiffs in 2006. On December 21, 2006, plaintiffs took out a $450,000 loan to refinance their existing mortgage and executed a new mortgage on their property to secure payment of that loan. Plaintiffs stopped making payments on the new mortgage in 2008. Several foreclosure attempts followed. Plaintiffs have now filed suit, alleging in substance that the note and mortgage are void because the lender, American

Brokers Conduit, was not an incorporated entity and was not licensed to do business in any state at the time of the loan.  The complaint further alleges that all subsequent assignments of the mortgage were void and all attempts to collect on the note or to foreclose on the property were unauthorized.

Plaintiffs do not dispute that they received the $450,000 loan to refinance their mortgage. They likewise do not dispute that they continue to possess the property and have made no mortgage payments for more than eight years.

This is not a typical situation in which homeowner plaintiffs are seeking to forestall a mortgage foreclosure, contending that there is some defect in the assignment of the mortgage or the note.  Instead, plaintiffs claim that the entire 2006 lending transaction should be declared void.  They seek "to have the original note marked cancelled and returned to [them]," "to have [the] mortgage . . . released in the land records," and to recover compensatory and punitive damages of more than $197 million.  In other words, plaintiffs want to undo the loan transaction—but they also want to keep both the $450,000 loan proceeds (which, presumably, they used to discharge their prior mortgage) and the property.  Put simply, plaintiffs want to erase their debt, keep the house (for free), and to be compensated handsomely for their trouble.

Defendants have moved to dismiss the complaint for the failure to state a claim upon which relief can be granted.  There are multiple problems with plaintiffs' claims, beginning with the fact that the loan transaction occurred in 2006, and the limitations period for almost all of their claims expired some time ago.  As to most of their claims, the only real question is whether the limitations period should be tolled for any reason.  Because the complaint fails to allege any plausible reason why those limitations periods should be equitably tolled, the motions to dismiss, with one exception, will be granted.

2

# I.      Background

## A.      Factual Background

The facts are set forth as described in the complaint.

### 1.      The Loan Application and Closing

Sometime prior to November 2006, plaintiffs Timothy and Karen Harry were contacted by defendant APEX Mortgage Services, LLC, a mortgage servicing company, about refinancing the mortgage on their home in Mashpee, Massachusetts.  (Am. Compl. ¶¶ 1, 5, 15).  In late November 2006, plaintiffs began the process of applying for a new loan.  (*Id.* ¶ 15).  APEX faxed to the plaintiffs a "Borrower's Certification and Authorization Certification" form dated December 2, 2006.  (*Id.*).  That form required plaintiffs' signatures, certifying that the information they provided in their loan application was true and complete.  (*Id.*).  The form also stated that APEX had the right to initiate a full documentation review to verify the information plaintiffs provided, and that it, and the mortgage guaranty insurer (if any), might verify the information in the loan application and in any other documentation provided in connection with the loan.  (*Id.*).  The form also required plaintiffs to authorize APEX to provide any requested documents to any investor to whom APEX might sell the mortgage.  (*Id.*).

On December 13, 2006, plaintiffs formally applied with APEX for a refinancing loan. (*Id.* ¶ 17).  The loan application was prepared by APEX, not by plaintiffs themselves, and was faxed to plaintiffs on December 13.  (*Id.* ¶ 18).  According to the complaint, the application indicated that it was for a loan amount of $445,500 with an interest rate of 1.750% for 480 months (40 years).  (*Id.*).  The complaint alleges that APEX falsified information on the application by, for example, significantly overstating plaintiffs' monthly income and referring to unspecified credit union accounts and life insurance policies.  (*Id.*).  It also alleges that the

application was backdated to November 29, 2006, and that the application was prepared by Pierre Haber, "a known illegal robo-signer."  (*Id.* ¶ 22).

Along with the loan application, APEX also sent plaintiffs a Good Faith Estimate ("GFE") form and Truth in Lending ("TIL") disclosure statement, both dated November 20, 2006.  (*Id.* ¶¶ 25, 30).  The GFE stated a loan number of 0611EM005801, a base loan amount of $445,500, an interest rate of 1.750%, a term of 480 months (40 years), as well as a number of fees associated with the loan.  (*Id.* ¶ 25).  According to the complaint, the information provided in the TIL disclosure differed from that in the GFE.  (*Id.* ¶ 31).  The TIL disclosure stated a loan amount of $458,089.49, an APR of 6.246%, and a term of 30 years.  (*Id.* ¶¶ 30, 52).

On December 21, 2006, defendant Fidelity Title Company prepared a HUD-1A settlement statement for plaintiffs' loan.  (*Id.* ¶ 36).  The complaint alleges that Fidelity Title Company does not exist.  (*Id.* ¶¶ 8, 38).  According to the complaint, the HUD-1A included a number of differences from the GFE and TIL disclosure statement.  The HUD-1A allegedly stated that American Brokers Conduit was the lender, provided a different loan number of 0001552524, and stated a loan amount of $450,000.  (*Id.* ¶ 38).  The complaint alleges that American Brokers Conduit did not legally exist as an entity in 2006 and has never been legally incorporated in any state.  (*Id.* ¶¶ 4, 37).  Accompanying the HUD-1A was a form prepared by Chicago Title Insurance Company, apparently explaining the title insurance policy that it was issuing to American Brokers Conduit for the plaintiffs' mortgage.  (*Id.* ¶ 42).  The insurance form stated a commitment date of November 20, 2006, and a loan amount of $450,000.  (*Id.*).

The loan closing took place on December 21, 2006.  On that day, the note was issued and a mortgage on plaintiffs' property executed in order to secure payment of the note.  (*Id.* ¶¶ 49, 58, 61).  The note issued to plaintiffs stated an interest rate of 1.725%, but on January 1, 2007,

the interest rate allegedly jumped to 10.083%.  (*Id.* ¶ 50).  It appears that an adjustable rate rider and a prepayment rider accompanied the note.  (*Id.* ¶ 65).  The note also stated the loan was a 40-year loan in the amount of $450,000.  (*Id.* ¶¶ 51-52).

