**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**


HARRY et al,                     * CIVIL NO. 1-16-CV-10895-FDS
    Plaintiff                 *
                              * BOSTON, MASSACHUSETTS
        v.                  * DECEMBER 20, 2017
                              *
OCWEN LOAN SERVICING, LLC,        *
    Defendant                 *
* * * * * * * * * * * * * * * *

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
For the Plaintiff:    Tina L. Sherwood, Esquire
                        Law Office of Tina L. Sherwood
                        17 Main Street
                        Hopkinton, MA 01748
                        617-930-3533
                        tinasherwood@verizon.net


For the Defendant:    Samuel C. Bodurtha, Esquire
                        Hinshaw & Culbertson LLP
                        28 State Street
                        24th Floor
                        Boston, MA 02109
                        617-213-7000
                        sbodurtha@hinshawlaw.com


Court Reporter:

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1 | COURT CALLED INTO SESSION

2 | (9:45:35 A.M.)

3 |       THE CLERK:  ...Wednesday, December 20, 2017, and

4 | we're on the record in Civil Case No. 16-10895, Timothy

5 | Harry et al verse Ocwen Loan Servicing, LLC, the Honorable

6 | M. Page Kelley presiding.

7 |       Could counsel please identify themselves for the

8 | record?

9 |       MS. SHERWOOD:  Good morning, Your Honor.  Tina

10 | Sherwood for the plaintiffs.

11 |       THE COURT:  Okay.  Good morning, Ms. Sherwood.

12 |       MR. BEDERTHA:  Good morning, Your Honor.  Sam

13 | Bedertha on behalf of the defendant, Ocwen Loan Servicing.

14 |       THE COURT:  Okay.  Good morning.  So we have a few

15 | outstanding motions, and I just want to do a little

16 | housekeeping first.

17 |       So number 152 that was the motion to compel that

18 | was from so long ago, we still have a little gavel next to

19 | it.  I do think I ruled on it on the docket, and I'm just

20 | going to say that that motion was allowed as, stated in

21 | court.  And that's just -- it's really my fault we didn't

22 | clear that up on the docket when we had that hearing.

23 |       So we have a series of motions to quash subpoenas,

24 | and I'll just tell you to kind of cut to the chase.  What my

25 | thinking is --

3

1          I've read the parties' submissions very carefully

2 -- and my whole staff has, actually.

3          So I think what I would be inclined to do -- and

4 I'm happy to hear you on this -- is to deny the motion to

5 quash the two government agency subpoenas.  Because it's my

6 understanding that, as these motions have evolved, the

7 agencies -- the AG's office and the Division of Banks -- are

8 not going to produce privileged material.  And that's fine

9 with the plaintiff, so I don't think a protective order is

10 in order.  It seems to me they're only going to produce

11 things that are a matter of public record anyway.

12          And I would quash the subpoena to Amber Wilson

13 simply because I think it's pretty farfetched, given her

14 affidavit, that she has information that's relevant.  The

15 fact that she says on her Facebook that she -- part of her

16 job was to create documents, I think her affidavit clears up

17 that she wasn't fabricating documents or forging documents.

18 And I just think that's pretty far out there.

19          So, I'll hear either side, and I'm happy to hear

20 you for as long as you want to talk.  So who wants to jump

21 in?

22          MR. BEDERTHA:  I'm happy to, Your Honor, since

23 they're my motions.

24          THE COURT:  Okay.

25          MR. BEDERTHA:  Again, Sam Bedertha on behalf of

4

1 Ocwen Loan Servicing.  I just want to --

2          So I understand what the Court's inclinations are.

3 My understanding of the attorney general subpoena -- and

4 that's motion to quash doc. 171 -- is that everything they

5 have is deemed confidential and privileged under

6 Massachusetts law.  Their CID investigation, which is what

7 plaintiffs is seeking, by law is deemed to be confidential

8 and privileged and would only be produced in the event that

9 the attorney general is involved in some kind of collateral

10 piece of litigation.

11          So if the Court is going to quash the subpoena to

12 the extent that it seeks privileged materials, as I

13 understand it --

14          And I will admit I'm not on the forefront of the

15 Mass. AG's case with Ocwen.  That's an entirely different

16 law firm.

