**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

TIMOTHY C. HARRY and KAREN C. HARRY,

*Plaintiffs*,

v.

AMERICAN BROKERS CONDUIT, APEX MORTGAGE SERVICES, FIDELITY NATIONAL TITLE GROUP, AMERICAN HOME MORTGAGE SERVICING, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2007-2 MORTGAGE-BACKED PASS-CERTIFICATES, SERIES 2007-2, HOMEWARD RESIDENTIAL, MORTGAGE ELECTRONIC RECORDING SYSTEM, INC., OCWEN LOAN SERVICING and KORDE & ASSOCIATES,

*Defendants*.

CIVIL ACTION NO. 16-10895

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT OCWEN LOAN SERVICING, LLC**

## I. INTRODUCTION

This Court has dismissed all but one of the Plaintiffs, Timothy and Karen Harry's ("Plaintiffs"), twelve counts in their Amended Complaint ("Amended Complaint"). Defendant Ocwen Loan Servicing, LLC ("Ocwen") is entitled to summary judgment on the last remaining count for violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), Count IV, because the undisputed facts of this case controvert Plaintiffs' erroneous allegation that their mortgage loan is void *ab initio*. Moreover, Plaintiffs fail to present any evidence to demonstrate that the particular correspondences at issue violated the FDCPA: no misrepresentation as to the

amount, character or legal status of the mortgage loan. Finally, Plaintiffs have failed to obtain or present any evidence to demonstrate that Ocwen used "unfair or unconscionable means" in collections and, as such, Plaintiffs cannot establish any violation of the FDCPA. Accordingly, with no genuine issues of material fact in this action, Ocwen is entitled to summary judgment.

## II.   UNDISPUTED MATERIAL FACTS[1]

### A.   Origination, Assignment, Servicing and Plaintiffs' Default on their Mortgage Loan.

On or about December 21, 2006, Plaintiffs executed an adjustable rate note ("Note") in favor of American Brokers Conduit ("American Brokers") in the original principal amount of $450,000.00. (*See* Statement of Material Facts in Support of Defendant's Motion for Summary Judgment ("SOF") ¶ 1.) Plaintiffs were both present for the closing, which took place at their home, on property located at 31 Marway, Mashpee, Massachusetts (the "Property"). (SOF ¶ 2.) Plaintiffs obtained this loan to refinance an existing mortgage loan on the Property. (SOF ¶ 3.) Plaintiffs' refinance secured a lower interest rate and a lower monthly payment. (SOF ¶ 4.) A portion of the refinance loan was used to pay off an existing mortgage loan that the Plaintiffs granted to Countrywide Home Loans, Inc. ("Countrywide Mortgage") in the principal amount of $428,000, and Plaintiffs also received approximately $12,000 cash-out as part of the transaction. (SOF ¶ 5.)[2] Plaintiffs used the funds received from the cash-out for home improvements. (SOF ¶ 7.) To secure their obligations under the Note, Plaintiffs also executed a mortgage dated December 21, 2006 in favor of American Brokers ("Mortgage," together with Note, "Loan"),

---

[1] As discussed above, eleven out of twelve counts in Plaintiffs' 141-page Amended Complaint were previously dismissed by this Court. As such, this Memorandum of Law addresses the facts that relate to the remaining FDCPA claim only, including the origination of the Loan, Plaintiffs' default and Ocwen's servicing of the Loan prior to foreclosure.

[2] On or about January 12, 2007, a discharge of the Countrywide Mortgage was recorded at the Barnstable County Registry of Deeds on Book 21691, Page 15, evidencing that the funds were received to pay off the existing mortgage and that the loan transaction with American Brokers was, indeed, valid. (SOF, ¶ 6.)

which was recorded on and encumbered the Plaintiffs' Property as a first and priority lien. (SOF ¶ 8.)

Plaintiffs made approximately twenty (20) payments on the mortgage loan before they stopped in or around October of 2008. (SOF ¶ 9.) Plaintiffs' last payment made on the Loan was October 1, 2008. (SOF ¶ 10.) Plaintiffs stopped making payments because they believed that they had been "duped" into entering into a predatory loan. (SOF ¶ 11.) Plaintiffs sought legal counsel because they believed the loan was predatory and they wanted help to get out of it. (SOF ¶ 12.)

