UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY C. HARRY and ) <br> KAREN C. HARRY ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AMERICAN BROKERS CONDUIT; et al. ) <br> ) <br> Defendants. ) <br> ) | Case No. 16-cv-10895-FDS |

STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF LAW SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST OCWEN LOAN SERVICING, LLC FOR VIOLATIONS OF THE FDCPA 15 U.S.C. 1692 et seq. PURSUANT TO FED. R. CIV. P. 56

I.     Concise Statement of the Material Facts

A. The Alleged Transaction

1. On December 13, 2006, Plaintiffs applied with Apex Mortgage Services to refinance their current loan on 31 Mar Way, Mashpee, MA in the amount of $450,000. The alleged transaction allegedly closed on December 21, 2006, with the alleged lender being American Brokers Conduit. A notary was not present at the alleged closing. [Exhibit F – Deposition of Timothy Harry, page 72, line 17, page 73, line 20, page 74 and 75]. Plaintiffs had concerns about the alleged loan that took place and contacted the Massachusetts Attorney General's Office. [Exhibit F, page 92, 98, 129] Plaintiffs also had concerns about an alleged lending transaction involving an entity they had never heard of. [Exhibit F, page 33-34].

2. Plaintiffs did not know the alleged loan was a negative amortization loan. They stopped paying on the alleged loan October 1, 2008. [A.C. para. 56].

3. Foreclosure notices and attempts were made on the Plaintiffs property, September 28, 2009, [A.C. para 94], November 22, 2010 [A.C. para. 102], June 14, 2011 [A.C. 104], February 13, 2015 [A.C. para 115] and January 28, 2016 [A.C. para 122].

4. Plaintiffs brought suit in Barnstable Superior Court suing Defendants for fraudulent and deceitful actions under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Truth In Lending Act ("TILA"), Rescission Enforcement, fraud in the concealment, slander, violations of MGL Chapters 183C, 266, 268, in violation of MGL c.93A, Section 2, as well as racketeering activities under the Racketeer Influenced and Corrupt Organizations ("RICO") by all Defendants working in collusion with one another. [A.C. Introduction]. The matter was removed to Federal District Court on May 17, 2016 [Doc. No. 1].

5. Plaintiffs filed motion for default judgment against Apex Mortgage Services and American Brokers Conduit on June 13, 2016 for failing to retain counsel and respond to the pleadings. The Motions for Default judgment were denied without prejudice to their renewal at an appropriate time. [Doc. 167].

6. On January 12, 2017, Judge Saylor granted the Defendants motion to dismiss except for Defendant Ocwen under Claim IV violations under the Fair Debt Collections Practices Act. Doc. 120]. The Plaintiffs can prove Defendant Ocwen violated the Fair Debt Collection Practices Act and are entitled, as a matter of law, Summary Judgment in their favor.

B. <u>The Lender</u>

7. Plaintiffs have alleged in their Amended Complaint [A.C. para. 37] that ABC was not an incorporated entity, not a licensed lender and lacked the authority to lend money. [A.C. para. 48-49]. Indeed, Ocwen admits that it is "their understanding for discussions with [Ocwen's] own counsel that we [Ocwen] believe that the lender was licensed, so we [Ocwen] do not believe the loan and mortgage to be void." [Exhibit A, Ocwen Deposition, pages 21, line 12]. When asked why do you [Ocwen] believe the lender was licensed, Ocwen's Attorney Bodurtha stepped in with an objection stating "I'm instructing my client not to answer. You're calling for attorney/client communications and work product privileged documents." [Exhibit A, page 21, line 20]. Ocwen restated this answer several times. [Exhibit A, pages 47, 55-56 and 89]. Ocwen, with these statements believes that Ocwen has more authority than the Massachusetts legislature that passed the laws stating who and how an entity becomes a lender; has more authority than the Massachusetts Banking Commission, whose authority comes from the Massachusetts General Laws to give and rescind lending, servicing and debt collection licenses and the state and federal court systems that interpret the law. There is no legal standing for attorney/client privileged work product to create a licensed lender. The motive for this power is as Ocwen stated "Ocwen services many loans that they [ABC] are the lender on." [Exhibit A, pg 31, line1]. Ocwen admits there is no licensed lender except by their own conclusion for *business reasons*.

8. ABC was not an entity incorporated in Massachusetts or anywhere else [Exhibit B, MA Secretary of State Corp. search]. ABC did not have a license to lend money. [Exhibit C NMLS database]. ABC did not have a Mortgage Electronic Registration System

Membership Number ("MERS MIN"). [Exhibit M]. ABC is an unregistered, unincorporated fictitious name of American Home Mortgage Corp. [Exhibit D; MA Cease and Desist Order to American Home Mortgage Corp]. Massachusetts Banking Commission ruled in Docket Number 99-026 [Exhibit E] "No authority exists under said chapter 255E for a mortgage lender to conduct business under an existing license while also using a trade name for all or any part of its business. The intent of the licensing framework set forth in said chapter 255E is to ensure that a consumer knows the identity of the entity with which he or she is doing business. To allow a lender to use a name other than the name which appears on its license would be contrary to this intent and foster potential consumer confusion regarding the identity of the licensee. Accordingly, it is not permissible for a licensed lender to conduct business under more than one name."

