# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

TIMOTHY C. HARRY and
KAREN C. HARRY,

     *Plaintiffs,*

v.

AMERICAN BROKERS CONDUIT, APEX
MORTGAGE SERVICES, FIDELITY
NATIONALTITLE GROUP, AMERICAN
HOME MORTGAGE SERVICING, INC.,
DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR
AMERICAN HOME MORTGAGE
ASSETS TRUST 2007-2 MORTGAGE-
BACKED PASS- CERTIFICATES, SERIES
2007-2, HOMEWARD RESIDENTIAL ,
MORTGAGE ELECTRONIC
RECORDING SYSTEM , INC., OCWEN
LOAN SERVICING and KORDE &
ASSOCIATES,

     *Defendants.*

CIVIL ACTION NO. 16-10895

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION RESPONSE TO DEFENDANT OCWEN LOAN SERVICING, LLC'S STATEMENT OF UNDISPUTED FACTS [DOC. 235] IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [DOC. 232]

     Plaintiffs, Timothy C. Harry and Karen C. Harry, by and through their attorney, hereby submit

Plaintiffs' Memorandum of law in Support of Plaintiffs' Opposition Response to Defendant Ocwen

Loan Servicing LLC's Statement of Facts Pursuant to Fed. R. Civ. P. 56(a). [Doc. 235]. Plaintiffs

have proved and can prove with undisputed facts, evidence gathered during discovery and

admissions by the Defendant that the Defendant violated the Federal Fair Debt Collection

Practices Act ("FDCPA"). Defendant used "unfair or unconscionable means" in collections in

violation of the FDCPA. Accordingly, where Plaintiffs have proven their case, Summary

1

Judgment should be awarded in Plaintiffs favor.

## I.     Concise Statement of the Material Facts

### A.  The Alleged Transaction

On December 13, 2006, Plaintiffs applied with Apex Mortgage Services to refinance their current loan on 31 Mar Way, Mashpee, MA in the amount of $450,000.  The alleged transaction allegedly closed on December 21, 2006, with the alleged lender being American Brokers Conduit.  A notary was not present at the alleged closing.  [Exhibit F – Deposition of Timothy Harry, page 72, line 17, page 73, line 20, page 74 and 75].  Plaintiffs had concerns about the alleged loan that took place and contacted the Massachusetts Attorney General's Office. [Exhibit F, page 92, 98, 129]  Plaintiffs also had concerns about an alleged lending transaction involving an entity they had never heard of.  [Exhibit F, page 33-34].

Plaintiffs did not know the alleged loan was a negative amortization loan.  They stopped paying on the alleged loan October 1, 2008. [A.C. para. 56].

Foreclosure notices and attempts were made on the Plaintiffs property, September 28, 2009, [A.C. para 94], November 22, 2010 [A.C. para. 102], June 14, 2011 [A.C. 104], February 13, 2015 [A.C. para 115] and January 28, 2016 [A.C. para 122].

Plaintiffs brought suit in Barnstable Superior Court suing Defendants for fraudulent and deceitful actions under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Truth In Lending Act ("TILA"), Rescission Enforcement, fraud in the concealment, slander, violations of MGL Chapters 183C, 266, 268, in violation of MGL c.93A, Section 2, as well as racketeering activities under the Racketeer Influenced and Corrupt Organizations ("RICO") by all Defendants working in collusion with one another.  [A.C. Introduction].  The matter was removed to Federal District Court on May 17, 2016 [Doc. No. 1].

Plaintiffs filed motion for default judgment against Apex Mortgage Services and American Brokers Conduit on June 13, 2016 for failing to retain counsel and respond to the pleadings.  The Motions for Default judgment were denied without prejudice to their renewal at an appropriate time.  [Doc. 167].

On January 12, 2017, Judge Saylor granted the Defendants motion to dismiss except for

Defendant Ocwen under Claim IV violations under the Fair Debt Collections Practices Act.  Doc. 120].

