**UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TIMOTHY C. HARRY and KAREN C. HARRY,<br><br>*Plaintiffs,*<br><br>v.<br><br>AMERICAN BROKERS CONDUIT, APEX MORTGAGE SERVICES, FIDELIT Y NATIONALTITLE GROUP, AMERICAN HOME MORTGAGE SERVICING, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSETS TRUST 2007-2 MORTGAGE-BACKED PASS- CERTIFICATES, SERIES 2007-2, HOMEWARD RESIDENTIAL , MORTGAGE ELECTRONIC RECORDING SYSTEM , INC., OCWEN LOAN SERVICING and KORDE & ASSOCIATES,<br><br>*Defendants.* | CIVIL ACTION NO. 16-10895 |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE OCWEN LOAN SERVICING, LLC'S STATEMENT OF UNDISPUTED FACTS**</u>

Plaintiffs, Timothy C. Harry and Karen C. Harry, by and through their attorney, hereby submit Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Strike Defendant Ocwen Loan Servicing LLC Exhibits to its Statement of Facts in support Defendant's Motion for Summary Judgment against Plaintiffs for violations of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. 1962 et seq. pursuant to Fed. R. Civ. P. 56.

Plaintiffs urge the Court to strike the following documents from the record: Exhibit A, the alleged note, Exhibit E, the alleged mortgage agreement, Exhibit G, first of three alleged assignments, Exhibit

H, second of three alleged assignments, Exhibit I, Ocwen's alleged statement of Plaintiffs payment history, Exhibit N, Affidavit of Katherine Ortwerth, Exhibit O, Notice of Intent to Foreclose and Exhibit P, Korde & Associates letter threatening litigation in collection of a debt.

These Exhibits should be excluded because Katherine Ortwerth's Affidavit (Exhibit N) is used in an attempt to substantiate certain factors in Defendants Statement of Facts as true.   These Exhibits need to be excluded as hearsay without any exception.   By Ms. Katherine Ortwerth's own testimony, she does not work for the Defendant, Ocwen Loan Servicing, LLC and never has, she lacks personal knowledge of Ocwen Loan Servicing, LLC's business practices and procedures, she is employed as a Senior Loan Analyst with Ocwen Financial Corp. in its legal department where she spends half of her time in the legal department and half of her time flying around the country being deposed as Ocwen's spokesperson.   Her tenure at Ocwen is just over four years.   Further her Affidavit does not meet the business records exception to the Hearsay rule because she has no personal knowledge of the record keeping, business practices, times of the writing, preparations of the writing without being informed by someone else.

**I.      Brief Statement of the Facts**

**II.**      The Alleged Transaction

On December 13, 2006, Plaintiffs applied with Apex Mortgage Services to refinance their current loan on 31 Mar Way, Mashpee, MA in the amount of $450,000.   The alleged transaction allegedly closed on December 21, 2006, with the alleged lender being American Brokers Conduit.   A notary was not present at the alleged closing.   [Doc. 236, Exhibit F, page 72, line 17, page 73, line 20, page 74 and 75].   Plaintiffs had concerns about the alleged loan that took place and contacted the Massachusetts Attorney General's Office. [Doc. 236 Exhibit F, page 92, 98, 129]   Plaintiffs also had concerns about an alleged lending transaction involving an entity they had never heard of.   [Doc. 236,

Exhibit F, page 33-34].

Plaintiffs did not know the alleged loan was a negative amortization loan.  They stopped paying on the alleged loan October 1, 2008. [A.C., para. 56].

Foreclosure notices and attempts were made on the Plaintiffs property, September 28, 2009, [A.C., para 94], November 22, 2010 [A.C. para. 102], June 14, 2011 [A.C. 104], February 13, 2015 [A.C. para 115] and January 28, 2016 [A.C. para 122].

