## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY C. HARRY and ) | |
| KAREN C. HARRY ) | |
| ) | |
|     Plaintiffs, ) | **Case No. 16-cv-10895-FDS** |
| ) | |
| v. ) | |
| ) | |
| AMERICAN BROKERS CONDUIT, et. al ) | |
| ) | |
|     Defendants. ) | |

## PLAINTIFFS' REPLY TO DEFENDANT OCWEN LOAN SERVICING, LLC'S RESPONSE TO PLAINTIFFS' CONCISE STATEMENT OF MATERIAL FACTS AND FURTHER STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.l, Timothy C. harry and Karen C. Harry the "(Plaintiffs") by and through their attorney hereby submits their reply to Defendant, Ocwen Loan Servicing, LLC ("Ocwen"), response to Plaintiffs Concise Statement of the Material Facts concerning Plaintiffs' remaining claim for alleged violations of the Federal Debt Collection Practices Act ("FDCPA" ) assessed against Ocwen. Plaintiffs submit their reply to Defendant's opposition to Plaintiffs material facts pursuant to LR 56.l in consecutively numbered paragraphs with page or paragraph references to supporting pleadings, depositions, affidavits, or other evidentiary documents.[1]

## PLAINTIFFS' CONCISE STATEMENT OF MATERIAL FACTS

### A.     The Alleged Transaction

1.     On December 13, 2006, Plaintiffs applied with Apex Mortgage Services to refinance their current loan on 31 Mar Way, Mashpee, MA in the amount of $450,000. The alleged transaction allegedly closed on December 21, 2006, with the alleged lender being American Brokers Conduit. A

---

[1] Plaintiffs incorporate its Statement of Undisputed Material Facts and Memorandum of Law submitted in support of their Motion for Summary Judgment together with Plaintiffs Amended Complaint. [Doc. 52, 236 and 237].

notary was not present at the alleged closing. [Exhibit F - Deposition of Timothy Harry, page 72, line 17, page 73, line 20, page 74 and 75). Plaintiffs had concerns about the alleged loan that took place and contacted the Massachusetts Attorney General's Office. [Exhibit F, page 92, 98, 129] Plaintiffs also had concerns about an alleged lending transaction involving an entity they had never heard of. [Exhibit F, page 33-34].

**Response:** Admitted only that the closing to refinance Plaintiffs' existing mortgage took place on or about December 21, 2006. The statements regarding the "alleged" closing and/or "alleged" lender are opinions, are not factual, and are not support by the evidence cited. Denied that the loan transaction was unenforceable or that the lender, American Brokers Conduit ("American Broker s") was a non-existing entity not authorized to conduct business in Massachusetts. (Ocwen's SOF, *Exhibit M.)* Moreover, the remaining statements regarding Plaintiffs ' "concerns" are not material to the issues raised in their Motion for Summary Judgment.

**PLAINTIFFS' RESPONSE:** Plaintiffs statements regarding the "Alleged Closing" are factual as and are supported by Plaintiffs evidence that no legal lender nor a notary attended a closing which would make it legal. This is entirely Defendant's opinion unsupported by evidence. It is Defendant's opinion unsupported by any evidence that American Brokers Conduit not an un-licensed unregistered entity allowed to lend money. Defendant has produced no evidence to discredit Plaintiffs fact. Further, the facts Defendant decided not to include in the response memo are facts relevant to Plaintiffs Summary Judgment Motion as Defendant makes much about Plaintiffs actions. These statements, with documentation stand. "A notary was not present at the alleged closing. [Exhibit F – Deposition of Timothy Harry, page 72, line 17, page 73, line 20, page 74 and 75]. Plaintiffs had concerns about the alleged loan that took place and contacted the Massachusetts Attorney General's Office. [Exhibit F, page 92, 98, 129] Plaintiffs also had concerns about an alleged lending transaction involving an entity they had never heard of. [Exhibit F, page 33-34]." Plaintiffs' factual statement goes to Ocwen's business practices under the FDCPA.

2

2.      Foreclosure notices and attempts were made on the Plaintiffs property, September 28, 2009, [A.C. para 94], November 22, 2010 [A.C. para. 102], June 14, 2011 [A.C. 104], February 13, 2015 [A.C. para 115] and January 28, 2016 [A.C. para 122].

**Response:** This statement is not material to the Plaintiffs' FDCPA claim or issues raised in their Motion for Summary Judgment to the extent that it references correspondence that fall outside of the one-year limitations period under the statute. With regard to the January 28, 2016 foreclosure notice, this statement relates to a written document, the terms of which are self-evident.

**Plaintiffs' Response:**  Plaintiffs statement goes to the business practices of Ocwen under the FDCPA.  Plaintiffs aver there is no statute of limitations on that which is void.

3.      Plaintiffs brought suit in Barnstable Superior Court suing Defendants for fraudulent and deceitful actions under the Real Estate Settlement Procedures Act ("RESPA'.), the Fair Debt Collection Practices Act ("FDCPA"), the Truth In Lending Act (" TILA " ), Rescission Enforcement, fraud in the concealment, slander, violations of MGL Chapters 183C, 266, 268, in violation of MGL c.93A, Section 2, as well as racketeering activities under the Racketeer Influenced and Corrupt Organizations ("RICO") by all Defendants working in collusion with one another. [A.C. Introduction]. The matter was removed to Federal District Court on May 17, 2016 [Doc. No. l].

