_____

| | |
|---|---|
| ) | |
| TIMOTHY C. HARRY and KAREN C. ) | |
| HARRY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. |
| v. ) | 16-10895-FDS |
| ) | |
| OCWEN LOAN SERVICING, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION TO STRIKE**

**SAYLOR, J.**

This is a dispute arising out of a mortgage issued to plaintiffs Timothy and Karen Harry

in 2006.  On December 21, 2006, the Harrys took out a $450,000 loan to refinance their existing

mortgage and executed a new mortgage on their property to secure payment of that loan.  They

stopped making payments on the new mortgage in November 2008.  Although several

foreclosure attempts followed, they remain in the house, despite not having made mortgage

payments for nearly a decade.

In 2016, the Harrys filed this lawsuit, alleging in substance that the 2006 note and

mortgage were void because the lender, American Brokers Conduit, was not an incorporated

entity and was not licensed to do business in any state at the time of the loan.  They contend that

all subsequent assignments of the mortgage were void and all attempts to collect on the note or to

foreclose on the property were unauthorized.  The 141-page amended complaint sought

approximately $200 million in compensatory and punitive damages.

The Court has previously dismissed all claims in this matter but one.  The only remaining

claim is a claim against defendant Ocwen Loan Servicing for violation of the Fair Debt

Collection Practices Act ("FDCPA").   The parties have now cross-moved for summary

judgment, and the Harrys have also moved to strike certain exhibits offered by Ocwen in support

of its motion.

For the reasons set forth below, the Harrys' motion to strike and motion for summary

judgment will be denied, and Ocwen's motion for summary judgment will be granted.

## I.     Background

### A.     Factual Background

The following facts are undisputed, except where otherwise noted.

On December 21, 2006, Timothy and Karen Harry executed an adjustable rate note in the

principal amount of $450,000.  (Def. Ex. A).[1]  The named lender was American Brokers

Conduit.  (*Id.*).  The note was secured by a mortgage on the Harrys' home, located at 31

Marway, Mashpee, Massachusetts.  (Def. Ex. E; K. Harry Dep. at 46; T. Harry Dep. at 65-66).

The named mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS"), as

nominee for American Brokers Conduit.  (Def. Ex. E).[2]

American Home Mortgage Corporation, doing business as American Brokers Conduit, is

a subsidiary of American Home Mortgage Holdings, Inc.  (Def. Ex. M).[3]  American Home

---

[1] Only Timothy Harry's signature is on the note.

[2] The mortgage describes American Brokers Conduit as a "corporation," which is apparently incorrect. (Def. Ex. E).

[3] The Harrys contend that American Brokers Conduit was not licensed to do business in Massachusetts.  In support, they provided a screenshot from the Massachusetts Secretary of State's website showing that there is no corporation named "American Brokers Conduit."  (Pl. Ex. B).  However, a cease-and-desist order from the Massachusetts Secretary of State issued on August 2, 2007, shows that American Home Mortgage Corporation, which was licensed to do business in the Commonwealth, was doing business under the name American Brokers Conduit.  (Def. Ex. M).

Mortgage Corporation and American Home Mortgage Holdings, Inc., are New York corporations with principal offices in Melville, New York. (*Id.*). American Home Mortgage Corporation was licensed to do business as a mortgage lender and mortgage broker in Massachusetts on March 21, 2000. (*Id.*). Therefore, at the time the Harrys executed the loan documents, American Home Mortgage Corporation was permitted to conduct business as a mortgage lender and mortgage broker in Massachusetts. It apparently did business under the trade name American Brokers Conduit.

The Harrys used the loan to refinance an existing mortgage loan on their property, securing a lower interest rate and lower monthly payment. (T. Harry Dep. at 49-50). The bulk of the loan proceeds, $438,000, was used to pay off the Harrys' existing loan with Countrywide Mortgage. (K. Harry Dep. at 41-42). The Countrywide Mortgage discharge was then recorded at the Barnstable County Registry of Deeds on December 28, 2006. (Def. Ex. D). The remaining $12,000 was used by the Harrys for various home improvements. (K. Harry Dep. at 42; T. Harry Dep. at 63-64).

The Harrys made approximately 20 monthly payments on the note before defaulting in November 2008. (K. Harry Dep. at 65, 73; T. Harry Dep. at 51). They stopped paying because they believed they were victims of predatory lending, despite the fact they were financially capable of making payments. (K. Harry Dep. at 68; T. Harry Dep. at 98-99).