The mortgage stated a loan amount of $450,000, payable to Mortgage Electronic Registration System, Inc. ("MERS"), as nominee for American Bankers Conduit.  (*Id.* ¶ 61).  According to the complaint, the MERS identification number listed on the mortgage is associated with American Home Mortgage Holding, Inc., and not with American Brokers Conduit.  (*Id.* ¶ 63).  The mortgage was recorded on February 7, 2007, in the Barnstable Registry of Deeds by Fidelity Title Group.  (*Id.* ¶ 61).  According to the complaint, plaintiffs' signatures on the mortgage do not match their signatures on the adjustable rate and prepayment riders, and therefore their signatures were forged.  (*Id.* ¶ 65).

Plaintiffs began making payments on February 1, 2007.  (*Id.* ¶ 56).  The last payment they made was on October 1, 2008.  (*Id.*).

## 2.    The Assignments and Modification

On May 1, 2009, MERS, as nominee for American Brokers Conduit, assigned the mortgage, but not the underlying note, to Deutsche Bank National Trust Company as Trustee for American Home Mortgage Assets Trust 2007-02.  (*Id.* ¶ 71).  The assignment was allegedly backdated, stating that it was effective as of April 27, 2009.  (*Id.* ¶ 73).  According to the complaint, that assignment was void because American Brokers Conduit did not exist, and therefore could not appoint MERS as its nominee, and therefore MERS had nothing to assign. (*Id.* ¶ 75).  The complaint further alleges that the trust to which the mortgage was transferred had "closed" in February 2007, and therefore could not have accepted the assignment in 2009.  (*Id.*). The assignment was prepared and recorded by DOCX, a subsidiary of Fidelity Financial.  (*Id.* ¶

76).  The complaint alleges that six "illegal robo-signers," all MERS employees, executed the assignment.  (*Id.* ¶ 78).

On July 7, 2010, MERS again assigned the mortgage to Deutsche Bank as Trustee for the same trust.  (*Id.* ¶ 82).  According to the complaint, the second assignment provided a new trust address, which was that of American Home Mortgage Servicing, Inc. ("AHMSI").  Also according to the complaint, the second assignment was intended to correct defects in the first assignment.  (*Id.* ¶ 85).  However, the complaint alleges that the second assignment was also signed by "another known illegal robo-signer."  (*Id.* ¶ 85).  The complaint alleges that all defendants knew or should have known that the assignments were fraudulent and void.  (*Id.* ¶ 87).

On May 15, 2012, plaintiffs received a letter from AHMSI informing them of the availability of several payment options.  (*Id.* ¶ 129).  That communication listed plaintiffs' gross monthly income as $5,063.78, as compared to the gross monthly income of $14,950.00 that was stated on the loan application allegedly prepared by APEX.  (*Id.*).  The complaint alleges that the inconsistency confirms that APEX falsified information on the loan application.  (*Id.* ¶ 131).  According to the complaint, plaintiffs never agreed to a modification of their payment obligations.  (*Id.* ¶ 130).

### 3.   The Foreclosure Attempts

Plaintiffs stopped making payments on their mortgage after October 1, 2008.  (*Id.* ¶ 88).  They received multiple notices regarding their mortgage from AHMSI from November 1, 2008, through June 5, 2012, when AHMSI changed its name to Homeward Residential.  (*Id.*).[1]  The

---

[1] The complaint does not specify whether Homeward Residential continued to send notices regarding payment after June 5, 2012.

complaint alleges that AHMSI/Homeward Residential knew that the issuer of the note—that is, American Brokers Conduit—was a non-existent entity and that therefore the note was void, yet continued to press for payment.  (*Id.* ¶ 89-90).  Ocwen Financial Corporation purchased Homeward Residential on October 3, 2012.  (*Id.* ¶ 92).  According to the complaint, without inquiring into the facts surrounding the plaintiffs' mortgage, Ocwen continued to harass them for payment on the loan.  (*Id.*).

On September 28, 2009, Deutsche Bank filed a complaint in the Superior Court of Massachusetts, Barnstable County, seeking foreclosure on the property.  (*Id.* ¶ 94).[2]  A notice of mortgagee's sale of the property was published on November 6, 2009.  (*Id.* ¶ 95).  However, according to the complaint, nothing happened for more than a year, until November 11, 2010, when Deutsche Bank sent plaintiffs a notice of intention to foreclose and second notice of mortgagee's sale of the property.  (*Id.* ¶¶ 101-02).  A sale by public auction was scheduled for December 17, 2010, but was later cancelled.  (*Id.* ¶¶ 102-03).

Deutsche Bank allegedly issued a third notice of foreclosure on July 14, 2011.  (*Id.* ¶ 104).  On September 1, 2011, plaintiffs then received another notice of foreclosure sale and notice of mortgagee's sale of the property, stating that the property would be sold by public auction on October 7, 2011.  (*Id.* ¶ 105).  Again, no sale ever took place.  (*Id.* ¶ 106).

On February 13, 2015, plaintiffs received a notice from Ocwen of its intent to foreclose on the property on behalf of Deutsche Bank.  (*Id.* ¶ 115).  On May 27, 2015, plaintiffs' attorney sent Ocwen a dispute of the alleged debt and requested that, from that point forward, Ocwen communicate only with plaintiffs' attorney.  (*Id.* ¶ 116).  On June 10, 2015, Ocwen sent, directly

---

[2] Deutsche Bank filed that complaint through its attorneys, Ablitt & Scofield P.C.  Plaintiffs originally named that firm as a defendant in this action, but voluntarily moved to dismiss it on October 11, 2016.  That motion was granted on December 22, 2016.

to plaintiffs, a notice of default stating an amount past due of $223,611.23 on loan number 7140304192. (*Id.* ¶ 117). That notice also stated that Ocwen intended to foreclose on the mortgage unless plaintiffs became current on their payments. (*Id.*). Ocwen sent another notice to the same effect, also directly to plaintiffs, on July 1, 2015. (*Id.* ¶ 118).