17          But from what I have heard and understood to be

18 the case, those CID documents are not to be produced.

19 They're privileged.  They're confidential as between both

20 Ocwen Loan Servicing and the Commonwealth.  I can't speak

21 for Plaintiffs' counsel and the extent to which she has

22 communicated with the AG.

23          And I understand the Court's inclination.  All

24 that I would add in support of my client's motion is that

25 the AG's investigation under the CID does not in any way

5

1 involve Ocwen's debt collection practices.

2          And this lawsuit specifically involves an FDCPA

3 claim.  So beyond the privilege, there is the question of

4 whether the request is unduly burdensome on the party --

5          THE COURT:  So but what is your standing to claim

6 that it's unduly burdensome to some agency which has told

7 Plaintiff we'll provide you with a subset of these

8 documents?

9          MR. BEDERTHA:  Right.  And I think that's where

10 it's instructive to understand Rule 45 and deciding case

11 law.  Because the prime, number-one factor for determining

12 whether a subpoena is unduly burdensome is relevance.  The

13 discovery sought has got to be --

14          THE COURT:  But shouldn't the AG be saying this is

15 unduly burdensome?

16          MR. BEDERTHA:  I believe under the circumstances

17 that given that this is an investigation between the AG and

18 Ocwen Loan Servicing, -- these are the two parties to that

19 CID -- Ocwen ought to be able to come to court and say to

20 the Court, "These materials are not relevant to this

21 litigation."

22          And more importantly, --

23          THE COURT:  So you're saying that your client has

24 some sort of privacy interest in those; not that it's unduly

25 burdensome --

6

1          MR. BEDERTHA:  No.  No, I'm not --

2          THE COURT:  -- to be produced --

3          MR. BEDERTHA:  I'm not suggesting that we have --

4          Well, I am suggesting, first, that CID documents

5   under Massachusetts law in the terms of the Massachusetts

6   statute are privileged and confidential and not to be

7   disclosed.

8          What I'm suggesting to the Court under the unduly

9   burdensome test is that relevancy of the discovery is the

10  prime factor for consideration of whether the subpoena

11  causes an undue burden.  And if we are to look at the

12  relevancy of the request on the face of the subpoena alone,

13  there is no indication that any of the records sought to be

14  relevant to this case.  They're not limited to fair debt

15  collection practices claims.  They're not limited to these

16  particular borrowers.

17         And under our amended Federal Rules Of Civil

18  Procedure in 2015 we've shifted away from reasonably

19  calculated to lead to the discovery of admissible evidence,

20  and we've moved towards a more conservative standard of it's

21  got to be relevant and it's got to be proportional to the

22  needs of the case.

23         THE COURT:  But I still do not understand what

24  standing you have to complain that a subpoena they're

25  sending to a third party, a government agency, is unduly

1 burdensome.

2          MR. BEDERTHA:  Well, I think if you consider the

3 word "unduly burdensome," no, it's not a burden on us.

4          But if you consider how courts have interpreted

5 what it means to be unduly burdensome, then certainly Ocwen

6 Loan Servicing, as a defendant in this case and someone who

7 is going to have to raise issue with this particular

8 discovery, should have the opportunity to come to the Court

9 and say look at the face of the subpoena.

10          THE COURT:  So let's just say they did a FOIA

11 request for it.

12          MR. BEDERTHA:  Of course.

13          THE COURT:  Could you object to that?

14          MR. BEDERTHA:  No.  No, we couldn't.

15          And if they went to the Massachusetts AG and said,

16 hey, can we have this information, and the AG gives it to

17 them, "Of course," there's nothing we can do about that.  I

18 suppose we could file some kind of omnibus lawsuit to try to

19 quash or a protective order.

20          THE COURT:  So what difference does it make if

21 they're using a subpoena?  What's that to you?