On or about May 1, 2009, MERS assigned Plaintiffs' Mortgage to Deutsche Bank as Trustee ("Assignment"). (SOF ¶ 13.) On or about July 7, 2011, MERS executed a confirmatory assignment of the Mortgage to Deutsche Bank as Trustee ("Confirmatory Assignment"). (SOF ¶ 14.) Ocwen is the current servicer of Plaintiffs' Loan for Deutsche Bank as Trustee and has been servicing the Loan since March, 2013. (SOF ¶ 15.) Plaintiffs allege that Ocwen has continued to harass the Plaintiffs to pay on "a non-existent note and a non-existent mortgage" because Ocwen knew or should have known that American Broker was not a lender authorized to issue mortgage loans. (Amended Complaint, ¶¶ 181-88.)

Plaintiffs do not dispute that the previous mortgage loan held by Countrywide Mortgage was paid off from the funds from the loan transaction with American Brokers or that they received cash-out of approximately $12,000 that they used to make home improvements. (SOF, ¶ 16.) Moreover, Plaintiffs do not dispute they engaged in repeated requests for mortgage assistance including submission of multiple applications for loan modification throughout the lifetime of the Loan. (SOF ¶ 17.) In fact, Plaintiffs were offered loan modifications and other loss mitigation options to avoid foreclosure. (SOF ¶ 18.) Plaintiffs, however, failed to accept any

of the options offered and have admitted they only submitted the mortgage assistance applications to stall foreclosure. (SOF ¶ 19.)

Since Plaintiffs failed to accept any of the modification offers and remained in default on their Loan, Deutsche Bank as Trustee initiated and proceeded with foreclosure. (SOF ¶ 20.) On or about February 13, 2015, Ocwen sent Plaintiffs notice of intent to foreclose on the Property on behalf of Deutsche Bank as Trustee. (SOF ¶ 21.) On or about March 20, 2015, after receiving the notice of intent to foreclose, Plaintiffs sent Ocwen a notice of rescission under the Federal Truth in Lending Act ("TILA") alleging—for the first time—that the Loan was purportedly void and unenforceable because American Brokers was a "non-existent" entity unlicensed to conduct business in the Commonwealth of Massachusetts. (SOF ¶ 22.) Ocwen acknowledged receipt of the rescission notice by letter dated April 1, 2015. (SOF ¶ 23.)

**B. Plaintiffs Attempt to Void their Mortgage Loan by Challenge to American Brokers.**

The crux of Plaintiffs' Amended Complaint, and their remaining FDCPA claim, arises from an allegation that American Brokers was not incorporated as a legal entity or authorized to do business in Massachusetts as of the Loan closing date. (Amended Complaint, ¶¶ 181-88.) Based upon this allegation alone, Plaintiffs claim they were not doing business with American Brokers, because American Brokers could not provide the funds under the Note and instead were acting on behalf of a third party whose identity remains hidden. (*See id*.) According to Plaintiffs, since American Brokers was a "non-legal entity," and did not have authority to enter into a loan, Plaintiffs' Loan is "void *ab initio*." (*Id*.)

Contrary to Plaintiffs' allegation that American Brokers was a "non-legal entity," American Brokers Conduit is a subsidiary of American Home Mortgage Holdings, Inc. and was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006. (SOF ¶ 24.) According to records maintained with the Division of Banks for the

Commonwealth of Massachusetts, the Commissioner of Banks initially issued a mortgage company license to American Home Mortgage to engage in the business of a mortgage lender and mortgage broker in Massachusetts on or about March 21, 2000, with license no. MC 1368.[3] (SOF ¶ 25.) American Brokers existed as a mortgage lender and broker licensed to conduct business in the Commonwealth of Massachusetts at the time of the loan origination in December, 2006. (SOF ¶ 26.)