9. The ABC fictitious name belongs to American Home Mortgage Corp. [Exhibit D]. American Home Mortgage Corp. is registered with the Massachusetts Secretary of State as a foreign entity and listed "Mortgage Select" as the name of another entity that American Home Mortgage Corp. may be doing business under. [Exhibit H] and [Doc. 120, pg. 18]. The only way any governing authority, or individual would know what is American Brokers Conduit is if that entity or person had received a copy of the Massachusetts Banking Commissions Cease and Desist Order.

10. Ocwen testified that the original note was in the Collateral File they brought to the deposition. [Exhibit A, page 26]. According to Ocwen, the Collateral File was requested from Deutsche Bank for foreclosure. [Exhibit I, page OLS000139]. Ocwen presented to Plaintiffs the Collateral File to review the original note. Plaintiffs reviewed the "original note". However, it turns out there is no original note anywhere. Ocwen admits in the

Harry Comment Log [Exhibit I, page OLS000244] that the signature on the "original note" does not match the signature of the Plaintiffs.  Plaintiffs had sent a letter to Ocwen on June 30, 2015 directing all communication be directed to Plaintiffs' attorney, Tina L. Sherwood.  [Exhibit N].   The response may be found in [Exhibit I, page OLS000246] which states "Concern:  You provided us with the authorization letter and requested us to update our records accordingly.  Response:  A review of loan documents indicates that the signature is not matching with the authorization letter provided to us.  Therefore, we are unable to authorize Tina L. Sherwood to receive and discuss any information on the above loan."  This letter was mailed out on July 20, 2015 to Plaintiffs.  [Exhibit I, page OLS000247].  The loan document that was reviewed was the same loan document Ocwen presented to Plaintiffs as the true and original note in a sworn deposition.  Ocwen presented a forged fraudulent note to Plaintiffs as the original.  This admission in the Harry Comment Log, which is kept by Ocwen and records every phone call, communication or decision about the Harry loan demonstrates that the signature on the alleged original note does not belong to the Plaintiffs.

11. Ocwen presented a Mortgage marked "A True and Certified Copy of the Original". [Exhibit J].  Ocwen testified that this mortgage came from Ocwen's Collateral File and that it is a copy of the original. [Exhibit A, pg. 49].  When asked "…if I went to the Barnstable Registry of Deeds, I would find this mortgage, correct?"  Answer:  "I doubt it would have the stamp that said "true copy", but yes, I believe so."

12. Ocwen's Attorney, Samuel Bodurtha, during an email exchange with Plaintiffs Attorney, Tina Sherwood, stated "I'm not sure what questions my client would answer about the original note that could not be answered with a copy.  The original mortgage is largely

inconsequential because possession of the original is not required.  All that is required is recording an original which was done."  [Exhibit K].

13. Plaintiffs produced a copy of the alleged Mortgage that was filed with the Barnstable Registry of Deeds. [Exhibit L].  The created mortgage [Exhibit J] states that it was allegedly prepared by American Brokers Conduit, 4650 Regent Blvd, Suite 100, Irving, Texas 75063 and prepared by Robin Smith in Chesterbrook, PA.  The Exhibit J mortgage does not have any hand written printing on page one and the hand written printing on page fourteen is different than the recorded alleged mortgage, and the MERS MIN used is inaccurate.  According to MERS, the first seven digits of a MERS MIN, is meant to identify the lender.  The remaining eleven numbers is supposed to identify the alleged loan.  The first seven digits on this alleged mortgage are 1000242 which belongs to American Home Mortgage Holding, Inc., [A. C. para 63] an entity that does not have a license to lend in Massachusetts, only in Oklahoma, Colorado and California.  [Exhibit O]

14. The Exhibit L Mortgage that was filed with the Barnstable Registry of Deeds was requested by Fidelity National Title Group, Carrolton, Texas.  This mortgage has Karen C. Harry, Husband and Wife".  The lender listed on both mortgages is American Brokers Conduit who Ocwen has admitted does not have a license to lend money but may be a licensed lender because Ocwen "says so".

15. Ocwen admits via the Harry Comment Log, that Deutsche Bank has the original note, but does not have the original mortgage. [Exhibit I, page OLS000208].  Since the Ocwen Comment Log also admits the signature on the alleged original note does not match the Plaintiffs, no party has a note and a note was *fraudulently created* to service this alleged

loan that Ocwen admits ABC did not have a license to lend but may be a licensed lender because Ocwen "says so". Additionally, a second mortgage was *fraudulently created* for the Collateral File that was used as evidence of the original to service the loan. Ocwen admits that the Collateral File for these documents came from Deutsche Bank. [Exhibit I, page OLS000208]. Ocwen admits no party to this alleged lending transaction knows where the original note or mortgage may be found. The copy of the note Plaintiffs, have received and Ocwen relies on, is an exact copy of the *fraudulently created* note in the Ocwen Collateral File.