The Plaintiffs can prove Defendant Ocwen violated the Fair Debt Collection Practices Act and are

entitled, as a matter of law, Summary Judgment in their favor.

      B.  **The Lender**

Plaintiffs have alleged in their Amended Complaint [A.C. para. 37] that ABC was not an

incorporated entity, not a licensed lender and lacked the authority to lend money.  [A.C. para. 48-49].

Indeed, Ocwen admits that it is "their understanding from discussions with [Ocwen's] own counsel that

we [Ocwen] believe that the lender was licensed, so we [Ocwen] do not believe the loan and mortgage to

be void."  [Exhibit A, Ocwen Deposition, pages 21, line 12].  When asked why do you [Ocwen] believe

the lender was licensed, Ocwen's Attorney Bodurtha stepped in with an objection stating "I'm instructing

my client not to answer.  You're calling for attorney/client communications and work product privileged

documents."  [Exhibit A, page 21, line 20].  Ocwen restated this answer several times. [Exhibit A, pages

47, 55-56 and 89].  There is no legal standing for attorney/client privileged work product to create a

licensed lender.  The motive for this power is as Ocwen stated "Ocwen services many loans that they

[ABC] are the lender on."  [Exhibit A, pg 31, line1].  Ocwen admits there is no licensed lender except by

their own conclusion for *business reasons*.

      ABC was not an entity incorporated in Massachusetts or anywhere else [Exhibit B, MA

Secretary of State Corp. search].  ABC did not have a license to lend money.  [Exhibit C NMLS

database].  ABC did not have a Mortgage Electronic Registration System Membership Number ("MERS

MIN").  [Exhibit M].  ABC is an unregistered, unincorporated fictitious name of American Home

Mortgage Corp.  [Exhibit D; MA Cease and Desist Order to American Home Mortgage Corp].

Massachusetts Banking Commission ruled in Docket Number 99-026 [Exhibit E] "No authority exists

under said chapter 255E for a mortgage lender to conduct business under an existing license while also

using a trade name for all or any part of its business.  The intent of the licensing framework set forth in

said chapter 255E is to ensure that a consumer knows the identity of the entity with which he or she is

doing business.  To allow a lender to use a name other than the name which appears on its license would

be contrary to this intent and foster potential consumer confusion regarding the identity of the licensee. Accordingly, it is not permissible for a licensed lender to conduct business under more than one name."

The ABC fictitious name belongs to American Home Mortgage Corp. [Exhibit D].  American Home Mortgage Corp. is registered with the Massachusetts Secretary of State as a foreign entity and listed "Mortgage Select" as the name of another entity that American Home Mortgage Corp. may be doing business under. [Exhibit H] and [Doc. 120, pg. 18].  The only way any governing authority, or individual would know what is American Brokers Conduit is if that entity or person had received a copy of the Massachusetts Banking Commissions Cease and Desist Order.

Ocwen testified that the original note was in the Collateral File they brought to the deposition. [Exhibit A, page 26].  According to Ocwen, the Collateral File was requested from Deutsche Bank for foreclosure.  [Exhibit I, page OLS000139].  Ocwen presented to Plaintiffs the Collateral File to review the original note.  Plaintiffs reviewed the "original note".  However, it turns out there is no original note anywhere.  Ocwen admits in the Harry Comment Log [Exhibit I, page OLS000244] that the signature on the "original note" does not match the signature of the Plaintiffs.  Plaintiffs had sent a letter to Ocwen on June 30, 2015 directing all communication be directed to Plaintiffs' attorney, Tina L. Sherwood.  [Exhibit N].  The response may be found in [Exhibit I, page OLS000246] which states "Concern:  You provided us with the authorization letter and requested us to update our records accordingly.  Response:  A review of loan documents indicates that the signature is not matching with the authorization letter provided to us. Therefore, we are unable to authorize Tina L. Sherwood to receive and discuss any information on the above loan."  This letter was mailed out on July 20, 2015 to Plaintiffs.  [Exhibit I, page OLS000247]. The loan document that was reviewed was the same loan document Ocwen presented to Plaintiffs as the true and original note in a sworn deposition.  Ocwen presented a forged fraudulent note to Plaintiffs as the original.  This admission in the Harry Comment Log, which is kept by Ocwen and records every phone call, communication or decision about the Harry loan demonstrates that the signature on the alleged original note does not belong to the Plaintiffs.