Plaintiffs brought suit in Barnstable Superior Court suing Defendants for fraudulent and deceitful actions under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act ("FDCPA"), the Truth In Lending Act ("TILA"), Rescission Enforcement, fraud in the concealment, slander, violations of MGL Chapters 183C, 266, 268, in violation of MGL c.93A, Section 2, as well as racketeering activities under the Racketeer Influenced and Corrupt Organizations ("RICO") by all Defendants working in collusion with one another.  [A.C. Introduction].  The matter was removed to Federal District Court on May 17, 2016 [Doc. No. 1].

Plaintiffs filed motion for default judgment against Apex Mortgage Services and American Brokers Conduit on June 13, 2016 for failing to retain counsel and respond to the pleadings.  The Motions for Default judgment were denied without prejudice to their renewal at an appropriate time. [Doc. 167].

On January 12, 2017, Judge Saylor granted the Defendant's motion to dismiss except for Defendant Ocwen under Claim IV violations under the Fair Debt Collections Practices Act. [Doc. 120].

The Lender

Plaintiffs alleged in their Amended Complaint [A.C. para. 37] that American Brokers Conduit ("ABC") was not an incorporated entity, not a licensed lender and lacked the authority to lend money. [A.C. para. 48-49].  Indeed, Ocwen admits that it is "their understanding from discussions with

[Ocwen's] own counsel that we [Ocwen] believe that the lender was licensed, so we [Ocwen] do not believe the loan and mortgage to be void." [Doc. 236, Exhibit A, Ocwen Deposition, pages 21, line 12]. When asked why do you [Ocwen] believe the lender was licensed, Ocwen's Attorney Bodurtha stepped in with an objection stating "I'm instructing my client not to answer. You're calling for attorney/client communications and work product privileged documents." [Doc. 236, Exhibit A, page 21, line 20]. Ocwen restated this answer several times. [Doc. 236, Exhibit A, pages 47, 55-56 and 89]. Ocwen, with these statements believes that Ocwen has more authority than the Massachusetts legislature that passed the laws stating who and how an entity becomes a lender; has more authority than the Massachusetts Banking Commission, whose authority comes from the Massachusetts General Laws to give and rescind lending, servicing and debt collection licenses and the state and federal court systems that interpret the law. There is no legal standing for attorney/client privileged work product to create a licensed lender. The motive for this power is as Ocwen stated "Ocwen services many loans that they [ABC] are the lender on." [Doc. 236, Exhibit A, pg 31, line1]. Ocwen admits there is no licensed lender except by their own conclusion for *business reasons*.

ABC was not an entity incorporated in Massachusetts or anywhere else [Doc. 236, Exhibit B, MA Secretary of State Corp. search]. ABC did not have a license to lend money. [Doc. 236, Exhibit C NMLS database]. ABC did not have a Mortgage Electronic Registration System Membership Number ("MERS MIN"). [Doc. 236, Exhibit M]. ABC is an unregistered, unincorporated fictitious name of American Home Mortgage Corp. [Doc. 236, Exhibit D; MA Cease and Desist Order to American Home Mortgage Corp]. Massachusetts Banking Commission ruled in Docket Number 99-026 [Doc. 236, Exhibit E] "No authority exists under said chapter 255E for a mortgage lender to conduct business under an existing license while also using a trade name for all or any part of its business. The intent of the licensing framework set forth in said chapter 255E is to ensure that a consumer knows the identity of the

entity with which he or she is doing business.  To allow a lender to use a name other than the name which appears on its license would be contrary to this intent and foster potential consumer confusion regarding the identity of the licensee.  Accordingly, it is not permissible for a licensed lender to conduct business under more than one name."

The ABC fictitious name belongs to American Home Mortgage Corp. [Doc. 236, Exhibit D]. American Home Mortgage Corp. is registered with the Massachusetts Secretary of State as a foreign entity and listed "Mortgage Select" as the name of another entity that American Home Mortgage Corp. may be doing business under. [Doc. 236, Exhibit H] and [Doc. 120, pg. 18].  The only way any governing authority, or individual would know what is American Brokers Conduit is if that entity or person had received a copy of the Massachusetts Banking Commissions Cease and Desist Order.