**Response.**  Admitted.

4.      Plaintiffs filed motion for default judgment against Apex Mortgage Services and American Brokers Conduit on June 13, 2016 for failing to retain counsel and respond to the pleadings. The Motions for Default judgment were denied without prejudice to their renewal at an appropriate time. [Doc. 167].

**Response:** Admitted.

5.      On January 12, 2017, Judge Saylor granted the Defendants motion to dismiss except for Defendant Ocwen under Claim IV violations under the Fair Debt Collections Practices Act. Doc. 120]. The Plaintiffs can prove Defendant Ocwen violated the Fair Debt Collection

Practices Act and are entitled, as a matter of law, Summary Judgment in their favor.

**Response:** Admitted only that Judge Saylor granted the Defendants ' Motion to Dismiss except for Count IV for alleged violations of the FDCPA against Ocwen. Denied as to the statement that Ocwen violated the FDCPA because it is a legal conclusion, is not factual, and is not support by any evidence.

**Plaintiffs Response:** Plaintiffs have produced evidence to support Plaintiffs' claim that Ocwen violated the Fair Debt Collection Practices Act. It is Defendant Ocwen that has produced no evidence that Ocwen did not. Ocwen's response is nothing more than its own legal conclusion.

B. **The Lender**

7. Plaintiffs have alleged in their Amended Complaint [A.C. para. 37] that ABC was not an incorporated entity, not a licensed lender and lacked the authority to lend money. [A.C. para. 48-49]. Indeed, Ocwen admits that it is "their understanding for discussions with [Ocwen's] own counsel that we [Ocwen] believe that the lender was licensed, so we [Ocwen] do not believe the loan and mortgage to be void." [Exhibit A, Ocwen Deposition, pages 21, line 12]. When asked why do you [Ocwen] believe the lender was licensed, Ocwen's Attorney Bodurtha stepped in with an objection stating "I'm instructing my client not to answer. You're calling for attorney/client communications and work product privileged documents." [Exhibit A, page 21, line 20]. Ocwen restated this answer several times. [Exhibit A, pages 47, 55-56 and 89]. Ocwen, with these statements believes that Ocwen has more authority than the Massachusetts legislature that passed the laws stating who and how an entity becomes a lender; has more authority than the Massachusetts Banking Commission, whose authority comes from the Massachusetts General Laws to give and rescind lending, servicing and debt collection licenses and the state and federal court systems that interpret the

law. There is no legal standing for attorney/client privileged work product to create a licensed lender. The motive for this power is as Ocwen stated "Ocwen services many loans that they [ABC] are the lender on." [Exhibit A, page 31, line l). Ocwen admits there is no licensed lender except by their own conclusion for *business reasons.*

**Response:** Denied that American Brokers was not an incorporated entity, and further denied that the record evidence cited supports such a statement. American Brokers was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006. (Ocwen's SOF, *Exhibit M.)* Moreover, this paragraph contains statements that are opinions and legal conclusions, are not factual, and are not supported by any evidence.

**Plaintiffs Response:** Defendants response, every single word of Defendant's response is not true. Stating that American Brokers was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006 is an opinion only by Defendant unsubstantiated by any evidence whatsoever. The cited evidence from Defendant's deposition is absolutely true and the Court can read the cited sections itself. Defendant cannot continue to cite what it wants to be the truth when clearly there is no evidence to support Defendant's opinion. Plaintiffs provide evidence through exhibits for every fact.

8.     ABC was not an entity incorporated in Massachusetts or anywhere else [Exhibit B, MA Secretary of State Corp. search]. ABC did not have a license to lend money. [Exhibit C NMLS database]. ABC did not have a Mortgage Electronic Registration System Membership Number C-'MERS MTN"). [Exhibit M]. ABC is an unregistered, unincorporated fictitious name of American Home Mortgage Corp. [Exhibit D; MA Cease and Desist Order to American Home Mortgage Corp]. Massachusetts Banking Commission ruled in Docket Number 99-026 (Exhibit E] "No authority exists under said chapter 255E for a mortgage lender to conduct business under an existing license while also using a trade name for all or any part of its business. The intent of the

licensing framework set forth in said chapter 255E is to ensure that a consumer knows the identity of the entity with which he or she is doing business. To allow a lender to use a name other than the name which appears on its license would be contrary to this intent and foster potential consumer confusion regarding the identity of the licensee. Accordingly, it is not permissible for a licensed lender to conduct business under more than one name."

**Response:** Denied that American Brokers was not an incorporated entity, and further denied that the record evidence cited supports such a statement. American Brokers was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006. (Ocwen's SOF, *Exhibit* M.) Moreover, this paragraph contains statements that are opinions and legal conclusions, are not factual, and are not supported by any evidence.

**Plaintiffs Response:** Defendants response, every single word of Defendant's response is not true. Stating that American Brokers was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006 is an opinion only by Defendant unsubstantiated by any evidence whatsoever. Further the cited ruling from the Massachusetts Banking Commission is the Commission's own words. Defendant has offered not one scintilla of evidence to support that American Brokers Conduit was an active, duly-licensed foreign corporation at the time of loan origination. Where is American Brokers Conduit registration with Massachusetts? Where is American Brokers Conduit's record of being licensed with the Nationwide Multistate Licensing System ("NMLS")? Why does American Home Mortgage Corp. in its Bankruptcy filing declare that American Brokers Conduit is nothing more than a "trademark"? Why does the parent company of American Home Mortgage Corp. list American Brokers as a dba of American Home Mortgage Corp. along with 32 other names? Because that is what it is, a fictitious name. [Doc. 236, Exhibits B, C, D, E; Doc. 241 Exhibits AA, BB, DD].