On May 1, 2009, Mortgage Electronic Registration Systems ("MERS"), as nominee for American Brokers Conduit, assigned the mortgage to Deutsche Bank National Trust Company. (Def. Ex. G). MERS executed a confirmatory assignment of the mortgage to Deutsche Bank National Trust Company on July 7, 2011. (Def. Ex. H).

Over the next few years, the Harrys submitted multiple applications for loan

modifications in an attempt to "free [themselves]" from what they considered "the original

fraudulent loan." (T. Harry Dep. at 111). The Harrys received a loan modification offer from

American Home Mortgage Servicing, Inc., on May 15, 2012. (K. Harry at 80-81). The Harrys

also received loan modification offers and loss mitigation options from other servicers. (T.

Harry Dep. at 114). However, they did not accept any of these offers.

In the interim, the Harrys had received multiple foreclosure notices. Those notices were

sent on September 28, 2009; November 11, 2010; and July 14, 2011. (Am. Compl. ¶¶ 94, 102,

104).

In March 2013, Ocwen Loan Servicing became the loan servicer. (Def. Ex. I). By

February 2015, the Harrys had been in default for more than six years. On February 13, 2015,

Ocwen mailed them a document titled "150 Day Right to Cure Your Mortgage Default." (Def.

Ex. J). The document warned that if they did not pay the total due past amount, and any

additional payments due in the interim, the property could be foreclosed. (*Id.*).

On March 20, 2015, the Harrys mailed a letter to Deutsche Bank National Trust

Company entitled "[Truth in Lending Act] Notice of Rescission." (Def. Ex. K). The Harrys

purported to rescind the loan, despite having already received (and spent) the $450,000 loan

proceeds. (*Id.*). Ocwen, as Deutsche Bank's loan servicer, replied on April 1, 2015,

acknowledging receipt of the letter. (Def. Ex. L).

On June 10, 2015, Ocwen issued a Notice of Default to the Harrys. The notice stated that

the amount past due was $223,611.23, and that foreclosure would occur unless they became

current on their payments. (Def. Ex. F). On July 1, 2015, Ocwen issued another notice to the

same effect. (Def. Ex. O).[4] It is undisputed that no payments were made, as the Harrys

---

[4] This time, the stated amount past due was $223,614.37.

continued to assert that the note was void and unenforceable. (K. Harry Dep. at 95; T. Harry

Dep. at 155-56).

On January 28, 2016, attorney Paul Manning, mailed a letter to the Harrys stating that he

represented Ocwen and that Ocwen intended to foreclose on the property. (Def. Ex. P).

Invoking the note's acceleration clause, the letter stated that to cure the default, the Harrys

needed to pay $760,734.62 (*Id.*). Again, the Harrys refused to repay the loan, contending it was

void. (K. Harry Dep. at 100; T. Harry Dep. at 172-73).

B.        **Procedural History**

The Harrys filed the original complaint in this action on March 18, 2016, in Barnstable

Superior Court, against a variety of defendants, including Ocwen, Apex Mortgage Services, and

American Brokers Conduit. The case was removed to federal court on May 17, 2016. An

amended complaint was then filed on June 22, 2016.

On July 8, 2016, the Harrys moved for entry of default judgment against Apex Mortgage

Services and American Brokers Conduit for failure to answer the complaint. The motion was

denied without prejudice on October 23, 2017. (Docket No. 167).

The 141-page, 11-count complaint alleged a violation of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, (Count One); a claim that the

statute of limitations to collect on the note expired, (Count Two); a violation of Mass. Gen. Laws

ch. 93A, (Count Three); violations of the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.*, (Count Four); violations of the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2601, (Count Five); a violation of 18 U.S.C. § 1014 (Count Six);

violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, (Count Seven); slander of title,

(Count Eight); and fraud, (Count Nine). In addition, the complaint sought a rescission of the

note and mortgage as well as quiet title to the property (Count Ten), and asserted that no defendant had standing to foreclose on the property (Count Eleven).

On January 12, 2017, the Court granted in part and denied in part defendants' motion to dismiss. Specifically, the Court dismissed all counts except for Count Four, the claim under the FDCPA, as to Ocwen. Ocwen and the Harrys have now moved for summary judgment on that remaining claim, and the Harrys have also moved to strike certain exhibits attached to Ocwen's supporting memorandum.