According to the complaint, Ocwen mailed plaintiffs two letters on July 20, 2015. (*Id.* ¶¶ 119-20). The first stated that Ocwen had received plaintiffs' correspondence but needed more time to respond. (*Id.* ¶ 119). The second stated that it had received plaintiffs' request to communicate only through their attorney, but could not authorize their attorney to receive information regarding the loan because their signatures on the request did not match their signatures on their loan documents. (*Id.* ¶ 120). Ocwen mailed another letter to plaintiffs on September 4, 2015, stating that it had received plaintiffs' request but was unable to provide a response. (*Id.* ¶ 121). It is unclear from the complaint whether that third letter was referring to plaintiffs' letter disputing the debt or the letter requesting to authorize their attorney to receive communications.

On January 28, 2016, plaintiffs received another letter from Ocwen threatening litigation and foreclosure. (*Id.* ¶ 122). Plaintiffs responded by disputing the debt. (*Id.* ¶ 123).

It does not appear that a foreclosure of plaintiffs' property has occurred, or that foreclosure proceedings are imminent.

### 4.        Plaintiffs' Attempted Rescission and "Qualified Written Request"

On March 20, 2015, plaintiffs sent to all defendants a rescission notice pursuant to the Truth in Lending Act ("TILA").[3] The complaint alleges that, due to that rescission notice,

---

[3] TILA provides borrowers with the right to rescind mortgage transactions, by notifying their creditors of their intent to do so, until midnight of the third business day following closing or the delivery of the information and rescission forms required by the statute, whichever is later. 15 U.S.C. § 1635(a). The rescission period may be extended if the borrower did not receive adequate notice of the right to rescind, but, even if extended, that right

defendants were required to return to plaintiffs any money they had paid towards the note.  (*Id.* ¶ 142).

On July 30, 2015, plaintiffs sent a "Qualified Written Request and Validation of Debt" letter to Ocwen.  (*Id.* ¶ 132).[4]  In response, Ocwen sent plaintiffs two packages of documents, one on September 11, 2015, and another on September 30, 2015.  (*Id.* ¶ 133).  According to the complaint, the documents sent were inadequate because they failed to adequately document "the historical evolution of the alleged debt."  (*Id.* ¶ 134).

## B.   <u>Procedural History</u>

Plaintiffs filed the original complaint in this action on March 18, 2016, in Massachusetts state court.  Defendants removed the action to this Court on May 17, 2016.  Plaintiffs filed an amended complaint on June 22, 2016.  The amended complaint alleges (1) a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, as to all defendants (Count One); a claim that the statute of limitations to collect on the note has expired (Count Two); a violation of Mass. Gen. Laws ch. 93A as to all defendants (Count Three); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as to defendants AHMSI, Deutsche Bank, Ocwen, and Homeward (Count Four); violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, as to defendants APEX, American Brokers Conduit, AHMSI, Fidelity Financial, Fidelity Title Company, and Fidelity Title Group (Count Five); a violation of 18 U.S.C. § 1014, as to all defendants (Count Six); violations of the Truth in Lending Act, 15  U.S.C. § 1601 *et seq.*, as to defendants APEX,

---

"completely extinguishes" after three years from the closing of the transaction.  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); 15 U.S.C. § 1635(f).

[4] Under the Real Estate Settlement Procedures Act ("RESPA"), loan servicers are required to respond to "qualified written requests," which are written requests from borrowers seeking information about their account or explaining their belief that there is an error in their account.  12 U.S.C. § 2605(e).

American Brokers Conduit, AHMSI, Fidelity Financial, Fidelity Title Company, and Fidelity Title Group, (Count Seven); slander of title, as to all defendants (Count Eight); fraud, as to all defendants (Count Nine); seeks a rescission of the note and mortgage as well as to quiet title to the Mashpee property (Count Ten); and asserts that no defendant has standing to foreclose on the Mashpee property (Count Eleven).[5]

On July 19, 2016, defendants American Home Mortgage Servicing, Deutsche Bank, Homeward Residential, MERS, and Ocwen moved to dismiss for failure to state a claim upon which relief can be granted. On July 27, 2016, defendants Fidelity National Financial, Fidelity National Title Insurance, and Fidelity National Title Group likewise moved to dismiss for failure to state a claim. On October 3, 2016, defendants American Home Mortgage Servicing, Deutsche Bank, Homeward Residential, MERS, and Ocwen moved to strike certain documents attached to plaintiffs' opposition memorandum.

## II. <u>Legal Standard</u>

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

---

[5] Count Four was originally also brought against the law firm Ablitt & Scofield P.C. The complaint also asserted a claim for the violation of the Professional Rules of Conduct against Ablitt & Scofield. (Count Twelve). However, that firm was dismissed from this action on December 22, 2016.

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do

not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer*

*Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## III.   Analysis

### A.   Defendants' Motion to Strike

Defendants American Home Mortgage Servicing, Inc.; Deutsche Bank National Trust

Company; Homeward Residential; Mortgage Electronic Registration Systems, Inc.; and Ocwen

Loan Servicing, LLC have moved to strike a number of documents attached as exhibits to the

plaintiffs' opposition to their motion to dismiss.  Because the Court did not rely on the disputed

documents in deciding defendants' motion to dismiss, the motion to strike will be denied as

moot.

### B.   RICO Violations (Count One)

Count One alleges that all defendants violated the RICO statute, 18 U.S.C. § 1962, by

engaging in a series of misrepresentations and omissions as part of a common plan to defraud

plaintiffs out of their money and property.  The limitations period for civil RICO claims is four

years.  *See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987).  A civil

RICO claim accrues at the time a plaintiff knew or should have known of his injury.  *Lares*

*Group, II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000).