22          MR. BEDERTHA:  Because it's within the confines of

23 the litigation, because my client is specifically a party to

24 that CID, and my client ought to be able to raise to the

25 Court the question of relevancy.

8

1          That's relevancy.  That's the real issue with all

2   three of these subpoenas.  The question is whether this

3   discovery sought is actually relevant; and more importantly,

4   are there other means through which the plaintiff could have

5   and should have attempted to obtain whatever relevant

6   discovery they seek to get from the Massachusetts attorney

7   general; from the Massachusetts Division of Banks; and

8   thirdly, from Amber Wilson.  That's the objection that Ocwen

9   has raised.

10          I understand the Court's position.  I think it's

11   well taken.  But I do think on review of Rule 45, if we're

12   going to have some kind of determination as to whether there

13   is relevancy, then it's incumbent upon the plaintiffs to at

14   least inform the AG, the Division of Banks and Ocwen the

15   particular relevancy of the information sought to this case.

16   And if they are pushed to that issue, Your Honor, I would

17   submit that they can't tell you how or why it's relevant to

18   this particular case and to their FDCPA claim against Ocwen.

19          What they will tell you through their opposition

20   and their filing papers is they've heard all of these

21   terrible things and bad acts about Ocwen.  They've read this

22   in the news.  They fill their papers full of that, and

23   they're saying to the Court look at all the terrible things

24   that are alleged that Ocwen has done.  The plaintiffs ought

25   to be able to discover all of these terrible things and

1  bring them over to court here for use in this case.

2           But that doesn't meet the discovery standard.

3  That's not what the discovery rules allow for.  They allow

4  for relevant evidence proportional to the needs of the case.

5  And without such determination, there's no reason why the

6  discovery should be had in the first place.

7           THE COURT:  Okay.  So what's the relevancy, Ms.

8  Sherwood?

9           MS. SHERWOOD:  Thank you, Your Honor.  The

10 relevancy is that there's a three-prong test under the FDCPA

11 that we are trying to prove.  It is not just limited to loan

12 servicing and collection of debt; it goes also the third

13 prong under the FDCPA, goes to the business practices in

14 accomplishing those goals.

15          The business practices is what has been under

16 investigation by the banking commission and by the attorney

17 general -- the Attorney General's Office.  The banking

18 commission has issued a cease and desist order based on

19 those fraudulent business practices.

20          My client has been subject to fraud, and it has

21 come out in testimony.  And it is all over our amended

22 complaint; therefore, fraudulent business practices in

23 servicing my client's loans are very, very important.

24          THE COURT:  So what did the people at the AG's

25 office say to you about your subpoena?

1           MS. SHERWOOD:  They said that they would try to

2   work with me, to the extent they could, without disclosing

3   any information they received from Ocwen that is privileged,

4   and the banking commissioner said the same thing.  Neither

5   one said to me the subpoena is unduly burdensome.  In fact,

6   they seemed kind of used to getting them.

7           THE COURT:  And what was the attorney general's

8   position about the fact that -- the point that defendant's

9   counsel raises with regard to nothing being public record?

10          MS. SHERWOOD:  The Attorney General's Office said

11  they would not release anything that had not yet become

12  public record.  And that is due, in part, to the lawsuit

13  they filed in April.  They don't want that information out

14  yet.

15          THE COURT:  And so what's your understanding as to

16  the information that they were going to give you?

17          MS. SHERWOOD:  Before these motions to quash I was

18  ready to go to the next step to see if I could have a look

19  at the information they have and a discussion as to what we

20  could use.  Because defendant said that there are other ways

21  for us to get discovery, but as this Court knows, we have

22  not received any discovery.  We have tried to work with

23  defendant to get documentation, to have answers to

24  interrogatories.  They're not coming up, and that's why we

25  went to the banking commission and the Attorney General's

1  Office, because clearly Ocwen had to comply with their

2  discovery requests.  Plaintiffs don't have power of the

3  banking commission or the Attorney General's Office.  And we

4  do know that information is confidential.

5            We do not know and did not know until we asked the

6  question how they could help us.  They both shared with us

7  that we have another avenue to go in the legal spectrum of

8  discovery that we can pursue if we want after they're done

9  with their compliance --

10            THE COURT:  I'm sorry.  What do you mean by that?

11            MS. SHERWOOD:  After they're done with what they

12  can do within the confines of the subpoena.

13            THE COURT:  And then what?

14            MS. SHERWOOD:  That I can then push for open --

15  having the files opened if I want to.