**C. Plaintiffs' Remaining FDCPA Claim against Ocwen.**

Ocwen continued to service the Loan after sending Plaintiffs the Notice of Intent to Foreclose dated February 13, 2015, and proceeded with foreclosure efforts on behalf of Deutsche Bank as Trustee. (SOF, ¶ 27.) Plaintiffs allege that Ocwen's repeated attempts to collect on a Loan it knew or should have known was void and unenforceable violated the FDCPA. (*See id*.) Specifically, Plaintiffs rely on three separate letters as the basis of their FDCPA claim asserted against Ocwen: (1) a June 10, 2015 notice of default stating an amount past due of $223,611.23; (2) a July 1, 2015 letter notifying Plaintiffs of Ocwen's intent to foreclose; and (3) a January 28, 2016 letter from Ocwen's local counsel threatening litigation if Plaintiffs did not pay the amount past due on their mortgage loan. (*See id*. at ¶¶ 117-18, 122, 181-88.)

The first letter at issue was a notice of default dated June 10, 2015 that Ocwen sent Plaintiffs stating an amount past due of $223,611.23. (SOF ¶ 28.) Plaintiffs do not object to the accuracy of the amount past due and referenced in the June 10, 2015 letter. (SOF ¶ 29.) Instead, Plaintiffs have testified that the June 10, 2015 letter was an improper attempt by Ocwen to collect on a mortgage loan that was void and unenforceable. (*See id*.) Indeed, the record evidence

---

[3] *See* American Home Mortgage Corp., d/b/a American Brokers Conduit, Melville, NY – Temporary Order to Cease and Desist dated August 2, 2007, http://www.mass.gov/ocabr/banking-and-finance/laws-and-regulations/enforcement-actions/2007-dob-enforcement-actions/american-home-mortgage-corp-dba-american.html.

shows that the amount of $223,611.23 included in the June 10, 2015 letter was accurate as it reflected the current amount past due at the time the letter was sent. (SOF ¶ 30.) Plaintiffs offer no record evidence to dispute this amount.

The second letter at issue was a letter dated July 1, 2015 that Ocwen sent Plaintiffs notifying them that their loan was past due and, as such, their loan would be referred to foreclosure. (SOF ¶ 31.) Plaintiffs, again, do not dispute the accuracy of the information or content contained in the July 1, 2015 letter relating to the "past due" status of the loan or the loan's referral to foreclosure due to Plaintiffs' default. (SOF ¶ 32.) Rather, Plaintiffs testified, as they have maintained throughout this entire litigation, that the letter was "inaccurate"—not because they dispute the specific reinstatement amount due or status of the loan as being in foreclosure—but because they claim that "there was nothing owed" since the loan was purportedly "void" and "nonexistent." (*See id*.) Again, the record evidence shows that the reinstatement amount, $223,614.37, included in the July 1, 2015 letter was accurate as it reflected the reinstatement amount due and status of the loan at the time the letter was sent. (SOF ¶ 33.)

The third letter at issue was a certified letter dated January 28, 2016 sent from Korde & Associates ("Korde") to Plaintiffs representing Ocwen, and on behalf of Deutsche Bank as Trustee, which threatened litigation in collection of the debt and giving 30 days to respond. (SOF ¶ 34.) As with the first two letters, Plaintiffs have not offered any objective evidence to show that this January 28, 2016 letter contained any specific misrepresentations regarding the amount owed or status of the loan. Plaintiffs, again, testified that this letter generally misrepresented the validity of the debt because Korde, on behalf of the investor, was attempting to collect on a debt that was void and unenforceable. (SOF ¶ 35.) Plaintiffs did not testify that the outstanding

principal balance of $760,734.62 referenced in the letter was inaccurate; only that the amount referenced was not "correct" because "there [was not] any outstanding debt." (*See id*.) The record evidence shows that the total debt amount, $760,634.62, included in the January 28, 2016 letter was accurate as it reflects the total amount owed and status of the loan at the time the letter was sent. (SOF ¶ 36.)

On or about March 18, 2016, Plaintiffs sued Ocwen, among other defendants, to challenge foreclosure and obtain monetary damages. (SOF ¶ 37.) As discussed above, on or about January 12, 2017, this Court granted Ocwen's Motion to Dismiss as to all counts except for Plaintiffs' FDCPA claim asserted against Ocwen. (SOF ¶ 38.)