16. Neither the Plaintiffs nor Ocwen know where the consideration for this alleged loan came from. When Massachusetts Banking Commission issued its Cease and Desist Order against American Home Mortgage Corp. d/b/a American Brokers Conduit, the Banking Commission stated "American Home Mortgage …. Have engaged in, are engaging in, or are about to engage in, act or practices which warrant the belief that they are not operating honestly, fairly, soundly and efficiently in the public interest in violation of standards governing the licensing and conduct of a mortgage lender and mortgage broker including, but not limited to, the provisions of the Division's regulations at 209 CMR 42.00 et. seq. and the public interest will be irreparably harmed by delay in issuing an ORDER TO CEASE AND DESIST to American Home Mortgage. The Banking Commission further stated… had the facts and conditions found therein existed at the time of American Home Mortgage's …. Original mortgage lender and/or mortgage broker license applications, the Commissioner would have been warranted in refusing to issue such licenses. Further the facts and conditions set forth in Paragraphs 1-23 present sufficient grounds for the revocation of American Home Mortgage's ….. mortgage lender

and/or mortgage broker licenses, pursuant to Massachusetts General Laws Chapter 255E, section6 and the Division's regulation at 209 CMR 42.04 and 209 CMR 42.07(2)(b)." [Exhibit D].

17. The Plaintiffs testified under oath that their initials and signature on some of the lending documents are not their signed initials and signature. Timothy Harry stated that the initials on the Mortgage he reviewed were not his. [Exhibit F, page 54, line 8]. Further, Timothy Harry stated that he didn't recognize the handwriting on the mortgage that was filed with the Barnstable Registry of Deeds [Exhibit L] as being either his or his wife's. [Exhibit F, page 78] Karen Harry testified under oath that it is not her signature on the Truth-In-Lending Statement. [Exhibit G, page 58]. She also testified that she did not sign the Notice of Rescission Document. [Exhibit G, page 87].

18. In addition to no licensed lender, no existing Note, no existing Mortgage, a fraudulently created Note to rely upon for servicing, a fraudulently created mortgage to rely upon for servicing and fraudulently executed lending documents, Ocwen admits it does "clean-up". Specifically, the Ocwen Harry Comment Log states: "Delay in Document sent, Deny NoDLS Back Dated loans to be reviewed by LRPU if can be sent as part of clean up." [Exhibit I, page OLS 000088]. This statement implies that Ocwen was involved in a fraudulent game of fixing lending documents.

19. Ocwen admits that it was charging the Harrys litigation costs on their payoff notice before litigation had even begun. The first litigation expense was assessed on May 21, 2013 in the amount of $3,917.80, three years before litigation began in this case. [Exhibit I, page OLS 000056]. Plaintiffs filed their verified complaint on March 18, 2016.

Ocwen's Harry Comment Log states that Litigation Case Opened on April 18, 2016. [Exhibit I, page OLS 000323]

20. Ocwen admits Ocwen set the Harrys up with a Hazard Insurance Policy. [Exhibit I, page OLS 000020]. Ocwen charged $1,664 for the Hazard Insurance. However, all outstanding invoices and fees demonstrate that taxes and insurance were part of the escrow fees. Therefore, the Plaintiffs have been charged with property insurance put in place by Ocwen and Hazard Insurance put in place by Ocwen. [Exhibit I, page OLS 000023 – OLS 000352] yet Ocwen testified that the Harrys were not in force placed insurance. [Exhibit A. page 125, line 10].

21. Ocwen admits that if there was a loan, Ocwen does not know who or how many investors own it. On September 8, 2015 Ocwen mailed a letter addressed to Tina L. Sherwood, which Tina L. Sherwood, attorney for the Plaintiffs, never received because it was mailed to the wrong address. In the letter Ocwen states "a Note or a partial interest in the Note can be sold one or more times without prior notice to the borrower". This letter acts as a heads up to the Plaintiffs that some changes may have happened on the alleged note. However, due to the fraudulent alleged note Ocwen admits it was relying on, and the fact that ABC is not a licensed lender, except that Ocwen believes it has the authority to say it is, there is no note. Based on the forgoing undisputed and admitted facts, Plaintiffs are entitled to Summary Judgment as a matter of law.

**[Signature to follow]**

Dated: June 29, 2018                    Respectfully Submitted
                                                            TIMOTHY C. HARRY and
                                                            KAREN C. HARRY
                                                            By their Attorney


                                                            */s/ Tina L. Sherwood*_____
                                                            Tina L. Sherwood BBO# 662047
                                                            19C Governors Way
                                                            Milford, MA  01757
                                                            (617) 930-3533

## CERTIFICATE OF SERVICE

     I, Tina Sherwood, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 29, 2018.


                                                            */s/ Tina L. Sherwood*_____
                                                            Tina L. Sherwood