Ocwen presented a Mortgage marked "A True and Certified Copy of the Original".  [Exhibit J].

Ocwen testified that this mortgage came from Ocwen's Collateral File and that it is a copy of the original. [Exhibit A, pg. 49].  When asked "…if I went to the Barnstable Registry of Deeds, I would find this mortgage, correct?"  Answer:  "I doubt it would have the stamp that said "true copy", but yes, I believe so."

Ocwen's Attorney, Samuel Bodurtha, during an email exchange with Plaintiffs Attorney, Tina Sherwood, stated "I'm not sure what questions my client would answer about the original note that could not be answered with a copy.  The original mortgage is largely inconsequential because possession of the original is not required.  All that is required is recording an original which was done."  [Exhibit K].

Plaintiffs produced a copy of the alleged Mortgage that was filed with the Barnstable Registry of Deeds. [Exhibit L].  The created mortgage [Exhibit J] states that it was allegedly prepared by American Brokers Conduit, 4650 Regent Blvd, Suite 100, Irving, Texas 75063 and prepared by Robin Smith in Chesterbrook, PA.  The Exhibit J mortgage does not have any hand written printing on page one and the hand written printing on page fourteen is different than the recorded alleged mortgage, and the MERS MIN used is inaccurate.  According to MERS, the first seven digits of a MERS MIN, is meant to identify the lender.  The remaining eleven numbers is supposed to identify the alleged loan.  The first seven digits on this alleged mortgage are 1000242 which belongs to American Home Mortgage Holding, Inc., [A. C. para 63] an entity that does not have a license to lend in Massachusetts, only in Oklahoma, Colorado and California.  [Exhibit O]

The Exhibit L Mortgage that was filed with the Barnstable Registry of Deeds was requested by Fidelity National Title Group, Carrolton, Texas.  This mortgage has Karen C. Harry, Husband and Wife hand written on it.  The lender listed on both mortgages is American Brokers Conduit who Ocwen has admitted does not have a license to lend money but may be a licensed lender because Ocwen "says so".

Ocwen admits via the Harry Comment Log, that Deutsche Bank has the original note, but does not have the original mortgage.  [Exhibit I, page OLS000208].  Since the Ocwen Comment Log also admits the signature on the alleged original note does not match the Plaintiffs, no party has a note and a note was *fraudulently created* to service this alleged loan that Ocwen admits ABC did not have a license

to lend but may be a licensed lender because Ocwen "says so". Additionally, a second mortgage was *fraudulently created* for the Collateral File that was used as evidence of the original to service the loan. Ocwen admits that the Collateral File for these documents came from Deutsche Bank. [Exhibit I, page OLS000208]. Ocwen admits no party to this alleged lending transaction knows where the original note or mortgage may be found. The copy of the note Plaintiffs, have received and Ocwen relies on, is an exact copy of the *fraudulently created* note in the Ocwen Collateral File.

Neither the Plaintiffs nor Ocwen know where the consideration for this alleged loan came from. When Massachusetts Banking Commission issued its Cease and Desist Order against American Home Mortgage Corp. d/b/a American Brokers Conduit, the Banking Commission stated "American Home Mortgage …. Have engaged in, are engaging in, or are about to engage in, act or practices which warrant the belief that they are not operating honestly, fairly, soundly and efficiently in the public interest in violation of standards governing the licensing and conduct of a mortgage lender and mortgage broker including, but not limited to, the provisions of the Division's regulations at 209 CMR 42.00 et. seq. and the public interest will be irreparably harmed by delay in issuing an ORDER TO CEASE AND DESIST to American Home Mortgage. The Banking Commission further stated… had the facts and conditions found therein existed at the time of American Home Mortgage's …. Original mortgage lender and/or mortgage broker license applications, the Commissioner would have been warranted in refusing to issue such licenses. Further the facts and conditions set forth in Paragraphs 1-23 present sufficient grounds for the revocation of American Home Mortgage's ….. mortgage lender and/or mortgage broker licenses, pursuant to Massachusetts General Laws Chapter 255E, section6 and the Division's regulation at 209 CMR 42.04 and 209 CMR 42.07(2)(b)." [Exhibit D].