Ocwen testified that the original note was in the Collateral File they brought to the deposition. [Doc. 236, Exhibit A, page 26].  According to Ocwen, the Collateral File was requested from Deutsche Bank for foreclosure.  [Doc. 236, Exhibit I, page OLS000139].  Ocwen presented to Plaintiffs the Collateral File to review the original note.  Plaintiffs reviewed the "original note".  However, it turns out there is no original note anywhere.  Ocwen admits in the Harry Comment Log [Doc. 236, Exhibit I, page OLS000244] that the signature on the "original note" does not match the signature of the Plaintiffs. Plaintiffs had sent a letter to Ocwen on June 30, 2015 directing all communication be directed to Plaintiffs' attorney, Tina L. Sherwood.  [Doc. 236, Exhibit N].   The response may be found in [Doc. 236, Exhibit I, page OLS000246] which states "Concern:  You provided us with the authorization letter and requested us to update our records accordingly.  Response:  A review of loan documents indicates that the signature is not matching with the authorization letter provided to us.  Therefore, we are unable to authorize Tina L. Sherwood to receive and discuss any information on the above loan."  This letter was mailed out on July 20, 2015 to Plaintiffs.  [Doc. 236, Exhibit I, page OLS000247].  The loan

document that was reviewed was the same loan document Ocwen presented to Plaintiffs as the true and original note in a sworn deposition.  Ocwen presented a forged fraudulent note to Plaintiffs as the original.  This admission in the Harry Comment Log, which is kept by Ocwen and records every phone call, communication or decision about the Harry loan demonstrates that the signature on the alleged original note does not belong to the Plaintiffs.

Ocwen presented a Mortgage marked "A True and Certified Copy of the Original".  [Doc. 236, Exhibit J].  Ocwen testified that this mortgage came from Ocwen's Collateral File and that it is a copy of the original.  [Doc. 236, Exhibit A, pg. 49].  When asked "…if I went to the Barnstable Registry of Deeds, I would find this mortgage, correct?"  Answer:  "I doubt it would have the stamp that said "true copy", but yes, I believe so."

Ocwen's Attorney, Samuel Bodurtha, during an email exchange with Plaintiffs Attorney, Tina Sherwood, stated "I'm not sure what questions my client would answer about the original note that could not be answered with a copy.  The original mortgage is largely inconsequential because possession of the original is not required.  All that is required is recording an original which was done." [Doc. 236, Exhibit K].

Plaintiffs produced a copy of the alleged Mortgage that was filed with the Barnstable Registry of Deeds. [Doc. 236, Exhibit L].  The created mortgage [Doc. 236, Exhibit J] states that it was allegedly prepared by American Brokers Conduit, 4650 Regent Blvd, Suite 100, Irving, Texas 75063 and prepared by Robin Smith in Chesterbrook, PA.  The Exhibit J mortgage does not have any hand written printing on page one and the hand written printing on page fourteen is different than the recorded alleged mortgage, and the MERS MIN used is inaccurate.  According to MERS, the first seven digits of a MERS MIN, is meant to identify the lender.  The remaining eleven numbers is supposed to identify the alleged loan.  The first seven digits on this alleged mortgage are 1000242 which belongs to American

Home Mortgage Holding, Inc., [A. C. para 63] an entity that does not have a license to lend in Massachusetts, only in Oklahoma, Colorado and California.  [Doc. 236, Exhibit O]

The Exhibit L Mortgage that was filed with the Barnstable Registry of Deeds was requested by Fidelity National Title Group, Carrolton, Texas.  This mortgage has Karen C. Harry, Husband and Wife" hand written on the first page.  The lender listed on both mortgages is American Brokers Conduit ("ABC") who Ocwen has admitted does not have a license to lend money but may be a licensed lender because Ocwen "says so".