9.      The ABC fictitious name belongs to American Home Mortgage Corp. [Exhibit D]. American Home Mortgage Corp. is registered with the Massachusetts Secretary of State as a

foreign entity and listed "Mortgage Select" as the name of another entity that American Home Mortgage Corp. may be doing business under. [Exhibit H] and [Doc. 120, pg. 18). The only way any governing authority, or individual would know what is American Brokers Conduit is if that entity or person had received a copy of the Massachusetts Banking Commissions Cease and Desist Order.

**Response:** Admitted only that American Brokers is a subsidiary of American Home Mortgage Holdings, Inc. and was an active, duly-licensed foreign corporation at the time of the loan origination in December, 2006. (Ocwen's SOF, *Exhibit* M.) The remaining statements in this paragraph are opinions and legal conclusions, are not factual, and are not supported by any evidence.

**Plaintiffs Response:**   American Brokers is NOT a subsidiary of American Home Mortgage Holdings, Inc. and was not an active duly-licensed foreign corporation at the time of the loan origination in December, 2006.  This is entirely an opinion unsubstantiated by any evidence.  Nowhere in American Home Mortgage Investment Corp.'s December 31, 2004 10-K [Doc. 241, Exhibit DD] is American Brokers Conduit listed as a subsidiary of American Home Mortgage Holdings, Inc.   Defendant is purposely misleading the Court.  In fact, Exhibit 21.1 to the December 31, 2004 `10-K, which lists every subsidiary of the parent company American Home Mortgage Investment Corp, also lists "Names under which the Subsidiary Conducts Business".  Beside American Home Mortgage Corp, thirty three names including American Brokers Conduit are listed as DBAs.  [Doc. 241, Exhibit DD].

10.    Ocwen testified that the original note was in the Collateral File they brought to the deposition. [Exhibit A, page 26]. According to Ocwen, the Collateral File was requested from

Deutsche Bank for foreclosure. [Exhibit I, page OLS000139]. Ocwen presented to Plaintiffs the Collateral File to review the original note. Plaintiffs reviewed the "original note".  However, it turns out there is not an original note anywhere.  Ocwen admits in the Harry Comment Log [Exhibit I, page OLS000244] that the signature on the "original note" does not match the signature of the Plaintiffs. Plaintiffs had sent a letter to Ocwen on June 30, 2015 directing all communication be directed to Plaintiffs ' attorney, Tina L. Sherwood.  [Exhibit N].  The response may be found in [Exhibit I, page OLS000246) which states "Concern: You provided us with the authorization letter and requested us to update our records accordingly. Response: A review of loan documents indicates that the sig nature is not matching with the authorization letter provided to us. Therefore, we are unable to authorize Tina L. Sherwood to receive and discuss any information on the above loan." This letter was mailed out on July 20, 2015 to Plaintiffs. [Exhibit I, page OLS000247]. The loan document that was reviewed was the same loan document Ocwen presented to Plaintiffs as the true and original note in a sworn deposition.  Ocwen presented a forged fraudulent note to Plaintiffs as the original. This admission in the Harry Comment Log, which is kept by Ocwen and records every phone call, communication or decision about the Harry loan demonstrates that the signature on the alleged original note does not belong to the Plaintiffs.

**Response:** Admitted only that, in compliance with applicable discovery rules, Ocwen produced the original Note to Plaintiffs' counsel for inspection. The statements in this paragraph regarding the "alleged forged and fraudulent" Note are opinions and legal conclusions, are not factual, and are not support by any evidence. Denied that the Note is fraudulent or forged, and further denied that the record evidence cited demonstrates that the Plaintiffs' signatures were forged or that the loan documents were falsified. Plaintiff Timothy Harry does not dispute the fact that he signed the Note (Plaintiff Karen Harry was not on the Note). *(See* excerpts from Timothy Harry's Deposition attached hereto as *Exhibit A,* pp. 54-60.) Moreover, to the extent that this paragraph contains

statements relating to Ocwen's letter dated July 20, 2015, this is a written document, the terms of which are self-evident. Finally, the statements in this paragraph are not material to Plaintiffs ' FDCPA claim or the issues raised in their Motion for Summary Judgment.

**Plaintiffs Response.** This response by Defendant is nothing more than Defendant's opinion unsupported by any facts or evidence.  The Ocwen Harry Log states in black and white on page OLS000244, the signature on the "Note" produced in the collateral file does not match Plaintiffs real signature as set forth on their letter to Ocwen.  Whatever alleged Note Timothy Harry signed at an alleged closing without a notary present is NOT the "NOTE" presented to Plaintiffs at Ocwen's deposition.  The Ocwen Harry Comment Log affirms that a new note was fabricated and Timothy Harry's signature was forged.  Both Deutsche Bank and Ocwen relied upon this newly created note to service the alleged lending transaction.  This is factual as it is an admission found in Ocwen's business record of the Harry Loan.  This evidence of an admission goes to Ocwen's business practices of doing whatever is necessary to keep servicing a fraudulent transaction.  Plaintiffs' facts go to Defendant's unscrupulous and unconscionable business practices.  Ocwen admitted that it services many loans written by the fictitious name American Brokers Conduit.  Ocwen is trying to use unscrupulous and unconscionable business practices to keep revenue flowing in.

11.     Ocwen presented a Mortgage marked "A True and Certified Copy of the Original". (Exhibit J]. Ocwen testified that this mortgage came from Ocwen's Collateral File and that it is a copy of the original. [Exhibit A, pg. 49]. When asked "... if I went to the Barnstable Registry of Deeds, I would find this mortgage, correct?" Answer: "I doubt it would have the stamp that said "true copy", but yes, I believe so."