## II.     Motion to Strike

The Harrys have moved to strike seven exhibits that Ocwen offered in support of its motion for summary judgment: the note (Def. Ex. A); the mortgage (Def. Ex. E); MERS' assignment of the mortgage to Deutsche Bank National Trust Company (Def. Ex. G); the confirmatory assignment of the mortgage to Deutsche Bank National Trust Company (Def. Ex. H); the notice that Ocwen had become the loan servicer (Def. Ex. I); an affidavit from Katherine Ortwerth certifying Ocwen's exhibits (Def. Ex. N); Ocwen's second statement of intent to foreclose (Def. Ex. O); and the letter attorney Manning wrote to the Harrys stating that Ocwen would foreclose on the property (Def. Ex. P). Because the disposition of the motion to strike will affect the evidentiary record, the Court will resolve it first.

The Harrys argue that the Ortwerth affidavit should be struck because her statements constitute hearsay. (Pls. Mem. in Supp. of Mot. to Strike at 2). They contend that because Ortwerth is an employee of Ocwen Financial Corporation rather than Ocwen Loan Servicing, she is unqualified to provide an affidavit. In turn, because the Ortwerth affidavit was used to authenticate the other six exhibits, the Harrys contend that those exhibits should also be struck.

That argument is plainly without merit. As Ortwerth's affidavit makes clear, Ocwen

Loan Servicing is an indirect subsidiary of Ocwen Financial Corporation. (Def. Ex. N ¶ 2). In

addition, although Ortwerth was not personally involved in creating the documents in question,

such documents may be authenticated, and qualify under the hearsay exception for business

records, provided they are certified by a "custodian or another qualified witness." Fed. R. Evid.

803(6)(D), 902(11). Ortwerth is such a witness. In preparing her affidavit, she reviewed

Ocwen's business records and correspondence, and personally verified the loan accounting

information. (Def. Ex. N ¶ 5). There is no requirement that the "qualified witness" be the person

who actually prepared the record. *See HMC Assets, LLC v. Conley*, 2016 WL 4443152, at *3 (D.

Mass. Aug. 22, 2016).

Therefore, the motion to strike will be denied.[5]

III.     **Legal Standard for Summary Judgment**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816,

822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)).

Summary judgment is appropriate when the moving party shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence,

viewed in the light most flattering to the nonmovant, would permit a rational fact finder to

resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896

F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court

indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves,*

---

[5] The Harrys also appear to object to Ortwerth's answers in her deposition testimony as incomplete or evasive. (Pls. Mem. in Supp. of Mot. to Strike at 13). To that extent, they should have filed a motion to compel, not a motion to strike.

994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256–57.

## IV.     Summary Judgment Analysis

The FDCPA was enacted in 1978 to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The elements of a FDCPA claim are as follows: (1) the plaintiff was the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *See Rhodes v. Ocwen Loan Servicing, LLC*, 44 F. Supp. 3d 137, 141 (D. Mass. 2014). It is undisputed that the Harrys were the "object of collection activities arising from consumer debt" and that Ocwen is a "debt collector." The parties only dispute whether Ocwen's conduct was prohibited by the FDCPA.

The Harrys contend that Ocwen violated the FDCPA three times by trying to collect an invalid debt. First, on June 10, 2015, Ocwen issued a Notice of Default. (Def. Ex. F). Second, on July 1, 2015, Ocwen issued another such notice, warning that the loan was past due and that foreclosure would occur. (Def. Ex. O). Third, on January 28, 2016, attorney Manning mailed a letter on behalf of Ocwen warning that Ocwen would initiate the foreclosure process. (Def. Ex. P).

The Harrys do not dispute the substantive content of these documents. Rather, their only

argument is that the underlying debt is void, and that any attempts to collect on that obligation

constitute abusive debt collection practices. (Pls. Mem. in Supp. of SJ at 12). In support, they

claim that American Brokers Conduit was not licensed to do business in Massachusetts, and that

therefore the entire transaction was void from the beginning.