Plaintiffs allege a variety of issues arising out of their 2006 loan transaction.  Among

other things, they contend that the loan application contained false information (it both

overstated their income and included fictitious assets); that their signatures were forged on the

mortgage, the adjustable rate rider, and the prepayment rider; that the various loan documents

(the GFE, the TILA disclosure statement, and the HUD-1A) were fraudulent and set forth differing amounts as to the amount of the loan and the interest rate; and that they were charged a usurious interest rate.  They contend that the lender (American Bankers Conduit) did not exist at the time (although plaintiffs did in fact receive $450,000 from the lender, which appears to have been used to discharge their existing mortgage).  They contend that they did not actually give a valid mortgage to MERS, because MERS was purportedly the nominee for American Brokers Conduit, and American Brokers Conduit did not exist.  All of those actions occurred on or about the date of the loan closing, which was December 21, 2006.[6]

Furthermore, according to the complaint, the harm suffered by plaintiffs as a result of the alleged racketeering activity was the loss of "the valuable ability and opportunity to refinance their property with real existing entities, a true identified creditor, on accurate terms disclosed." (Am. Compl. ¶ 162).  That injury occurred "immediately" upon the loan closing, again on December 21, 2006.  (*Id.*)  Thus, because plaintiffs knew or reasonably should have known of their injury no later than December 21, 2006, the limitations period for their RICO claims expired on December 21, 2010.

Furthermore, plaintiffs have not met their burden of showing that the RICO limitations period should be tolled or that defendants should be estopped from asserting a limitations defense.  Equitable estoppel and equitable tolling are exceptions to the general rule that plaintiffs must bring claims within the applicable limitations periods.  The two doctrines are related, but apply in different contexts.  "[E]quitable estoppel applies when a plaintiff who knows of his

---

[6] Plaintiffs also allege that various entities who held an interest in the loan at different times after the closing were fictitious, not incorporated, or not licensed to do business in Massachusetts, and that various assignments of interest were "robo-signed."  Even assuming the truth of those allegations, it is entirely unclear how any of that caused an injury in December 2006.  Plaintiffs allege that they received $450,000 (not a fictitious amount) and that they gave a mortgage to MERS (not a fictitious entity).

cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit." *Ramirez-Carlo v. United States*, 496 F.3d 41, 48 (1st Cir. 2007). "Equitable tolling applies when the plaintiff is unaware of the facts underlying his cause of action." *Id.* Neither is applicable here.

Equitable estoppel may bar a defendant from asserting the statute of limitations as an affirmative defense if the plaintiff can show:

> that the statements of the defendant lulled the plaintiff into the false belief that it was not necessary . . . to commence action within the statutory period of limitations . . ., that the plaintiff was induced by these statements to refrain from bringing suit, as otherwise [the plaintiff] would have done, and was thereby harmed, and that the defendant knew or had reasonable cause to know that such consequences might follow.

*Pagliarini v. Iannaco*, 440 Mass. 1032, 1032 (2003) (alterations original) (internal quotation marks omitted).

Plaintiffs contend that equitable estoppel is appropriate here because of the defendants' alleged fraudulent concealment of the fact that the note and mortgage were void. (Am. Compl. ¶¶ 166(b)). However, that collapses the inquiry of equitable estoppel into plaintiffs' substantive fraud claim. The doctrine of equitable estoppel in this context focuses not on whether defendants participated in a fraud generally, but rather whether they made misleading statements specifically regarding the necessity of bringing a lawsuit within the statutory period. *See Kozikowski v. Toll Bros., Inc.*, 354 F.3d 16, 24 (1st Cir. 2003) (defining first prong of equitable estoppel test as whether defendant "made representations that it knew of should have known would induce the [plaintiffs] to postpone bringing a suit"). The complaint fails to allege any facts suggesting that the defendants lulled the plaintiffs into thinking that they did not need to file a lawsuit within the applicable statutory periods. For example, the complaint does not allege that defendants assured plaintiffs they would resolve any conflict, eliminating the need for litigation, *see id.*, nor does it

allege that defendants misrepresented the length of the applicable limitations period, *see Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959).  Plaintiffs have therefore not met their burden of showing that the doctrine of equitable estoppel applies.

Plaintiffs also seek equitable tolling of the limitations period.  "[T]he doctrine of equitable tolling is applicable only where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit."  *Protective Life Ins. Co. v. Sullivan*, 425 Mass. 615, 631 (1997).  The complaint alleges two basic grounds for equitable tolling.

First, the complaint alleges that plaintiffs were "unable to obtain vital information bearing on their claims" because they were "not on inquiry notice of Defendants['] wrongdoing and had no duty to initiate an investigation of any nature because the documents presented to them by the Defendants appeared to be legitimate."  (Am. Compl. ¶ 166(c)(i)).  However, that claim is implausible, and indeed entirely inconsistent with the facts as alleged in the complaint. According to the complaint, the documents plaintiffs received at closing contained inconsistent information concerning (among other things) the identity of the lender, the amount of the loan, and the interest rate charged.  (*Id.* ¶ 38).  The complaint further alleges that the interest rate on the loan jumped from 1.725% (the amount on the note, dated December 21, 2006) to 10.083% (as of January 1, 2007, eleven days later).  Plaintiffs were therefore on inquiry notice at that time of defendants' alleged wrongdoing with regard to the circumstances of the loan and mortgage.

Second, plaintiffs contend that even if they had attempted to investigate, any "such investigation would have been futile because it would not have uncovered the true, unlawful nature of Defendants['] scheme to defraud Plaintiffs."  (*Id.* ¶ 166(c)(i)).  But that allegation is entirely conclusory.  Plaintiffs do not allege that they attempted to investigate and were thwarted,

14

or even that they attempted to investigate at all.  Instead, it appears that they simply waited nine years to file a complaint.  Likewise, plaintiffs contend that their claims were "tolled until they discovered the truth underlying their claims shortly before filing their original Complaint."  (*Id.*). However, the complaint does not assert any facts suggesting that the information necessary for plaintiffs' suit was unavailable prior to 2016, nor does it explain why the information suddenly became available at that time.

The complaint therefore fails to make plausible allegations as to why equitable tolling should apply.  *See Abdallah v. Bain Capital LLC*, 880 F. Supp. 2d 190, 198 (D. Mass. 2012) (holding that equitable tolling is not justified where plaintiff fails to provide facts demonstrating that diligent inquiry would not have produced the necessary information earlier).  Thus, the RICO claims are time-barred.