16            THE COURT:  What files are those?

17            MS. SHERWOOD:  The discovery files that they have

18  from Ocwen that led to the latest lawsuit from the attorney

19  general against Ocwen that was filed in April, and the

20  discovery they've received -- the banking commission

21  received in leading up to their cease and desist order.

22            But right now the way my subpoena is written, I

23  cannot look at any of those documents, and the AG's office

24  was checking to see if all of the documents they have on

25  Ocwen fall under the confidentiality rules.

12

1          THE COURT:  So you don't know right now if the

2  AG's office would give you any documents.  They're looking

3  at what they have to see is there some subset of documents

4  that they would allow you to look at?

5          MS. SHERWOOD:  Right, in accordance with a

6  subpoena.

7          THE COURT:  Okay.  And what about the banking

8  commission?  What did they say to you?

9          MS. SHERWOOD:  They said that some of their

10 documents are absolutely confidential, but I can petition

11 the Court to have them opened to be looked at.  And they are

12 providing other documents to me that are not confidential

13 that have been filed against Ocwen.  I have not had a chance

14 to go through those yet.

15         THE COURT:  Okay.  So I think what I'm going to do

16 at this point is deny the motions to quash.  So that would

17 be number 170 and 178 from the AG's office.

18         I'm dening the motions to quash documents from the

19 AG's office and from the Mass. Division of Banks.

20         And what I'm going to say to you is if you are

21 going to receive any documents from the attorney general --

22         Which I understand you don't know yet if you are;

23 right?

24         MS. SHERWOOD:  That is correct.

25         THE COURT:  Okay.  If you are, the documents that

1 you do receive you may review them to see if they're

2 relevant to this case, and I want you to keep those private.

3          MS. SHERWOOD:  Thank you, Your Honor.  I promise.

4          THE COURT:  Okay.  So those are for attorney's

5 eyes only.

6          And if you decide that they're relevant and you

7 want to share them with your clients or use them in some

8 way, then we will deal with how you do that.

9          So I'm allowing you to go forward with the

10 subpoena.  Whatever it is they give you, I'm going to count

11 on the agency to obey the law concerning what it's able to

12 give you and what it's not able to give you.  And if you

13 receive documents, attorney's eyes only until you petition

14 the Court to use them.

15          MS. SHERWOOD:  Thank you.

16          THE COURT:  And we'll deal with it at that time.

17          Yes, sir?

18          MR. BEDERTHA:  May I suggest that to the extent to

19 which Plaintiffs' counsel receives those documents, that we

20 are permitted to receive and review those documents in

21 camera?  It would not be part of discovery, but would at

22 least be provided to us as well, given that we're a party to

23 this suit.

24          THE COURT:  Well, sure.  Although, if she is going

25 to their office and looking through materials to see what is

1 relevant and what isn't, I'm not going to force her to hand

2 over to you everything she looks at.  But if she finds

3 something that she thinks is relevant and wants to use,

4 absolutely she's going to need to share it with you and then

5 ask the Court to use it, and you can raise an objection at

6 that time.

7        MR. BEDERTHA:  Well, why -- but if she goes to the

8 Attorney General's Office and sits down and looks at a whole

9 bunch of documents and decides there are things that she

10 wants to use and things that she doesn't want to use, why

11 wouldn't we have the opportunity to see the things that she

12 decides she doesn't want to use?

13        MR. BEDERTHA:  Well, you're welcome to go and look

14 at the documents too, but I'm not going to put the onus on

15 her as she's trying to look through a bunch of documents to

16 see what's relevant and what isn't to copy every single

17 document she looks at and provide it to you.  No, I'm not

18 going to do that.

19        MR. BEDERTHA:  So then the mechanism for once

20 she's looked at these documents, she would come back to the

21 Court and propose that this set of documents would be

22 relevant to the litigation?  Is that your intention?

23        THE COURT:  Yes.  I mean, I'm presuming the

24 Attorney General's Office is going to follow the law with

25 regard to privileged documents or not.  And it's not up to

1 me to just shut the door to the Attorney General's Office

2 because some of those documents may be privileged.  So I

3 think we can deal with that down the road if she finds

4 something that is relevant.