## III. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Dennis v. Osram Sylvania, Inc*., 549 F.3d 851, 855 (1st Cir. 2008) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)). The facts and reasonable inferences are taken in the light most favorable to the nonmoving party. *McGunigle v. City of Quincy*, 835 F.3d 192, 202 (1st Cir. 2016). "On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'" *OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Canada*, 684 F.3d 237, 241 (1st Cir. 2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations,

improbable inferences, acrimonious invective, or rank speculation." *Ahern v. Shinseki*, 629 F.3d 49, 53-54 (1st Cir. 2010).

## IV. ARGUMENT

The only claim remaining in this action is Count IV for violations of the FDCPA against Ocwen. In order to prevail on a FDCPA claim, a plaintiff must prove three elements: "(1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." *Rhodes v. Ocwen Loan Servicing, LLC*, 44 F.3d 137, 141 (D. Mass. 2014). Here, Plaintiffs allege generally that Ocwen has violated the FDCPA by attempting to collect on a mortgage loan that they knew or should have known was fraudulently obtained by American Brokers and void *ab initio*. Ocwen does not dispute that it is a debt collector as defined by the FDCPA, or that Plaintiffs were the objects of collection activities arising from the mortgage loan in default. In other words, Ocwen is not challenging elements 1 and 2 of the FDCPA statute discussed above. However, Plaintiffs cannot prove the third element of the FDCPA statute and, thus, their claim fails as a matter of law. *See Whittiker v. Deutsche Bank National Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009) (holding that the absence of any factor is fatal to a plaintiff's claim under the FDCPA).

### A. Plaintiffs Offer No Objective Evidence to Prove Ocwen Violated the FDCPA.

By their Amended Complaint, Plaintiffs generally argue that Ocwen made "false representation[s] of the character, amount or legal status of the alleged debt," and used "unconscionable means to collect on a void *ab initio* debt." Plaintiffs claim that Ocwen violated the statute based upon allegations that the three letters attempted to collect a non-existent debt. Plaintiffs fail to identify or reference any specific section of the FDCPA upon which they rely to

assert their claim against Ocwen.[4] In determining whether a communication has violated a provision of the FDCPA, the communication "is to be viewed from the perspective of the hypothetical unsophisticated consumer." *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014). This standard protects "consumers, including the inexperienced, the untrained and the credulous." *Id.* at 103 (citations omitted). However, the standard is an objective one, which preserves an element of reasonableness. *Id.* at 104. "A debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter." *Id.*; *see also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 251 (3rd Cir. 2011) ("[W]e preserv[e] a quotient of reasonableness and presum[e] a basic level of understanding and willingness to read with care") (internal quotations omitted). Here, Plaintiffs have failed to establish objective, record evidence that Ocwen's communications violated the FDCPA.

a. Plaintiffs Fail to Establish that Ocwen Acted in an Unfair or Unconscionable Manner to Support a FDCPA Violation Under Section 1692f.

Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA does not define "unfair or unconscionable means," but courts have uniformly defined "unfair or unconscionable means" by relying on the plain meaning of the terms. The meaning of "unfair" is "marked by injustice, partiality, or deception." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010) (citing Merriam-Webster Online Dictionary (Feb. 11, 2010), http://www.merriam-webster.com/dictionary/unfair). The meaning of "unconscionable" is "having no conscience,"

[4] However, based on the allegations as pled in their Amended Complaint, it appears that Plaintiffs may be relying on Sections 1962e and 1962f to make out their FDCPA claim against Ocwen discussed below. Plaintiffs use similar language contained in these Sections of the statute in a single paragraph of their Amended Complaint, i.e., Paragraph 183.

"unscrupulous," "showing no regard for conscience," or "affronting the sense of justice, decency, or reasonableness." *See id.* (citing *Unconscionable*, BLACK'S LAW DICTIONARY (7th ed. 1999)).