The Plaintiffs testified under oath that their initials and signature on some of the lending documents are not their signed initials and signature. Timothy Harry stated that the initials on the Mortgage he reviewed were not his. [Exhibit F, page 54, line 8]. Further, Timothy Harry stated that he didn't recognize the handwriting on the mortgage that was filed with the Barnstable Registry of Deeds [Exhibit L] as being either his or his wife's. [Exhibit F, page 78] Karen Harry testified under oath that it

is not her signature on the Truth-In-Lending Statement.  [Exhibit G, page 58].  She also testified that she did not sign the Notice of Rescission Document. [Exhibit G, page 87].

In addition to no licensed lender, no existing Note, no existing Mortgage, a fraudulently created Note to rely upon for servicing, a fraudulently created mortgage to rely upon for servicing and fraudulently executed lending documents, Ocwen admits it does "clean-up".  Specifically, the Ocwen Harry Comment Log states:  "Delay in Document sent, Deny NoDLS Back Dated loans to be reviewed by LRPU if can be sent as part of clean up."  [Exhibit I, page OLS 000088].  This statement implies that Ocwen was involved in a fraudulent game of fixing lending documents.

Ocwen admits that it was charging the Harrys litigation costs on their payoff notice before litigation had even begun.  The first litigation expense was assessed on May 21, 2013 in the amount of $3,917.80, three years before litigation began in this case.  [Exhibit I, page OLS 000056].  Plaintiffs filed their verified complaint on March 18, 2016.  Ocwen's Harry Comment Log states that Litigation Case Opened on April 18, 2016.  [Exhibit I, page OLS 000323]

Ocwen admits Ocwen set the Harrys up with a Hazard Insurance Policy.  [Exhibit I, page OLS 000020].  Ocwen charged $1,664 for the Hazard Insurance.  However, all outstanding invoices and fees demonstrate that taxes and insurance were part of the escrow fees.  Therefore, the Plaintiffs have been charged with property insurance put in place by Ocwen and Hazard Insurance put in place by Ocwen. [Exhibit I, page OLS 000023 – OLS 000352] yet Ocwen testified that the Harrys were not in force placed insurance. [Exhibit A. page 125, line 10].

Ocwen admits that if there was a loan, Ocwen does not know who or how many investors own it. On September 8, 2015 Ocwen mailed a letter addressed to Tina L. Sherwood, which Tina L. Sherwood, attorney for the Plaintiffs, never received because it was mailed to the wrong address.  In the letter Ocwen states "a Note or a partial interest in the Note can be sold one or more times without prior notice to the borrower". This letter acts as a heads up to the Plaintiffs that some changes may have happened on the alleged note.  However, due to the fraudulent alleged note Ocwen admits it was relying on, and the fact that ABC is not a licensed lender, except that Ocwen believes it has the authority to say it is, there is no

note.  Based on the forgoing undisputed and admitted facts, Plaintiffs are entitled to Summary Judgment as a matter of law.