Ocwen admits via the Harry Comment Log, that Deutsche Bank has the original note, however it appears that neither Deutsche Bank nor Ocwen have the original mortgage.  [Doc. 236, Exhibit I, page OLS000208].  Since the Ocwen Comment Log also admits the signature on the alleged original note does not match the Plaintiffs, no party has a note and a note was *fraudulently created* to service this alleged loan that Ocwen admits ABC did not have a license to lend but may be a licensed lender because Ocwen "says so".  Additionally, a second mortgage was *fraudulently created* for the Collateral File that was used as evidence of the original to service the loan.  Ocwen admits that the Collateral File for these documents came from Deutsche Bank. [Doc. 236, Exhibit I, page OLS000208].   Ocwen admits no party to this alleged lending transaction knows where the original note or mortgage may be found.  The copy of the note Plaintiffs have and Ocwen relies on, is an exact copy of the *fraudulently created* note in the Ocwen Collateral File.

Neither the Plaintiffs nor Ocwen know where the consideration for this alleged loan came from. When Massachusetts Banking Commission issued its Cease and Desist Order against American Home Mortgage Corp. d/b/a American Brokers Conduit, the Banking Commission stated "American Home Mortgage …. Have engaged in, are engaging in, or are about to engage in, act or practices which warrant the belief that they are not operating honestly, fairly, soundly and efficiently in the public interest in

violation of standards governing the licensing and conduct of a mortgage lender and mortgage broker including, but not limited to, the provisions of the Division's regulations at 209 CMR 42.00 et. seq. and the public interest will be irreparably harmed by delay in issuing an ORDER TO CEASE AND DESIST to American Home Mortgage. The Banking Commission further stated… had the facts and conditions found therein existed at the time of American Home Mortgage's …. Original mortgage lender and/or mortgage broker license applications, the Commissioner would have been warranted in refusing to issue such licenses.  Further the facts and conditions set forth in Paragraphs 1-23 present sufficient grounds for the revocation of American Home Mortgage's ….. mortgage lender and/or mortgage broker licenses, pursuant to Massachusetts General Laws Chapter 255E, section 6 and the Division's regulation at 209 CMR 42.04 and 209 CMR 42.07(2)(b)."  [Doc. 236, Exhibit D].

The Plaintiffs testified under oath that their initials and signature on some of the lending documents are not their signed initials and signature.  Timothy Harry stated that the initials on the Mortgage he reviewed were not his.  [Doc. 236, Exhibit F, page 54, line 8].  Further, Timothy Harry stated that he didn't recognize the handwriting on the mortgage that was filed with the Barnstable Registry of Deeds [Doc. 236, Exhibit L] as being either his or his wife's.  [Doc. 236, Exhibit F, page 78] Karen Harry testified under oath that it is not her signature on the Truth-In-Lending Statement.  [Doc. 236, Exhibit G, page 58].  She also testified that she did not sign the Notice of Rescission Document. [Doc. 236, Exhibit G, page 87].

In addition to no licensed lender, no existing Note, no existing Mortgage, a fraudulently created Note to rely upon for servicing, a fraudulently created mortgage to rely upon for servicing and fraudulently executed lending documents, Ocwen admits it does "clean-up".  Specifically, the Ocwen Harry Comment Log states:  "Delay in Document sent, Deny NoDLS Back Dated loans to be reviewed by LRPU if can be sent as part of clean up."  [Doc. 236, Exhibit I, page OLS 000088].  This statement

implies that Ocwen was involved in a fraudulent game of fixing lending documents.

Ocwen admits that it was charging the Harrys litigation costs on their payoff notice before litigation had even begun.  The first litigation expense was assessed on May 21, 2013 in the amount of $3,917.80, three years before litigation began in this case.  [Doc. 236, Exhibit I, page OLS 000056]. Plaintiffs filed their verified complaint on March 18, 2016.  Ocwen's Harry Comment Log states that Litigation Case Opened on April 18, 2016.  [Doc. 236, Exhibit I, page OLS 000323]

Ocwen admits Ocwen set the Harrys up with a Hazard Insurance Policy.  [Doc. 236, Exhibit I, page OLS 000020].  Ocwen charged $1,664 for the Hazard Insurance.  However, all outstanding invoices and fees demonstrate that taxes and insurance were part of the escrow fees.  Therefore, the Plaintiffs have been charged with property insurance put in place by Ocwen and Hazard Insurance put in place by Ocwen.  [Doc. 236, Exhibit I, page OLS 000023 – OLS 000352] yet Ocwen testified that the Harrys were not in force placed insurance. [Doc. 236, Exhibit A. page 125, line 10].