**Response:** Admitted only that, in compliance with applicable discovery rules, Ocwen produced a copy of the original Mortgage to Plaintiffs' counsel for inspection. Denied that the Mortgage is fraudulent or forged, and further denied that the record evidence cited demonstrates

that the Plaintiffs' signatures were forged or that the loan documents were falsified. Plaintiffs do not dispute the fact that they both signed the Mortgage *(See* excerpts from Karen Harry's Deposition attached hereto as *Exhibit B,* p. 40; *Exhibit A,* pp. 54-60.) Moreover, the statements in this paragraph are not material to Plaintiffs' FDCPA claim or the issues raised in their Motion for Summary Judgment.

 **Plaintiffs Response.** Defendant's response is not true.  This alleged mortgage, Exhibit J, is not the alleged mortgage signed by the Harrys.  This is a mortgage created by Deutsche Bank and Ocwen for purposes of servicing a loan.  Ocwen's representative Ortwerth, testified that she believed people sign more than one mortgage (in acknowledging a different mortgage was filed with Barnstable Registry of Deeds). [Doc. 244, page 12].  The actual alleged mortgage (alleged because American Brokers lacked the legal capacity to enter into a mortgage contract) was filed with the Barnstable Registry of Deeds and is different from the one Ocwen presented as a True and Certified Copy of the Original.  This goes to Defendants unscrupulous and unconscionable business practices under the FDCPA.

 12. Ocwen's Attorney, Samuel Bodurtha, during an email exchange with Plaintiff s Attorney, Tina Sherwood, stated "I' m not sure what questions my client would answer about the original note that could not be answered with a copy. The original mortgage is largely inconsequential because possession of the original not required. All that is required is recording an original which was done." [Exhibit K].

 **Response:** Admitted only that, in compliance with applicable discovery rules, Ocwen produced a copy of the original Mortgage to Plaintiffs ' counsel for inspection. Denied that the Mortgage is fraudulent or forged, and further denied that the record evidence cited demonstrates that the Plaintiffs' signatures were forged or that the loan documents were falsified. Moreover, the statements in this paragraph are not material to Plaintiffs' FDCPA claim or the issues raised

in their Motion for Summary Judgment.

**Plaintiffs Response:** Defendant's response is not true. This alleged mortgage, Exhibit J, is not the alleged mortgage signed by the Harrys. This is a mortgage created by Deutsche Bank and Ocwen for purposes of servicing a loan. Ocwen's representative Ortwerth, testified that she believed people sign more than one mortgage (in acknowledging a different mortgage was filed with Barnstable Registry of Deeds). [Doc. 244, page 12]. The actual alleged mortgage (alleged because American Brokers lacked the legal capacity to enter into a mortgage contract) was filed with the Barnstable Registry of Deeds and is different from the one Ocwen presented as a True and Certified Copy of the Original. This goes to Defendants unscrupulous and unconscionable business practices under the FDCPA.

13.   Plaintiffs produced a copy of the alleged Mortgage that was filed with the Barnstable Registry of Deeds. [Exhibit L]. The created mortgage [Exhibit J] states that it was allegedly prepared by American Brokers Conduit, 4650 Regent Blvd, Suite l00, Irving, Texas 75063 and prepared by Robin Smith in Chesterbrook, PA. The Exhibit J mortgage does not have any hand written printing on page one and the hand written printing on page fourteen is different than the recorded alleged mortgage, and the MERS MIN used is inaccurate. According to MERS, the first seven digits of a MERS MIN, is meant to identify the lender. The remaining eleven numbers is supposed to identify the alleged loan. The first seven digits on this alleged mortgage are l000242 which belongs to American Home Mortgage Holding, Inc., [A. C.  para 63] an entity that does not have a license to lend in Massachusetts, only in Oklahoma, Colorado and California. [Exhibit O]

**Response:** Admitted only that, in compliance with applicable discovery rules, Ocwen produced a copy of the original Mortgage to Plaintiffs' counsel for inspection. The statements in this paragraph regarding the ·'alleged forged and fraudulent" Mortgage are opinions and legal conclusions, are not factual, and are not support by any evidence. Denied that the Mortgage is

fraudulent or forged, and further denied that the record evidence cited demonstrates that the Plaintiffs' signatures were forged or that the loan documents were falsified. Moreover, the statements in this paragraph refer to a written document, i.e., the Mortgage, the terms of which of self-evident. Finally, the statements are not material to Plaintiffs ' FDCPA claim or the issues raised in their Motion for Summary Judgment.

**Plaintiffs Response:** Defendant's response is not true. This alleged mortgage, Exhibit J, is not the alleged mortgage signed by the Harrys. This is a mortgage created by Deutsche Bank and Ocwen for purposes of servicing a loan. Ocwen's representative Ortwerth, testified that she believed people sign more than one mortgage (in acknowledging a different mortgage was filed with Barnstable Registry of Deeds). [Doc. 244, page 12]. The actual alleged mortgage (alleged because American Brokers lacked the legal capacity to enter into a mortgage contract) was filed with the Barnstable Registry of Deeds and is different from the one Ocwen presented as a True and Certified Copy of the Original. This goes to Defendants unscrupulous and unconscionable business practices under the FDCPA.

14.     The Exhibit L Mortgage that was filed with the Barnstable Registry of Deeds was requested by Fidelity National Title Group, Carrolton, Texas. This mortgage has Karen C. Harry, Husband and Wife". The lender listed on both mortgages is American Brokers Conduit who Ocwen has admitted does not have a license to lend money but may be a licensed lender because Ocwen "says so".