As explained above, American Brokers Conduit was a trade name under which American

Home Mortgage Corporation did business. (Def. Ex. M). American Home Mortgage

Corporation was properly licensed as a mortgage lender and mortgage broker in Massachusetts

on March 21, 2000. (*Id.*). Even if American Home Mortgage Corporation improperly failed to

register that trade name with regulatory authorities, it does not follow that the Harrys were

somehow deceived or defrauded by the use of that name. Among other things, they received

$450,000 in loan proceeds, which were hardly fictitious. And it certainly does not follow that

the entire transaction was void from the beginning. The Harrys have cited no legal authority for

that proposition, and it is unsupported by logic or equity.[6] Accordingly, there is no reason to

conclude that the note was void or unenforceable.

The Harrys offer several additional arguments: (1) Ocwen fabricated the loan and

mortgage, (2) that Ocwen "was charging [the Harrys] litigation fees three years before a

complaint was filed," (3) that Ocwen improperly charged for "hazard insurance" on the property,

and that (4) that Ocwen should have known the loan was void. (Pls. Mem. in Supp. of SJ at 12-

13).

None of those contentions have merit. First, as the Harrys conceded in their depositions,

they personally executed the note and mortgage on the property, and they received (and used) the

---

[6] Despite their claims of rescission and that the loan was void from the outset, the Harrys do not seek to unwind the transaction in its entirety. Rather, they seek both to keep the house and to cancel the debt—in other words, they want the house for free. Such a resolution would not, to put it mildly, be fair and equitable.

proceeds. The loan and mortgage are therefore not "fabricated." (Def. Exs. A, E; K. Harry Dep. at 46-47; T. Harry Dep. at 65-66).[7] Second, the Harrys point to a line item in Ocwen's files stating that they were charged $3,917.80 in litigation fees on May 21, 2013, three years before this suit was filed. (Pl. Ex. I-1 at 1). However, those fees were for foreclosure proceedings that Ocwen initiated because of the Harrys' default. (Ortwerth Dep. at 142-44). The mortgage authorized the lender to charge such fees to the borrower. (Def. Ex. E at 10). Third, the Harrys point to another line item dated March 11, 2013, stating "Hazard Insurance Policy Setup Required." (Pl. Ex. I at 5). It appears the Harrys were charged certain premiums for hazard insurance. However, the text of the mortgage clearly gave the lender the right to purchase property insurance in the event the borrower failed to maintain certain forms of coverage. (Def. Ex. E at 7). Here, Ocwen simply continued paying the Harrys' existing hazard insurance. (Def.'s Opp. Ex. D). Finally, the loan was clearly not void, as discussed above. And even if the loan was invalid for some reason, a debt collector is not obligated to verify the validity of the debt. *See Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006) ("Within reasonable limits, [a debt collector is] entitled to rely on [its] client's statements to verify the debt."); *Shapiro v. Haenn*, 222 F. Supp. 2d 29, 44 (D. Me. 2002) ("[D]ebt collectors may rely on the information their clients provide, and the FDCPA does not require them to conduct their own investigation into the amount or validity of the underlying loan.").[8]

---

[7] The Harrys claim that they did not sign the note produced by Ocwen. In support, they point to an entry in Ocwen's files dated July 15, 2015, which states "Signature not matching." (Pl. Ex. I-7 at 10). Putting aside the fact that the entry does not provide any greater specificity, the Harrys do not dispute either the content of the note or the fact that they executed a note with identical terms on December 21, 2006. Rather, they only offer the farfetched claim that Ocwen fabricated the note and mortgage in question.

[8] The Harrys also claim that Ocwen's comment log for their loan contains judicial admissions. (Pls. Mem. in Supp. of SJ at 16-17). This is plainly incorrect. A judicial admission is "[a] formal waiver of proof that relieves an opposing party from having to prove the admitted fact and bars the party who made the admission from disputing it." *Admission (Judicial)*, BLACK'S LAW DICTIONARY (10th ed. 2014). Because a pleading in prior litigation does

Accordingly, there is no evidence that Ocwen violated the FDCPA, and summary judgment in its favor is appropriate.

## V.     <u>Conclusion</u>

For the foregoing reasons, plaintiffs' motion to strike is DENIED; plaintiffs' motion for summary judgment is DENIED; and defendant's motion for summary judgment is GRANTED.

**So Ordered.**


/s/  F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  August 16, 2018

---

not constitute a judicial admission in a subsequent case, it follows that a comment in business records made pre-suit similarly cannot constitute a judicial admission. *See United States v. Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986).