**C.      Expiration of Statute of Limitations to Collect on Note (Count Two)**

Count Two alleges that the limitations period to collect on a "non-existent void fraudulent debt and void fraudulent mortgage" has expired.  (Am. Compl. ¶ 176).  That count fails to assert a valid cause of action and will therefore be dismissed.

**D.      Chapter 93A Violations (Count Three)**

The complaint alleges that all defendants violated Mass. Gen. Laws ch. 93A by virtue of their participation in an allegedly fraudulent issuance and assignment of the note.  However, plaintiff does not appear to have delivered to any of the defendants the demand letter required by Chapter 93A.  At least 30 days prior to filing a claim under Chapter 93A, a plaintiff is required to deliver "to any prospective respondent" a demand letter "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered."  Mass. Gen. Laws ch. 93A § 9(3).  The complaint does not state that plaintiffs sent demand letters to the

defendants, and therefore they may not now assert claims under Chapter 93A. *See City of Boston v. Aetna Life Ins. Co.*, 399 Mass. 569, 574 (1987) ("The failure of the City to allege the sending of a demand letter is fatal to its [Chapter 93A] § 9 claim.").

Even if plaintiffs had submitted the required demand letters, however, their Chapter 93A claims would still be barred under the applicable statute of limitations. Chapter 93A has a four-year limitations period. Mass. Gen. Laws ch. 260, § 5A; *see McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 124 n.16 (1st Cir. 2014). As with RICO claims, Chapter 93A claims accrue "when the plaintiff knew or should have known of appreciable harm" resulting from the defendant's alleged unfair or deceptive practice. *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 221 (1990). Plaintiffs' Chapter 93A claims, as with their RICO claims, are premised upon the allegedly fraudulent nature of the transaction that occurred on December 21, 2006. Thus, for the same reasons set forth above, their Chapter 93A claims are barred by the applicable statute of limitations.

Furthermore, plaintiffs have again failed establish that the Chapter 93A limitations period should be tolled or that defendants should be estopped from asserting a limitations defense. As to equitable estoppel, plaintiffs again contend that defendants should be estopped from asserting a limitations defense on the grounds that they concealed from plaintiffs the alleged defects in their note and mortgage. (Am. Compl. ¶ 180(b)). For the reasons stated above—that is, because the complaint does not allege that defendants lulled them into thinking that timely legal action was not necessary, or anything similar—equitable estoppel is not appropriate here.

As to equitable tolling, plaintiffs repeat their contentions that they were not on notice of defendants' wrongdoing and that any timely investigation would have been futile. (Am. Compl. ¶ 180(c)). Because those claims are implausible and conclusory, the Chapter 93A claims are

16

time-barred.

**E.**      **FDCPA Violations (Count Four)**

The complaint alleges that defendants AHMSI, Deutsche Bank, Ocwen, and Homeward

Residential violated the FDCPA by virtue of their attempts to collect on an allegedly fraudulent

and void note.  The FDCPA has a one-year limitations period.  15 U.S.C. § 1692k(d) ("An action

to enforce any liability created by this subchapter may be brought . . . within one year from the

date on which the violation occurs.").

According to the complaint, AHMSI began attempting to collect on the note in October

2008.  (Am. Compl. ¶ 88).  Deutsche Bank began foreclosure proceedings against the property in

September 2009.  (*Id.* ¶ 94).  AHMSI changed its name to Homeward Residential in June 2012,

and continued attempting to collect on the note.  (*Id.*).  Ocwen then purchased Homeward

Residential in October 2012, and continued attempting to collect on the note.  (*Id.* ¶ 92).

According to the complaint, Ocwen informed plaintiffs' of its intent to foreclose on their

property, or otherwise attempted to collect on the note, on February 13, 2015; June 10, 2015;

July 1, 2015; and January 28, 2016.  (*Id.* ¶¶ 115, 117, 118, 122).

Plaintiffs filed this action on March 18, 2016.  As to defendants AHMSI, Deutsche Bank,

and Homeward Residential—who attempted to collect on the note in 2008, 2009, and 2012,

respectively—the FDCPA's one-year limitations period has expired.  Once again, plaintiffs have

failed to establish that equitable estoppel or equitable tolling should apply.  Plaintiffs again set

forth the same contentions that equitable estoppel is appropriate due to defendants' alleged

concealment of defects in the mortgage and note, and that equitable tolling is appropriate due to

the absence of inquiry notice and alleged futility of timely investigation.  (Am. Compl. ¶ 189(b)-

(c)).  For the reasons stated above, the complaint fails to allege a plausible basis for equitable

estoppel and equitable tolling.

Plaintiffs' FDCPA claim appears, however, to be timely as to Ocwen's alleged conduct on June 10, 2015; July 1, 2015; and January 28, 2016.[7]  To state a claim under the FDCPA, plaintiffs must establish "(1) that [they were] the object[s] of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA."  *Rhodes v. Ocwen Loan Servicing, LLC*, 44 F. Supp. 3d 137, 141 (D. Mass. 2014) (internal quotation marks omitted).  It does not appear to be disputed that prongs one and two are satisfied.  As to prong three, under § 1692e of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of the character, amount, or legal status of any debt," and "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(2)(A), (5).

The complaint alleges that Ocwen sent plaintiffs (1) a notice of default stating an amount past due of $223,611.23 and directing plaintiffs to remit payment within approximately five weeks (the June 10 letter); (2) a letter notifying plaintiffs of its intent to foreclose on their property, stating that it had the right to foreclose as it had possession of the promissory note and that the chain of endorsement is complete, and including a list of allegedly "confusing" amounts owed (the July 1 letter); and (3) a letter, sent through their counsel, allegedly "threatening litigation and foreclosure" and giving plaintiffs 30 days to respond (the January 28 letter).  (Am. Compl. ¶¶ 117, 118, 122).  Those allegations, taken in conjunction with the rest of the complaint,

---

[7] Defendants appear to contend that the limitations period on any possible FDCPA claim against a particular defendant begins to run the first time that defendant is alleged to have violated the FDCPA.  However, discrete FDCPA violations may be actionable even where prior violations are time-barred.  *See, e.g., Solomon v. HSBC Mortg. Corp.*, 395 Fed. Appx. 494, 497 (10th Cir. 2010) ("For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis.") (unpublished opinion); *Purnell v. Arrow Fin. Servs., LLC*, 303 Fed. Appx. 297, 301-02, 304 (6th Cir. 2008) (unpublished opinion).

are sufficient to survive a motion to dismiss.  *Cf. Chiras v. Associated Credit Servs. Inc.*, 2012

WL 3025093 at *1 (holding that complaint failed to state a claim for violation of FDCPA where

it was devoid of facts such as the dates and content of allegedly unlawful communications).