5          MR. BEDERTHA:  Okay.

6          THE COURT:  I mean, you're welcome to go too and

7 look at everything they have.  But I'm not going to put a --

8          I mean, I think she has a right to see what

9 they're able to show her and see if there's something she

10 can use in this litigation.

11          MR. BEDERTHA:  Understood.

12          THE COURT:  And the same with the Mass. Division

13 of Banks.  Okay?

14          MS. SHERWOOD:  Thank you, Your Honor.

15          THE COURT:  Now, just explain to me why is it

16 necessary for you to question Amber Wilson, to depose her?

17          MS. SHERWOOD:  Your Honor, the reason this

18 employee -- former employee we want to depose is because of

19 her job description, how she posted it on social media.

20          And I did hear your words, Your Honor.  And I'm

21 very concerned about the affidavit she signed, because I'm

22 concerned about how much influence she had from Defendant's

23 counsel as to what Defendant wanted her to clean up in how

24 she viewed her job.

25          We do know that documents have been forged, and

1 this employee in her own words of how she viewed her job is

2 what prompted us to say we already know there are forged

3 documents out there.  My clients testified at their

4 deposition they had forged signatures on documents.  We know

5 that another application was forged.

6         Why we want to interview Amber Wilson is she has

7 come out on social media saying she created documents.  If I

8 interview her and --

9         And I'm very concerned now about the deposition

10 because of the influence of Hinshaw --

11         THE COURT:  Well, if she testifies at the

12 deposition consistently with her affidavit, there's nothing

13 there.

14         MS. SHERWOOD:  Exactly.  But I want to hear it

15 from her own words.  I want to be able to ask her --

16         THE COURT:  Yeah --

17         MS. SHERWOOD:  -- questions about how she viewed

18 her job, how big was the department, what training did she

19 get.  Before this job she was working at Target, so now

20 she's doing title search?  What training did she get?  What

21 was she asked to look for?

22         THE COURT:  Since she had absolutely nothing to do

23 with your client's account --

24         MS. SHERWOOD:  I don't know that, though, Your

25 Honor.

1          THE COURT:  Well that's what she has said.

2          MS. SHERWOOD:  I understand that.  But she has

3 said that after listening to Hinshaw.  After listening to

4 Hinshaw on the basis of the client Ocwen.

5          THE COURT:  Well, let me ask --

6          MS. SHERWOOD:  And I'm not saying she's lying, but

7 I'm saying it might be cleaned up or --

8          THE COURT:  Let me ask you this.  Have the

9 defendants made initial disclosures in this case?

10          MR. BEDERTHA:  Yes, Your Honor, we have.

11          MS. SHERWOOD:  Yes.

12          THE COURT:  Okay.  And did they tell you who is

13 the author of these three letters that figure largely in the

14 case?

15          MS. SHERWOOD:  They're not letters, Your Honor.

16 One of them is actually a foreclosure notice that Ocwen has

17 engaged in with Deutsche Bank.

18          THE COURT:  So do you know everything you need to

19 about how those documents were generated?

20          MS. SHERWOOD:  No, ma'am, I don't, because, Your

21 Honor, defendant hasn't complied with our discovery

22 requests.

23          MR. BEDERTHA:  Your Honor, that's --

24          MS. SHERWOOD:  I've received nothing.

25          MR. BEDERTHA:  -- just not true.

18

1          MS. SHERWOOD:  It is true.

2          MR. BEDERTHA:  I'm sorry to interrupt.

3          THE COURT:  Okay.

4          MR. BEDERTHA:  It's not true.

5          THE COURT:  Well, to me, the fact that you're

6  going on social media and kind of scouring the Internet for

7  an employee who is utterly unrelated to the servicing of

8  your loan or the origination of your loan, and based on I

9  think an inartfully-worded phrase she put on social media

10 that she created documents, you've latched on to that, and

11 then that becomes the keystone of your case.  To me, it just

12 is clear you don't have enough information about your case.

13          So do you have all the information about the

14 servicing of your loan that you've requested?

15          MS. SHERWOOD:  No.

16          THE COURT:  What information do you not have that

17 you would like to have about the servicing of your loan?