Here, Plaintiffs claim that Ocwen used "unfair or unconscionable" means to collect on a non-existent debt, and so Plaintiffs must establish through objective, record evidence that: (1) the Loan was procured through fraudulent means and is void *ab initio*; and (2) Ocwen knew or should have known that the Loan was fraudulently obtained and continued collection and foreclosure efforts despite this knowledge. Plaintiffs have failed to present any evidence to prove either, and the absence of such evidence is fatal to their FDCPA claim. *OneBeacon Am. Ins. Co.*, 684 F.3d at 241 ("On issues where the movant does not have the burden of proof at trial, the movant can succeed on summary judgment by showing 'that there is an absence of evidence to support the nonmoving party's case.'").

i. Plaintiffs Present No Objective, Record Evidence that the Loan is Void *Ab Initio.*

Plaintiffs' FDCPA claim is premised on an erroneous allegation that their Loan was fraudulently obtained, and Plaintiffs have failed to present any objective, record evidence. Plaintiffs allege that American Brokers was a "non-legal entity" to claim a void mortgage. The undisputed facts of this case, however, demonstrate that American Brokers Conduit exists as a subsidiary of American Home Mortgage Holdings, Inc. and was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006. (SOF, ¶ 24.) Records maintained with the Division of Banks for the Commonwealth of Massachusetts demonstrate that the Commissioner of Banks issued a mortgage company license to American Home Mortgage to engage in the business of a mortgage lender and mortgage broker in Massachusetts on or about

March 21, 2000, with license no. MC 1368.[5] (SOF ¶ 25.) In addition to the Division of Banks' records, Securities Exchange Commission (SEC) filings confirm that American Brokers was a subsidiary of American Home Mortgage Corp. as of the Loan's origination. Contrary to Plaintiffs' speculation, American Brokers existed as a mortgage lender and broker licensed to conduct business in the Commonwealth of Massachusetts at the time of the loan origination in December, 2006. (SOF, ¶¶ 24-26.) Further, Plaintiffs cite no case law or statute to support their allegation that American Brokers was required to be incorporated under the laws of Massachusetts to engage in loan transactions and that the absence of such a license somehow voids the Mortgage.

Moreover, Plaintiffs do not dispute that the fact that they received $450,000 to refinance their existing mortgage. (SOF, ¶¶ 3-4, 16.) Nor do they dispute the fact that they made monthly payments on their Loan for two years before they defaulted on their obligations under the mortgage contract. (SOF, ¶ 9.) Only now, and years after default, efforts at modification to avoid foreclosure and with the prospect of losing their Property do Plaintiffs unveil a theory that they never entered into a valid loan transaction. Plaintiffs' speculation and theory alone cannot establish objective evidence to prove any unconscionable or unfair method of debt collection.

ii. Plaintiffs Present no Argument or Evidence that Ocwen Used Unfair or Unconscionable Means to Collect the Debt.

Plaintiffs fail to present any evidence to establish that Ocwen used "unfair or unconscionable means" to collect or attempt to collect and foreclose on a void *ab initio* debt. To prove that Ocwen did violate the FDCPA by using "unfair or unconscionable means" to collect

---

[5] *See* American Home Mortgage Corp., d/b/a American Brokers Conduit, Melville, NY – Temporary Order to Cease and Desist dated August 2, 2007, http://www.mass.gov/ocabr/banking-and-finance/laws-and-regulations/enforcement-actions/2007-dob-enforcement-actions/american-home-mortgage-corp-dba-american.html, attached hereto as Exhibit A.

the debt, Plaintiffs must provide record evidence that Ocwen knew or should have known that the Loan was void and non-existent. Plaintiffs fail to produce any objective evidence in support this bald assertion. In truth, no evidence, information or documents exist to validate Plaintiffs' speculation that the Loan was void much less show that Ocwen knew it was collecting on an invalid mortgage loan. Record evidence, including all of the documents and information that Ocwen received relating to the Loan, indicates that the loan was valid and enforceable. Plaintiffs admitted during their own depositions that they signed the mortgage and note for the purpose of refinancing their existing mortgage. (SOF, ¶¶ 2-3.) They admitted receipt of $12,000 in cash from this Loan and specifically testified that they used the money for home improvements to the Property. (SOF, ¶ 5.) Documents recorded in the Barnstable County Registry of Deeds show that the Plaintiffs' prior mortgage with Countrywide was discharged after it was paid off immediately following the Loan closing in December, 2006. (SOF, ¶ 6.) Finally, Plaintiffs made two years of payments and only stopped making payments after they experienced financial difficulties as a result of losing income. (SOF, ¶¶ 9, 16.)