> C.  **Defendants Misplaced Facts**

Defendant insists that American Brokers Conduit is a subsidiary of American Home Mortgage Holdings, Inc. and was an active, duly-licensed foreign corporation at the time of the loan origination. This is not true.  Defendant knows it is not true.  A subsidiary is a legal entity created and registered to do business, it has its own taxpayer identification number and files its own tax returns.  Defendant is taking the Massachusetts Division of Banks Cease and Desist Order and asserting erroneous factors in where none exist.  Defendant properly states that the Commissioner of Banks issued a mortgage corporation license to *American Home Mortgage Corp.*  Without any evidence what so ever, Defendant's next statement, relying on the Commissioner of Banks Cease and Desist Order, states that American Brokers existed as a mortgage lender and broker licensed to conduct business in the Commonwealth of Massachusetts at the time of the loan origination in December, 2006.  This statement is absolutely false. [Doc. 233, page 4].  Apparently Defendants believe repeating a lie over and over means that it eventually becomes true.  It does not.  American Home Mortgage Corp. existed as a licensed lender in Massachusetts.  If American Home Mortgage Corp. wanted American Brokers Conduit to be able to have American Home Mortgage Corp.'s authority as a licensed lender, all American Home Mortgage Corp. had to do was to register the name with the Massachusetts Secretary of State, just like it did with Mortgage Select and it *chose* not to.  Without the underlying authority of a legal entity, a Doing Business As ("d/b/a") has no legal authority, no legal weight.

Defendant keeps insisting the only infraction to the FDCPA alleged are the three letters.  The Amended Complaint states the Harrys have received more than 109 notices for payment on a debt from Ocwen for collection, several notices for modification in addition to foreclosure letters and three selected letters Defendant refers to.  The Defendant believes if they continually repeat a lie, the Court will eventually believe it.

## II.      LEGAL ARGUMENT

### A.  Legal Standard

A moving party is to be spared a trial when there is no genuine issue of material fact on the record and that party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); see also *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986).  The plaintiff need only establish one FDCPA violation to prevail. *Leone v. Ashwood Fin., Inc.,* 257 F.R.D. 343 (E.D.N.Y. 2009).  *Ruth v. Triumph P'ships*, 577 F. 3d790 (7th Cir. 2009).  The FDCPA is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable here irrespective of their intentions.  *Boyko v. Am. Intern Group, Inc.,* 2009 WL 5194431 (D.N.J.) Dec. 23, 2009).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. *Celotex Corp.,* 477 U.S. at 323; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Admissions on file provide proper grounds for summary judgment. Fed. R. Civ. P. 56; 8 *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001).

Where no material fact is genuinely in dispute, claims may be disposed of summarily without a hearing. *Matter of John O'Brien, Jr., Trustee, Scenic Heights Realty Trust*, 4 DEPR 180, Final Decision (1997).  In the situation where cross-motions for summary decision are filed, absent special circumstances, each motion must be considered separately, "drawing inferences against each movant in turn."  See, *Genieve King and others v. City of Boston*, 71 Mass. App. Ct. 460 (2008), quoting *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996) (internal citation omitted).  Where both parties have moved for summary decision and "in essence there is no real dispute as to the salient facts or if only a question of law is involved," summary judgment shall be granted to the party entitled to judgment as a matter of law. *Cassesso v. Commissioner of Correction*, 390 Mass. 419, 422 (1983).

### B.  Plaintiffs do have Evidence to Prove Ocwen Violated the FDCPA

Ocwen has violated the FDCPA by issuing over 109 notices for collection on the alleged note

written by a fictitious name, by sending several notices requesting the Harrys' to consider modification of the alleged note even though Ocwen denied modification, by charging the Harrys' litigation costs of $3,917.80 on March 15, 2015, March 26, 2015, April 10, 2015, April 20, 2015 (Exhibit CC) a full year before the Verified Complaint was filed in Barnstable Superior Court on March 18, 2016, by creating a new fictitious note and forging Timothy Harry's signature to that note, (which Ocwen admits to in the Harry Comment file ) by forging Karen Harry's signature on lending documents and by creating a fraudulent mortgage and marking it as a "True and Certified Copy" of the original and relying on these fabricated document to demand payment on the void note and by starting five foreclosure attempts on a void note and void mortgage.

These business actions taken by Ocwen meet the third prong of the test that Ocwen made "false representations of the character, amount or legal status of the alleged debt. Ocwen knew the note was fabricated and chose to continue to attempt to service it. Fabricating a new note and forging a signature, fabricating a new mortgage and forging signatures, charging the Harrys expenses that were never incurred meets the definition of unconscionable means to collect on what is a void debt. In fact these actions are illegal and Ocwen and Deutsche Bank should be charged with a felony for forgery and larceny.