Discovery closed on June 6, 2018 with the Deposition of Katherine Ortwerth, not an employee of Ocwen Loan Servicing, LLC, the Defendant, but an employee of Ocwen Financial Corp.  Plaintiffs waited eleven months after four Motions were filed against them, [Doc. 170, 172, 173, 191], and a hearing on December 20, 2017 followed by another motion being filed by Defendant against Plaintiffs on January 22, 2018 [Doc. 210] and another hearing on February 15, 2018, followed by Defendant making Plaintiffs wait until March 22, 2018 for a Deposition.  Plaintiffs asked for a one week extension because of the weather, neither party knew if Ocwen's representative could fly in or if the court clerk could make it.  Instead, Ocwen made Plaintiffs wait until April 18, 2018. Two days before that deposition, Defendant informed Plaintiff that the documents requested to be presented on the January 24, 2018 Deposition were not available.  Plaintiffs asked that the Deposition happen again within a week, but no, Ocwen would not make anyone available until June 6, 2018 when the deposition

happened. [Doc. 219].

At the May 29, 2018 scheduling hearing, Judge Saylor ordered dispositive motions to be filed by June 29, 2018.  Both Plaintiffs and Defendants filed for Summary Judgment on June 29, 2018.

Plaintiffs filed a Motion to Strike certain Exhibits filed by Defendants and file this Memorandum of law in support of striking those documents.  Plaintiffs object to the Affidavit of Ms. Ortwerth because Ms. Ortwerth lacks personal knowledge and the exhibits do not fall within the business record exception to the hearsay rule.

### III.    LEGAL ARGUMENT

Federal Rules of Evidence 602 states "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Katherine Ortwerth was deposed by Plaintiffs on June 6, 2018.

At the deposition, Katherine Ortwerth stated that she is employed as a senior loan analyst by Ocwen Financial Corp., whose indirect subsidiary is Ocwen Loan Servicing, LLC. [Doc. 236, Exhibit A, page 12, line 4 -6].  She stated that her job responsibilities are two parts; there's the part she does in the office which is doing research on litigated loans.  She also executes litigation documents such as affidavits, discovery verification, declarations, et cetera.  And then there is the part she does outside the office which is appear on behalf of Ocwen and the loan investors we service for at depos, trials, hearings, mediations, anywhere they need a body, basically. [Doc. 236, Exhibit A, page, 12 lines 8-16].  She has worked for Ocwen Financial Corp. since January 2014 [Doc. 236, Exhibit A, page 13, line 1].  She completed her Juris Doctorate and passed a bar exam.  [Doc. 236, Exhibit A, page 12, page 85, line 24]. Ms. Ortwerth has been deposed forty times. [Doc. 236, Exhibit A, page 15].

Ms. Ortwerth's physical job is located at Ocwen Financial Corp. in Texas.  Ocwen Loan Servicing, LLC, the Defendant in this case, is physically located in Florida.  When questioned about her position in

the reporting hierarchy at Ocwen Financial Corp., Ms. Ortwerth knows who her manager is, John Ramer, a non-attorney that manages the legal department and the legal department reports to Joseph Samarias.  However, Ms. Ortwerth is clueless regarding how many levels of management there are between her and the CEO of Ocwen Financial Corp.  [Doc. 236, Exhibit A, page 14, line 5 through page 15 line 9].

Ms. Ortwerth does not work for the Defendant.  She has no personal knowledge regarding anything about the Plaintiffs and the alleged loan.  To prepare for the deposition Ms. Ortwerth stated she reviewed the deposition notice. "I prepped with my attorney about the deposition notice.  I went through our imaging system and our – and looked at documents in there.  I went through our servicing platform and went through the comments logs in there and the transaction history and then I just reviewed various documents."  [Doc. 236, Exhibit A, page 16, lines 7-13].