**Response:** Denied that the Mortgage is fraudulent or forged, and further denied that Ocwen admitted that American Brokers "does not have a license to lend money." *(See* excerpts from Ocwen's 30(b)(6) deposition of Katherine Ortwerth attached to hereto as *Exhibit* C, pp. 32- 36.) The record evidence cited does not demonstrate either that the loan documents were falsified or that American Brokers was not licensed to lend money. Moreover, the statements in this paragraph refer to a written document, i.e., the Mortgage, the terms of which of self-evident. Finally, the

statements are not material to Plaintiffs' FDCPA claim or the issues raised in their Motion for Summary Judgment.

**Plaintiffs Response:**  Defendant's response is not true.  This alleged mortgage, Exhibit J, is not the alleged mortgage signed by the Harrys.  This is a mortgage created by Deutsche Bank and Ocwen for purposes of servicing a loan.  Ocwen's representative Ortwerth, testified that she believed people sign more than one mortgage (in acknowledging a different mortgage was filed with Barnstable Registry of Deeds). [Doc. 244, page 12].  The actual alleged mortgage (alleged because American Brokers lacked the legal capacity to enter into a mortgage contract) was filed with the Barnstable Registry of Deeds and is different from the one Ocwen presented as a True and Certified Copy of the Original.  Further, Ortwerth testified that she is told that Ocwen believes that American Brokers Conduit is a licensed lender based on Attorney/Client Privilege Work Product.  There is no such exception in the statutes governing the licensing process of a lender in Massachusetts.  Further, Defendant offers no more than Defendant's own opinion regarding American Brokers Conduit is a licensed lender without one scintilla of evidence.  Even American Home Mortgage Corp considers American Brokers Conduit a mere trademark.  This goes to Defendants unscrupulous and unconscionable business practices under the FDCPA.

15.    Ocwen admits via the Harry Comment Log, that Deutsche Bank has the original note, but does not have the original mortgage. [Exhibit I, page OLS000208). Since the Ocwen Comment Log also admits the signature on the alleged original note does not match the Plaintiffs, no party has a note and a note *was fraudulently created* to service this alleged loan that Ocwen admits ABC did not have a license to lend but may be a licensed lender because Ocwen "says so". Additionally, a second mortgage was *fraudulently created* for the Collateral File that was used as evidence of the original to service the loan. Ocwen admits that the Collateral File for these documents came from Deutsche Bank. [Exhibit I, page OLS000208]. Ocwen admits no party to this alleged lending transaction knows where the original note or mortgage may be found. The

copy of the note Plaintiffs, have received and Ocwen relies on, is an exact copy of the *fraudulently created* note in the Ocwen Collateral File.

**Response:** Denied that the Mortgage or Note is fraudulent or forged, and further denied that Ocwen admitted that American Brokers "does not have a license to lend money." *(See Exhibit C, pp. 32-36.)* The statements in this paragraph regarding the "alleged forged and fraudulent" Note and Mortgage are opinions and legal conclusions, are not factual, and are not support by any evidence. The record evidence cited does not demonstrate either that the loan documents were falsified or that Ocwen fraudulent created a second mortgage. The original Mortgage was recorded in the Registry of Deeds, and Ocwen produced the original Note and a copy of the original Mortgage to Plaintiffs' counsel for inspection. Moreover, the statements are not material to Plaintiffs' FDCPA claim or the issues raised in their summary judgment motion.

**Plaintiffs Response:**   Defendant's response is full of opinions and Defendant's own conclusions. First, Plaintiffs have provided real evidence that the note was fabricated and that Ocwen and Deutsche Bank fabricated another mortgage, forging Plaintiffs signatures on both.  Proven. Second, Ocwen admits American Brokers Conduit is a licensed lender based on Attorney/Client Privilege Work Product.  No such thing exists.  Ocwen does not produce any evidence that American Brokers Conduit is a licensed lender.  Therefore, stating American Brokers Conduit is a licensed lender based on Attorney/Client Privilege Work Product means they know American Brokers Conduit is a fictitious name just as American Home Mortgage Investment Corp. 10-K states and just as American Home Mortgage Corp bankruptcy filing states.  Third, these facts go to Ocwen's unscrupulous and unconscionable business practices under the FDCPA by creating whatever is needed and saying whatever they want to try and convince the Court without any evidence whatsoever, that American Brokers Conduit was a licensed lender.  Plaintiffs pray the Court does not buy into nothing more than opinions and conclusions unsubstantiated by any admittable evidence.

16.   Neither the Plaintiffs nor Ocwen know where the consideration for this alleged loan came from. When Massachusetts Banking Commission issued its Cease and Desist Order against American Home Mortgage Corp. d/b/a American Brokers Conduit, the Banking Commission stated "American Home Mortgage .... Have engaged in, are engaging in, or are about to engage in, act or practices which warrant the belief that they are not operating honestly, fairly, soundly and efficiently in the public interest in violation of standards governing the licensing and conduct of a mortgage lender and mortgage broker including, but not limited to, the provisions of the Division's regulations at 209 CMR 42.00 et. seq. and the public interest will be irreparably harmed by delay in issuing an ORDER TO CEASE AND DESIST to American Home Mortgage. The Banking Commission further stated... had the facts and conditions found therein existed at the time of American Home Mortgage's Original mortgage lender and/or mortgage broker license applications, the Commissioner would have been warranted in refusing to issue such licenses. Further the facts and conditions set forth in Paragraphs 1-23 present sufficient grounds for the revocation of American Home Mortgage's mortgage lender and/or mortgage broker licenses, pursuant to Massachusetts General Laws Chapter 255E, section 6 and the Division' s regulation at 209 CMR 42.04 and 209 CMR 42.07(2)(b)." [Exhibit D].