F.      **RESPA Violations (Count Five)**

Count Five alleges RESPA violations against defendants APEX, American Brokers

Conduit, AHMSI, Fidelity Financial, Fidelity Title Group, and Fidelity Title Company on the

ground that the disclosure statements they provided were inadequate under the statute.  (Am.

Compl. ¶ 193).  The allegedly inadequate disclosures specifically referred to in the complaint

include the GFE, the TIL disclosure, and the HUD-1A, all of which were disclosed no later than

December 21, 2006.  Although it is not clear from the complaint, it appears that the RESPA

claim is brought under 12 U.S.C. § 2604(c), which requires lenders to provide borrowers a "good

faith estimate of the amount or range or charges for specific settlement services the borrower is

likely to incur in connection with the settlement" not later than three days after it receives the

borrower's loan application.  12 U.S.C. § 2604(c) & (d).[8]  However, that provision does not

create a private right of action for borrowers.  *See In re Noyes*, 382 B. R. 561, 580 (Bankr. D.

Mass. 2008).

To the extent that the complaint may be read to assert a claim under § 2605, that claim is

barred on its face by the applicable statute of limitations.  Among other things, § 2605 requires

that mortgagees disclose, at the time of a loan application, whether the servicing of the loan may

be assigned, sold, or transferred.  12 U.S.C. § 2605(a).  It also requires loan servicers to notify

---

[8] The complaint alleges, for example, that the statements plaintiffs received, including the GFE, the TIL disclosure, and the HUD-1A, violated RESPA.  (Am. Compl. ¶¶ 191, 193).

borrowers in writing of any assignment, sale, or transfer. 12 U.S.C. § 2605(b)-(c).[9]  Claims

brought under § 2605 are subject to a three-year limitations period. 12 U.S.C. § 2614.[10]  To the

extent the RESPA claim is premised on a failure to provide the requisite disclosures regarding

assignments, that claim accrued on December 21, 2006.  The complaint focuses only on the

disclosures that were or were not made at the time of closing; it says nothing of disclosures or

notifications that were or were not made at the time that any assignments were made.  (Am.

Compl. ¶¶ 191-197).  Thus, the limitations period under RESPA expired no later than December

21, 2009, unless tolled.

Once again, plaintiffs have failed to establish that equitable estoppel or equitable tolling

should apply.  Plaintiffs again contend that equitable estoppel is appropriate due to defendants'

alleged concealment of defects in the mortgage and note, and that equitable tolling is appropriate

due to the absence of inquiry notice and the alleged futility of a timely investigation.  (Am.

Compl. ¶ 198 (b)-(c)).  For the reasons stated above, those claims are implausible and

conclusory.  Plaintiffs' RESPA claims are therefore time-barred.

### G.    Violations of 18 U.S.C. § 1014 (Count Six)

Count Six alleges that defendants APEX, American Brokers Conduit, Fidelity Financial,

Fidelity Title Company, and Fidelity Title Group violated 18 U.S.C. § 1014 by making false

---

[9] Section 2605 also requires loan servicers to respond to "qualified written requests," which are written requests from borrowers seeking information about their account or explaining their belief that there is an error in their account.  12 U.S.C. § 2605(e).  According to the complaint, plaintiffs did send a qualified written request to Ocwen in July 2015.  (Am. Compl. ¶ 132).  The complaint further alleges that Ocwen's response was inadequate under RESPA.  (Am. Compl. ¶ 134).  However, plaintiffs' RESPA claim (Count Five) is brought only against defendants APEX, American Brokers Conduit, AHMSI, Fidelity Financial, Fidelity Title Company, and Fidelity Title Group.  There is no RESPA claim asserted against Ocwen.

[10] RESPA provides for a shorter, one-year limitations period for claims brought under sections 2607 and 2608, but those sections do not appear to be implicated here.  Section 2607 prohibits kickbacks and unearned fees for real estate settlement services; section 2608 prohibits sellers of property from requiring that buyers purchase title insurance from any particular title company.  12 U.S.C. §§ 2607, 2608.

statements on plaintiffs' loan application and preparing a fraudulent HUD-1A statement.  (Am. Compl. ¶¶ 199-209).  Section 1014 is a criminal statute, and provides no private right of action. *See Federal Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 137 (4th Cir. 1987).  Count Six will therefore be dismissed.

### H.    TILA Violations (Count Seven)

Count Seven alleges that defendants APEX, American Brokers Conduit, AHMSI, Fidelity Financial, Fidelity Title Company, and Fidelity Title Group violated TILA, 15 U.S.C. § 1601 *et seq.*, by (1) having American Brokers Conduit—an allegedly non-existent "pretender lender"— "table fund" the loan for an unidentified third party, (2) making fraudulent representations about the plaintiffs' income and assets on their loan application, and (3) fraudulently procuring plaintiffs' signatures on multiple occasions.  (Am. Compl. ¶¶ 213-217).[11] Actions for damages under TILA must be brought within one year from the date of the alleged violation.  *See Rodrigues v. Members Mortg. Co.*, 323 F. Supp. 2d 202, 210 (D. Mass. 2004) (citing 15 U.S.C. § 1640(e)).  It appears that plaintiffs' TILA claims are premised on conduct that occurred at the time of closing in December 2006.  The limitations period for those claims therefore expired no later than December 2007, unless tolled.

Once again, plaintiffs have failed to establish that equitable estoppel or equitable tolling should apply, and make only implausible and conclusory allegations in support of those claims. (*See* Am. Compl. ¶ 222 (b)-(c)).  Plaintiffs' TILA claims are therefore time-barred.