18          MS. SHERWOOD:  One of the things I would like to

19 have are emails related to my plaintiffs regarding internal

20 communications from Ocwen Loan Servicing regarding the

21 intent and the thought process behind how my clients were

22 treated.  I've asked for those emails.  It's been deemed

23 burdensome on Ocwen to produce them.

24          THE COURT:  So --

25          MS. SHERWOOD:  I've asked for the minutes --

1          I'm sorry, Your Honor.

2          THE COURT:  Excuse me.  Is there a way to just run

3 these people's names through your email?

4          MR. BEDERTHA:  Your Honor, the easiest way to

5 complete this line of questioning discovery is to conduct a

6 deposition of an Ocwen loan representative, which we've

7 suggested to Ms. Sherwood on numerous occasions.

8          THE COURT:  Okay, but --

9          MR. BEDERTHA:  And we've offered to bring a

10 representative to the jurisdiction so that Ms. Sherwood

11 could ask all of the questions that you would normally ask

12 in an FDCPA case.

13          THE COURT:  Okay.

14          MR. BEDERTHA:  And Ms. Sherwood has flat out

15 ignored that request and instead --

16          THE COURT:  Well, I don't think she's ignored it,

17 but I think Ms. Sherwood --

18          MR. BEDERTHA:  No, she --

19          But, Your Honor, she has.

20          MS. SHERWOOD:  No, I have not.

21          THE COURT:  Okay.  But Ms. Sherwood, your position

22 is you need more discovery before you do the deposition.

23          MS. SHERWOOD:  Exactly.

24          THE COURT:  Okay.  Here's what I would like to

25 propose.  How about they provide someone --

1          Is it just a generic person, or is it someone who

2 actually worked on this loan?

3          MR. BEDERTHA:  That we would provide?

4          THE COURT:  Yeah.

5          MR. BEDERTHA:  Well, under Rule 30 Ms. Sherwood

6 would give us topics that she wants testimony for, and we

7 would designate a witness who would come and testify in

8 response to the questions that she would have in this case.

9          THE COURT:  Okay.

10          MR. BEDERTHA:  And quite pointedly, there are

11 three letters.  There are three letters they claim is FDCPA

12 violations.

13          MS. SHERWOOD:  No, that's not true.

14          THE COURT:  Well, I will say I think you're both

15 right about the three letters to some extent.  You know,

16 it's not just the three letters; it's the three letters in

17 context of the case.

18          MR. BEDERTHA:  I will concede that for the Court.

19          THE COURT:  Okay.

20          MR. BEDERTHA:  But here's the point.  The

21 allegations of the complaint are that American Brokers

22 Conduit did not exist or was not authorized to issue a loan

23 in the first place.

24          THE COURT:  Okay.

25          MR. BEDERTHA:  The allegations also demonstrate

1 that the plaintiffs received all the money in the loan.

2 They got the loan.  Everybody knows that.  The allegations

3 that they're making right now is that because American

4 Brokers Conduit did not exist when the loan was originated

5 or was not authorized to issue loans in the Commonwealth,

6 that their loan is somehow void, and because their loan is

7 void, Ocwen Loan Servicing engaged in FDCPA violations when

8 they sent three foreclosure notices to the plaintiffs.

9 That's the case.

10         Now, Plaintiffs apparently testified that those

11 aren't the signatures on their mortgage loan documents now,

12 and now, despite the fact that they're living on this

13 property and they got all this money, somehow this loan is

14 fraudulent.

15         But when you get right down to the meat of this

16 case, after Judge Saylor dismissed 11 out of 12 counts and

17 every other defendant to this case, we're talking about

18 three notices the plaintiffs received.  Those are the

19 operative notices.

20         And the question is whether the mortgage loan was

21 truly void.  And if it was void, did those notices violate

22 the FDCPA.  That's the case.  This case doesn't go beyond

23 that to what Ms. Sherwood is expecting to assume, because

24 you just can't fit it within the allegations and the cause

25 of action that remains.

22

1          Of course, this may all fit in to the other

2    causes of action, but Judge Saylor dismissed all those

3    causes of action.  What we're talking about --

4          And I realize Plaintiffs disagree with that

5    decision.  I understand that.