Even if Plaintiffs were to argue that Ocwen "should have known" the Loan was void, this argument fails as a matter of law. Ocwen is under no obligation to verify the debt after Plaintiffs disputed the Loan as non-existent. Numerous courts have concluded that the FDCPA does not require a debt collector to independently investigate the merit of the debt and that a debt collector can rely on its clients' representations regarding the validity of the debt. *See e.g., Clark*, 460 F.3d at 1174 ("Within reasonable limits, [Defendants] were entitled to rely on their client's statements to verify the debt. Moreover, the FDCPA did not impose upon them any duty to investigate independently the claims presented[.]") (internal citations omitted); *Rudek v. Frederick J. Hanna & Assoc., P.C.*, No. 1:08–cv–288, 2009 WL 385804, at *2 (E.D.Tenn. Feb. 17, 2009) *161

(collecting cases); *Shapiro v. Haenn*, 222 F.Supp.2d 29, 44 (D.Me.2002) ("[D]ebt collectors may rely on the information their clients provide, and the FDCPA does not require them to conduct their own investigation into the amount or validity of the underlying loan.") (citations omitted). This remains true even when the consumer has specifically challenged whether the amount alleged is due at all. *See, e.g., Becker v. Genesis Fin. Servs.*, No. CV–06–5037, 2007 WL 4190473, at *7 (E.D.Wash. Nov. 21, 2007); *Bleich v. Revenue Maximization Grp., Inc.*, 233 F.Supp.2d 496, 500 (E.D.N.Y.2002); *Ducrest v. Alco Collections, Inc.*, 931 F.Supp. 459, 462 (M.D.La.1996).

No evidence exists to support a finding that Ocwen knew American Brokers was not a viable legal entity, or that Ocwen knowingly serviced a Loan that was fraudulently-obtained and void. As such, Plaintiff cannot establish that Ocwen used "unfair or unconscionable" means to collect the debt in violation of Section 1692f of the FDCPA. Without any evidence to establish that the Loan was void *ab initio*, or that Ocwen used unconscionable means to collect mortgage payments from the Plaintiffs, Plaintiffs cannot prove that Ocwen violated Section 1692f of the FDCPA and Ocwen is entitled to summary judgment.

b. The Three Letters Do Not Contain Any False or Misleading Information to Support a FDCPA Violation Under Section 1692e.

To the extent that Plaintiffs base their FDCPA claim in reliance on the allegation that any of the three letters at issue contained misrepresentations regarding the amount or status of the debt in violation of Section 1692e, the undisputed facts of this case reject this argument. The FDCPA expressly prohibits a debt collector from providing a "false representation of the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). A representation is deceptive "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Waters v. Kream*, 770 F. Supp. 2d 434, 436 (D. Mass. 2011) (quoting *Russell v.*

*Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). Here, only three paragraphs in the entire 286-paragraph Amended Complaint even mention the three letters, and none of those paragraphs allege that the letters contained any false or deceptive information:

> Paragraph 117: Plaintiffs allege on June 10, 2015 Ocwen sent Plaintiff Timothy C. Harry Certified Mail, not Plaintiffs attorney as required, a SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY NOTICE OF DEFAULT stating a Total Amount Past Due of $223,611.23 on alleged now Loan Number 7140304192, states this is an "In Rem" foreclosure on the alleged mortgage, and directs Plaintiffs on or before July 17, 2015, to remit payment via MoneyGram®, Western Union, Regular Mail, or Overnight Mail.
>
> Paragraph 118: A Certified letter dated July 1, 2015, mailed to Plaintiff Timothy C. Harry, not Plaintiffs attorney as required, by Ocwen stated the mortgage loan is past due and the property may be referred to foreclosure. It continues with confusing amounts purported to be owed including fees, claims Ocwen has the right to foreclose and Ocwen intends to initiate a foreclosure, and claims the "Noteholder", not the Holder In Due Course owner, directly or through an agent, has possession of the purported promissory note and the chain of endorsements is complete.
>
> Paragraph 122: Plaintiffs allege on January 28, 2016, Plaintiffs received a letter from Korde & Associates in their purported representation of Defendant Ocwen on behalf of themselves and Deutsche Bank, via Certified Mail, threatening litigation and foreclosure in collection of a debt giving 30 days to respond.