**C. Defendant has not presented any proof that American Brokers Conduit is a Subsidiary.**

Although a corporation is a legal entity with legal capacity to sue, a fictitious or assumed business name, a trade name, is not a legal entity; rather, it is merely a description of the person or corporation doing business under that name. *Bauer v. Pounds*, 61 Conn. App. 29, 36, 762 A.2d 499 (2000). M.G.L. Chapter 110, Section 5 requires every entity that is conducting business under another name than its own name to register with the town where the business is located. A search through the Boston "doing business database" didn't turn up American Brokers Conduit. A search through the Worcester "doing business database" didn't turn up American Brokers Conduit. A search through the Massachusetts Secretary of State's data base does have a registration for American Brokers Conduit. [Doc. 236].

American Home Mortgage Corp. was aware of this rule. The Secretary of State Corporations

Division list American Home Mortgage Corp., a foreign corporation incorporated in New York on April 5, 1988, filed a foreign corporation registration in Massachusetts on August 11, 1999.  On the line "The name used to transact business in Massachusetts: American Home Mortgage Corp., listed Mortgage select.  Nowhere to be found on the Business Entity Summary for American Home Mortgage Corp. is American Brokers Conduit.  Nowhere.

The "object [of the registration requirement] is to enable a person dealing with another trading under a name not his own, to know the man behind the name, that he may know or make inquiry as to his business character or financial responsibility ." *DiBiase v. Garnsey*, 103 Conn. 21, 27, 130 A. 81 (1925).

Plaintiffs have presented evidence that American Brokers Conduit is a fictitious name and nothing more.  Defendant cannot produce any evidence to support their erroneous claim that American Brokers Conduit is a subsidiary.  In fact Defendant misstates to the Court on purpose what the documents say that Defendant is relying on to say American Brokers Conduit is a subsidiary.

Defendant relies erroneously on two documents for their allegation that American Brokers Conduit is a subsidiary of American Home Mortgage Corp., the Banking Commissioners Cease and Desist Order issued in 2007 and American Home Mortgage Investment Corp. 10-K Annual Report filed with the Securities and Exchange Commission ("SEC 10-K filing").  But there is also a third document, the Unites States Bankruptcy Court Filing by American Home Mortgage Corp.

The Oxford Dictionary defines a subsidiary as "a company controlled by a holding company". The Business Dictionary defines a subsidiary as "An enterprise controlled by another (called the parent) through the ownership of greater than 50 percent of its voting stock."  Blacks Law Dictionary defines a subsidiary as "An enterprise that is controlled by another by owning more than 50% of the stock."  The Internal Revenue Service ("IRS") Code Section 1202(e)(5)(C) defines "subsidiary" to mean a corporation where the parent owns more than 50% of the combined voting power of all classes of stock entitled to vote, or more than 50% in value of all outstanding stock.

In order for a company to own stock, it has to be incorporated.  A subsidiary can also be an LLC. If a company is incorporated or an LLC is formed, every state law requires it to be registered to do

business in the state.  The IRS requires every corporation and LLC to receive a taxpayer identification

number and annually file the appropriate income tax form.  For a Corporation it is Form 1120; for an LLC

it is either Form 1120S (if it chooses to be taxed as an S Corp.) or From 1065 (if it chooses to be taxed as

a partnership).  If American Brokers Conduit truly is a subsidiary, then Defendant can present evidence

by presenting proof of registration with a state, stock certificates, annual reports, income tax returns, etc.

There are many legal documents that can back up Defendant's erroneous claim.