When asked about the alleged lending transaction, Ms. Ortwerth, with her Juris Doctorate did not know what the term "consideration" means. [Doc. 236, Exhibit A, page 29, line 2].  Ms. Ortwerth believes the alleged lending transaction occurred in Ohio.  [Doc. 236, Exhibit A, page 30, lines 1-4]. Yet, Defendant, Ocwen Loan Servicing, LLC, states that the alleged transaction occurred on December 21, 2006 at the Harrys' home. [Doc. 235].  Ms. Ortwerth does not know how an entity gains the right to lend money in a state [Doc. 236 Exhibit A, page 31, line 5], does not know anything about the National Mortgage Licensing Service ("NMLS") [*Id.* at page 32, line 5], believed American Brokers Conduit was a lender after being shown it was not listed on the NMLS as a licensed lender and did not know how American Brokers Conduit could be a lender if it was not listed as a licensed lender [*Id*. at page 32, line 23-24].  Ms. Ortwerth testified that based on her discussions with her counsel, it is her understanding that they (meaning American Brokers Conduit) were licensed to lend.  I have not reviewed any documents to that effect, then. [*Id.* at page 33, lines 9-12].

When Ms. Ortwerth was asked, after reading the Massachusetts Cease and Desist order whether American Brokers Conduit is a d/b/a or ….. a lender.  She testified stating "All I can tell you is that the documents that are in our servicing system that are our business records indicate that American Brokers Conduit was the lender.  The rest of this is kind of a legal world about lending and d/b/a's and I don't still do this – I know we've looked at all these documents, but I just don't feel comfortable about the legality of whether something needs to be done in one way or another, so I don't know the answer." [*Id.* Page 42, lines 2-12].

When pressed again about American Brokers Conduit being a lender, she stated, I cannot make a legal conclusion about whether this was the proper lender or not.  I do not know the answer to that. [*Id.* Page 46, lines 4-7].  She believes people sign more than one original mortgage at a closing. [*Id.* page 54, Lines 3-7].  The collateral file contains the alleged note and mortgage, but Ms. Ortwerth does not know where they came from.  [*Id.* page 58, Lines 12-15].

After Ms. Ortwerth repeatedly admitted how much she does not know about the alleged transaction and alleged documents associated therewith, Defendant Ocwen Loan Servicing, LLC submits an Affidavit, allegedly written by Ms. Ortwerth, in support of Defendant's Motion for Summary Judgment, whereby Ms. Ortwerth is deemed to be the authority on the exhibits A, E, G, H, I, O and P. However, in her Affidavit, [Doc. 234, Exhibit N, paragraph 4] she admits "The records relating to the loan at issue in the above-captioned case (hereinafter, the "Loan") are maintained by Ocwen in the course of its regular conduct business activities and were made at or near the time of the event, by or from information transmitted by a ***person with knowledge***." [Emphasis Added.]  She admits she does not have any personal knowledge for her attestation and is attesting in her Affidavit to hearsay.

As can be seen from Ms. Ortwerth's deposition testimony and her Affidavit she lacked personal knowledge not only about the alleged transaction but about the alleged executed documents going to the

alleged transaction.  How could she attest to anything about Ocwen Loan Servicing, LLC; she does not

work for the Defendant an "indirect subsidiary" of Ocwen Financial Corp. whatever that means.

 "Personal knowledge 'must be shown by facts set forth in the declaration, and not merely by

conclusions'" *Kern v. Ocwen Loan Servicing, LLC,* 2015-00183458-CU-OR quoting, (Weil & Brown,

Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2017) paragraph 10:109, p. 10-47.

Ms. Ortwerth states that she is a senior loan analyst for Ocwen Financial Corp, an entity not a party to

this case, she works in Texas, Ocwen Loan Servicing, LLC is located in Florida.  She states at paragraph

3 of her Affidavit, "In the ordinary course of my work for Ocwen, my duties include reviewing and

analyzing the business and loan records for loans serviced by Ocwen.  In this regard, I am familiar with

Ocwen's books and records concerning these loans."  Familiarity does not rise to the level of personal

knowledge.  Personal knowledge is derived from an employee having responsibility for the accuracy of

the work being performed.