**Response:** The statements in this paragraph are opinions and legal conclusions, are not factual, and are not material to Plaintiffs' FDCPA claim. Moreover, the statements in this paragraph refer to a written document, i.e., the Cease and Desist Order, the terms of which of self-evident.

**Plaintiffs Response:** The statements in Paragraph 16 are nothing but facts.  Not even the

Banking Commissioner knows where the money came from to satisfy the alleged loan.  This statement goes to Ocwen's unscrupulous and unconscionable business practices under the FDCPA.  If Defendant knew where the money came from, the Defendant would have corrected the Plaintiff.   Moreover, the Banking Commissioner's Cease and Desist Order contains published statements of facts and findings.

17.     The Plaintiffs testified under oath that their initials and signature on some of the lending documents are not their signed initials and signature. Timothy Harry stated that the initials on the Mortgage he reviewed were not his. [Exhibit F, page 54, line 8]. Further, Timothy Harry stated that he didn't recognize the handwriting on the mortgage that was filed with the Barnstable Registry of Deeds [Exhibit L] as being either his or his wife's. [Exhibit F, page 78] Karen Harry testified under oath that it is not her signature on the Truth-In-Lending Statement. [Exhibit G, page 58). She also testified that she did not sign the Notice of Rescission Document. [Exhibit G, page 87).

**Response:** Denied that the loan documents is fraudulent or forged, and further denied that the record evidence cited demonstrates that the Plaintiffs ' signatures were forged or that the loan documents were falsified. Plaintiffs do not dispute the fact that they both signed the mortgage and that Timothy Harry signed the Note *(Exhibit A,* pp. 54-60; *Exhibit B,* p. 44.) Moreover, the statements in this paragraph are not material to Plaintiffs ' FDCPA claim or the issues raised in their Motion for Summary Judgment.

**Plaintiffs Response:**  Plaintiffs sworn testimony speaks for itself.  This factual statement goes to Defendant's unscrupulous and unconscionable business practices under the FDCPA and are material to Plaintiffs' Motion for Summary Judgment against Ocwen.

18.     In addition to no licensed lender, no existing Note, no existing Mortgage, a fraudulently created Note to rely upon for servicing, a fraudulently created mortgage to rely upon for servicing and fraudulently executed lending documents, Ocwen admits it does ·'clean-up".

Specifically, the Ocwen Harry Comment Log states: "Delay in Document sent, Deny NoDLS Back Dated loans to be reviewed by LRPU if can be sent as part of clean up." [Exhibit I, page OLS 000088]. This statement implies that Ocwen was involved in a fraudulent game of fixing lending documents.

    **Response:** The statements in this paragraph regarding the "alleged forged and fraudulent" Note and Mortgage are opinions and legal conclusions, are not factual, and are not support by any evidence. The record evidence cited does not demonstrate that Ocwen testified that it "fraudulently created mortgages." Moreover, the statements are not material to Plaintiff s' FDCPA claim or the issues raised in their Motion for Summary Judgment.

    **Plaintiffs Response:** Plaintiffs, through exhibits, including Ocwen's business record known as the Harry Comment Log, judicially proves the fabrication of a new note and mortgage for purposes of servicing. Further, Ocwen's Business Record asked for back dated documents to be prepared as part of clean up. These statements and proof go to Ocwen's unscrupulous and unconscionable business practices under the FDCPA and are material to Plaintiffs' Motion for Summary Judgment against Ocwen.

    19.    Ocwen admits that it was charging the Harrys litigation costs on their payoff notice before litigation had even begun. The first litigation expense was assessed on May 21, 2013 in the amount of $3,917.80, three years before litigation began in this case. [Exhibit I, page OLS 000056]. Plaintiffs filed their verified complaint on March 18, 2016. Ocwen's Harry Comment Log states that Litigation Case Opened on April 18, 2016. [Exhibit I, page OLS 000323].

    **Response:** Admitted only that Ocwen, on behalf of the investor, added the legal costs incurred by Ocwen to commenced foreclosure proceedings after Plaintiffs defaulted on their mortgage loan payments. These legal fees were properly applied to the mortgage account pursuant to the terms of the Mortgage. *(Exhibit* C, pp. 141-4S.)

**Plaintiffs Response:**  Defendant's response is not true.  If Defendant looked at Plaintiffs exhibit during the Deposition and included as [Doc. 241 Exhibit CC], Plaintiffs are not talking about the legal fees charged for foreclosure.  Plaintiffs are talking about the separate charge entitled "Litigation Costs".  This charge is listed in the Payoff Quote sent to Plaintiffs through April 2015; one year before any litigation began.  This fact goes to Ocwen's unscrupulous and unconscionable business practices.  Further, there is no record evidence an "investor" exists or who it may be, no evidence the alleged trust exists, no evidence Deutsche Bank is the Trustee of this alleged trust, no record evidence that Ocwen is a servicer for this alleged trust, that Plaintiffs' defaulted on anything, or that a mortgage account in Plaintiffs' name exists based on a void alleged note and void alleged mortgage.