### I.    Slander of Title (Count Eight)

Count Eight alleges a slander of title claim against all defendants.  It appears that this claim is premised on three separate instances of alleged slander.  First, according to the

---

[11] Although the complaint is not clear, it appears that the alleged forgery concerned plaintiffs' signatures on the adjustable rate rider and prepayment rider that accompanied the mortgage.  (Am. Compl. ¶ 65).

complaint, plaintiffs' title was slandered when the allegedly void mortgage was recorded on February 7, 2007.  (Am. Compl. ¶ 226).  Second, according to the complaint, their title was again slandered when the first assignment of the mortgage was recorded on May 7, 2009.  (*Id.* ¶ 28). Third, according to the complaint, their title was once again slandered when the second assignment of the mortgage was recorded on July 18, 2011.  (*Id.* ¶ 235).  Under Massachusetts law, the tort of slander of title is subject to a three-year limitations period.  *See RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 531 (1st Cir. 2016) (citing Mass. Gen. Laws ch. 260, § 4). Therefore, even taking the date of the most recent allegedly slanderous recording, the limitations period expired no later than July 2014.  Count Eight is therefore time-barred, unless tolled.

Yet again, plaintiffs have failed to establish that equitable estoppel or equitable tolling should apply.  Plaintiffs simply repeat their allegations as to those issues, and again those allegations are implausible and conclusory.  Accordingly, plaintiffs' claims for slander of title are time-barred.

### J.      Fraud (Count Nine)

Count Nine alleges that defendants APEX, American Brokers Conduit, Fidelity Title Company, Fidelity Financial, Fidelity Title Group, and MERS fraudulently concealed from plaintiffs the fact that American Brokers Conduit was not an incorporated entity and was not licensed to do business in any state.  (Am. Compl. ¶ 254(a)-(f)).  The complaint also alleges that defendant Deutsche Bank fraudulently concealed the fact that the trust to which the mortgage was assigned was "closed" and therefore could not accept the assignment.  (*Id.* ¶ 254(g)).  It further alleges that AHMSI, Homeward, and Ocwen all knew that the note was void yet concealed that fact from plaintiffs and attempted to collect on the allegedly void note.  (*Id.* ¶ 254(h)).

It is unclear whether this is an independent fraud claim or an argument in support of tolling the limitations period applicable to plaintiffs' other claims.  Presumably, plaintiffs are claiming, at least in part, that they were fraudulently induced to enter into the loan transaction on December 21, 2006.  Any subsequent fraudulent concealment would not appear to be independently actionable, but might "toll[] the statute of limitations [period] if 'the wrongdoer . . . concealed the existence of a cause of action through some affirmative act done with intent to deceive.'"  *Harry v. Countrywide Home Loans Inc.*, 2016 WL 7013451 at *5 (D. Mass. 2016) (quoting *Abdallah*, 752 F.3d at 119-20) (last alteration original).[12]  As has already been discussed, plaintiffs were on inquiry notice as to the claim of fraud at the time the loan closed, and tolling the applicable limitations period is not appropriate in this case.

To the extent that the complaint asserts an independent claim of fraud, that claim is facially time-barred.  Under Massachusetts law, the claims for fraud is subject to a three-year limitations period.  *Stolzoff v. Waste Sys. Int'l, Inc.*, 58 Mass. App. Ct. 747, 755 (2003).  Fraud claims accrue "at the time a plaintiff learns or reasonably should have learned of the misrepresentation."  *Kent v. Dupree*, 13 Mass. App. Ct. 44, 47 (1982).  As to defendants APEX, American Brokers Conduit, Fidelity Title Company, Fidelity Financial, Fidelity Title Group, and MERS, the fraud claim is based on their failure to disclose that American Brokers Conduit was, allegedly, not an incorporated entity licensed to do business.  Plaintiffs were put on notice regarding the identity of the lender at the December 21, 2006 closing.  The HUD-1A that plaintiffs received at closing on December 21, 2006, stated that American Brokers Conduit was the lender.  (Am. Compl. ¶ 36).  However, according to the complaint, the TIL disclosure

---

[12] The plaintiffs in *Harry v. Countrywide Home Loans Inc.* appear to be different from the plaintiffs in this action.  However, the same attorney represented the plaintiffs in that action, and the dispute there involved a very similar mortgage dispute involving a property in Mashpee, Massachusetts.  It is unclear whether there is any relationship between the plaintiffs in these two cases.

statement they received stated that APEX was the lender.  (*Id.* ¶30).  Plaintiffs were therefore put

on inquiry notice regarding the identity of their lender in December 2006.  *See Szymanski v.*

*Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002) (stating that plaintiff may be put on

inquiry notice of claim when he is informed of facts that would suggest to reasonably prudent

person in his position that he has been injured).  Thus, plaintiffs' fraud claims against APEX,

American Brokers Conduit, Fidelity Title Company, Fidelity Financial, Fidelity Title Group, and

MERS expired no later than December 2009, unless tolled.

The fraud claim against Deutsche Bank is premised on the May 1, 2009 assignment to

Deutsche Bank.  According to the complaint, it appears that documentation concerning the trust

to which the mortgage was assigned was recorded in the Barnstable County Registry of Deeds on

May 7, 2009, and therefore publicly available at that time.  (Am. Compl. ¶ 76).  In any event, the

complaint does not allege that the assignment to Deutsche Bank induced plaintiffs to act, or to

refrain from acting, in any material way.