6          But for purposes of this case and in terms of

7    proportionality, we're talking about an FDCPA claim.

8          THE COURT:  Okay.

9          MS. SHERWOOD:  With all due respect, Your Honor,

10   if I may speak?

11         THE COURT:  Sure.

12         MS. SHERWOOD:  I would like the opportunity to

13   present my case; not the opportunity to have defendant

14   present my case for me.  Defendant can defend their own

15   case, but they cannot summarize all the goings on in this

16   case succinctly the way they want to and say that, Your

17   Honor, that's what the case is about.  That's what they want

18   the case to be about.  The case is much bigger than that,

19   and I am looking for the discovery to prove every single

20   element of the three prongs under the FDCPA; not just the

21   first two, which is all the defendant wants to talk about.

22         And yes, they want to bring a Koolaide-drinking

23   Ocwen employee up here, completely loyal to the company, and

24   have me put through a set of issues; when, if I had received

25   discovery and what I've been looking for, my issues might be

1 better, and they might be more inclusive.

2          THE COURT:  Yeah, I mean, I did look at some of

3 your requests, and I'll just say, for example, interrogatory

4 No. 1 -- "Who was in charge of the Department responsible

5 for forging documents?" -- that's not a good request.

6          MS. SHERWOOD:  That's fine, Your Honor.

7          THE COURT:  I mean --

8          MS. SHERWOOD:  But there are good requests in

9 there.

10          THE COURT:  Well, okay.  I mean, I think -- I

11 don't know how you're going to get the information you want

12 from the company without the company answering.  So to me --

13          MS. SHERWOOD:  But isn't that their job to answer?

14          THE COURT:  Well, yes.  But to me, the simplest

15 kky is to get -- have a 30(B) deposition with someone who

16 knows the company's policy, and you can ask that person have

17 there been other complaints of forgery, of people in your

18 company forging customer's signatures?  Has anyone ever --

19 have you gotten in trouble for that?  Has anyone ever

20 accused you of that, and what are those cases?

21          I mean, if you have -- provide them with a list

22 beforehand, and then you get -- and I'll say since you're

23 saying you don't have enough discovery --

24          MS. SHERWOOD:  I don't.

25          THE COURT:  -- to do that, then you can have two.

24

1          MS. SHERWOOD:  Thank you.

2          THE COURT:  Have one.  See what follow-up you

3 want.  And if you need to, you can file a motion and ask the

4 Court for a second 30(B) so you won't be at a disadvantage.

5          But, you know, I will say I've really studied

6 Judge Saylor's order.  And he is your judge here.  He's

7 going to be the one who conducts whatever trial you get to.

8          And I would really urge the parties to go to

9 mediation and see what you can do, because your clients --

10          You're working away hammer and tong at proving

11 that this big company has so many bad business practices, et

12 cetera.  But you may well get to trial, and Judge Saylor

13 just narrows you right down to this case.  You're in danger

14 of that.

15          And I would really talk to your clients about, you

16 know, seeing is there a way out of this case without

17 expending a lot more resources on both sides where they get

18 to keep their home and they can get a good deal on it and

19 move forward.  Because you've worked very hard on the case,

20 and you're in a pretty good position right now.

21          So I mean, you may sit for hours and hours at the

22 AG's office and find a lot of stuff about the company that

23 in the end just doesn't come in at your case, because I do

24 get a sense from Judge Saylor's order -- I have not spoken

25 to him at all about the case.  But just looking at his order

1  and what you can glean from it, that he's kind of narrowing

2  things down to a pretty -- not quite as narrow as defense

3  counsel would have it, but a pretty narrow dispute.

4          MS. SHERWOOD:  I understand that, Your Honor.  I'm

5  just trying to be prepared for all aspects of the

6  three-prong test.

7          THE COURT:  Sure.  Well, I think, you know, you

8  may want to do the deposition and see what further discovery

9  you can ask for and then reassess.  And I think I am --

10          I get confused, because I have quite a few cases

11  right now.  But I think I'm in control of your schedule

12  here?  I don't know.  Did I set the dates here?