Other vague reference to "confusing amounts" in the July 1, 2015 letter, Plaintiffs make no allegation and provide no evidence to prove any of the letters included misleading or false information. Indeed, Plaintiffs offer no evidence to show *what* information was misleading or false, or *how* such information was used to collect on a "void" Loan.

The June 10, 2015 letter was a notice of default Ocwen sent to the Plaintiffs, which included the amount past due on the Loan and advised Plaintiffs that, if this amount was not paid, Ocwen would proceed with foreclosure on behalf of Deutsche Bank as Trustee. (SOF, ¶ 28.) Plaintiffs do not dispute that they stopped paying on their Loan in October 2008. (SOF, ¶ 9.) Plaintiffs have not and do not claim that the amount in the notice of default was incorrect. (SOF,

¶ 29.) As discussed above, Plaintiffs instead argue that the June 10, 2015 letter was an improper attempt to collect on a mortgage loan that was void and unenforceable (*See id*.) The objective record evidence shows that the amount of $223,611.23 included in the June 10, 2015 letter was accurate as it reflected the current amount past due at the time the letter was sent. (SOF, ¶ 30.) Plaintiffs offer no record evidence to dispute this amount.

The July 1, 2015 and January 28, 2016 letters were not attempts to collect a debt, but rather efforts by Ocwen to enforce a security interest by advising Plaintiffs that their Loan was being referred to foreclosure and Ocwen would proceed with foreclosure efforts, on behalf of the investor, if they did not bring their account current. (SOF, ¶¶ 31, 34.) Plaintiffs offer no evidence in support of any argument that the *content* of these letters contained false information relating to the Loan in violation of Section 1692e. Instead, Plaintiffs maintain—as they have throughout this entire litigation—that Ocwen violated the FDCPA generally by attempting to collect on a mortgage loan that they  knew or should have known was void *ab initio* and non-existent. (SOF, ¶ 32, 35.) Even if the Court were to deem these letters as attempts at collecting on a debt, no part of either letter contained a false or misleading representation and instead provided accurate information concerning Plaintiffs' default and Ocwen's exercise of a contractual right to foreclose. To be sure, Plaintiffs do not dispute the reinstatement amount of $223,614.37 included in the letter, or that the loan was in default as represented in the July 1, 2015 letter. (SOF, ¶ 32.) Nor do they dispute the total amount due of $760,634.62 included in the January 28, 2016 letter, or that the loan had been referred to foreclosure due to Plaintiffs' failure to make mortgage payments. (SOF, ¶ 35.) Again, the record evidence shows that the reinstatement amount of $223,614.37 included in the July 1, 2015 letter, and the total debt amount of $760,634.62

included in the January 28, 2016 letter, were accurate and reflect the reinstatement amount, the total amount owed, and the status of the loan at the time the letters were sent. (SOF, ¶¶ 33, 36.)

Accordingly, since Plaintiffs offer no objective evidence to show that the letters in question contained any specific misrepresentations regarding the character, amount owed or status of the loan, Plaintiffs cannot prove that Ocwen violated Section 1692e of the FDCPA.

## V.  CONCLUSION

For the reasons stated above, the Defendant, Ocwen Loan Servicing, LLC, respectfully request that this Court enter judgment in its favor on Count IV Plaintiffs' Amended Complaint.

*[SIGNATURE PAGE FOLLOWS]*

Respectfully submitted,

Attorneys for Defendant,

OCWEN LOAN SERVICING, LLC,

/s/ *Vanessa V. Pisano*

Samuel C. Bodurtha, BBO #665755
Vanessa V. Pisano, BBO #679649
HINSHAW & CULBERTSON LLP
28 State Street, 24th Floor
Boston, MA 02109
Tel: (617) 213-7000 / Fax: (617) 213-7001
Email: sbodurtha@hinshawlaw.com
vpisano@hinshawlaw.com

**CERTIFICATE OF SERVICE**

I, Vanessa V. Pisano, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 29, 2018.

/s/ *Vanessa V. Pisano*
Vanessa V. Pisano