Now to the two documents Defendant has decided to hang its hat; the Banking Commissioners

Cease and Desist Order and the SEC 10-K filing. First, the Massachusetts Banking Commissioners Cease

and Desist Order.  The caption reads "In the Matter of American Home Mortgage Corp. d/b/a American

Brokers Conduit Mortgage Company License MC 1368, and its affiliates American Home Mortgage

Acceptance Inc. Mortgage Lender License No. ML 2664 and American Home Mortgage Ventures LLC,

Mortgage Company License No. MC 5032.  Paragraph 1 "The Division of Banks ("Division") through

the Commissioner, has jurisdiction over the licensing and regulation of persons and entities engaged in

the business of mortgage lender and mortgage broker in Massachusetts pursuant to Massachusetts General

Laws hapter 255E, section 2."  Paragraph 3 states American Home Mortgage is licensed by the

Commissioner as a mortgage lender and mortgage broker under Massachusetts General Laws chapter

255E, section 2.  According to records maintained on file with the Division, the Commissioner initially

issued a mortgage company license to American Home Mortgage to engage in the business of mortgage

lender and mortgage broker in Massachusetts on or about March 21, 2000, with license no. MC 1368."

Paragraph 7, "American Home Mortgage is a wholly-owned subsidiary of American Home Mortgage

Holdings, Inc., which, in turn, is a wholly-owned subsidiary of American Home Mortgage Investment

Corp., a publicly traded company listed on the New York Stock Exchange."  Nowhere, in the

Commissioner's Cease and Desist Order does the Commissioner state that American Brokers Conduit is a

subsidiary of American Home Mortgage, nowhere.  What the Commissioner acknowledges is American

Brokers Conduit is a dba of American Home Mortgage, period.  When the Commissioner outlines the

entities in Paragraph 7, the Commissioner outlines the legal entities.  A fictitious name is not a legal

entity.

Second, the SEC 10-K filed by American Home Mortgage Investment Corp, a publicly traded company, therefore it has to file an Annual Report with the SEC. Exhibit 21.1 to the Annual Report (10-K) sets forth the subsidiaries of American Home Mortgage Investment Corp., as follows: American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp. and American Home Mortgage Servicing, Inc. The next column for each name lists who owns the outstanding shares of the subsidiary. The parent company American Home Mortgage Investment Corp. owns 100% of each subsidiaries stock. Next column, where was each subsidiary formed. Fourth Column, "Names under which the subsidiary conducts business." For American Home Mortgage Corp, thirty three names are listed as dbas. On the list as a fictitious name is American Brokers Conduit. This is a judicial admission in an SEC filing that American Brokers Conduit is a dba, fictitious name.

Third, for some reason Defendant omitted American Home Mortgage Corp.'s United States Bankruptcy Filing, Case No. 07-11051 where Schedule B lists *Personal* Property. American Home Mortgage Corp judicially admits that American Brokers Conduit is nothing more than a trademark. (Exhibit BB)

Ocwen knows that American Brokers Conduit is not a licensed lender, nor a subsidiary. As stated in the facts above, at Ocwen's deposition, when pressed as to what authority Ocwen is relying on, the response is Attorney Client Privilege Work Product. Therefore, Ocwen admits American Brokers Conduit is not a licensed lender and not a subsidiary or why would Ocwen spend thousands of dollars to figure out how to skirt the system. If there was objective evidence that American Brokers Conduit was a licensed lender, it would not be Attorney/Client Privilege Work Product. So, without any evidence, Ocwen, all by itself, has decided American Brokers Conduit is a subsidiary so it can continue to service the many many loans it owns written by American Brokers Conduit. The Massachusetts Cease and Desist Order lays out the authority to license lenders in Massachusetts. Nowhere in Massachusetts General Statutes chapter 255E, section 2, is there an exception for Attorney/Client privilege work product. Ocwen knowingly chose to demand payment and attempt to foreclose on a void note and void mortgage written

by a fictitious name.  This is unconscionable.  Defendant's speculation and theory alone cannot establish objective evidence to prove that American Brokers Conduit is a legal entity.