In her Affidavit she states she "personally examined these business records including the subject

Note and Mortgage, as well as documents relating to loan history, all correspondence and

communications relating to Ocwen's collection efforts …" So, Ocwen's representative could not answer

questions about the alleged note and the alleged mortgage during her deposition, but in an Affidavit she

is now all knowing.  Ms. Ortwerth had an opportunity during her June 6, 2018 deposition to state what

she knew and she did not know much at all.  She cannot change her deposition testimony by filing an

Affidavit.

Ms. Ortwerth's Affidavit fails to satisfy the requirements of the business record exception to the

hearsay rule.  The business record exception requires that: (a) the writing was made in the regular course

of business; (b) the writing was made at or near the time of the act, condition or event; (c) the custodian

or other qualified witness testifies to its identity and the mode of its preparation; and (d) the source of

information and method and time of preparation were such as to indicate its trustworthiness. *Kern v. Ocwen Loan Servicing, LLC*.

*Kern* is very similar to Plaintiffs' case.  Kern was suing Ocwen Loan Servicing, LLC in a non-judicial foreclosure action.  Ocwen filed for Summary Judgment and in support of its motion, relied on the Declaration of Kyle Lucas ("Lucas").  Lucas was also employed as a Senior Loan Analyst with Ocwen Financial Corp. and was not an employee of Ocwen Loan Servicing, LLC, the defendant.  Lucas also reviewed documents in the Kern case.  In Kern, business records came from IndyMac Mortgage Services, a division of OneWest Bank to Ocwen, when Ocwen acquired the account.  In the Harry case, the business records came from Homeward Residential to Ocwen when Ocwen acquired Homeward Residential in 2012.  Lucas has no personal knowledge of IndyMac's business recording keeping and neither does Ms. Ortwerth regarding Homeward Residential.  Ms. Ortwerth was specifically asked what due diligence Ocwen performed when acquiring Homeward Residential and she did not know.  [Doc. 236, Exhibit A, page 61].  This alleged loan transaction occurred in 2006, Ocwen acquired Homeward Residential in 2013, Ms. Ortwerth commenced employment as the Ocwen spokesperson in 2014 while being employed, not by the Defendant but by Ocwen Financial Corp, a completely different entity.

Similar to *Kern*, Ms. Ortwerth fails to provide facts regarding her personal knowledge that (a) the writing was made in the regular course of business and (b) the writing was made at or near the time of the act, condition, or event.  Ms. Ortwerth did present how she prepared for the deposition, by reviewing the record and talking with counsel.  Plaintiffs do not know the sources of information and method and time of preparation that could possible rise to the standard of trustworthiness.

Nowhere does Ms. Ortwerth explain what an "indirect subsidiary" is, explain the relationship between Ocwen Financial and Ocwen Loan Servicing, and explain how Ms. Ortwerth working out of Texas, for a different entity can attest to the day to day happenings at Ocwen Loan Servicing in Florida.

In *Kern*, the court sustains all objections to Lucas' declaration for lack of foundation, lack of personal knowledge and found the exhibits did not qualify for the business record exemption to the hearsay rule.  Plaintiffs argue this Court should grant Plaintiffs Motion to Strike all of these exhibits for the same reasons.  By Ms. Ortwerth's own admission, she is relying on hearsay for her deposition and affidavit.  And has Plaintiffs have demonstrated through her deposition testimony, she does not know much at all.

Date:  July 20, 2018                              Respectfully Submitted
                                                  Timothy C. Harry, Karen C. Harry Plaintiffs

                                                  */s/ Tina L. Sherwood*
                                                  Tina L. Sherwood BBO#662047
                                                  Law Office of Tina L. Sherwood
                                                  19C Governors Way
                                                  Milford, MA  01757
                                                  (617) 930-3533
                                                  tina@sherwoodlawma.com


### CERTIFICATE OF SERVICE

I, Tina L. Sherwood, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 20, 2018.

                                   /s/ *Tina L. Sherwood*
                                   Tina L. Sherwood