20.     Ocwen admits Ocwen set the Harrys up with a Hazard Insurance Policy. [Exhibit I, page OLS 000020]. Ocwen charged $1,664 for the Hazard Insurance. However, all outstanding invoices and fees demonstrate that taxes and insurance were part of the escrow fees. Therefore, the Plaintiffs have been charged with property insurance put in place by Ocwen and Hazard Insurance put in place by Ocwen. [Exhibit I, page OLS 000023 - OLS 000352] yet Ocwen testified that the Harrys were not in force placed insurance. [Exhibit A. page 125, line 1O].

**Response:**  Denied that there was ever lender-placed hazard insurance on the Property. After Plaintiffs' default, Ocwen continued to make payments on the Plaintiffs' existing hazard insurance policy to prevent the policy from being cancelled. The insurance payments were included as part of the escrow account as permitted under the Mortgage. *(See* copies of escrow account letters attached hereto as *Exhibit D; Exhibit* C, pp. 125-28.)

**Plaintiffs Response:**  This is absolutely not true.  In black and white in the Harry comment log, it was Ocwen that forced placed the Hazard insurance.  The language states "Hazard Insurance Policy Setup Required – Document in imaging."  [Doc. 236, page OLS000020].  This fact goes to

Ocwen's unscrupulous and unconscionable business practices.

21.     Ocwen admits that if there was a loan, Ocwen does not know who or how many investors own it. On September 8, 2015 Ocwen mailed a letter addressed to Tina L. Sherwood, which Tina L. Sherwood, attorney for the Plaintiffs, never received because it was mailed to the wrong address. In the letter Ocwen states "a Note or a partial interest in the Note can be sold one or more times without prior notice to the borrower". This letter acts as a heads up to the Plaintiffs that some changes may have happened on the alleged note. However, due to the fraudulent alleged note Ocwen admits it was relying on, and the fact that ABC is not a licensed lender, except that Ocwen believes it has the authority to say it is, there is no note. Based on the forgoing undisputed and admitted facts, Plaintiffs are entitled to Summary Judgment as a matter of law.

**Response:** Denied that the Note is fraudulent or forged, and further denied that Ocwen admitted that there "is no note." The statements in this paragraph regarding the "fraudulent alleged" Note are opinions and legal conclusions, are not factual, and are not support by the evidence cited. The record evidence cited does not demonstrate either that the loan documents were falsified or that Ocwen does not know who owns the loan. *(See Exhibit C, pp. 119-21.)* Moreover, the statements are not material to Plaintiffs' FDCPA claim or the issues raised in their Motion for Summary Judgment.

**Plaintiffs Response:**   Ocwen can deny all it wants, the Plaintiffs have produced clear evidence that Ocwen knows that a Note was fabricated and the signatures do not match the signatures of Plaintiffs based on a letter they sent to Ocwen, that Ocwen fabricated a second mortgage and forged the Plaintiffs signature.  The proof is in Ocwen's business record – the Harry Comment Log.  All of these factors go to Ocwen unscrupulous and unconscionable and unconscionable business practices. Ocwen provides no admissible evidence to dispute Plaintiffs' claims.

## OCWEN'S FURTHER STATEMENT OF UNDISPUTED MATERIAL FACTS

22.     Deutsche Bank as Trustee is the current owner of the mortgage loan. *(See* excerpts from Ocwen's 30(6)(6) deposition of Katherine Ortwerth attached to hereto as *Exhibit B,* p. 119-21.)

**Plaintiffs Response:**  This is not true and Defendant has not presented any admittable evidence in support of this assertion.  Ms. Ortwerth's testimony is not admissible as it is hearsay not falling within any hearsay exception.  Ms. Ortwerth has demonstrated through her own words, all of her information comes from somewhere else, she has no personal knowledge of this transaction or how Ocwen Loan Servicing conducts business.  Furthermore, Plaintiffs have moved to strike the affidavit of Ocwen and all Exhibits attached.

23.     Ocwen did not force-place any new policy on the Property, but rather continued to pay the Plaintiffs' existing hazard insurance policy, and renewed the policy to prevent it from lapsing. The hazard insurance payments were included as part of the escrow account, which Ocwen was permitted to do pursuant to the terms of the Mortgage. *(See Exhibit D; Exhibit* C, pp. 125-28.)

**Plaintiffs Response:**   Not true.  Plaintiffs have demonstrated on page OLS000020 that Ocwen force placed hazard insurance on Plaintiffs property.  Ms. Ortwerth's testimony is not admissible as it is hearsay not falling within any hearsay exception.  Ms. Ortwerth has demonstrated through her own words, all of her information comes from somewhere else, she has no personal knowledge of this transaction or how Ocwen Loan Servicing conducts business.

24.     Pursuant to the Mortgage, Ocwen, on behalf of the lender and/or their assigns, was authorized to take such actions necessary to protect the lender's interests in the Property, including the procurement of a new hazard insurance policy or renewal of an existing insurance policy. Specifically, Section 5 of the Mortgage provides, in relevant part, "If Borrower fails to maintain [hazard insurance], Lender may obtain insurance coverage, at Lender's option and Borrower's

expense." (Ocwen's SOF, *Exhibit E.)*

**Plaintiffs Response:**  This statement allows Defendant to decide, without proof or admissible evidence, to charge extra fees thereby increasing Plaintiffs alleged principal unnecessarily.  Defendant offers no proof that the insurance was needed on a void alleged note and mortgage.

25.    Ocwen sent Plaintiffs several letters during the lifetime of the Loan advising that the current hazard insurance policy was insufficient, additional coverage was required, and that Ocwen would be required to make payments on behalf of Plaintiffs to avoid the policy from lapsing in the event that they failed to make timely payments. *(See Exhibit* C, pp. 125-29.)