Finally, the fraud claims against AHMSI, Homeward, and Ocwen are premised on their

attempts to collect on what they allegedly knew was a void note, while failing to disclose that

fact to plaintiffs.[13]  According to the complaint, AHMSI attempted to collect on the note from

November 2008 through June 2012; Homeward Residential attempted to collect on the note from

June 2012 through October 2012; and Ocwen attempted to collect on the note from February

2015 through January 2016.  (Am. Compl. ¶¶ 88-92, 115, 117-18, 122).  The three-year

limitations period has thus expired, unless tolled, as to all defendants except Ocwen, and as with

---

[13] The complaint does not appear to allege a fraud claim against Deutsche Bank based on its foreclosure attempts.  However, to the extent that it does, those claims are time-barred.  According to the complaint, Deutsche Bank attempted to foreclose on plaintiffs' property in satisfaction of their debt in 2009, 2010, and 2011.  (Am. Compl. ¶¶ 94-104).  The three-year limitations period on any fraud claim arising out of that conduct has therefore expired.

virtually all claims in the complaint, plaintiffs have failed to allege a plausible bases why

equitable estoppel or equitable tolling should apply.  (*See* Am. Compl. ¶ 256 (b)-(c)).

The fraud claim against Ocwen, while timely, fails to state a claim upon which relief can

be granted.  To state a claim for fraud, the complaint must allege:  "(1) a false representation of

material fact, (2) with knowledge of its falsity, (3) for the purpose of inducing the plaintiffs to act

on this representation, (4) that the plaintiffs reasonably relied on the representation as true, and

(5) that they acted upon it to their damage."  *Commonwealth v. Lucas*, 472 Mass. 387, 394

(2015) (internal quotation marks omitted).[14]  Pursuant to Fed. R. Civ. P. 9(b), allegations of fraud

must be pleaded with particularity.  *See Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985).

Even assuming that the complaint alleged a false representation made with the requisite

knowledge and intent with sufficient particularity to satisfy the heightened pleading requirements

of Rule 9(b), it does not allege the kind of reliance and damage that can give rise to a fraud

claim.  *See Sovereign Bank v. Sturgis*, 863 F. Supp. 2d. 75, 85-86 (D. Mass. 2012) (dismissing

fraud claim for, among other things, failure to allege detriment).  The complaint alleges that

plaintiffs suffered injuries in the form of multiple foreclosure attempts, a reduction in their credit

rating, and Karen's hospitalization due the stress of the threatened foreclosure.  (Am. Compl. ¶

254).  The complaint does not, however, allege that plaintiffs acted in any way in detrimental

reliance on Ocwen's alleged misrepresentation.  It appears that plaintiffs simply continued to live

---

[14] It appears plaintiff's fraud claim is based on a failure to disclose rather than a direct misrepresentation. The complaint alleges that Ocwen "chose to try and elicit money from the Plaintiffs knowing that all of the paperwork for the alleged void note and void alleged mortgage and assignments were fraudulent and didn't exist" and "hid this fact from the Plaintiffs." (Am. Cmpl. ¶ 254(h)).  A failure to disclose may constitute a misrepresentation where the defendant has a preexisting duty to disclose certain information, *see Greenery Rehab. Group, Inc. v. Antaramian*, 36 Mass. App. Ct. 73, 77-78 (1994), or where disclosure is necessary to correct what would otherwise be a materially misleading statement, *see Nei v. Boston Survey Consultants, Inc.*, 388 Mass. 320, 322-23 (1983).  For the purposes of deciding this motion to dismiss, the Court will assume that Ocwen's statement of its intent to foreclose could constitute a materially misleading statement—if, as plaintiffs allege, it did in fact know that it did not have the legal authority to foreclose—such that a duty to disclose the alleged defects in the note and mortgage was triggered.

in their home without making any mortgage payments.  Furthermore, plaintiffs' alleged injuries appear to result from their own failure, since 2008, to make payments on their mortgage, not from any actions they took (or failed to take) in reliance on Ocwen's representations about its intent to foreclose.

### K.   Rescission and Quiet Title (Count Ten)

In Count Ten, plaintiffs seek to exercise a right of rescission under TILA.  TILA provides borrowers with the right to rescind mortgage transactions until midnight of the third business day following closing or the delivery of the information and rescission forms required by the statute, whichever is later.  15 U.S.C. § 1635(a).  The rescission period may be extended if the borrower did not receive adequate notice of the right to rescind; however, even if extended, that right "completely extinguishes" after three years from the closing of the transaction.  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998); 15 U.S.C. § 1635(f).  In order to exercise their right to rescind, borrowers must notify their creditor of their intent to do so.  15 U.S.C. § 1635(a).

According to the complaint, plaintiffs mailed their TILA rescission notice to all defendants on March 20, 2015.  However, because their mortgage transaction closed on December 21, 2006, their right to rescind had "completely extinguishe[d]" no later than December 21, 2009.  *Beach*, 523 U.S. at 412.  Count Ten is therefore time-barred unless tolled, and again the complaint does not allege a plausible basis for the application of equitable estoppel or equitable tolling.  (*See* Am. Compl. ¶ 271 (b)-(c)).  Count Ten will therefore be dismissed.

### L.   Absence of Standing to Foreclose (Count Eleven)

Count Eleven alleges that none of the defendants have standing to collect money from plaintiffs or foreclose on their property because the documents associated with their mortgage are all invalid.  (Am. Compl. ¶ 273).  Because that count does not assert any independent cause

of action, it will be dismissed.

## IV.   <u>Conclusion</u>

For the foregoing reasons:

A.  Defendants American Home Mortgage Servicing, Inc., Deutsche Bank National Trust Company, Homeward Residential, Mortgage Electronic Registration Systems, Inc., and Ocwen Loan Servicing, LLC's motion to dismiss (Docket No. 53) is GRANTED in part and DENIED in part.  All claims against those defendants are dismissed for failure to state a claim upon which relief can be granted except for the claim in Count Four as to defendant Ocwen Loan Servicing, LLC.

B.  Defendants Fidelity National Financial, Inc., Fidelity National Title Insurance Company, and Fidelity National Title Group, Inc.'s motion to dismiss (Docket No. 57) is GRANTED.

C.  Defendants American Home Mortgage Servicing, Inc., Deutsche Bank National Trust Company, Homeward Residential, Mortgage Electronic Registration Systems, Inc., and Ocwen Loan Servicing, LLC's motion to strike (Docket No. 89) is DENIED as moot.

**So Ordered.**


                                              /s/ F. Dennis Saylor
                                              F. Dennis Saylor IV
Dated:  January 12, 2017                      United States District Judge