13          MR. BEDERTHA:  I'm not sure that --

14          MS. SHERWOOD:  Judge Saylor has set another

15  discovery --

16          THE COURT:  Okay.

17          MS. SHERWOOD:  -- date for January 8.

18          MR. BEDERTHA:  There's another scheduling

19  conference that was --

20          THE COURT:  Oh, right.

21          MR. BEDERTHA:  -- sort of tied to Your Honor's

22  hearing the last time.

23          THE COURT:  I see.  Well --

24          MR. BEDERTHA:  So he's got another one in January.

25          THE COURT:  If you want me to --

26

1            If you don't want me to, I won't.  If you want me

2 to, I will contact him and ask him to take that off and let

3 you do a little more discovery practice here.  And then I'm

4 happy to give the parties whatever time they want to go to

5 mediation.  You know, it might take a couple weeks to get

6 things in order, get there.  You can pick -- if you wanted

7 to do it here in court, you have to pay for your own time of

8 course, but it's otherwise free.  You can pick any

9 magistrate judge you want and try to hammer something out

10 before you expend a lot more money.

11            MR. BEDERTHA:  I would prefer to keep Judge

12 Saylor's conference on in January.

13            THE COURT:  Okay.

14            MR. BEDERTHA:  I think what one of the -- one of

15 the issues in this case for us is that we've completed all

16 the discovery that we need.  And I understand Plaintiffs'

17 counsel's frustration, but I want to keep this case on a

18 tight schedule in terms of what additional discovery may be

19 out there or may be needed before we close discovery and can

20 move to dispositive motions.  So if it's acceptable to the

21 Court, we'd just as soon meet the terms of Judge Saylor's

22 order.

23            Certainly Ms. Sherwood and I will update the Court

24 -- and you can, as well -- on what happened here and on what

25 additional discovery may take place.

1           THE COURT:  Okay.  Well --

2           MS. SHERWOOD:  The plaintiffs are going to need

3  additional time to do the 30(B), to be able to have the

4  deposition, to be able to look through documents they're

5  requesting with the 30(B), to determine whether or not we

6  need another 30(B) to narrow down.

7           THE COURT:  Okay.  Well, I think I will not --

8           I mean, I'm not going to try to influence Judge

9  Saylor on the schedule, but I'll put in the docket entry for

10 today that I suggested this in lieu of more paper discovery

11 that you do the 30(B), and I give you the option to do a

12 second one, and so he'll be able to see that.

13          So just so the record is clear, Number 170 motion

14 to quash the AG's office subpoena is denied.

15          172 is denied; although, I have really issued a

16 protective order of sorts, and I'll put that on the docket.

17          173 is allowed.

18          And 178 is denied.

19          And I'm going to deny both parties' motions for

20 sanctions at this time.  That would be 191 and 198.

21          So, wow.  Good luck.

22          MR. BEDERTHA:  Thank you, Your Honor.

23          THE COURT:  And anything further pertaining to

24 these motions you can call s. Moore.  If you want to engage

25 in motions practice, that's fine.  But you could call

1 Kellyann Moore, and I'm happy to set up a phone conference

2 with you, and we can hash things out without having a long

3 period of time drag by and a lot of back and forth.

4          So in other words, as we're moving forward, if

5 there are questions about these motions that have been

6 referred to me or my order today, I'm happy to --

7          You can certainly engage in motions practice if

8 you want, but if you want to shortcircuit that, email Ms.

9 Moore, cc the other side, and I'll try to move quickly on it

10 and keep you rolling.  Okay?

11          MS. SHERWOOD:  Are you denying the obstruction of

12 justice, as well, or the influence of defendant counsel with

13 Amber Wilson?

14          THE COURT:  Yes, I'm denying that at this time.  I

15 am.  Okay.

16       (Court adjourned at 10:25:22 a.m.)

17

18

19

20

21

22

23

24

25

CERTIFICATION

1      I, Judy Bond, a court approved transcriber, certify

2 that the foregoing is a correct transcript from the official

3 electronic sound recording of the proceedings in the

4 above-entitled matter.

<br>
<br>

_____ January 9, 2018
Judy Bond