Defendant's reliance on *Rudek v. Frederick J. Hanna* is unfounded.  Ocwen admits it investigated the legality of American Brokers Conduit citing Attorney/Client Privilege Work Product as its authority that American Brokers Conduit is a licensed lender.  Ocwen believes it has more authority than the Massachusetts legislature, more authority that the Massachusetts Banking Commission who receives its power from the Massachusetts legislature and from the Massachusetts Court System and the Federal Court System.

## C. Defendant Offers No Proof that Defendant Had a Right to Send Letters Alleging Default and Attempt to Foreclose Plaintiffs Property.

Defendant sent five notices stating that proceedings to foreclose on Defendant's property would commence because Plaintiffs were in default on a void note.  Defendant continues to try and argue that all of Defendants actions were proper.  What Discovery proved is Defendant knew American Brokers Conduit was not a lender that is why they engaged in research as stated in the Deposition as Attorney/Client Privilege Work Product.  Why would Defendant engage in this research if American Brokers Conduit had the right to lend money?  Because Defendant knew and knows American Brokers Conduit is a fictitious name.  Ocwen does not have the legal authority to attempt foreclosure on Plaintiffs home and neither does Deutsche Bank.  Therefore, sending letters alleging Plaintiffs are in Default and Foreclosure will commence unless the void, fictitious note is paid is a violation of the FDCPA.  Defendant has gone so far as to fabricate and forge the signature of Plaintiffs on a note and mortgage.  That is illegal.  Defendant admits they sent the letters, they admit they violated the FDCPA.  A foreclosure cannot happen with a void note and void mortgage.

Defendant violated the FDCPA by continually filing assignments of mortgage with the Barnstable Registry of Deeds when the Defendant knew that the note they were servicing was fabricated, when they knew that American Brokers Conduit was not a licensed lender and had no legal authority to write a note or a mortgage, yet Defendant filed two more assignment of mortgages with the Barnstable Registry of

14

Deeds.  The Defendant knowingly committed fraud in an attempt to keep the security in place on the underlying void note.

The creativity of Defendant's arguments knows no bounds.  Defendant alleges that the July 1, 2015 and January 28, 2016 letters were not attempts to collect a debt for an investor.  This is laughable because then the Defendant presents the July 1, 2015 letter set forth a reinstatement amount of $223,614.37.  So, Defendant is not trying to collect on a debt that they know is void, yet if the reinstatement amount is paid, then no foreclosure.

**Conclusion**

Plaintiffs are entitled to Summary Judgment.  Plaintiffs have met their burden of proof and will prevail at Trial.  Defendant admits to fabricating a new note and mortgage, Defendant admits that American Brokers Conduit did not have a license to lend because Defendant relies on Attorney/Client Privilege Work Product to declare that American Brokers Conduit was a licensed lender when there is not any type of legal authority whatsoever to support Defendant's assertion, Defendant cannot prove that American Brokers Conduit is a subsidiary of American Home Mortgage Corp because there is not any evidence and a fictitious name is not a subsidiary, Defendant wrongfully charged litigation costs when Defendant had not incurred any litigation expenses, Defendant sent over 109 notices in attempting to collect on a debt they knew was void because the void note was written by a fictitious name and Defendant submitted two additional assignments of mortgage for filing with the Barnstable Registry of Deeds, knowing that American Brokers Conduit lacked the legal authority to write the note or mortgage all in violation of the FDCPA.  Plaintiffs request the Court to grant Plaintiffs Motion for Summary Judgment.  Plaintiffs request the Court to vacate its previous order granting Defendants Motion to Dismiss and grant Plaintiffs Motion for Summary Judgment against all Defendants.

Dated:  July 20, 2017

Respectfully submitted
Timothy C. Harry and Karen C. Harry
Plaintiffs, by their Attorney

*/s/ Tina L. Sherwood*
Tina L. Sherwood BBO# 662047
Law Office of Tina L. Sherwood
19C Governors Way
Milford, MA 01757
(617) 930-3533
tina@sherwoodlawma.com

## CERTIFICATE OF SERVICE

I, Tina L. Sherwood, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 20, 2018.

*/s/ Tina L. Sherwood*
Tina L. Sherwood