**Plaintiffs Response:**  This statement is absolutely not true.  Defendant sent ONE letter dated April 30, 3018 alleging that the current hazard insurance was insufficient, without any substantiation an alleged loan even existed nor explanation as to why Ocwen had the authority to make this decision.

26.    Ocwen also charged legal fees to Plaintiffs' alleged account relating to the foreclosure proceedings that Ocwen was forced to commence on behalf of the investor after the Plaintiffs defaulted on their mortgage payments and failed to bring their account current. Ocwen sent Plaintiff s a letter dated September 8, 2015 breaking down the fees on their account, including the legal fees charged related to the foreclosure proceedings. *(See* excerpts from Ocwen's Comments Log including copy of September 8, 2015 letter attached hereto as *Exhibit E; see also Exhibit* C, pp. 141-45.)

**Plaintiffs Response:**  This statement is false.  First, a default cannot happen on a void note and void mortgage.  Plaintiffs have proven that American Brokers Conduit was not a licensed lender nor a registered entity allowed to conduct business in Massachusetts.  Second, Plaintiffs are not questioning the foreclosure legal fees on the Payoff Quotes letters that are listed as two separate

entries.  Plaintiffs challenge the Defendant's authority in charging $3,917.80 for litigation costs that had not yet been incurred.  [Doc. 241, Exhibit CC].  The payoff quote letters dated March 16, 2015, March 26, 2015, April 10, 2015 and April 13, 2015 lists:  Legal Costs – FCLS $3449.35, Legal Costs – FCLS $2,450 and Litigation $3,917.80.  Litigation did not begin until March 18, 2016.  The litigation charges are in violation of the FDCPA.  Furthmore, all four letters state "this communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.  However, if the debt is in active bankruptcy or has been discharged through bankruptcy this communication is not intended as and does not constitute an attempt to collect a debt."

27.  Ocwen was authorized to charge Plaintiffs attorneys' fees pursuant to the Mortgage. Section 14 of the Mortgage provides in relevant part, "Lender may charge Borrower fees for services performed in connection with Borrower's default... including, but not limited to, attorneys ' fees, property inspection and valuation fees." (Ocwen's SOF, *Exhibit E.)*

**Plaintiffs Response:**  The litigation charges cited in the payoff quote letters dated March 16, 2015, March 26, 2015, April 10, 2015 and April 13, 2015 lists:  Legal Costs – FCLS $3449.35, Legal Costs – FCLS $2,450 and Litigation $3,917.80.  Litigation did not begin until March 18, 2016. Defendant was charging for legal fees that had not yet been incurred.  Therefore these charges are in violation of the FDCPA.  Furthermore, all four letters state "this communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy this communication is not intended as and does not constitute an attempt to collect a debt."

28.  Plaintiffs do not dispute the fact that they signed the Mortgage and the  Note. Plaintiff Timothy Harry unambiguously testified during his deposition that he signed both loan documents. *(See Exhibit A,* pp. 54-56, 58-60; *Exhibit B,* p. 40.)

**Plaintiffs Response:**  Plaintiffs believed they were signing a note and a mortgage,

however, it does not matter what Plaintiffs believed.  The alleged note and mortgage they signed were written by a fictitious name legally incapacitated to enter into a lending contract.  Defendant has not produced any admissible evidence to the contrary.  Furthermore, Timothy Harry testified, under oath, that the initials on the mortgage were not his.  [Doc. 236, Exhibit 10, line 3-22].

29.     Plaintiff Timothy Harry also testified that he signed all of the loan documents, not just the Mortgage and the Note. *(Exhibit A,* pp. 134-35.)

**Plaintiffs Response:**  Plaintiffs believed they were signing a note and a mortgage, however, it does not matter what Plaintiffs believed.  The alleged note and mortgage they signed were written by a fictitious name legally incapacitated to enter into a lending contract. Defendant has not produced any admissible evidence to the contrary.  Please note, Karen Harry did not testify to the same.  Defendant wants to sneak in this fact pretending that both parties signed all lending documents.  Karen Harry testified, under oath, that the signature on the Truth-In-Lending statement is not hers.  [Doc. 236, Exhibit 11, page 57, line 11].  She also testified that it is not her signature on the Notice of Rescission. [Doc. 236, Exhibit 11, page 86, lines 3-11].

30.     Plaintiffs further testified during their depositions that they signed the June, 2015 authorization letter and do not dispute this fact. *(Exhibit B,* pp. 83-85.)

**Plaintiffs Response:**  Admitted.

31.     Plaintiffs do not dispute the fact that they resent a request for third-party information, that letter was accepted, and their counsel was granted access to receive information relating to their mortgage loan account. *(Exhibit A,* pp. 132-34; *Exhibit B,* pp. 88-89.)

**Response:** Admitted.

## CONCLUSION

With no admissible evidence provided by Ocwen and merely denials and opinions, Plaintiffs are entitled to Summary Judgment as a matter of law.

Dated:          July 27, 2018                    Respectfully Submitted
                                                 TIMOTHY C. HARRY and
                                                 KAREN C. HARRY
                                                 By their Attorney


                                                 */s/ Tina L. Sherwood*_____
                                                 Tina L. Sherwood BBO# 662047
                                                 19C Governors Way
                                                 Milford, MA  01757
                                                 (617) 930-3533

## CERTIFICATE OF SERVICE

I, Tina Sherwood, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 27, 2018.


                                                 */s/ Tina L. Sherwood*_____
                                                 Tina L. Sherwood